Colin M. Thompson, Esq.
THOMPSON LAW OFFICE, LLC
J.E. Tenorio Building
PMB 917 P.O. Box 10001
Saipan, Mariana Islands 96950
Telephone: (670) 233-0777
Facsimile: (670) 233 0776

Attorney for Plaintiff Laramie Fealty LLC,
Trustee of GET Realty Trust

F I L E D
Clerk
District Court

JUN 1 2 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

LARAMIE FEALTY LLC, Trustee of GET
REALTY TRUST,

                Plaintiff,

    v.

UNITED MICRONESIA DEVELOPMENT
ASSOCIATION, INC. and DOES I - XX,

           Defendants.

CIVIL CASE NO. 08- **0028**

**COMPLAINT**

COMES NOW, the Plaintiff, Laramie Fealty LLC, and alleges as follows:

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the parties are completely diverse from each other and the amount in controversy, exclusive of interests and costs, exceeds $75,000.00.

2.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) and (2), because the Defendant resides in this District and also because a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

3.  Plaintiff Laramie Fealty LLC (hereinafter "Laramie Fealty") is the trustee of GET Realty Trust ("GET Trust"), a trust established under the laws of the State of Wyoming. Laramie

1 | Fealty is a limited liability company duly formed under the laws of Wyoming whose member is a

2 | citizen of the State of Colorado. Laramie Fealty brings suit in its capacity as trustee of the GET

3 | Realty Trust.

4 |     4.    Defendant United Micronesia Development Association, Inc. ("UMDA") is a

5 | corporation chartered and existing under the laws of the Commonwealth of the Northern Mariana

6 | Islands ("CNMI"), with its principal place of business located in the CNMI.

7 |     5.    Plaintiff does not know the true identities or liabilities of the defendants named

8 | herein as DOES and alleges that each such DOE defendant is liable for the injuries, damages,

9 | losses, harm and wrongful conduct alleged herein. Plaintiffs will seek leave of court to amend this

10 | complaint to set forth the true names of such DOE defendants at such time as plaintiffs become

11 | aware of their true identities and/or liabilities.

12 | **GENERAL ALLEGATIONS**

13 |     6.    Starting in 2004, UMDA decided to purchase the stock of SLDI, an entity that

14 | operated the Saipan Lao Lao Golf Course.

15 |     7.    UMDA authorized its management to seek third party investors, including investors

16 | affiliated with UMDA Board members, to raise investment funds to purchase approximately 49%

17 | of the golf course investment. Initially, UMDA contemplated the formation of a new limited

18 | liability company to purchase the stock of SLDI. Under the initial plan, UMDA would control a

19 | bare majority interest of the limited liability company, while private investors would purchase the

20 | remaining units of the limited liability company. To that end, UMDA organized UMDA Lao Lao

21 | LLC pursuant to the CNMI LLC Act and delivered executed articles of organization for that

22 | limited liability company to the CNMI Registrar of Corporations on December 29, 2004.

23 |     8.    In or about July, 2006, UMDA changed the structure of the transaction, so that

24 | UMDA would directly purchase 51% of the shares of SLDI, while the LLC would purchase 49%

25 | of the shares of SLDI.

26 |     9.    Under this revised structure, which was delineated in the Second Operating

27 | Agreement, UMDA was not an Equity Owner of the LLC. UMDA was the manager of the LLC,

28 |

1    unless and until the Equity Owners replaced UMDA as manager, in accordance with the Second
2    Operating Agreement.

3        10.    GET Trust holds 15 units of the LLC membership units purchased for $100,000
4    each.  As a result, GET Trust is an Equity Owner of the LLC, with an approximately 35.7%
5    ownership.

6        11.    Other Equity Owners in the LLC included entities owned, operated or established
7    by UMDA directors.  For example, UMDA director Eduardo Calvo directed CCH Saipan LLC, a
8    limited liability company, to invest $200,000 in the LLC.  On information and belief, Calvo
9    directs the actions of CCH Saipan LLC, and benefits, directly or indirectly, from any gains or
10   profits of CCH Saipan LLC.  Similarly, UMDA director (and later President and Chief Executive
11   Officer) Russell Snow directed his wife's trust to invest $200,000 in the LLC.  On information and
12   belief, Snow and his wife direct the actions of the Restated Cheryl Anne Snow Trust, and benefit,
13   either directly or indirectly, from any gains or profits to the Restated Cheryl Anne Snow Trust.

14       12.    Shortly after GET Trust and the other Equity Owners signed the Second Amended
15   Agreement, UMDA concluded that the investment in SLDI was going to be quite profitable, and
16   UMDA embarked upon a plan to cut certain Equity Owners out of the LLC and to embezzle GET
17   Trust's investment and profits for its own use.

18       13.    UMDA's first attempt to misappropriate GET Trust's funds occurred on or about
19   November 16, 2006, when a chairman of UMDA's "Share Repurchase Committee" wrote to GET
20   Trust and certain Equity Owners and offered to repurchase their shares in the LLC for $75,000 a
21   unit, *i.e.*, 75% of the Equity Owners' initial investment.

22       14.    Contemporaneously, UMDA engaged in secret negotiations to sell its shares in the
23   SLDI, and to sell the LLC's shares in SLDI to Kumho Holdings.

24       15.    UMDA's negotiations with Kumho Holdings ultimately resulted in a sale of SLDI
25   for $16,600,000, nearly double the $8,500,000 price paid by UMDA and the LLC in 2005.

26       16.    UMDA fraudulently concealed these negotiations from GET Trust and certain
27   other LLC investors.

28

17.     Thus, UMDA's plan was clear: hoodwink GET Trust into selling its LLC units for seventy five cents on the dollar, while fraudulently concealing material information concerning the negotiations with Kumho Holdings that would nearly double the value of each LLC unit. Had GET Trust fallen prey to UMDA's scheme, UMDA would have purchased GET Trust's units in the LLC for $1.1 million and then immediately sold them to Kumho for $2.9 million, and pocketed the $1.8 million difference.  This scheme would not only deprive GET Trust of the return on its investment in the LLC, but would also deprive it of a quarter of its initial investment of capital.

18.     When GET Trust did not accept UMDA's offer, UMDA decided to embezzle what it could not take through deception.

19.     After UMDA (acting for itself and as manager of the LLC) sold all of the stock of SLDI to Kumho Holdings, it caused the LLC to selectively distribute its assets, which at the time consisted entirely of the proceeds from the sale of SLDI to Kumho Holdings, being held by the Bank of Hawaii.

20.     The Second Operating Agreement, as well as CNMI law, unambiguously required UMDA to distribute the LLC assets to all Equity Owners equally, including GET Trust. For example:

a.     Paragraph 9.04 of the Second Operating Agreement provides the terms upon which the manager of the LLC shall "Distribute Distributable Cash." "Distribute" is defined in ¶ 1.15 as "Any Transfer of [LLC] Property from the [LLC] to or for the benefit of an Equity Owner by reason of such Equity Owner's ownership of an Economic Interest [i.e., the Equity Owner's share in the LLC.]  "Distributable Cash" is defined in ¶ 1.14 to refer to "All cash, whether revenues or other funds received by the [LLC, less sums reserved to pay the LLC's operating expenses and debts.]"

b.     Paragraph 9.04 of the Second Operating Agreement provides that the UMDA, as "Manager," must distribute any funds to the Equity Owners "pro rata in proportion the respective interests of the Equity Owner…."

1        c.      Paragraph 12.03(b)(4) imposes a similar duty when distributions are made

2 as part of dissolution, requiring the Manager to "distribute the remaining assets to the Equity

3 Owners in accordance with their positive Capital Account balances."

4        d.      Moreover, Paragraphs 1.01 and 13.03 of the Second Operating Agreement

5 provide that the LLC is governed by the Uniform Limited Liability Company Act of 2004, enacted

6 by the CNMI legislature as Public Law 14-11 (the "Act").

7        e.      Section 405 of the Act echoes the language of the Second Operating

8 Agreement, by requiring that "[a]ny distributions made by a limited liability company before its

9 dissolution and winding up must be in equal shares."

10      21.      Provisions of the Act and the Second Operating Agreement establish that UMDA is

11 liable to both the LLC and to its Equity Owners for any breaches of the foregoing.  For example,

12        a.      Section 407(a) of the Act provides that a "manager of a manager-managed

13 company who … assents to a distribution made in violation of … the operating agreement is

14 *personally liable to the company* for the amount of the distribution which exceeds the amount that

15 could have been distributed without violating … the operating agreement if it is established that

16 the member or manager did not perform the member's or manager's duties in compliance with

17 Section 409."

18        b.      Section 409 of the Act imposes a fiduciary duty upon UMDA, as manager

19 of the LLC, to "account to the company and to hold as trustee for it any property, profit, or benefit

20 derived by the [manager] in the conduct or winding up of the company's business or derived from

21 a use by the member of the company's property, including the appropriation of a company's

22 opportunity."

23        c.      Paragraph 5.04(b) provides an express cause of action, on behalf of both the

24 LLC and the Equity Owners, against UMDA, as manager of the LLC, for any "loss or damage

25 [that] shall have been the result of fraud, deceit, gross negligence, willful misconduct, breach of

26 this Agreement or a wrongful taking by the Manager."

27

28

22.     Despite the clear language of both the Second Operating Agreement and the Act, UMDA withheld GET Trust's share of LLC assets with the intent of ultimately retaining those assets for itself and/or for the benefit of entities owned or controlled by its directors.

23.     At the same time, UMDA distributed LLC assets to entities that, on information and belief, were owned or controlled by its directors, or affiliated with its directors.

24.     UMDA's misappropriation of the Trust's property is motivated by nothing more than avarice and a desire to make itself wealthy at the expense of GET Trust.

25.     UMDA's blatant theft of the Trusts' property must be remedied by this Court.

## FIRST CAUSE OF ACTION

### Breach of Contract

26.     GET Trust incorporates by reference paragraphs 1 through 24 of this Complaint.

27.     UMDA undertook an obligation in the Second Operating Agreement to distribute all LLC assets to Equity Owners on a non-discriminatory, pro rata basis – irrespective of whether said distribution occurred in the ordinary course of business or as part of dissolution of the LLC. However, by electing to distribute LLC assets to some but not all Equity Owners, UMDA has breached the terms of the Second Operating Agreement.

28.     As a result of UMDA's breach, GET Trust was denied assets it was entitled to receive under the Second Operating Agreement and the Act.

29.     GET Trust has therefore been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### Breach of Fiduciary Duty

30.     GET Trust incorporates by reference paragraphs 1 through 31 of this Complaint.

31.     The Act requires UMDA, as manager of the LLC, to ensure that "[a]ny distributions made by a limited liability company before its dissolution and winding up must be in equal shares."

32.     Further, Section 409 of the Act imposes a fiduciary duty upon UMDA, as manager of the LLC, to "account to the company and to hold as trustee for it any property, profit, or benefit derived by the [manager] in the conduct or winding up of the company's business or derived from

1  a use by the member of the company's property, including the appropriation of a company's

2  opportunity."

3        33.    In addition to the fiduciary duties imposed on UMDA by statute, UMDA also owed

4  fiduciary duties to the LLC members by operation of common law.

5        34.    Despite UMDA's fiduciary duties of loyalty and fairness, UMDA has acted out of

6  avarice to capture GET Trust's share of LLC assets for itself and for the benefit of entities owned

7  or controlled by UMDA's directors.

8        35.    UMDA's theft of LLC assets, through concealment of material information, self-

9  dealing and through its efforts to enrich members of its own board of directors at the expense of

10  GET Trust, is a clear breach of its fiduciary duty to GET Trust.

11        36.    As a result of UMDA's breach of fiduciary duty, GET Trust has been damaged in

12  an amount to be proven at trial.

13        37.    UMDA has also acted maliciously, oppressively, fraudulently and in conscious

14  disregard of the GET Trust's rights, and as such, GET Trust is entitled to an award of puntive

15  damages against UMDA in an amount to be proven at trial.

16  **THIRD CAUSE OF ACTION**

17  **Conversion**

18        38.    GET Trust incorporates by reference paragraphs 1 through 39 of this Complaint.

19        39.    As a result of the LLC's dissolution and/or distribution of LLC assets to certain

20  Equity Owners, GET Trust had an immediate possessory interest in its own pro rata share of such

21  assets.

22        40.    UMDA intentionally exercised dominion and control over the GET Trusts' pro rata

23  share of the LLC assets, and interfered with GET Trusts' rights to receive those assets, by

24  withholding those funds from distribution.

25        41.    As a result, GET Trust has been injured in an amount that will be determined at

26  trial.

27

28

1
2

## FOURTH CAUSE OF ACTION

### For An Accounting

3        42.     GET Trust incorporates by reference paragraphs 1 through 39 of this Complaint.

4        43.     Section 4.10 of the Act provides that: "A member may maintain an action against a

5    limited liability company or another member for legal or equitable relief, with or without an

6    accounting as to the company's business, to enforce:

7                      (1) the member's rights under the operating agreement;

8                      (2) the member's rights under this [Act]…"

9        44.     As explained more fully herein, both the Second Operating Agreement and the Act

10   provide GET Trust with the right to receive its pro rata and proportional share of any distribution

11   made by the LLC.

12       45.     Subsequent to the sale of SLDI shares by the LLC, UMDA made distributions to

13   certain favored Equity Owners but failed to make a distribution to GET Trust, with the intent of

14   capturing GET Trust's share of LLC assets for itself.

15       46.     As a result of the UMDA's breach of the Act and the Second Operating Agreement,

16   GET Trust is entitled to an accounting, pursuant to Section 4.10 of the Act.

## FIFTH CAUSE OF ACTION

### Constructive Trust

19       47.     GET Trust incorporates by reference paragraphs 1 through 47 of this Complaint.

20       48.     UMDA has breached its fiduciary duties to GET Trust by, *inter alia*,

21   misappropriating the Trust's pro rata share of LLC assets for itself and for entities owned or

22   operated by UMDA's directors.

23       49.     Accordingly, a constructive trust has arisen from UMDA's violation of its fiduciary

24   relationship with GET Trust so that beneficial title to the LLC assets belong to Trust, as the

25   wronged party, and not to UMDA, which currently claims possession and control over the LLC

26   assets that rightfully belong to GET Trust and/or the LLC.

## PRAYER FOR RELIEF

28       WHEREFORE, Plaintiff respectfully requests that this Court:

8

1.    As to the First Cause of Action, for compensatory damages according to proof at trial;

2.    As to the Second Cause of Action, for compensatory damages and punitive damages according to proof at trial;

3.    As to the Third Cause of Action, for compensatory damages and punitive damages according to proof at trial;

4.    As to the Fourth Cause of Action, for an accounting;

5.    As to the Fifth Cause of action, for a constructive trust;

6.    As to all causes of action, for an award of all costs and expenses incurred in this action, including reasonable attorneys fees, pursuant to Paragraph 13.11 of the Second Operating Agreement; and

7.    Award such other and further relief as the Court deems just and proper.

DATED this 11th day of June 2008

_____
/s/
COLIN M. THOMPSON, ESQ.
Attorney for Plaintiff