1  ROBERT J. O'CONNOR, ESQ., F0137
2  O'CONNOR BERMAN DOTTS & BANES
   Second Floor, Nauru Building
3  P.O. Box 501969
   Saipan, MP 96950
4  Telephone No. (670) 234-5684
   Facsimile No. (670) 234-5683
5  *Attorneys For Defendant United Micronesia Development Association, Inc.*

6  DANIEL BENJAMIN, ESQ., F0309
7  CALVO & CLARK, LLP
   1st Floor, Macaranas Building
8  PMB 951 Box 10001
   Saipan, MP 96950
9  Telephone No. (670) 233-2045
   Facsimile No. (670) 233-2776
10 *Attorneys For Defendant United Micronesia Development Association, Inc.*

11

12              IN THE UNITED STATES DISTRICT COURT
                         FOR THE
13              NORTHERN MARIANA ISLANDS

14

15 | LARAMIE FEALTY, LLC, Trustee of | CIVIL ACTION NO. 08-0028 |
   | GET REALTY TRUST, | |
16 | | **DEFENDANT'S NOTICE OF MOTION** |
   | | **AND MOTION TO DISMISS OR, IN** |
17 | Plaintiffs, | **THE ALTERNATIVE, TO STAY;** |
   | | **MEMORANDUM OF POINTS AND** |
18 | | **AUTHORITIES IN SUPPORT OF** |
   | vs. | **THEREOF** |
19 | | |
   | UNITED MICRONESIA | Hearing Date: July 31, 2008 |
20 | DEVELOPMENT ASSOCIATION, INC., | Time: 10:00 a.m. |
   | AND DOES I-XX, | |
21 | | |
22 | Defendants. | |

23

24

25

26

27

28

                              1

1

## NOTICE OF MOTION & MOTION

2

3    TO ALL PARTIES AND THEIR COUNSEL OF RECORD, please take notice that on

4    July 31, 2008 at 10:00 a.m. or as soon thereafter as this matter can be heard, United Micronesia

5    Development Association, Inc. ("UMDA"), pursuant to Federal Rule of Civil Procedure

6    12(b)(6), will and hereby does respectfully move this Court to dismiss this action; in the

7    alternative, UMDA will and hereby does respectfully move this Court to dismiss or stay this

8    action under the authority of *Colorado River Water Conservation District v. United States*, 424

9    U.S. 800 (1976) and *Younger v. Harris*, 401 U.S. 37 (1971).  This motion is based upon this

10   notice of motion and motion, the Request for Judicial Notice, filed hereto, the Declaration of

11   David G. Banes, the accompanying memorandum of points and authorities, all pleadings and

12   records on file in this matter, and any argument that may be heard hereon.

13   Respectfully submitted this 2nd day of July, 2008.

14

15                                  **O'Connor Berman Dotts & Banes**
                                     **Calvo & Clark, LLP**
16                                  Counsel for Defendant
                                     *United Micronesia Development Association, Inc.*
17

18

19                       By:    _____/s/_____
20                              DAVID G. BANES (F0171)

21

22

23

24

25

26

27

28

2

1

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

MEMORANDUM OF POINTS & AUTHORITIES ..................................................... 1

I.        INTRODUCTION ............................................................................... 1

II.       BACKGROUND ................................................................................. 2

    A.    UMDA Files Claims Against GET and Others in the Superior Court, Which Issues a Preliminary Injunction Not Mentioned in the Complaint ...................... 2

    B.    The Superior Court Dismisses GET, but not Sorenson, as Trustee, and then Laramie Fealty Suddenly Appears ........................................................................ 4

    C.    In Response to UMDA's Rule 11 Motion, Laramie Fealty Dismissed the "Counterclaims," But Refused to Withdraw Motions and Other Papers Pending Before the Superior Court ...................................................................................... 5

    D.    Laramie Fealty and GET Re-File Their Claims Before this Court ...................... 6

III.      LEGAL STANDARD ........................................................................ 7

IV.       ARGUMENT ....................................................................................... 7

    A.    The Claims Should Be Dismissed Because They Are Compulsory Counterclaims and Must be Tried in the Superior Court Proceedings ......................................... 8

    B.    In the Alternative, the Complaint Here Should Be Dismissed or Stayed In Light of the Pending Superior Court Action ............................................................... 12

        1.    *Colorado River* Abstention .................................................. 13

            a.    The Superior Court and Federal Court proceedings are parallel  13

            b.    The Superior Court has already assumed jurisdiction over the accounts containing the disputed LaoLao funds at issue ............ 14

            c.    The forums are equally convenient ............................................ 15

            d.    The Superior Court action was filed over a year before this action ................................................................................................. 15

            e.    Failure to dismiss or stay will cause piecemeal litigation ........... 15

            f.    Commonwealth law controls ..................................................... 16

            g.    The Superior Court proceeding protects the   parties' rights ...... 16

            h.    Laramie Fealty is forum shopping ............................................. 16

            *i.*    This is an exceptional case under *Colorado River* and should be dismissed.................................................................................. 18

        2.    *Younger* Abstention ............................................................. 18

V.        CONCLUSION................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Bankcard Systems, Inc. v. Miller/Overfelt, Inc.*, 219 F.3d 770 (8th Cir. 2000) .................... 10, 11

*Banner Industries v. Sansom*, 830 F. Supp 325 (S.D. W. Va. 1993) ...................................... 9, 10

*Baseline Sports, Inc. v. Third Base Sports*, 341 F.Supp.2d 605 (E.D.Va. 2004) ......................... 8

*Beck v. CKD Praha Holding*, 999 F. Supp. 652 (D. Md. 1998) ............................................... 15

*Bewley v. Riggs*, 262 Cal.App.2d 188 (1968) ...................................................................... 9

*Bonado v. East Park Research*, 220 F.R.D. 187 (N.D.N.Y. 2003) ............................................ 10

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ............... 12

*Dixon v. Smith*, 1989 WL 59604 (D. Kan. May 18, 1989) ...................................................... 11

*Enfission, Inc. v. Leaver*, 408 F.Supp.2d 1093 (W.D.Wash. 2005) ......................................... 15

*Fireman's Fund Ins. Co. v. Quackenbush*, 87 F.3d 290 (9th Cir. 1996) .................................. 13

*Froning's, Inc. v. Johnston Feed Service, Inc.*, 568 F.2d 108 (8th Cir. 1978) .......................... 5

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir.1980) ............................................................. 7

*Govendo v. Micronesian Garment Mfg., Inc.*, 2 N.M.I. 270 (1991) ........................................ 8

*Hofschneider v. Demapan-Castro*, 2005 WL 817710 (D. N.M.I. 2005) .................................... 7

*Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1998) ................. 13

*Markoff v. Johnson,* slip op. (D. N.M.I., April 20, 2006) (Munson, J.)………………….......12

*MGIC Indem. Corp. v. Weisman*, 803 F.2d 500 (9 Cir. 1986) ................................................ 7

*Moore v. Sims*, 442 U.S. 415 (1979) ................................................................................. 18

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983) ........................ 13

*Nakash v. Marciano*, 882 F.2d 1411 (9th Cir. 1989) ..................................................... 12, 13, 14

*National Union Fire Ins. Co. v. Bank of Saipan*, 2003 WL 22997231, (D. N.M.I. July 9, 2003) ........................................................................................................................ 12

*Puff 'n Stuff of Winter Park, Inc. v. Federal Trust Bank*, 945 F. Supp. 1523 (M.D. Fla. 1996)... 9

*RLI Ins. Co. v. R & L Brosamer*, Inc., 2006 WL 194109 (E.D. Cal. 2006) .............................. 12

*Shmuel Shmueli, Bashe, Inc. v. Lowenfeld*, 68 F. Supp. 2d 161 (E.D.N.Y. 1991) .................... 11

*Southern Const. Co. v. Pickard*, 371 U.S. 57 (1962) ............................................................ 9

*State ex rel. Buchanan v. Jensen,* 379 S.W.2d 529 (Mo. 1964) ............................................. 12

*Stern v. Whitlatch & Co.,* 91 Ohio App.3d 32, (1993) (682) ................................................. 10

*Waibel v. Farber*, CNMI Sup. Ct. Civil Action No. 01-0236D, Order Granting Motion for Reconsideration to Amend Pleadings and Assert Counterclaim (August 26, 2003) ............... 9

*Whites Store, Inc. v. Nowaski*, 760 S.W.2d 53 (Tx. 1988) ..................................................... 10

*Will v. Calvert Fire Ins. Co.*, 437 U.S. 655 (1978) ........................................................ 12

*Younger v. Harris*, 401 U.S. 37 (1971) ...................................................................... 12

**Rules**

Com. R. Civ. P. 13 ............................................................................................................. 8

Com. R. Civ. Proc. 25 ...................................................................................................... 10

Fed. R. Civ. P. 13 ............................................................................................................. 8

**MEMORANDUM OF POINTS & AUTHORITIES**

## I.      INTRODUCTION

On June 12, 2008, UMDA was served with the complaint in this federal action brought by Plaintiff Laramie Fealty LLC in its alleged capacity as the trustee of GET Realty Trust ("GET").   But, as Laramie Fealty's counsel has acknowledged, UMDA had "seen this complaint before" three months earlier, in an action pending before the CNMI Superior Court – an action filed by UMDA over a year ago that this complaint neglects to mention.

Specifically, in April 2008, Laramie Fealty filed in the CNMI Superior Court a "Counter-Complaint" against UMDA by Laramie Fealty on behalf of, and in its alleged capacity as trustee of, GET.  The "Counterclaims" were virtually <u>identical</u> to the complaint here and contain the exact same five claims.

On May 19, 2008, UMDA served a Rule 11 motion in the Superior Court on Laramie Fealty's counsel in the Superior Court.  The motion pointed out that the "Counterclaims" filed in the Superior Court were procedurally improper, since under black-letter law a counterclaim can only be filed by a party to the litigation, which Laramie Fealty was not.  (Indeed, before the filing of the "Counterclaims," neither UMDA nor the Superior Court had ever heard of this Laramie Fealty entity – there was a different trustee for GET Realty, who was already named in the lawsuit.)  The motion also pointed out that many of the allegations in the "Counterclaims" had already been demonstrated – or found by the Superior Court – to be false.  Lastly, it pointed out that Laramie Fealty's counsel had filed the Counterclaims for an improper purpose.

On May 27, 2008, Laramie Fealty withdrew the "Counterclaims" and expressly confirmed in a subsequent letter by its counsel that the withdrawal was *based upon UMDA's*

1

*Rule 11 motion.* (*See* Declaration of David G. Banes in Support of Defendant's Motion to Dismiss or, in the alternative, to Stay ("Banes Dec.") Ex. A, filed concurrently herewith.)

Less than a month later, however, Laramie Fealty has re-filed GET's five claims against UMDA with this Court, seemingly believing that it might benefit by re-filing its old counterclaims that it had voluntarily dismissed in a new court. In others words, Laramie Fealty went forum shopping.

However, Laramie Fealty's five claims are mandatory counterclaims which must be heard – if at all – in the Superior Court litigation. Further, the complaint here neglects to mention that the funds that Laramie Fealty and GET accuse UMDA of stealing were deposited with the Superior Court and *are currently enjoined by that court pursuant to a preliminary injunction*. Thus, by filing its complaint before this Court, Laramie Fealty is essentially asking this Court to review (and "reverse") the preliminary injunction issued by the Superior Court.

Because these claims are required to be brought in the pending Superior Court action, UMDA requests that the Court dismiss this action in favor of the claims being filed in the proper forum. Alternatively, UMDA requests that this Court abstain from exercising jurisdiction in light of the parallel Superior Court proceedings.

## II.    BACKGROUND

### A.    UMDA Files Claims Against GET and Others in the Superior Court, Which Issues a Preliminary Injunction Not Mentioned in the Complaint

On April 26, 2007, UMDA filed an action in Superior Court. The complaint was later amended on May 15, 2007. (*See* Defendant's Request for Judicial Notice ("RJN") Exs. 1 & 2, filed concurrently herewith.) It expressly named as defendants, Robert Pfaff, GET and its trustee, Thomas Sorenson in his capacity as a trustee, and other individuals and entities, which Plaintiffs allege are shell entities created by Pfaff and his co-conspirators. (RJN Ex. 2 at ¶¶ 9,

2

22, 35 & 125)  Defendants have repeatedly acknowledged that Sorenson, Defendant Pfaff's brother-in-law, was the trustee of GET.  Indeed, only a few months ago, counsel for GET in the Superior Court action (Messrs. Colin Thompson and John Pierce) reaffirmed that Sorenson was GET's trustee.  (*See, e.g.,* RJN Ex. 3 (March 10, 2008 "Executive Summary of Tom Sorenson the Trustee's Motions to Dismiss" (identifying their client as "Thomas Sorenson Trustee")).)

Shortly after UMDA filed the complaint in Superior Court, it moved, pursuant to Commonwealth Rules of Civil Procedure 65(b) and 67, to deposit in Superior Court-controlled accounts over five million dollars – the disputed UMDA LaoLao LLC[1] funds at issue in both UMDA's complaint in Superior Court and Laramie Fealty's complaint here.  On May 23, 2007, the Superior Court ordered that all bank accounts containing the disputed LaoLao LLC funds be frozen, halting defendants' scheme to spirit away the disputed funds to a location outside the Superior Court's jurisdiction.  (RJN Ex. 4.)

A few months later, the Superior Court granted Plaintiffs' motion for a preliminary injunction and ordered that the disputed funds would remain in Court-controlled bank accounts until their ownership is determined and denied Defendants' Motion for Partial Summary Judgment.  (RJN Ex. 5 at 1-2 & 19.)  Before issuing the preliminary injunction, the Superior Court heard three days of testimony and permitted GET's counsel to cross-examine Plaintiffs' witnesses, who included UMDA's current president and members of the board of directors. (*See* RJN Ex. 5 at 2.)  GET and Sorenson have appealed this Order.  (RJN Ex. 6.)

---

[1] UMDA LaoLao LCC is also a plaintiff in the Superior Court action, which was filed, *inter alia*, to determine the owner of the disputed UMDA LaoLao LLC funds.  UMDA claims that it is the rightful owner of the disputed funds.  In this action, and in the Superior Court action, GET claims that it is the rightful owner of its pro rata share of the disputed funds.  (Complaint at ¶ 10.)

**B.    The Superior Court Dismisses GET, but not Sorenson, as Trustee, and then Laramie Fealty Suddenly Appears**

On April 4, 2008, the Superior Court dismissed GET on the ground that trusts are generally not subject to suit, and dismissed Sorenson in his individual capacity.[2]  (RJN Ex. 7 at 3-4.)  But the Superior Court did *not* dismiss Sorenson as trustee, and it held that the claims against GET could continue to be maintained against GET's trustee.  (*Id*. at 3 & 10.)

Unbeknownst to the Superior Court (and UMDA), however, at the end of 2007, Sorenson had been purportedly replaced as trustee of GET.  (Banes Dec. Ex. B at 45:9-24.) This was highly relevant information that defense counsel not only failed to bring to the Superior Court's attention despite their duty of candor, but which they affirmatively misrepresented at the hearing on the motion to dismiss.  (*See* Banes Decl. Ex. C at 154:3-6.)

Instead, it was not until four days after the April 4, 2008 Order that an entity called Laramie Fealty LLC revealed itself for the first time.  Claiming (without any further explanation) to be the "trustee of GET," Laramie Fealty filed a set of "Counterclaims" (as well as a "third-party complaint" against UMDA's directors) on GET's behalf.  (RJN Exs. 9-10.)

At the depositions of Sorenson, part of the story about Laramie Fealty's unauthorized intervention in the Superior Court proceedings began to emerge – depositions that Messrs. Pierce and Thompson tried on multiple occasions to prevent.  (*See* RJN Ex. 8 (April 4 Order); Ex. 11 (April 18 Order); and Ex. 12 (May 12 Orders (mandating Sorenson's attendance at depositions).)  Under questioning, Sorenson admitted that he had (purportedly) resigned as trustee from GET back on December 27, 2007.  (Banes Decl. Ex. B at 45:9-24.)  Although Sorenson refused to give much additional information, Plaintiffs learned through their own research that Laramie Fealty was formed on November 21, 2007, just days after the Superior

---

[2] Plaintiffs have moved for reconsideration of that portion of the April 4, 2008 Order.  (RJN Ex. 8.)

Court ruled against Defendants on Plaintiffs' motion for a Preliminary Injunction and GET filed objections to Plaintiffs' discovery responses. (Banes Decl. Exs. D & E.)

There was, of course, a proper way for defendants to seek to bring in Laramie Fealty as a party in the Superior Court action, assuming it is a legitimate entity and not merely created for a fraudulent purpose. They could and should have filed a motion pursuant to Commonwealth Rule of Civil Procedure 25(c) to substitute or join Laramie Fealty for Sorenson, based on the supposed transfer of trusteeship.[3] *Froning's, Inc. v. Johnston Feed Service, Inc.*, 568 F.2d 108, 110 n.3 (8th Cir. 1978) ("Rule 25(c) requires a motion for substitution to be made…"). But they have refused to do so, even after Plaintiffs brought Rule 25(c) to their attention. (*See, e.g.*, RJN Ex. 14 at 5-7 (arguing that Laramie Fealty does not need to bring a motion under Rule 25(c).)[4] Instead, trying to circumvent Rule 25(c) and to re-litigate issues that they lost before the Superior Court – including the preliminary injunction – they filed this complaint.

### C. In Response to UMDA's Rule 11 Motion, Laramie Fealty Dismissed the "Counterclaims," But Refused to Withdraw Motions and Other Papers Pending Before the Superior Court

On May 19, 2008, UMDA served Messrs. Pierce and Thompson with a Rule 11 motion, pointing out the sanctionable defects in Laramie Fealty's "Counterclaims." (Banes Dec. Exs. F & G.) In response, Messrs. Pierce and Thompson withdrew the improper "Counterclaims" (as well as the "Third-Party Complaint") and expressly confirmed in a subsequent letter that the withdrawal was based upon UMDA's Rule 11 motion. (Banes Dec. Ex. A.)

---

[3] In a case involving a defaulting defendant in the Superior Court action of which Sorenson was also trustee – *Point Du Hoc Irrevocable Trust v. Commission of Internal Revenue*, Docket No. 6041-05 – Point du Hoc recently moved to substitute in the new trustee. (RJN Ex. 13.) Thus, when it is in their interest, defendants will comply with Rule 25(c).

[4] Mr. Pierce, who is admitted only *pro hac vice*, has also refused to seek leave to represent Laramie Fealty. Chief Justice Demapan has ordered a hearing on a motion to revoke the *pro hac vice* admission of Mr. Pierce to be held on July 17, 2008 and suspended Mr. Pierce's *pro hac vice* admission pending resolution of that motion. (RJN Ex. 15.)

Yet, inexplicably, they have not withdrawn all the other motions and papers filed in the Superior Court on behalf of GET by its purported trustee "Laramie Fealty," including a motion filed the same day as the "Counterclaims" which sought to derail the settlement between UMDA and Defendant Dingee, and to prevent any future settlement of which Laramie Fealty (and presumably Pfaff – who Plaintiffs have evidence to show is the architect behind GET and several other entities created to harm UMDA) did not approve. (*See* RJN 16.) Indeed, there are numerous motions pending before the Superior Court in which GET, Laramie Fealty and/or Sorenson is seeking affirmative relief.[5] (*See, e.g.*, February 12, 2008 Motion to Reconsider January 29, 2008 Order Releasing Monte Perucho's Monetary Interest in the Fund to UMDA (RJN Ex. 18);[6] May 6, 2008 Motion for Protective Order (on behalf of Laramie Fealty) (RJN Ex. 20.); May 12, 2008 Joinder in Rothschild Trust (Guernsey) Limited's and Davina Limited's Cross-Motion for Preliminary Injunction to Enjoin Transfer of LaoLao LLC Memberships (on behalf of Laramie Fealty) (RJN Ex. 21.); May 30, 2008 "Defendant Trustee's Motion for a Protective Order" (on behalf of "Defendant Trustee" of GET) (RJN Ex. 22.).) None of these motions, however, would end the pending state court proceedings.

### D.    Laramie Fealty and GET Re-File Their Claims Before this Court

Only a couple weeks after dismissing the "Counterclaims," Laramie Fealty re-filed those claims on behalf of GET before this Court – claims concerning the disputed LaoLao LLC funds that, pursuant to the preliminary injunction order, are under the Superior Court's jurisdiction.

---

[5] The Superior Court action was before Judge Lizama. However, days before the Court was scheduled to hear argument on multiple motions, Judge Lizama retired. A new judge has been assigned to the case. (RJN Ex. 17.)

[6] This motion was brought by GET and Sorenson and sought to derail the settlement between UMDA and five of their co-defendants. On April 21, 2008, "Defendant Trustee for the GET Realty Trust" filed a reply in support of that reconsideration motion. (RJN Ex. 19.)

This new complaint is virtually the same as the withdrawn "Counterclaims."[7]  They both include the exact same five causes of action: breach of contract; breach of fiduciary duty; conversion; accounting; and constructive trust.   (*Compare* Complaint with RJN Ex. 9 ('Counterclaims').)    Indeed, Mr. Thompson acknowledged that UMDA had "seen this complaint before."  (Banes Dec. Ex. H.)  And, like the "Counterclaims," the complaint here accuses UMDA of "stealing" and "misappropriating" funds that it fails to acknowledge are presently held in the Superior Court-controlled bank accounts.  (Complaint at ¶¶ 12-13, 18, 22, 24, 35 & 48.)

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim for which relief can be granted.  Dismissal under Rule 12(b)(6) "is warranted where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory." *Hofschneider v. Demapan-Castro*, 2005 WL 817710, *1 (D. N.M.I. 2005).  In determining whether dismissal is appropriate, "the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party."   *Id*.   Further, the court may consider matters of public record outside the pleadings of which it takes judicial notice, without converting a motion to dismiss into a motion for summary judgment.  *Id.*; *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

## IV.   ARGUMENT

Laramie Fealty's re-filing of the same claims on behalf of GET before this Court that it filed on behalf of GET – and then withdrew – in the Superior Court action manifests utter

---

[7] One of the only differences in the new complaint is that it brings claims against "Does I-XX." The Ninth Circuit, however, has made clear that the use of Doe pleading is disfavored in federal court.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980).

disregard for this Court's time and judicial resources (as well as for the Superior Court's): "Such disregard for judicial time and resources should not, and need not, be tolerated." *Baseline Sports, Inc. v. Third Base Sports*, 341 F.Supp.2d 605, 610 (E.D. Va. 2004). Because the five claims filed before this Court are compulsory counterclaims required to be filed in the Superior Court proceeding, they should be dismissed. In the alternative, the Court should abstain from exercising jurisdiction in light of the parallel proceedings that have been ongoing for over a year in the Superior Court.

A.    **The Claims Should Be Dismissed Because They Are Compulsory Counterclaims and Must be Tried in the Superior Court Proceedings**

The Commonwealth Rules of Civil Procedure – as well as the Federal Rules of Civil Procedure – contain a compulsory counterclaim rule. *See* Com. R. Civ. P. 13(a); Fed. R. Civ. P. 13(a).[8] Therefore, a defendant in the Commonwealth or Federal District Court does not have a choice as to whether it will pursue its counterclaim in the action brought against it by the plaintiff. Rule 13(a) requires:

> A pleading *shall* state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presen[ce] of third parties of whom the court cannot acquire jurisdiction.

Com. R. Civ. P. 13(a) (emphasis added).

The United States Supreme Court has held that the "requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim 'shall' be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. The Rule was particularly directed

---

[8] Because the rules are similar, interpretations of counterpart federal procedural rules are persuasive authority when interpreting Commonwealth procedural rules. *Govendo v. Micronesian Garment Mfg., Inc.*, 2 N.M.I. 270, 283 n. 14 (1991).

against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint." *Southern Const. Co. v. Pickard*, 371 U.S. 57, 60 (1962); *see also Bewley v. Riggs*, 262 Cal.App.2d 188, 190 (1968) ("The law abhors a multiplicity of actions . . . . Thus, a party cannot by negligence or design withhold issues and litigate them in successive actions . . . . [H]e may not submit his case in piecemeal fashion."); *Puff 'n Stuff of Winter Park, Inc. v. Federal Trust Bank*, F.S.B., 945 F. Supp. 1523, 1530 (M.D. Fla. 1996) ("compulsory counterclaim rule is designed to foreclose the possibility of duplicative litigation").

To determine whether a cause of action "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" – and thus is a compulsory counterclaim – courts examine the following four factors: "(1) are the issues of fact and law raised in the claim and counterclaim largely the same; (2) would *res judicata* bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule; (3) will substantially the same evidence support or refute the claim as well as the counterclaim; and (4) is there any logical relationship between the claim and counterclaim?" *Banner Industries of New York, Inc. v. Sansom*, 830 F. Supp. 325, 327 (S.D. W. Va. 1993); *Waibel v. Farber*, CNMI Sup. Ct. Civil Action No. 01-0236D, Order Granting Motion for Reconsideration to Amend Pleadings and Assert Counterclaim at 3 (August 26, 2003).

Although all these factors need not all be answered in the affirmative for a counterclaim to be deemed compulsory, here they are. *See Banner Industries,* 830 F. Supp. at 327. There is no dispute that the fact and law raised by UMDA's claims and by Laramie Fealty's claims brought on behalf of GET are largely the same, involving the same individuals and transactions – the purchase and eventual sale of the Saipan LaoLao Golf Course. (*Cf.* RJN Ex.2 with complaint.) There will be substantially the same evidence to support or refute the claims and

9

the counterclaims.[9]  If there were a final judgment in the Superior Court action and Laramie Fealty did not raise the counterclaims that it voluntarily dismissed and raised before this Court, res judicata would bar Laramie Fealty from trying to bring its counterclaims.  It does not matter whether Laramie is a party in the Superior Court action.[10]  Under Rule 25(c), Laramie Fealty – as the alleged successor-in-interest to Sorenson, and as the trustee to GET, the real party in interest – will be bound by the Superior Court's rulings even if it is not a party.  Com. R. Civ. Proc. 25(c); *see also Stern v. Whitlatch & Co.,* 91 Ohio App.3d 32, 37 (1993)  ("It is well recognized, in determining whether the same parties are involved in two lawsuits, that courts must look beyond the nominal parties to the substance of the case in order to determine the real parties in interest.").

The fourth factor, the logical relationship test, "is a flexible inquiry."  *Banner Industries*, 830 F. Supp. at 328.  Laramie Fealty cannot disagree that the Superior Court action involves a dispute arising out of the same disputed LaoLao LLC funds at issue here; there is more than just a mere "logical relationship."  Indeed, as Mr. Thompson acknowledges, the complaint before this Court is the same complaint as the one containing the "Counterclaims" filed in Superior Court.  (*See* Banes Decl. Ex. H.)

Thus, as in *Bonadio v. East Park Research*, where the complaint filed before the second court was a "mirror reflection" of the counterclaims filed before the first court, "it is clear that

---

[9] Indeed, defendants in the Superior Court action concede that their cross-motion for a preliminary injunction to enjoin transfer of LaoLao LLC memberships is based largely on the evidence UMDA presented in its own motion for preliminary injunction.  (RJN Ex. 21.)

[10] Indeed, a compulsory counterclaim may arise without complete identity of parties. *See, e.g.*, *Bankcard Systems, Inc. v. Miller/Overfelt, Inc.*, 219 F.3d 770, 775 (8th Cir. 2000); *Whites Store, Inc. v. Nowaski*, 760 S.W.2d 53, 54-55 (Tx. 1988) (Whether parties are the same "is not the standard in determining a compulsory counterclaim. The question is whether the claim requires for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.").

10

1
2
3
4
5
6

[the] claims in this Court are compulsory counterclaims" that must be raised in the Superior Court.  220 F.R.D. 187, 188-89 (N.D.N.Y. 2003).  Filing the claims before this Court, as Mr. Thompson has done, is "contrary to the purpose of Rule 13 which is preserving scarce judicial resources and preventing inconsistent judicial determinations and verdicts on similar issues"; therefore, the claims here should be dismissed, as they were in *Bonadio*.  *Id*. at 189.

7
8
9
10
11
12
13
14
15
16
17
18
19
20

Indeed, numerous federal courts have granted such dismissals when a party has initiated a federal court action that consisted of compulsory counterclaims that are required to be filed in the pending state court action.  *See, e.g., Bankcard Systems, Inc. v. Miller/Overfelt, Inc.*, 219 F.3d 770, 775 (8th Cir. 2000) (affirming district court's dismissal, for failure to state a cause of action, of party's compulsory counterclaims that were required to be filed in pending state court action); *Banner Industries,* 830 F. Supp. at 328 (dismissing defamation claim that had to be filed as compulsory counterclaim in pending state court action); *Dixon v. Smith*, 1989 WL 59604, *1 (D. Kan. May 18, 1989) (dismissing compulsory claims that were required to be filed in pending state court action that was filed eleven days earlier than federal action); *see also Shmuel Shmueli, Bashe, Inc. v. Lowenfeld*, 68 F. Supp. 2d 161 (E.D.N.Y. 1999) ("Having failed, for whatever reason, to assert their counterclaims in one action, plaintiffs may not institute a second action in which those counterclaims become the basis of the complaint.").

21
22
23
24
25

Because the action before this Court is duplicative of, and predicated entirely upon claims that would be compulsory counterclaims in the pending Superior Court action, it fails to state a claim upon which relief can be granted.  Thus, the Court should dismiss Laramie Fealty's complaint in its entirety.[11]

26
27
28

---

[11] Laramie and GET cannot argue that, because they have not yet had to file a pleading, they can bring an independent action in another court.  Federal Rule of Civil Procedure 13(a), on which Commonwealth Rule 13(a) is based, was amended in 1946 to insure "against an undesirable possibility presented under the original rule whereby a party having a claim which

**B.     In the Alternative, the Complaint Here Should Be Dismissed or Stayed In Light of the Pending Superior Court Action**

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and *Younger v. Harris*, 401 U.S. 37 (1971), provide additional grounds for the Court to dismiss, or stay, this action, even were it to conclude that the claims here are not compulsory counterclaims.[12]

As this Court has previously found, "abstention is the exception and not the rule" and, "federal courts have 'a virtually unflagging obligation' to exercise jurisdiction vested in them by Congress." *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Bank of Saipan*, 2003 WL 22997231, *2 (D. N.M.I. July 9, 2003) (quoting *Colorado River*, 424 U.S. at 813); and *see also Markoff v. Johnson*, Civil Action No. 05-0035, slip op. (D. N.M.I., April 20, 2006) (Munson, J.),("Given the lack of a strong federal stake in this litigation, the court concludes that wise judicial administration counsels staying this matter in that there is no reason to believe that the Texas court cannot render a full and fair decision on all matters in dispute.")  Slip Opinion is attached as Banes Decl. Ex. I.

. But this duty is not absolute.  *Id.*  In certain circumstances, a federal court may stay or even dismiss its proceedings in deference to pending state court proceedings.  *See, e.g., id.*; *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989).  Indeed, wide discretion is given to

---

would be the subject of a compulsory counterclaim could avoid stating it as such by bringing an independent action in another court after the commencement of the federal action but before serving his pleading in the federal action."  1946 Amendment Note Subdivision (a); *see also State ex rel. Buchanan v. Jensen*, 379 S.W.2d 529, 531 (Mo. 1964) (adopting amendment).

[12] Some court have concluded that Rule 12(b)(6) applies when considering a parties' motion to dismiss based on abstention doctrines.  *See, e.g., RLI Ins. Co. v. R & L Brosamer*, Inc., 2006 WL 194109, *2 fn. 3 (E.D. Cal. 2006).  Most federal courts, however, do not apply any 12(b) rule when deciding whether to dismiss or stay in deference to pending state court proceedings, permitting them to look outside the pleadings (and matters of which they take judicial notice).

12

the district court in deciding whether it shall entertain a duplicative action. *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655 (1978).

## 1.   *Colorado River* **Abstention**

In *Colorado River*, the Supreme Court examined four factors to determine whether to dismiss a federal case in deference to parallel state court proceedings: (1) whether either court has assumed jurisdiction over a *res*; (2) the relative convenience of the forums; (3) the order in which the forum obtained jurisdiction; and (4) the desirability of avoiding piecemeal litigation. 424 U.S. at 818. Other factors the Supreme Court and Ninth Circuit have examined are whether (5) state or federal law controls; (6) whether the state proceeding is adequate to protect the parties' rights; and (7) whether forum shopping, or some other untoward motive, is involved. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25-26 (1983); *Fireman's Fund Ins. Co. v. Quackenbush*, 87 F.3d 290, 297 (9th Cir. 1996). No one factor is determinative; rather, all factors should be considered in rendering a decision. *Colorado River*, 424 U.S. at 818-19.

### a.   **The Superior Court and Federal Court proceedings are parallel**

In order for the *Colorado River* abstention doctrine to apply, the concurrent Superior Court and District Court proceedings must be parallel. Here, they are.

The Ninth Circuit explains that "exact parallelism…is not required"; rather, "[i]t is enough if the two proceedings are 'substantially similar.'" *Nakash*, 882 F.2d at 1416; *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1998) ("the requirement is of parallel suits, not identical suits"). As explained in *Interstate Material Corp.*, cited with approval in *Nakash*, "A suit is parallel when substantially the same parties are

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

contemporaneously litigating substantially the same issues in another forum." 847 F.3d at 1288 (inner quotation and citation omitted). Such is the case here.

This action concerns claims brought on behalf of GET by its purported trustee Laramie Fealty. Although Laramie Fealty is not a party in the Superior Court action, it continues to act like one nonetheless, filing numerous motions and other papers. (RJN Exs. 18-22.) Further, Sorenson in his capacity as GET's trustee is a party in the Superior Court case. The dispute between UMDA and GET's trustee (whoever that may be) in both cases stems from the purchase and eventual sale of the Saipan LaoLao Golf Course. As in *Nakash*, where the plaintiff in the federal case dismissed his cross-claims in the state action, the fact that Laramie voluntarily dismissed GET's counter-claims in the Superior Court does not alter that conclusion that this case and the Superior Court case are substantially similar. *Nakash*, 882 F.2d at 1416-7 (holding that cases were substantially similarly even though the "state action focuses on the Nakash's wrongdoing while their complaint alleges wrongdoing by the Marcianos").

   **b.**  **The Superior Court has already assumed jurisdiction over the accounts containing the disputed LaoLao funds at issue**

"It has been held . . . that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Colorado River*, 424 U.S. at 818. Here, the Superior Court issued an injunction freezing the bank accounts containing the disputed funds over a year ago; those accounts are still under the Superior Court's jurisdiction pursuant to the preliminary injunction issued in November 2007. Because the Superior Court first exercised jurisdiction over the bank accounts containing the disputed funds at issue in both proceedings, this factor supports deference to the Superior Court proceeding.

14

### c.    The forums are equally convenient

Both the Superior Court and this Court are in the Northern Mariana Islands.  Neither forum is more convenient or inconvenient.  Thus, this factor is inapplicable.

### d.    The Superior Court action was filed over a year before this action

Although Laramie Fealty just made its first appearance in April, UMDA and GET and Sorenson have been litigating in the Superior Court for over a year.  Not surprisingly, that case has progress far beyond this case, "indicating that it would be highly inefficient to allow the federal litigation to proceed."  *Nakash*, 882 F.2d at 1415.  The Superior Court has issued numerous orders, including a temporary restraining order and a preliminary injunction order. *See Beck v. CKD Praha Holding, A.S.*, 999 F. Supp. 652, 657 (D. Md. 1998) (finding state court had "taken substantial action in the case by granting a temporary restraining order" and, based on that factor and others, abstaining from exercising its jurisdiction pursuant to *Colorado River*).  Because the Superior Court case was filed earlier and is further along, this factor weighs in favor of deference to the Superior Court proceedings.

### e.    Failure to dismiss or stay will cause piecemeal litigation

Although all factors are to be considered, the policy of avoiding piecemeal litigation is the most important *Colorado River* factor.  *See Moses H. Cone*, 460 U.S. at 16.  Piecemeal litigation arises when different courts consider the same issue, thereby duplicating efforts and possibly reaching different results and resulting in wasteful litigation.  *See, e.g., Enfission, Inc. v. Leaver*, 408 F.Supp.2d 1093, 1099 (W.D.Wash. 2005).  Here, as in *Enfission*, "the same underlying issues permeate both state and federal proceedings."  *Id*.  The Superior Court and this Court would be evaluating much of the same evidence and deciding many of the same issues.

1
2
3
4
5
6
7
8

Not only would there be an unnecessary use of judicial resources were the Court not to dismiss or stay this action under *Colorado River*, this Court would be required to review, at the very least, the Superior Court's preliminary injunction order.[13]   This Court has previously refused to "review the Orders of the Commonwealth Superior Court."  *Bank of Saipan*, 2003 WL 22997231 at *4.  As this Court concluded, "[d]oing so would be a waste of judicial resources and would create needless friction between the state and federal forums."  *Id*.  Thus, this factor weighs strongly in favor of declining to exercise jurisdiction over this case.

9

### f.    Commonwealth law controls

10
11
12
13
14

There are no federal questions or claims in the complaint; the claims are solely state law claims.  When "the sole basis of jurisdiction . . . is diversity, the federal interest in having this case litigated in federal court is minimal."   *Bank of Saipan*, 2003 WL 22997231 at *4.  This factor also favors dismissal or stay under *Colorado River*.

15

### g.    The Superior Court proceeding protects the   parties' rights

16
17
18
19

UMDA is aware of nothing to suggest that the Superior Court cannot adequately protect the rights of GET or its purported trustee Laramie Fealty.  Thus, this factor also supports dismissal or stay.

20

### h.    Laramie Fealty is forum shopping

21
22
23
24

The Ninth Circuit instructs that "forum-shopping can in some cases justify *Colorado River* abstention."  *Quackenbush*, 87 F.3d at 297.  Similarly, the Supreme Court notes that "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*. "  *Moses. H. Cone*,

25
26
27
28

---

[13] Indeed, because the disputed funds are in the court-controlled accounts, Laramie Fealty will likely have to argue that its damages are somehow based on its inability to access its purported funds as a result of the injunction.

16

460 U.S. at 17 n. 20.  Here, both forum-shopping and the vexatious and reactive nature of this litigation are evident.

After over a year of litigating in the Superior Court – and in response to UMDA's Rule 11 motion – Laramie Fealty dismissed GET's counterclaims in the Superior Court and then, shortly thereafter, re-filed those same claims before this Court, all the while continuing to pursue affirmative relief in the Superior Court action.[14]  So why did Mr. Thompson rush to file a complaint in a new Court containing the exact five claims that he just dismissed in the Superior Court (and neglect to mention the ongoing Superior Court action in the complaint)? One extremely apparent reason was to circumvent Commonwealth Rule of Civil Procedure 25(c), which would require Laramie Fealty to disclose the facts behind Sorenson's purported resignation and its assignation as GET's trustee, as well disclose where GET's documents and bank accounts were moved to after Sorenson resigned.  (Bane Decl. Ex. B at 45:9-24.)  Other reasons would be to force UMDA to litigate in two different forums and to try to get a second opinion on the Superior Court's preliminary injunction order.

Federal courts do not look fondly on parties trying to sidestep another court's jurisdiction and reserve the roles of the parties, or on parties hoping that they may have better luck with a new court.  *See, e.g., Baseline Sports, Inc*., 341 F.Supp.2d at 611 (finding that "a stay or dismissal would be warranted as a means to deter vexatious use of the courts" if the filing of federal action was to "sidestep" the state court's jurisdiction and "reverse the roles of the parties") (inner citations and quotation omitted).  The Ninth Circuit has explicitly stated that

---

[14] It appears that at least some of the defendants in the Superior Court action always wanted to be in this Court.  Attorney David York complained in an email to his client Defendant Pfaff – the settler of GET, Mr. Thompson and others that "local people from Deloitte" were named as defendants in the first amended complaint – destroying diversity jurisdiction – "so we are stuck in the Commonwealth Superior Court."  (Banes Dec. Ex. J.)

it has "no interest in encouraging this practice." *Nakas*h, 882 F.2d at 1417.  Therefore, this factor weighs strongly in favor of abstention under *Colorado River*.

       ***i.***       **This is an exceptional case under *Colorado River* and should be dismissed.**

All applicable factors support the finding that this is an "exceptional case" and, therefore, the Court should dismiss or stay this action this action pursuant to *Colorado River*. Laramie Fealty's disregard for judicial time and resources should not be tolerated or rewarded.

       **2.**       ***Younger* Abstention**

The Court may properly decline to exercise jurisdiction based on *Younger* abstention if the following three elements are met: "(1) state judicial proceedings are ongoing, (2) the state judicial proceedings implicate an important state interest, and (3) the state proceedings offer the federal plaintiff an adequate opportunity to litigate constitutional issues." *Bank of Saipan*, 2003 WL 22997231 at *2; *see also Moore v. Sims*, 442 U.S. 415, 423 (1979) (noting that abstention under *Younger* is "applicable to civil proceedings in which important state interests are involved").

There is no dispute that the first factor is met. (*See UMDA et. al. v. Pfaff et al.*, Superior Court Civil Case No. 07-0152.)  The second factor is also met.  The CNMI is a significant shareholder in UMDA.  (RJN Ex. 23.)  Indeed, the governor filed a declaration in the Superior Court explaining the harm that could befall the CNMI if Pfaff and his cohorts were allowed to be manager of UMDA LaoLao LLC pending the resolution of the Superior Court case.  (*Id.*) And, according to Defendant Pfaff, the CNMI Attorney General has initiated an investigation into "certain transactions" between Pfaff and UMDA and requested documents concerning GET.  (RJN Ex. 24 at 10-11.)  (June 17, 2008 Defendant Pfaff's Opposition to Motion to

1    Compel.)  The third factor is not dispositive because Laramie Fealty has raised no federal

2    constitutional issues in his complaint.

3          Because the first two factors are met and the third factor is inapplicable, abstention

4    pursuant to *Younger* is proper here and provides grounds for the Court to dismiss this case.  *See*

5
6    *Bank of Saipan*, 2003 WL 22997231 at *2.

7    **V.    CONCLUSION**

8          For the foregoing reasons, UMDA respectfully requests that the Court dismiss the

9    complaint against it for failure to state a claim upon which relief can be granted.  Alternatively,

10   UMDA respectfully requests that this Court decline to exercise its jurisdiction over this

11   duplicative action and dismiss or stay the case under *Colorado River* or *Younger*.

12         Respectfully submitted this 2nd day of July, 2008.

13
14                                    **O'Connor Berman Dotts & Banes**
                                      **Calvo & Clark, LLP**
15                                    Counsel for Defendant
                                      *United Micronesia Development Association, Inc.*
16

17
18                        By:    _____/s/_____
19                                         DAVID G. BANES

20

21

22

23

24

25

26

27

28