# EXHIBIT A

05-27-08;03:29PM;Law Office of Colin Thompson   Calvo                    ;2330776                    #  1/  2

# THOMPSON LAW OFFICE, LLC

PMB 917 Box 10001, 2nd Floor, J.E. Tenorio Bldg.
Middle Road Gualo Rai, Saipan, MP 96950
E-mail address: colin.thompson@saipan.com
emily.licop@saipan.com

## FACSIMILE COVER SHEET

**DATE:**        MAY 27, 2008

**TO:**          ROBERT O'CONNOR
                 ATTORNEY AT LAW                    FAX NO. 234-5683

                 RODNEY JACOB
                 ATTORNEY AT LAW                    FAX NO. 233-2776

**FROM:**        ALETH KAE ATALIG
                 FOR COLIN THOMPSON, ESQ

**RE:**          UMDA ET. AL. VS. ROBERT PFAFF ET. AL.

**NUMBER OF PAGES:** (INCLUDING THIS PAGE) 2

**COMMENTS:**

          Please see attached letter dated May 27, 2008.

The information contained in this facsimile message may be attorney client privileged and
confidential information intended for the use of individual entity named above.  If the reader of
this message is not the intended recipient, or the employee or agent responsible to deliver it to the
intended recipient, you are hereby notified that any dissemination, distribution or copying of this
communication is strictly prohibited.  If you have received this communication in error or are not
sure whether it is privileged, please immediately notify us at telephone (670) 233-0777 to arranged
for the disposition of the document.

05-27-08;03:29PM;Law Office of Colin Thompson    Calvo                    ;2330776              #  2/  2

# Thompson Law Office, LLC

PMB 917, Box 10001 JET Bldg. Middle Road
Saipan MP96950
colin.thompson@saipan.com

Telephone No.: (670) 233-0777

Facsimile No.: (670) 233-0776

May 27, 2008

*Via Facsimile Only*

Robert O'Connor, Esq.
O'Connor Berman Dotts & Banes
2ⁿᵈ Floor, Nauru Building
P.O. Box 501969
Saipan, MP 96950

Rodney Jacob
Calvo & Clark, LLP
1ˢᵗ Floor, Macaranas Building
PMB 951 Box 10001
Saipan, MP 96950

Re:    UMDA, et. al. vs. Robert Pfaff, et. al.
       Civil Action No. 07-0152

Dear Counsel,

In response to your service of the Rule 11 motion, we filed dismissals of the counterclaims and third party complaint today. I suggest we meet and confer to discuss lingering issues raised in your Rule 11 motion, if any.

If you wish to meet, please contact me to set a mutually convenient time.

Sincerely,

Colin M. Thompson

cc:    Client

CMT/sl

Admitted to practice law in the State of California and
The Commonwealth of the Northern Mariana Islands

# EXHIBIT B

IN THE SUPERIOR COURT OF THE COMMONWEALTH OF
THE NORTHERN MARIANA ISLANDS
CASE NO.: 07-0152

UNITED MICRONESIA DEVELOPMENT
ASSOCIATION, and UMDA LAOLAO,
INC.,

        Plaintiffs,

vs.

                              **CERTIFIED COPY**

ROBERT PFAFF, et al.,

        Defendants.

_____/


VIDEOTAPED
DEPOSITION OF:  Thomas C. Sorenson as 30(b)(6) of
                 KCT Irrevocable Trust

DATE TAKEN:    May 16, 2008

TIME:         9:06 a.m. - 1:11 p.m.

PLACE:        Hyatt Place
             525 West Orange Street
             Lakeland, Florida 33815

REPORTED BY:  Lori Francis, RPR and
                 Notary Public

THOMAS C. SORENSON    May 16, 2008

Page 45

1   for KCT?

2        A    Yes.

3        Q    Besides -- and -- was there any subsequent

4   contribution by the settler from --

5        A    No.

6        Q    -- the date you became a trustee until the

7   date you resigned as trustee?

8        A    No.

9        Q    Now, let's establish, when did you resign

10  as trustee for KCT, sir?

11       A    On 12/27/07.  That's the same date I

12  resigned from all of the trusts.

13       Q    When you say "all of the trusts," besides

14  KCT, what trust -- what-all of the trusts are you

15  referring to, sir?

16            MR. PIERCE:  Just GET.  There's no

17       relevance to this matter of anything besides KCT

18       and GET and he testified about that yesterday.

19            MR. LUJAN:  Well, you've made your

20       objection.

21            MR. PIERCE:  No, I'm instructing him not

22       to testify about anything other than KCT and

23       GET.

24            THE WITNESS:  KCT and GET.

25  BY MR. LUJAN:

56c08a54-7932-4836-ab40-41a510942027

CERTIFICATE

STATE OF FLORIDA)
COUNTY OF ORANGE)

    I, Lori Francis, Registered Professional Reporter and notary public, do hereby certify that I was authorized to and did stenographically report the foregoing deposition of Thomas C. Sorenson, as 30(b)(6) of KCT Irrevocable Trust; that a review of the transcript was requested; and that the foregoing transcript, pages 1 through 157, is a true record of my stenographic notes.

    I FURTHER CERTIFY that I am not a relative, employee, attorney or counsel of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

    Dated this 23rd day of May 2008, at Orlando, Orange County, Florida.

LORI FRANCIS, RPR, NOTARY
PUBLIC AND COURT REPORTER

Electronically signed by Lori Junker (401-110-943-3328)
Electronically signed by Lori Junker (401-110-943-3328)

d7337c30-67d0-4960-84e2-6c830d0f8ab5

Page 159

```
 1                      Certificate of Oath

 2     STATE OF FLORIDA)
       COUNTY OF ORANGE)
 3

 4          I, LORI FRANCIS, REGISTERED PROFESSIONAL

 5     REPORTER, Notary Public, State of Florida, certify

 6     that Thomas C. Sorenson as 30(b)(6) of KCT

 7     Irrevocable Trust personally appeared before me on

 8     the 16th of May, 2008 and was duly sworn.

 9

10          WITNESS my hand and official seal this 23rd

       day of May, 2008.
11

12

13

14          _____

15          Lori Francis, RPR
            Notary Public - State of Florida
16          My Commission Expires: March 17, 2011

17

18

19

20

21

22

23

24

25
```

Electronically signed by Lori Junker (401-110-943-3325)
Electronically signed by Lori Junker (401-110-943-3325)

d7337c30-67d0-496b-84c2-8c830d318ab5

# EXHIBIT C

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

UNITED MICRONESIA DEVELOPMENT ) CIVIL ACTION NO. 07-015?
ASSOCIATION, INC. and UMDA LAOLAO )
LLC, )
 )
    Plaintiffs, )
 )
   v. )
 )
ROBERT PFAFF, et al., )
 )
    Defendants. )

TRANSCRIPT OF PROCEEDINGS

Before the Honorable Juan T. Lizama, Associate Judge
February 19, 2008

APPEARANCES:

For the plaintiffs:
       Robert O'Connor, Esq.
       Timothy H. Bellas, Es
       Rodney Jacob, Esq.
       Alex Freeman, Esq.

For Robert Pfaff, et al:     Colin Thompson, Esq.
For Paul Pingee:      Robert T. Torres, Esq
For Rothschild Trust, et al:   Stephen Nutting, Esq.
       Pamela Brown, Esq.
For David Amir Makov:     Loren Sutton, Esq.
For G.E.T. Realty Trust, et al:  John Pierce, Esq.

Transcribed by:
Celina A. Concepcion
dba Judicial Services
Atkthong Place, Chalan Piao
P.O. Box 500081-CK
Saipan, MP 96950
(670) 235-7535

1    trustee and as an individual and, as the individual, nothing
2    there.
3         Ah, as we've argued before and -- and you'll hear on
4    rebuttal, on reply, the trusts are not proper parties.  If
5    there's any claim to go forward, it's against Sorenson the
6    trustee.
7         THE COURT: Okay.
8         MR. TORRES: Your Honor, did you wanna take a break?
9         THE COURT: Ah, you wanna take a break?
10        MR. TORRES: Um, I'm ready, but you sound like you wanted
11   to.
12        THE COURT: Um, not -- not really.
13        MR. TORRES: Okay.  Good.
14        THE COURT: Yeah.
15        MR. TORRES:  You asked, so I wanted to check.
16        THE COURT: Okay.
17        MR. TORRES: Your Honor, um Mr. Dingea, I wanna ask
18   something here it's like, you know unlike the preliminary
19   injunction and the summary judgment, really, I mean in a
20   12(b)(6), aren't we limited at analyzing the motion to the
21   face of the well-pled complaint?  Because, if we are, then why
22   are we hearing in the argument about the letter to the Bank of
23   Hawaii as the -- as the context for the unlawful attempt
24   because if that's what, the answer to the what, they got to
25   have said that in their complaint and that's really my problem

1   Saipan, Commonwealth of the     )

2   Northern Mariana Islands_____ )     CERTIFICATION

3        I, Celina A. Concepcion, dba Judicial Services, hereby

4   certify:

5        That I did the actual transcription work for the above

6   proceedings in the case of (IMDA, et al., v. Robert Pfaff, et

7   al. In performing this function, I took possession of the

8   duplicate cassette tapes provided by the Law Offices of Calvo

9   & Clark LLP and converted the audio contents thereon to the

10  above written form to the best of my ability without any

11  alteration, revision or editing. If there are any places in

12  the above transcript which are noted as "indiscernible", "(?)"

13  or "(ph.), I was unable to accurately determine that portion

14  of the taped proceedings.

15       I further state that I have no personal interest in the

16  above proceedings. I have not been paid any bonus or gratuity

17  for my work by anyone and have charged only what would be my

18  normal charges.

19       I hereby declare under penalty of perjury that the above

20  is true and correct. Executed at Saipan, Northern Mariana

21  Islands, this ___6th___ day of March, 2008.

22

23            _Celina A. Concepcion_

24

25

-197-

# EXHIBIT D

# STATE OF WYOMING * SECRETARY OF STATE
## MAX MAXFIELD
## BUSINESS DIVISION

200 West 24th Street, Cheyenne, WY 82002-0200
Phone 307-777-7311 · Fax 307-777-5339
Website: http://soswy.state.wy.us · Email: corporations@state.wy.us

## Filing Information

| | |
|---|---|
| **Name** | **Laramie Fealty, LLC** |
| Filing Type | Limited Liability Company |
| Status | Active |

## General Information

| | | | |
|---|---|---|---|
| Fictitious Name | | ID | 2007-000546283 |
| Old Name | | Standing | Good |
| Sub Type | Flexible Limited Liability Company | SubStatus | Current |
| Formation Locale | Wyoming | Name Consent | N |
| Filing Date | 11/21/2007 9:30 AM | Term of Duration | Perpetual |
| Delayed Effective Date | | Expiration Date | |
| Inactive Date | | | |

**Registered Agent Address**

AAA Corporate Services, Inc.
1620 Central Ave Ste 202
Cheyenne, WY 82001 USA

**Mailing Address**

1620 Central Ave Ste 202
Cheyenne, WY 82001 USA

**Parties**

| Type | Name / Organization / Address |
|---|---|
| Manager | Joseph A. Zebrowski, Jr. |
| Organizer | April Lymer |

**Public Notes**

# Filing Information

| | |
|---|---|
| Name | **Laramie Fealty, LLC** |
| Filing Type | Limited Liability Company |
| Status | Active |

## Amendment History

| Num | Type | Date | Delayed Date | Status | Username |
|---|---|---|---|---|---|
| 2008-000859305 | RA Name/Address Change | 02/21/2008 | | Active | CSTRAW |

# EXHIBIT E



Nov 19 2007
7:01PM

1  Colin M. Thompson, Esq.
   Thompson Law Office, LLC.
2  J.E. Tenorio Building
   PMB 917 Box 10001
3  Saipan, Mariana Islands 96950
   Telephone: (670) 233-0777
4  Facsimile: (670) 233-0776
   Bar No.: F0221

5  *Attorney for Defendant GET Realty Trust*

6                  **IN THE SUPERIOR COURT**

7                       **FOR THE**

8       **COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

9
   UNITED  MICRONESIA  DEVELOPMENT,          **CIVIL ACTION NO. 07-1052**
10 INC. and UMDA LAOLAO LLC

11                    **Plaintiffs,**              **DEFENDANT GET REALTY TRUST'S
                                                  RESPONSE TO PLAINTIFFS' JOINT
12           v.                                   REQUEST FOR PRODUCTION OF
                                                  DOCUMENTS
13 **ROBERT PFAFF, et al.**

14                     **Defendants.**

15

16        Pursuant to Rules 16(b), 26(f), and 34(b) of the Commonwealth Rules of Civil Procedure,

17 Defendant GET REALTY TRUST ("GET") hereby makes this written response to the Plaintiffs'

18 First Request for the Production of Documents ("Plaintiffs' Request")

19                       **GENERAL OBJECTIONS**

20        1.      GET objects to Plaintiffs' Request as premature, in that (a) the case is not at issue and

21 many parties have not yet appeared, (b) there are pending motions to dismiss which may

22 dramatically alter the parties' discovery obligations, (c) the Court's stay of discovery has not been

23 lifted and (d) GET will file a motion for a combined pretrial scheduling conference and discovery

24 conference to address issues of a protective order re confidentiality and the schedule of discovery

25 activities.

                                        1

1      2.     GET objects to the Plaintiffs' Request to the extent it purports to require GET to incur

2  the expense and burden of copying documents responsive to the Plaintiffs' Request and produce

3  them in the Commonwealth.  To the extent GET agrees to produce documents responsive to any

4  category of Plaintiffs' Request, it will do so as specified by the Commonwealth Rules of Civil

5  Procedure – *i.e.* it will make them available for inspection and copying at the place where they are

6  kept.

7      3.     GET objects to the production of any responsive documents containing personal or

8  confidential information until entry of a suitable protective order re confidentiality.

9      4.     GET objects to any request that calls for him to produce any information not within

10  its possession, custody, or control.

11      5.     GET objects to the production of any responsive document protected by the attorney-

12  client privilege, the common-interest privilege, or the attorney work product privilege.  When

13  completed, GET's counsel will produce an appropriate privilege log with respect to such

14  communications and work product prior to May 1, 2007.

15      6.     GET incorporates the foregoing general objections into each of the following written

16  responses.

17      Without waiving the foregoing objections as to each of the document requests made in the

18  Request and without waiving any right to a stay of discovery, GET responds as set forth below.

19

20                     **SPECIFIC OBJECTIONS AND RESPONSES**

21      <u>Response to Request No. 1</u>:

22      Upon entry of suitable scheduling and protective orders GET will produce documents

23  sufficient to show establishment, ownership, structure, and control of GET Realty Trust, including

24  the identity of its settlers, contributors, trustees, and beneficiaries.

25

2

1     Response to Request No. 2:

2         GET states that upon entry of suitable scheduling and protective orders he will produce

3 documents sufficient to show establishment, ownership, structure, and control of GET Realty Trust,

4 including the identity of its settlers, contributors, trustees, and beneficiaries.

5     Response to Request No. 3:

6         GET objects on the grounds of burdensomeness and that the information is not reasonably

7 calculated to lead to the discovery of admissible evidence.

8     Response to Request No. 4:

9         GET states that upon entry of suitable scheduling and protective orders it will produce

10 documents related to transfers of funds between GET, Robert Pfaff, John Larson.  GET objects to

11 the term "entities related to Pfaff or Larson" as vague.

12     Response to Request No. 5:

13         GET will produce the non-privileged requested documents upon entry of suitable scheduling

14 and protective orders.

15     Response to Request No. 6:

16         GET objects on the grounds of burdensomeness and that the information is not reasonably

17 calculated to lead to the discovery of admissible evidence.

18     Response to Request No. 7:

19         GET objects on the grounds of burdensomeness and that the information is not reasonably

20 calculated to lead to the discovery of admissible evidence.

21     Response to Request No. 8:

22         Upon entry of suitable scheduling and protective orders GET will produce non-privileged

23 documents.

24

25

3

1    <u>Response to Request No. 9</u>:

2         Upon entry of suitable scheduling and protective orders GET will produce non-privileged

3    documents constituting the requested communications.

4    <u>Response to Request No. 10</u>:

5         Upon entry of suitable scheduling and protective orders GET will produce non-privileged

6    documents constituting the requested communications.

7    <u>Response to Request No. 11</u>:

8         Upon entry of suitable scheduling and protective orders GET will produce non-privileged

9    documents constituting the requested communications.

10   <u>Response to Request No. 12</u>:

11        GET objects on the grounds of burdensomeness and that the information is not reasonably

12   calculated to lead to the discovery of admissible evidence.

13   <u>Response to Request No. 13</u>:

14        GET objects on the grounds of burdensomeness, privilege and that the information is not

15   reasonably calculated to lead to the discovery of admissible evidence

16   <u>Response to Request No. 14</u>:

17        GET objects to the definition of Pfaff-Related Individuals and Pfaff-Related Entities, but will

18   produce the non-privileged requested documents upon entry of suitable scheduling and protective

19   orders.

20   <u>Response to Request No. 15</u>:

21        GET objects to the definition of Pfaff-Related Individuals and Pfaff-Related Entities, but will

22   produce the non-privileged requested documents upon entry of suitable scheduling and protective

23   orders.

24

25

4

1   Response to Request No. 16:

2       GET objects to the definition of Pfaff-Related Individuals and Pfaff-Related Entities, but will

3   produce the non-privileged requested documents constituting the requested communications upon

4   entry of suitable scheduling and protective orders.

5   Response to Request No. 17:

6       GET objects on the grounds of burdensomeness, privilege and that the information is not

7   reasonably calculated to lead to the discovery of admissible evidence.

8   Response to Request No. 18:

9       GET objects on the grounds of burdensomeness, privilege and that the information is not

10  reasonably calculated to lead to the discovery of admissible evidence.

11  Response to Request No. 19:

12      GET objects to the definition of Pfaff-Related Entities, but will produce the non-privileged

13  requested documents upon entry of suitable scheduling and protective orders.

14  Response to Request No. 20:

15      GET objects on the grounds of burdensomeness, privilege and that the information is not

16  reasonably calculated to lead to the discovery of admissible evidence.

17  Response to Request No. 21:

18      GET objects on the grounds of burdensomeness, privilege and that the information is not

19  reasonably calculated to lead to the discovery of admissible evidence.

20  Response to Request No. 22:

21      Upon entry of suitable scheduling and protective orders GET will produce non-privileged

22  documents.

23

24

25

5

1    <u>Response to Request No. 23</u>:

2        GET objects on the grounds of privilege and that the information is not reasonably calculated

3    to lead to the discovery of admissible evidence.

4

5        Dated this 19th day of November, 2007.

6

7

8                                                    /s/
                                        **COLIN M. THOMPSON, ESQ. FO221**
9                                       Attorney for GET REALTY TRUST

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6

# EXHIBIT F

## LexisNexis File & Serve Transaction Receipt

| | |
|---|---|
| **Transaction ID:** | 19877818 |
| **Submitted by:** | Marie Pereda, Calvo & Clark LLP |
| **Authorized by:** | Daniel M Benjamin, Calvo & Clark LLP |
| **Authorize and file on:** | May 19 2008 8:42PM GST |

| | |
|---|---|
| **Court:** | MP CNMI Superior Court |
| **Division/Courtroom:** | N/A |
| **Case Class:** | Civil |
| **Case Type:** | Damages |
| **Case Number:** | 07-0152-CV |
| **Case Name:** | United Micronesia Development Association Inc vs G E T Realty Trust |

| | |
|---|---|
| **Transaction Option:** | Serve Only – Public |
| **Billing Reference:** | 139-0007 |

**Documents List**

**5 Document(s)**

**Attached Document, 18 Pages   Document ID: 24021763**                                   PDF Format | Original Format

| **Document Type:** | **Access:** | **Statutory Fee:** | **Linked:** |
|---|---|---|---|
| Motion | Public | $0.00 | |

**Document title:**
Notice of Motion and Motion for Sanctions Against John Pierce and Colin Thompson Pursuant to Com. R. Civ. Proc. 11; Memorandum of Points and Authorities in Support of Thereof

**Attached Document, 4 Pages   Document ID: 24021764**                                   PDF Format | Original Format
Related Document ID: 24021763

| **Document Type:** | **Access:** | **Statutory Fee:** | **Linked:** |
|---|---|---|---|
| Affidavit | Public | $0.00 | |

**Document title:**
Affidavit of Rodney J. Jacob in Support of Motion for Sanctions Against John Pierce and Colin Thompson Pursuant to COM. R. CIV. P. 11

**Attached Document, 65 Pages   Document ID: 24021765**                                   PDF Format | Original Format
Related Document ID: 24021764

| **Document Type:** | **Access:** | **Statutory Fee:** | **Linked:** |
|---|---|---|---|
| Exhibit | Public | $0.00 | |

**Document title:**
Exhibit 1 – 4 to the Affidavit of Rodney J. Jacob in Support of Motion for Sanctions Against John Pierce and Colin Thompson Pursuant to COM. R. CIV. P. 11

**Attached Document, 55 Pages   Document ID: 24021766**                                   PDF Format | Original Format
Related Document ID: 24021764

| **Document Type:** | **Access:** | **Statutory Fee:** | **Linked:** |
|---|---|---|---|
| Exhibit | Public | $0.00 | |

**Document title:**
Exhibits 5 – 13 to the Affidavit of Rodney J. Jacob in Support of Motion for Sanctions Against John Pierce and Colin Thompson Pursuant to COM. R. CIV. P. 11

**Attached Document, 44 Pages   Document ID: 24021767**                                   PDF Format | Original Format
Related Document ID: 24021764

| **Document Type:** | **Access:** | **Statutory Fee:** | **Linked:** |
|---|---|---|---|
| Exhibit | Public | $0.00 | |

**Document title:**
Exhibit 14 to the Affidavit of Rodney J. Jacob in Support of Motion for Sanctions Against John Pierce and Colin Thompson Pursuant to COM. R. CIV. P. 11

Expand All

⊟ **Sending Parties (2)**

| Party | Party | Attorney | Firm | Attorney Type |
|---|---|---|---|---|

| | Type | | | |
|---|---|---|---|---|
| United Micronesia Development Association Inc | Plaintiff | Benjamin, Daniel M | Calvo & Clark LLP | Attorney for Plaintiff |
| United Micronesia Development Association Inc | Plaintiff | Jacob, Rodney J | Calvo & Clark LLP | Attorney for Plaintiff |

☐ **Recipients (10)**

    ☐ **Service List (10)**

| Delivery Option | Party | Party Type | Attorney | Firm | Method |
|---|---|---|---|---|---|
| Service | Arnett, Joseph | Defendant | David William Dooley | Dooley Roberts & Fowler LLP | E-Service |
| Service | Bellas, Timothy H | Plaintiff | Timothy H Bellas | Bellas, Timothy H LLC | E-Service |
| Service | Calvo, Eduardo A | 3rd Party Defendant | Edward Camacho Arriola | Arriola, Edward C | E-Service |
| Service | CONCORDE TRUST | Defendant | Stephen J Nutting | Nutting, Stephen J-Saipan | E-Service |
| Service | Davina Ltd | Defendant | Stephen J Nutting | Nutting, Stephen J-Saipan | E-Service |
| Service | Deloitte & Touche LLP | Defendant | Thomas E Clifford | Clifford, Thomas E-Saipan | E-Service |
| Service | Deloitte & Touche LLP | Defendant | David William Dooley | Dooley Roberts & Fowler LLP | E-Service |
| Service | Dingee, Paul | Defendant | Robert Tenorio Torres | Torres, Robert T-Saipan | E-Service |
| Service | GET REALTY TRUST | Defendant | Colin Murphy Thompson | Thompson, Colin M | E-Service |
| Service | Irizarry & McCall PC | Defendant | Richard W Pierce | Pierce, Richard W-Saipan | E-Service |
| Service | IRIZARRY & McCALL PC PROFIT SHARING PLAN | Defendant | Robert Tenorio Torres | Torres, Robert T-Saipan-Saipan | E-Service |
| Service | IRIZARRY McCALL & SQUARELL PC | Defendant | Richard W Pierce | Pierce, Richard W-Saipan | E-Service |
| Service | Johnson, Michael S | Defendant | David William Dooley | Dooley Roberts & Fowler LLP | E-Service |
| Service | KEYSDALE VENTURES LLLP | Defendant | Robert Tenorio Torres | Torres, Robert T-Saipan-Saipan | E-Service |
| Service | Lifoifoi, Jose | 3rd Party Defendant | Edward Camacho Arriola | Arriola, Edward C | E-Service |
| Service | LLC, Laramie Fealty | 3rd Party Plaintiff | Colin Murphy Thompson | Thompson, Colin M | E-Service |
| Service | Makov, David Amir | Defendant | Loren Allison Sutton | Sutton, Loren A-Saipan | E-Service |
| Service | McCALL, RAYMOND D | Defendant | Richard W Pierce | Pierce, Richard W-Saipan | E-Service |
| Service | MONTE PERUCHO INVESTIDURAS LLC | Defendant | Robert Tenorio Torres | Torres, Robert T-Saipan-Saipan | E-Service |
| Service | PFAFF, ROBERT | Defendant | Colin Murphy Thompson | Thompson, Colin M | E-Service |
| Service | PIROUETTE LLC | Defendant | Robert Tenorio Torres | Torres, Robert T-Saipan-Saipan | E-Service |
| Service | Rothschild Trust Guernsey Ltd | Defendant | Stephen J Nutting | Nutting, Stephen J-Saipan | E-Service |
| Service | Rothschild Trust Guernsey Ltd Account 2299 | Defendant | Stephen J Nutting | Nutting, Stephen J-Saipan | E-Service |
| Service | Sasquatch II | Defendant | Colin Murphy Thompson | Thompson, Colin M | E-Service |
| Service | Snow, Russell | 3rd Party Defendant | Edward Camacho Arriola | Arriola, Edward C | E-Service |
| Service | Sorensen, Thomas C | Defendant | Colin Murphy | Thompson, Colin M | E- |

| Service | Thompson, Colin M | Defendant | Thompson Colin Murphy Thompson | Thompson, Colin M | Service E-Service |
| Service | Trust, KCT Irrevocable | Defendant | Colin Murphy Thompson | Thompson, Colin M | E-Service |
| Service | UMDA LAOLAO LLC | Plaintiff | Michael W Dotts | O'Connor Berman Dotts & Banes-Saipan | E-Service |
| Service | UMDA LAOLAO LLC | Plaintiff | Timothy H Bellas | Bellas, Timothy H LLC | E-Service |
| Service | United Micronesia Development Association Inc | Plaintiff | Michael W Dotts | O'Connor Berman Dotts & Banes-Saipan | E-Service |

⊟ Additional Recipients (0)

⊞ **Case Parties**

[ Close ]

**LexisNexis®**   About LexisNexis | Terms & Conditions | Privacy | Customer Support – 1-886-529-7587
Copyright © 2008 LexisNexis®. All rights reserved.

# EXHIBIT G

ROBERT J. O'CONNOR, ESQ., F0137
O'Connor Berman Dotts & Banes
Second Floor, Nauru Building
P.O. Box 501969
Saipan, MP 96950
Telephone No. (670) 234-5684
Facsimile No. (670) 234-5683
*Attorneys For Plaintiff United Micronesia Development Association, Inc.*

RODNEY J. JACOB, ESQ., F0186
Calvo & Clark, LLP
1st Floor, Macaranas Building
PMB 951 Box 10001
Saipan, MP 96950
Telephone No. (670) 233-2045
Facsimile No. (670) 233-2776
*Attorneys For Plaintiff United Micronesia Development Association, Inc.*

## IN THE SUPERIOR COURT
### OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| UNITED MICRONESIA DEVELOPMENT ASSOCIATION, INC., and UMDA LAOLAO LLC, | ) ) ) | CIVIL CASE NO. 07-0152 |
| Plaintiffs, | ) ) ) ) ) | NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST JOHN PIERCE AND COLIN THOMPSON PURSUANT TO COM. R. CIV. PROC. 11; MEMORANDUM OF POINTS |
| vs. | ) ) ) | AND AUTHORITIES IN SUPPORT OF THEREOF |
| ROBERT PFAFF, et al. | ) ) | Date: |
| Defendants. | ) ) ) | Time: Courtroom: |

## NOTICE OF MOTION & MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD, please take notice that on

_____, 2008 at ____ a.m./p.m., or as soon thereafter as this matter can be heard,

Plaintiff United Micronesia Development Association, Inc. ("UMDA") will, and hereby does,

respectfully move this Court to impose sanctions pursuant to Commonwealth Rule of Civil

Procedure 11 against GET Realty Trust's attorneys John Pierce and Colin Thompson. This

motion is based upon this notice of motion and motion, Commonwealth Rule of Civil Procedure

11, the Affidavit of Rodney J. Jacob submitted herewith, the accompanying memorandum of

points and authorities, all pleadings and records on file in this matter, and any argument that may

be heard hereon.

Respectfully submitted this 19th day of May, 2008.

**O'Connor Berman Dotts & Banes**
**Calvo & Clark, LLP**
Counsel for Plaintiff *United Micronesia*
*Development Association, Inc.*


By:_____/s/_____
          RODNEY J. JACOB (F0186)

1

**MEMORANDUM OF POINTS & AUTHORITIES**

I.    **INTRODUCTION**

On April 8, 2008, attorneys John Pierce and Colin Thompson signed and filed "Counterclaims" against Plaintiff United Micronesia Development Association, Inc. ("UMDA") on behalf of an entity styling itself "Laramie Fealty LLC." This entity is not a party to this suit. It neither sought nor obtained permission to appear in this action by way of intervention, substitution, or joinder. It is black-letter law that a counterclaim can only be filed by a party to the litigation, which Laramie Fealty is not. Nonetheless, Messers, Pierce and Thompson filed these counterclaims, announcing that Laramie Fealty was the trustee of GET Realty Trust.

The "Counterclaims" are not only contrary to black letter law, they also are rife with false allegations that Laramie's counsel knew were false when they filed the claims. Many of the allegations in the "Counterclaims" have already been demonstrated – or found by this Court – to be false in regard to the Court's November 13, 2007 Order.

Finally, the "Counterclaims" were filed for an improper purpose – to obstruct the litigation and to prevent settlements by GET's former co-conspirators. By asserting the "Counterclaims" and thus falsely laying claim to monies on which it has no rightful claim, Laramie hopes to prevent other defendants from using the funds frozen by the Court's November 13, 2007 Order as part of a settlement of the claims against them (as two sets of Defendants already have chosen to do). This would permit Laramie (and its true master, Robert Pfaff) to indefinitely delay this litigation and to hold all other Defendants hostage to their positions.

In sum, by signing and filing the "Counterclaims," Messrs. Pierce and Thompson have violated Commonwealth Rule of Civil Procedure 11. As required by the "safe harbor" provision of Rule 11, on May 19, 2008, UMDA provided them with a copy of this motion and memorandum of law, thereby giving them an opportunity to withdraw the Counterclaims and

2

thus rectify their violation of Rule 11.  The  Court now is receiving this brief because they refused.  Therefore, pursuant to Rule 11, UMDA now moves the Court to impose sanctions upon Messrs. Pierce and Thompson for their violations of Rule 11(b).

## II.   BACKGROUND

### A.   Only Sorenson (in His Trustee Capacity) Is a Party to This Case

When Plaintiffs filed this action, they expressly named as defendants GET Realty Trust and its Trustee, Thomas Sorenson, in his capacity as trustee.  In response, Defendants acknowledged that Sorenson, Defendant Robert Pfaff's brother-in-law, was the trustee of GET. (*See, e.g.,* Sorenson August 6, 2007 Affidavit at ¶ 1 (stating he is trustee of GET).)

Notably, Defendants continued to make these representations to this Court in 2008 while GET Realty Trust and Sorenson (in his individual capacity) had motions to dismiss pending.  For example, on February 19, 2008, Mr. Pierce appeared before this Court and expressly reaffirmed that Sorenson was GET's trustee in his argument seeking to obtain dismissal of Sorenson in his individual capacity, stating:  "If there's any claim to go forward, it's against Sorenson the trustee." (*See* Aff. of Rodney J. Jacob ("Jacob Aff.") Ex. 10 at 154:3-6).  On March 10, Messrs. Pierce and Thompson even filed an Executive Summary again identifying their client as "Thomas Sorenson Trustee" – the opening paragraph of which announces, "COMES NOW, Defendant Thomas Sorenson the Trustee."  (March 10, 2008 "Executive Summary of Tom Sorenson the Trustee's Motions to Dismiss.)[1]

---

[1] On March 25, 2008 – approximately a week after a federal grand jury issued a criminal indictment against Defendant Robert Pfaff – Colin Thompson filed a Stipulated Request to Continue Hearing on Motion to Reconsider and for the first time identified himself as the attorney for Defendants GET Realty Trust and an unnamed "Trustee."

3

B.    **Only After the Dismissal of GET, and Sorenson (as an Individual) Did Defendants Disclose the Alleged Transfer To Laramie**

Subsequently, relying on these representations that Sorenson was trustee of GET, the Court entered its April 4, 2008 Order dismissing GET on the ground that trusts are not subject to suit, and dismissing Sorenson in his individual capacity. But, the Court did *not* dismiss Sorenson as trustee, and it held that the claims against GET could continue to be maintained against GET's Trustee.[2] (April 4 Order Following February 19, 2008 Hearing at 3-4.)

Unbeknownst to the Court and UMDA, however, at the end of December 2007, Sorenson had been purportedly replaced as trustee of GET (and of defendant KCT Irrevocable Trust). (Aff. of Rodney J. Jacob ("Jacob Aff.") Ex. 1 at 40:24-41:11, filed concurrently herewith.) This was highly relevant information that defense counsel not only failed to bring to the Court's attention despite their duty of candor, but which they affirmatively misrepresented at the hearing on the motion to dismiss. (*See* Jacob Aff. Ex. 10 at 154:3-6).[3]

Instead, it was not until four days after the Court's April 4, 2008 Order that an entity called "Laramie Fealty LLC" revealed itself for the first time. Laramie claimed (without any further explanation) to be the "trustee of GET," it filed a set of "Counterclaims" (as well as a "third-party complaint") on April 8, 2008.

It was not until the depositions of Sorenson that part of the story about Laramie Fealty's unauthorized intervention began to emerge (depositions that Pierce, Thompson and Sorenson tried on at least three separate occasions to prevent, resulting in the April 4, April 18, and May 7

---

[2] Plaintiffs have moved for reconsideration of the April 4, 2008 Order, in part based upon Defendants' lack of candor in obtaining the dismissal of Sorenson as an individual and GET, even as they secretly removed Sorenson as a trustee.

[3] Indeed, Sorenson later testified that his attorneys were working on the transfer in November (Jacob Aff. Ex. 7 at 30:6-23) – the very time at which his attorneys also were seeking to delay Sorenson's deposition testimony and arguing that this would not prejudice Plaintiffs.

4

Orders all requiring Sorenson's attendance). Under questioning, Sorenson admitted that he had (purportedly) resigned as trustee from both GET and KCT on December 27, 2007. (Jacob Aff. Ex. 1 at 40:24–41:11).[4]    Although Sorenson refused to give much additional information, Plaintiffs have learned through their own research that Laramie Fealty was formed on November 21, 2007, just a few days after the Court ruled against Defendants on Plaintiffs' motion for a Preliminary Injunction, and just two days after GET filed objections to Plaintiffs' discovery responses. (Jacob Aff. Ex. 3).

The timing suggests that the reason for Laramie Fealty's secret formation was to get discoverable information out of Sorenson's hands and hide it elsewhere -- and then hide Sorenson so GET and KCT would never have to reveal what happened.[5]  Indeed, Sorenson has admitted that once he was "replaced" as trustee, Defendants moved documents and bank accounts out of his possession (even though the documents were subject to pending document requests). (Jacob Aff. Ex. 2).

## C.    Pierce Is Not Even Admitted To Represent "Laramie Fealty"

Not only did Laramie Fealty never request leave to appear in this action, its counsel Mr. Pierce, who is admitted only *pro hac vice*, has never sought leave to represent his purported new client. The Supreme Court admitted Mr. Pierce *pro hac vice* "to practice in the Commonwealth . . . for the *sole purpose* of representing GET Realty Trust, *Thomas C. Sorenson as Trustee of GET Realty Trust*, Thomas C. Sorenson in his individual capacity and K.C.T. Irrevocable Trust."

---

[4] During his April 16, 2008 deposition, Sorenson could not remember the exact date when he purportedly resigned as trustee; he said it was sometime in November or December 2007. (Jacob Aff. Ex. 2 at 39:19-40:18).  Just last week, however, Mr. Sorenson recalled the December 27, 2008 date.  (*Id.* Ex. 1 at 40:24-25).

[5] Along with repeatedly hiding their witness, Defendants also still are yet to complete their document production, having strung out their "confidentiality" objections since at least February as an excuse to refuse production.

(*See* Jacob Aff. Ex. 13 (emphasis added).)  At no time has Mr. Pierce ever been authorized to represent anyone else in this action.  Nonetheless, he has appeared on numerous pleadings on behalf of Laramie Fealty.  Moreover, on occasion he has also appeared for an unnamed person or entity whom he and Mr. Thompson are cryptically calling "Defendant, Trustee for GET Realty Trust."  (*See, e.g.,*. Counterclaims, Motion to Strike and for Accounting, First Discovery Request.)  Whether this is merely a coy reference to Laramie Fealty, or whether Messrs. Pierce and Thompson have yet another secret trustee up their sleeves, is unclear – but either way, Mr. Pierce has never sought leave to represent this mystery "Defendant" pro hac.[6]  His pro hac is to represent Sorenson as trustee, who also not coincidentally is an actual party to this case.

### D.    Defendants Failed to Withdraw the Pleading within the Safe Harbor Period

On May 19, 2008, UMDA served Messrs. Pierce and Thompson with this motion for sanctions.  As required under Rule 11, nine days have passed.  The sanctionable conduct has not been corrected: Messrs. Pierce and Thompson have not withdrawn the improper "Counterclaims."  Therefore, pursuant to Rule 11, UMDA now moves the Court to sanction Messrs. Pierce and Thompson for their violations of Rule 11(b).  It respectfully requests that the Court award it reasonable expenses and attorneys' fee incurred in bringing this motion and opposing the improper counterclaims.

## III.    ARGUMENT

Commonwealth Rule of Civil Procedure 11 provides that when an attorney presents a pleading or other paper to the Court  –  "whether by signing, filing, submitting, or later

---

[6] The failure by Mr. Pierce, and by his co-counsel Mr. Thompson, to seek leave of the Supreme Court for Mr. Pierce to represent Laramie Fealty *pro hac*, is particularly surprising given the Supreme Court's prior warning to Thompson against allowing someone "through [his] office, [to] practice law without having been admitted pro hac." (Jacob Aff. Ex. 4 at 16-17 (December 4, 2007 Transcript of Supreme Court hearing.)

advocating" – that attorney is "certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that:

> (1) [the pleading or paper] is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

> (2) the claims, defenses, and other legal, defense, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, medication, or reversal of existing law . . .

> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. . . .

Com. R. Civ. P. 11(b); *Matsunaga v. Matsunaga*, 2006 MP 25 ¶41; *see also Tenorio v. Superior Court*, 1 N.M.I. 112, 121-22 (1990).[7]  Rule 11, of course, is designed to deter and to curb meritless, abusive filings. *See Matsunaga, supra*, 2006 MP 25 ¶42, ("The purpose of Rule 11 is to deter baseless filings and curb abuses.").

Thus, Rule 11 requires signing attorneys: (1) to conduct a reasonable inquiry to determine that a pleading is well grounded in fact; (2) to conduct a reasonable inquiry to determine that the positions taken in a pleading are warranted by existing law or a good faith argument for the extension or modification of existing law; and (3) not to file a pleading for any improper purpose. *See, e.g., Driskell v. General Motors Corp.*, 2006 WL 901179, 3 (E.D. Mich. 2006).[8] Courts determine whether signing attorneys have fulfilled their duty under Rule 11 by "an 'objective reasonableness' standard" under all the circumstances, "including the time available for filing and the complexity of information presented." *Matsunaga*, 2006 MP 25 ¶42.

---

[7] *Tenorio* examined Rule of Appellate Procedure 38(b).  The Supreme Court has found that Rule 38(b) and Commonwealth Rule of Civil Procedure 11 are "almost identical"; and, therefore, relied on *Tenorio* as guidance in Rule 11 cases. *Lucky Development Co., Ltd. V. Tokai, U.S.A., Inc.*, 3 N.M.I. 79, 89-90 (1992).

[8] Interpretations of counterpart federal rules are persuasive authority when interpreting Commonwealth procedural rules. *Govendo v. Micronesian Garment Mfg., Inc.*, 2 N.M.I. 270, 283 n. 14 (1991).

7

Here, Messrs. Pierce and Thompson have violated every aspect of Rule 11. Their Counterclaims are not well grounded in law, because they improperly assert claims on behalf of a stranger to the litigation. Nor are the Counterclaims well grounded in fact, because they make allegations belied by the established record. Moreover, the Counterclaims were submitted for an improper purpose. Sanctions are therefore appropriate on three independent grounds.

### A.    The "Counterclaims" Are Not Well Grounded in Law

Sanctions may be imposed under Rule 11 if "a document is not well grounded in law." *See Tenorio*, 1 N.M.I. at 123. Laramie Fealty's counterclaims are not well grounded in law, because Laramie Fealty, as a stranger to the litigation, has no right to file counterclaims.

Commonwealth Rule of Civil Procedure 13 requires that a counterclaim be stated in a "pleading" by a "pleader." Rule 13(a), (b) and (d).[9] By definition, only a party to the litigation can file a counterclaim, because only a party can be a "pleader." *See, e.g.*, 3A Moore's Federal Practice, ¶ 13.02 (a counterclaim is "any claim ... which one *party* has against an opposing party") (emphasis added); *Premier Foods of Bruton, Inc. v. City of Orlando*, 192 F.R.D. 310, 312 (M.D. Fla. 2000) (non-party cannot file cross-claims; only parties can file cross-claims). As one Court has explained, it is "self-evident that in order to have a counterclaim there must first be a claim against the party asserting the counterclaim." *Kearney v. A'Hearn*, 210 F. Supp. 10, 20 (D.C.N.Y.), *aff'd per curiam* 309 F.2d 487 (2d Cir. 1962).

Laramie Fealty is not a party to the litigation; there are presently no claims stated against it.[10] Although Laramie Fealty alleges in its counterclaim that it "is the trustee of GET Trust"

---

[9] Messrs. Pierce's and Thompson' filing of the "Counterclaims" also violates this Rule: the "Counterclaims" were not filed in a pleading, as required by Rule 13.

[10] That does not mean that it is not bound by the result of this action or that it has no liability; as the alleged successor-in-interest to Sorenson, Laramie Fealty will be bound by this Court's rulings even though it is not a party. *See* Com. R. Civ. Proc. 25(c).

8

(Counterclaims, ¶8), Laramie Fealty does not explain how it can be the trustee when, until now, Messrs. Pierce and Thompson have held Sorenson out as the trustee.

Assuming, however, that Laramie Fealty somehow succeeded to or became a transferee of Mr. Sorenson, that does not make Laramie Fealty a party. A transferee or successor in interest becomes a party *if and only if* it complies with Commonwealth Rule of Civil Procedure 25(c) *and* obtains an order of this Court. Under Rule 25(c), the purported successor in interest must file a motion requesting the Court to direct or permit its substitution or joinder. The Court may grant or deny that motion, in its discretion. Unless and until such a motion is granted, the successor has no right to participate as a party. *See* Com. R. Civ. P. 25(c) ("In case of any transfer of interest, the action may be continued by or against the original party, *unless* the court upon motion directs the person who whom the interest is transferred to be substituted in the action or joined with the original party.") (emphasis added); *see also Patsy's Italian Restaurant, Inc. v. Banas*, 2008 WL 495568 (E.D.N.Y. Feb. 20, 2008) (denying motion brought under Federal Rule of Civil Procedure 25(c) to join party to whom interest was transferred after suit was brought when to do so would not facilitate, expedite or simplify the action).

Messrs. Pierce and Thompson have failed and refused to file a motion to either substitute Laramie Fealty for Sorenson or to join it as a party, even after Plaintiffs brought Rule 25(c) to their attention. (*See, e.g.*, April 28, 2008 Motion to Reconsider April 4, 2008 Order Dismissing Thomas C. Sorenson (in his individual capacity), GET Realty Trust and K.C.T. Irrevocable Trust at 7). They also have refused to withdraw the "Counterclaims" they filed on behalf of Laramie Fealty. Instead, they have contumaciously stuck to their position that by merely saying Laramie is a party, they can somehow make it so. They cite no authority for their position, nor have they proffered any argument for the extension, modification or reversal of existing law. In

short, their conduct in filing the purported counterclaim is objectively unreasonable, and hence deserving of sanctions. *See Tenorio*, 1 N.M.I. at 129 (concluding petition was sanctionable because it was not warranted by existing law and petitions did not argue for the extension, modification or reversal of existing law).

### B.    The "Counterclaims" Are Not Well Grounded in Fact

Sanctions may be imposed under Rule 11 if "a document is not well grounded in fact." *See Tenorio*, 1 N.M.I. at 122. "[A] document is not well grounded in fact if an attorney has misrepresented the evidence." *Id.* at 125 (issuing sanctions because counsel, who filed factual misleading petition, was "overzealous in his advocacy, and crossed the line of permissible pleading").

The "Counterclaims" allege that UMDA "fraudulently concealed" the negotiations with Kumho Holdings that ultimately resulted in the sale of the Golf Course, that "UMDA decided to simply embezzle outright what it could not take through deception," and that UMDA's "misappropriation" of GET's "property is motivated by nothing more than avarice"; the Counterclaims further accuse UMDA of "blatant theft of [GET's] property." (Laramie Fealty LLC's Counterclaims, ¶¶ 20, 22, 28, 29.) All these allegations are misrepresentations of facts that have already been established in this action – and that Messrs. Pierce and Thompson knew were established before they signed and submitted the Counterclaims.

For instance, the Counterclaims allege that UMDA "fraudulently concealed" the negotiations to sell the development company that owned the Golf Course to the Kumho Holdings Korean group. (Counterclaims, ¶13.) That allegation is belied by evidence taken by this Court at the hearings conducted on October 31, November 1 and 2, 2007 on Plaintiffs' motion for a preliminary injunction and Defendant Paul Dingee's motion for partial summary judgment. (Jacob Aff. Ex. 6 at 245:14-246:18; 249:12-18; 261:11-21; 262:5-263:9.) At those

10

hearings, there was proffered a December 3, 2006 letter from attorney Russel Murray written on behalf of KCT Trust (of which Mr. Sorenson was trustee) as well as other UMDA shareholders and LaoLao Members.[11]   In that letter, Mr. Murray requested an update on the status of negotiations with the Korean group that had expressed interest in purchasing the Saipan Lau Lau Golf Course.  (Jacob Aff. Ex. 5 and Ex. 6 at 262:5-9; *see also* Nov. 13, 2008 Order Granting Preliminary Injunction at 10.)  That letter thus shows that Mr. Murray – and through him, Mr. Sorenson and GET – knew full well of any "negotiations" with the Korean group – which means no "fraudulent concealment" possibly occurred.

Indeed, the fact of the matter is that these Pfaff defendants (who were working hand-in-hand with UMDA's compromised management) had more information than UMDA's directors who are now accused of this "fraudulent misrepresentation."  Specifically, the minutes of UMDA's October 20, 2006 meeting (the meeting at which it is resolved to send the share repurchase letter) shows that the Board at that time did not intend to sell, but instead that the plan was to build a new UMDA corporate center at LaoLao that included a golf academy facility banquette center and an office for UMDA's headquarters.  (Jacob Aff. Ex. 11 at 4).  Indeed, the undisputed evidence on the preliminary injunction hearing – which Defendants had an opportunity to challenge – was that:

> [The first] mention of KUMHO's interest in attempting to buy SLDI outright [was] in or about late November 2006.  At the time, Mr. Grandinetti indicated that he did not take it very seriously but felt we had a duty to respond.  Thus, near the end of November and in early December, 2006, on Mr. Grandinetti's instructions, SLDI provided certain confidential information to KUMHO.  It was my understanding at that time from Mr. Grandinetti that no sale was expected, but that UMDA was ensuring it responded to the expression of interest.

---

[11] Mr. Murray was counsel for GET (as well as KCT).  According to Mr. Sorenson's testimony last week, GET's name was inadvertently left out of the first paragraph of the December 3 letter.  (Jacob Aff. Ex. 7 at 85:20-87:8.)

(Jacob Aff. Ex. 12 at ¶ 6).

Thus, the evidence before the Court shows that Murray knew about the negotiations for the sale of the Golf Course before many of UMDA's own board members. (Jacob Aff. Ex. 6 at 263:5-9). Messrs. Pierce and Thompson, who attended those hearings, were aware of the Murray letter and the other evidence that GET's counsel Mr. Murray knew about the negotiations (*Id.* at 228:11-15; 229:5-8 and Ex. 7 at 85:25-89:5) – yet that did not deter them from signing and filing the Counterclaims, with their untrue allegations that the negotiations had been fraudulently concealed.

As another example, the Counterclaims allege that UMDA "embezzled," "misappropriated" or committed "blatant theft" of GET's purported property. (Counterclaims, ¶¶ 16, 28, 29 and 55.) Messrs. Pierce and Thompson were fully aware – indeed, Pierce acknowledged at the preliminary injunction hearing – that Plaintiffs had "lodged" the disputed funds "with the Court." (Jacob Aff. Ex. 6 at 194:20-195:14 and 315:7-8.). Yet, knowing that GET's purported money is under the Court's control, they still alleged in the "Counterclaims" that the money had been embezzled or removed by "blatant theft." Those misrepresentations were objectively unreasonable – indeed, Messrs. Pierce and Thompson knew them to be false because the money was in the Court's accounts – and hence are equally deserving of sanctions.

Another misrepresentation is the allegation that UMDA "misappropriate[ed]" GET's property because it was "motivated by *nothing more* than avarice." (Counterclaims at ¶ 28 (emphasis added).) This Court, though, has already found otherwise. In its November 13, 2007 Order Granting Preliminary Injunction and Denying Summary Judgment, the Court stated that, according to UMDA's president, UMDA and LaoLao did not pay out monetary distributions to those "they believed to be related to Pfaff because of concern about the Board's fiduciary duty to

12

UMDA shareholders in the event that Defendant-investors' contributions had been derived from UMDA misappropriations." (Nov. 13, 2007 Order at 11-12.) This Court found, moreover, that there is "evidence" that UMDA's concerns about such wrongdoing were legitimate ones. (*See* April 4, 2008 Order at 7 (stating that, "from the evidence that plaintiffs have provided to the Court it is clear that there is some wrongdoing that occurred")). Thus, the allegation in the Counterclaims that UMDA had no motive other than avarice is contradicted by evidence already in the record and accepted by this Court.

Because the foregoing misrepresentations were objectively unreasonable, Messrs. Pierce and Thompson have "crossed the line of permissible pleading" and should therefore be sanctioned. *See Tenorio*, 1 N.M.I. at 125.

C.     The "Counterclaims" Were Filed for an Improper Purpose

Sanctions should be imposed under Rule 11 if "a document is interposed for an improper purpose." *See Tenorio*, 1 N.M.I. at 123. Even a document well grounded in fact and law can violate Rule 11 "if there is evidence of the signer's bad faith." *Id* at 123-124.

The conduct of GET and its attorneys, Messrs. Pierce and Thompson, is the epitome of bad faith and abuse of process. Having deceived the Court for months about the identity of GET's trustee, they have now filed "Counterclaims" whose purpose is to prolong this litigation, to wrongfully lay claim to the disputed funds, to prevent other defendants from settling, and to disrupt these proceedings through harassment, intimidation and deceit.

Last year, defense counsel hatched the "assault on Saipan," whereby Pfaff, GET and their cohorts tried to evade the judicial process by attempting to spirit away the disputed funds before the Court or Plaintiffs could act. (*See* Jacob Aff. Ex. 14.) Only quick action by the Court prevented them from making a clean getaway. But where Pfaff and GET could not evade the judicial process, they were determined to abuse it. Thus, in the run-up to the "assault on

Saipan," they schemed to use the civil justice system to harass and intimidate UMDA board members into submission. (*See, e.g.*, Jacob Aff. Ex. Dec. 8, (emails noting that [UMDA Board Member Eduardo] "Calvo is in no position to be sued for fraud" given his political ties to the region)). And Pfaff himself devised a plan to seize the LaoLao funds by "oust[ing] the current Board" and suing board members. (*Id.* Ex. 9) Thus, the baseless "counterclaims" that Pierce and Thompson have filed are nothing more than the implementation of Pfaff's plan to seize the LaoLao funds—and to use the legal system to batter any person or entity that gets in his way.

Further, it is significant that there was no procedural requirement for Messrs. Pierce and Thompson to file any counterclaim at all on behalf of GET at present. Assuming a counterclaim of some sort on behalf of GET even became appropriate, it would properly be filed by Sorenson, because he is the one whom this Court's April 4, 2008 Order kept in this case as a defendant in his capacity as trustee of GET. But Mr. Sorenson was not under any deadline to file counterclaims. Under the Rules of Civil Procedure, counterclaims are to be filed with an answer to the complaint. Any answer here is not due until Plaintiffs file their Second Amended Complaint.

So why did Messrs. Pierce and Thompson rush to file Counterclaims that were not procedurally required and that were procedurally improper? The apparent reason was to enable GET to make the meritless argument that, through the Counterclaims, it lays claim to *all* the disputed funds, and therefore no other defendant can settle by releasing its alleged share of those funds to Plaintiffs. For instance, in the April 21, 2008 reply brief filed by "Defendant Trustee for the GET Realty Trust" in support of its motion for reconsideration of the Court's January 29, 2008 Order Releasing Funds, the (unidentified) "Trustee" argues that "Defendants lay claim" to the *all* the funds in the bank accounts under the Court's jurisdiction, even those funds

14

purportedly deriving from other investors' investment units. That argument, of course, is meritless, because Sorenson and GET previously acknowledged that GET was *not* claiming an interest in the funds purportedly belonging to the other Lao Lao investors. (*See, e.g.,* Aug. 4, 2007 Sorenson Dec. (claiming an interest only in GET's shares and no other Members')).[12] Indeed, just last week at the Rule 36(b) deposition of Sorenson as representative for GET, when asked if GET had any sort of financial interest in the investment made by Paul Dingee, Mr. Sorenson responded, "No"; Sorenson testified that GET did not have a financial interest in any of the LLC Members (Jacob Aff. Ex. 7 at 82:7-83:5.) But it appears that the reason Messrs. Pierce and Thompson precipitously filed the groundless Counterclaims, on behalf of a non-party, was to enable them to then interfere with settlements by other UMDA LaoLao LLC investors of their purported interests in the LLC.

As this Court observed last month, "This case has dragged on far too long already." (April 4, 2008 Order at 10.) The effect of the improper Counterclaims filed by Messrs. Pierce and Thompson will be to ensure that the case continues to drag on, while they continue their efforts to stymie other defendants' settlements. Their bad faith and improper purpose are additional grounds for sanctions.

---

[12] As Plaintiffs explained in their May 2, 2008 Supplemental Opposition to GET Realty Trust's Motion to Reconsider the Court's Order of January 29, 2008 Releasing Funds and Response to Joinder, GET's own "counterclaim" states that it has an interest *in its own shares*: "As a result of the LLC's dissolution and/or distribution of LLC assets to certain Equity owners, GET Trust had an immediate possessory interest *in its own* pro rate share of such assets." (April 8, 2008 Counterclaim ¶ 46 (emphasis added).) Thus, even if Laramie Fealty's "counterclaims" were legitimate (which they are not), they could at most affect GET's purported interest in the fifteen LLC units allocated to it, and the funds therefrom – but not the completely separate and distinct shares supposedly belonging to the other Lao Lao investors.

**D.    Appropriate Sanctions Should Issue**

Courts have broad discretion to fashion an appropriate sanction for violations of Rule 11; sanctions can be imposed on attorneys, clients, or both. *See* Rule 11(c); *Tenorio*, 1 N.M.I at 18; Wright and Miller, *Federal Practice and Procedure* § 1336.2. In general, sanctions should be imposed on the person(s) responsible for the violation. Wright and Miller, *Federal Practice and Procedure* § 1336; *see Tenorio*, 1 N.M.I at 18 ("Sanctions should be allocated among the persons responsible for the offending document based, on their relative culpability.") When an attorney is sanctioned for a Rule 11 violation, two purposes are served: deterrence and "punishment for dereliction of duty by an officer of the court who should know better." *Eastway Constr. Corp. v. City of New York*, 637 F. Supp. 558, 570 (D.C.N.Y. 1986).

Applying these rules, Messrs. Pierce and Thompson undoubtedly bear responsibility for the Rule 11 violations and should have known better. They had a duty under Rule 11 to make a reasonable inquiry to ensure that the "Counterclaims" were well-grounded in law and fact and not filed for an improper purpose. They did not. Nor did they withdraw the "counterclaims" after Plaintiffs had placed them on notice of their Rule 11 violations. Sanctions are therefore appropriate. *See Blair v. National Women's Center, Inc.*, 757 F.2d 1435 (4th Cir. 1985) (attorney's fees were properly assessed against attorney in view of bad faith exhibited in filing of complaint, dilatory tactics, frivolous legal positions, and scandalous accusations). [13]

---

[13] This is not to say that GET or Laramie Fealty may not also prove to be responsible for the Rule 11 violations. Courts have held that "a party in whose name a paper is filed may be subject to Rule 11 sanctions if the party was aware at the time of the filing that the document was without a legal or factual basis or was filed for an improper purpose." *See Taitano v. South Seas Corp.*, Civil Action No. 92-1620 (CNMI Sup. Ct. 1992) at 7. If it becomes clear that GET or Laramie were indeed aware of the impropriety of the Counterclaims, Plaintiffs reserve the right to request leave to seek sanctions against them as well.

Accordingly, UMDA respectfully requests that the Court order Messrs. Pierce and Thompson to pay UMDA's attorneys fees in bringing this motion and in opposing the improperly filed "Counterclaims." *See Driskell* 2006 WL 901179 at *4 (noting that under the Federal Rules of Civil Procedure an award of attorneys' fees is "the sanction of choice").

## III.  CONCLUSION

For the foregoing reasons, UMDA respectfully requests that the Court grant their motion and impose sanctions against attorneys John Pierce and Colin Thompson for their conduct in signing and filing the "Counterclaims" by Laramie Fealty herein.

Respectfully submitted this 19th day of May, 2008.

**O'Connor Berman Dotts & Banes**
**Calvo & Clark, LLP**
Counsel for Plaintiff *United Micronesia*
*Development Association, Inc.*


By:_____/s/_____
          RODNEY J. JACOB (F0186)

17

# EXHIBIT H

**From:** Colin Thompson [mailto:colin_thompson777@hotmail.com]
**Sent:** Wednesday, June 18, 2008 9:09 PM
**To:** Alex Freeman
**Cc:** Colin Thompson
**Subject:** Re: Laramie v. UMDA

Dear Alex,

I have never denied any attorney's request for a reasonable extension of time. While you were kind enough to recently give me an extra week to oppose a motion, your co-counsel, Rodney Jacob has not been as professional. He directed Ed Arriola to deny my request for an extension in the supreme court despite the fact that I am off island to argue before the Ninth Circuit.

Nonetheless, the lack of courtesy and professionalism exhibited by another attorney in your firm does not impact my responsibility to treat you with all professional courtesy due.

Still, your reason for the requested extension is not truthful. Bob O'Connor's absence from Saipan has in no way limited the ability of the Calvo and Clark firm to file numerous motions in court over the past few weeks. Are you saying that Bob O'Connor will be drafting the response?

Further, you have seen this complaint before and filed a motion to dismiss and briefed the issue extensively in your rule 11 motions directed to me. Why do you need 30 days now?

I do not want to grant a 30 day extension with out good cause showing. In the past, UMDA has sought extensions in bad faith. One glaring example is the requested extension to respond to Robert Pfaff's document request. I granted the extension just because it was requested only to find out that it was a tactical maneuver designed to gain advantage in the litigation. UMDA filed groundless objections and produced not a single document.

I do not want to be fooled again. If the other commitments include matters in the superior court case, I am willing to negotiate extensions of time there. If there is more to your request for your extension than you have revealed, please let me know.

Sincerely,
Colin


Thompson Law Office LLC
J.E. Tenorio Building
PMB 917 P.O. Box 10001

Saipan, Mariana Islands 96950
T 670 233 0777 | F 670 233 0776
colin.thompson@saipan.com

This electronic transmission contains information from the Law Offices of
Colin M. Thompson which may be confidential and/or protected by the
attorney-client privilege and/or the attorney work product doctrine. Please
notify us immediately at the e-mail address or phone numbers provided above
if you received this communication in error. Please then delete this
communication. If you are not the intended recipient, please be aware that
any disclosure, copying, distribution, or use of the content of this
transmission, either in part or in whole, is prohibited. Thank you for your
assistance.

— Original Message —
From: Alex Freeman
To: Colin Thompson
Cc: Colin Thompson
Sent: Thursday, June 19, 2008 1:04 PM
Subject: RE: Laramie v. UMDA

Hey Colin,

Among other reasons, UMDA needs a 30-day extension because its counsel, Bob O'Connor, is
off-island until sometime in mid-July and UMDA's other counsel is saddled with pressing
commitments over the next month.

Thanks,
Alex

From: Colin Thompson [mailto:colin_thompson777@hotmail.com]
Sent: Tuesday, June 17, 2008 7:03 PM
To: Alex Freeman
Cc: Colin Thompson
Subject: Re: Laramie v. UMDA

Dear Alex,

Please let me know why UMDA needs an extension of 30 days.

Best regards,
Colin
Law Offices of Colin M. Thompson
J.E. Tenorio Building
PMB 917 P.O. Box 10001
Saipan, Mariana Islands 96950
T 670 233 0777 | F 670 233 0776
colin.thompson@saipan.com

This electronic transmission contains information from the Law Offices of Colin M. Thompson which may be confidential and/or protected by the attorney-client privilege and/or the attorney work product doctrine. Please notify us immediately at the e-mail address or phone numbers provided above if you received this communication in error. Please then delete this communication. If you are not the intended recipient, please be aware that any disclosure, copying, distribution, or use of the content of this transmission, either in part or in whole, is prohibited. Thank you for your assistance.

—– Original Message —–
From: Alex Freeman
To: Colin Thompson
Sent: Wednesday, June 18, 2008 11:52 AM
Subject: Laramie v. UMDA

Colin,

UMDA's response to the complaint filed by Laramie Fealty in federal district court is currently due on July 2, but we are hoping that you will grant us a 30-day extension for our response, which would generate a deadline of August 1 for UMDA to respond to the complaint. Please let me know if this is agreeable.

Thank you,

Alex

# EXHIBIT I

FILED
Clerk
District Court

APR 20 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

ALAN STUART MARKOFF, D.D.S., )         Civil Action No. 05-0035
doing business as TOOTHWORKS      )
and OPEN CHOICE,                           )
                                                    )
                    Plaintiff                     )
                                                    )
          v.                                        )         ORDER GRANTING
                                                    )         MOTION TO STAY
TODD KEITH JOHNSON, D.D.S.,    )
                                                    )
                    Defendant                  )
_____ )

THIS MATTER came before the court on Thursday, April 13, 2006, for

hearing of defendant's motion to stay this proceeding. Plaintiff appeared by and

through his attorney, Mark K. Williams; defendant appeared by and through his

attorney, David G. Banes.

THE COURT, having considered the written and oral arguments of counsel,

rules as follows:

AO 72
(Rev. 08/82)

Defendant moves the court to abstain from hearing, and to stay, this proceeding due to a parallel proceeding in Texas state court. For the following reasons, the motion is granted.

Both parties rely on the principles enunciated in Colorado River Water Conser. Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236 (1976). There, the United States Supreme Court recognized that abstention from the exercise of federal jurisdiction is the exception, and not the rule, and set out guidelines for courts to consider when confronted by abstention issues in the context of parallel state-federal legal proceedings. The Court stated that a district court faced with a situation of state court-district court concurrent jurisdiction could consider: (1) the inconvenience of the federal forum, (2) the desirability of avoiding piecemeal litigation, (3) the order in which jurisdiction was obtained, and (4) considerations of wise judicial administration, giving due regard to conservation of judicial resources and comprehensive disposition of litigation. Later, in Moses H. Cone Memorial Hosp. v. Mercury Const., 460 U.S. 1, 103 S.Ct. 927 (1983), the Court reiterated that "exceptional circumstances" should be present to justify a stay, and that the district court should carefully balance the abovementioned factors in deciding whether to stay or proceed. Id. at 460 U.S. 16.

However, in Colorado River both state law and federal water rights law were implicated and the state and federal court had concurrent jurisdiction. In Moses H.

Cone Memorial Hospital, there were parallel state arbitration and federal Arbitration Act claims.  Here, jurisdiction is founded solely on diversity of citizenship and no other federal interests are implicated.

Having weighed the factors set out above, the court finds that abstention is warranted and stays this proceeding.  Although the two businesses at issue here are located on Saipan, the appraisal, accounting, and legal work performed was for the most part done in the mainland United States.  Most of the negotiations between the parties and/or their representatives were conducted on the mainland, primarily in Texas.  Significantly, the parties agreed in their contract of sale that any disputes would be resolved using Texas state law.  The Texas state court proceeding was filed before the lawsuit in this court was filed.[1]  Both parties have Texas counsel.  In the initial complaint, plaintiff stated he was a resident of Houston, Texas, and in the first amended complaint states he is a domiciliary of the State of Texas.  Most of the potential witnesses are on the mainland, as are most of the records relating to the sale of the dental practice.  Travel and accommodation costs would be significantly greater for parties and witnesses to travel to Saipan, rather than Texas.

Given all these factors, the court concludes that the Northern Mariana

---

[1]  This court was unaware of the Texas state court proceeding until defendant filed his motion for stay on March 17, 2006.

Islands is a more inconvenient forum to most of the participants in this litigation

than the Texas state court. Further, to proceed would certainly result in piecemeal

litigation.  Given the lack of a strong federal stake in this litigation, the court

concludes that wise judicial administration counsels staying this matter in that there

is no reason to believe that the Texas court cannot render a full and fair decision on

all matters in dispute.

    If the parties stipulate to waive the statute of limitations, it would be the

court's preference to dismiss this matter without prejudice.

    IT IS SO ORDERED.

    DATED this 20th day of April, 2006.


                                          *Alex R. Munson*

                                         ALEX R. MUNSON
                                            Judge

# EXHIBIT J

## Paul Dingee

**From:**     <rdm@irizmcc.com>
**To:**       <dingepc@charter.net>
**Sent:**     Tuesday, May 15, 2007 1:18 PM
**Attach:**   First Amended Complaint.pdf
**Subject:**  Fwd: Fwd: First Amended Complaint

too late. sorry. let's discuss. ray

----- Message Forwarded on May 15 -----
From: john larson <denver_4104@yahoo.com>
To: rdm@irizmcc.com
Subject: Fwd: First Amended Complaint
Date: Tue, 15 May 2007 09:07:40 -0700 (PDT)

Ray - FYI

--- DAVID.YORK@LW.com wrote:

> Subject: First Amended Complaint
> Date: Tue, 15 May 2007 07:30:55 -0400
> From: DAVID.YORK@LW.com
> To: colin.thompson@saipan.com,
>     steven.bauer@lw.com,
>     margaret.tough@lw.com,
>     denver_4104@yahoo.com,
>     bobkursk43@yahoo.com
>
>
> Greetings, All:
>
> Attached is UMDA's First Amended Complaint. They
> have added
> defendants, including local people from Deloitte.
> This, of course,
> destroys diversity jurisdiction; so we are stuck in
> the Commonwealth
> Superior Court.
>
> Colin -- meet Steve Bauer and Margaret Tough from
> Latham, and John
> Larson and Bob Pfaff of whom we spoke yesterday.
> All, meet Colin
> Thompson, our local counsel in Saipan.
>
> I will be speaking with Colin about this recent
> development this

> evening (morning Saipan time).
>
> D.
>
> <<First Amended Complaint.pdf>>
>
> ********************
>
> To comply with IRS regulations, we advise you that
> any discussion of federal tax issues in this email
> was not intended or written to be used, and cannot
> be used by you, (i) to avoid any penalties imposed
> under the Internal Revenue Code or (ii) to promote,
> market or recommend to another party any transaction
> or matter addressed herein.
>
> For more information please go to
> http://www.lw.com/docs/irs.pdf
>
> ********************
>
> This email may contain material that is
> confidential, privileged and/or attorney work
> product for the sole use of the intended recipient.
> Any review, reliance or distribution by others or
> forwarding without express permission is strictly
> prohibited. If you are not the intended recipient,
> please contact the sender and delete all copies.
>
> Latham & Watkins LLP
>

_____ You snooze, you lose. Get messages
ASAP with AutoCheck in the all-new Yahoo! Mail Beta.
http://advision.webevents.yahoo.com/mailbeta/newmail_html.html

[Attachment: First Amended Complaint.pdf]

_____

Check your Email accounts at http://www.MyEmail.com

Login from home, work, school. Anywhere!

7/1/2007