# EXHIBIT 1

MICHAEL W. DOTTS, ESQ., F0150
O'Connor Berman Dotts & Banes
Second Floor, Nauru Building
P.O. Box 501969
Saipan, MP 96950
Telephone No. (670) 234-5684
Facsimile No. (670) 234-5683
*Attorneys For Plaintiffs*



E-FILED
CNMI SUPERIOR COURT
E-filed: Apr 26 2007  2:39PM
Clerk Review: Apr 27, 2007
Filing ID: 14623056
Case Number: 07-0152-CV
Elsa Duenas

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

UNITED MICRONESIA ) CIVIL CASE NO._____
DEVELOPMENT ASSOCIATION, INC.,) 
and UMDA LAOLAO LLC, )
)
Plaintiffs, ) COMPLAINT
)
vs. )
)
G.E.T. REALTY TRUST, THOMAS C. )
SORENSON individually and in his )
capacity as Trustee for G.E.T. Realty )
Trust, CONCORDE TRUST, )
ROTHSCHILD TRUST GUERNSEY )
LIMITED as Trustee of the Concorde )
Trust, ROTHSCHILD TRUST )
GUERNSEY LIMITED ACCOUNT 2299,)
DAVINA LIMITED, PIROUETTE LLC )
PROFIT SHARING PLAN, MONTE )
PERUCHO INVESTIDURAS LLC, )
RAYMOND D. McCALL, JOHN )
LARSON, ROBERT PFAFF, )
DAVID AMIR MAKOV, MORLEY )
INC., MORLEY INC. EMPLOYEE )
STOCK OWNERSHIP PLAN AND )
TRUST, POINT DU HOC )
IRREVOCABLE TRUST AND ITS )
TRUSTEE, WS INVESTMENT TRUST, )
NORSKANVEST LLC, PIGAVEST A.G.,)
IRIZARRY, McCALL & SQUARELL, )
P.C., IRIZARRY & McCALL P.C. )
PROFIT SHARING PLAN, GLOBAL )
LEADER CONSULTING INC., )
PROFIT SHARING OF GLOBAL )

1

| | |
|---|---|
| LEADER CONSULTING, INC., | ) |
| KEYSDALE VENTURES LLLP, | ) |
| FIRST COURT LTD. RE ACCOUNT | ) |
| #2305, and DOES 1-50, | ) |
| | ) |
| Defendants. | ) |
| | ) |

COMES NOW, United Micronesia Development Association Inc. ("UMDA"), and UMDA LaoLao, LLC ("LaoLao LLC") through the undersigned counsel, and for their Complaint, allege as follows:

## I.

## Nature of the Case

1.      Plaintiffs UMDA and LaoLao LLC are companies formed in the CNMI that invest money throughout Micronesia.  Defendants Robert Pfaff and John Larson are attorney/CPA's from the U.S. mainland, who are under federal indictment for tax evasion. The other defendants are Pfaff/Larson shell corporations, and their cohorts, including Raymond McCall, who was retained as UMDA's counsel beginning in the mid 1990s.

2.      Defendants insinuated themselves into UMDA and LaoLao LLC and then misused their positions of trust, power and authority to obtain secret "side fees" at UMDA's expense, and to suit their own improper purposes.  Defendants breached their duties to Plaintiffs, violated their agreements with Plaintiffs, and have caused and will continue to cause Plaintiffs continuing injuries, as pleaded below.

2

# EXHIBIT 2

MICHAEL W. DOTTS, ESQ., F0150
O'Connor Berman Dotts & Banes
Second Floor, Nauru Building
P.O. Box 501969
Saipan, MP 96950
Telephone No. (670) 234-5684
Facsimile No. (670) 234-5683
*Attorneys For Plaintiff United Micronesia Development Association, Inc.*

TIMOTHY H. BELLAS, ESQ., F0135
Law Offices of Timothy H. Bellas
P.O. Box 502845 C.K.
Saipan, MP 96950
Tel: 670-323-2115
Fax: 670-323-2116
*Attorneys For Plaintiff UMDA LaoLao LLC*



E-FILED
CNMI SUPERIOR COURT
E-filed: May 15 2007 5:41PM
Clerk Review: May 16 2007 8:43AM
Filing ID: 14875542
Case Number: 07-0152-CV
Bernie A Sablan

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED MICRONESIA DEVELOPMENT ASSOCIATION, INC.,) and UMDA LAOLAO LLC,<br><br>        Plaintiffs,<br><br>        vs.<br><br>ROBERT PFAFF, RAYMOND D. McCALL, JOHN LARSON, G.E.T. REALTY TRUST, THOMAS C. SORENSON individually and in his capacity as Trustee for G.E.T. Realty Trust, CONCORDE TRUST, ROTHSCHILD TRUST GUERNSEY LIMITED as Trustee of the Concorde Trust, ROTHSCHILD TRUST GUERNSEY LIMITED ACCOUNT 2299, DAVINA LIMITED, PIROUETTE LLC PROFIT SHARING PLAN, MONTE PERUCHO INVESTIDURAS LLC, DAVID AMIR MAKOV, MORLEY INC., MORLEY INC. EMPLOYEE STOCK OWNERSHIP PLAN AND TRUST, POINT DU HOC | CIVIL CASE NO. 07-0152<br><br><br>FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL |

1

IRREVOCABLE TRUST AND ITS            )
TRUSTEE, WS INVESTMENT TRUST,        )
NORSKANVEST LLC, PIGAVEST A.G.,)
IRIZARRY, McCALL & SQUARELL,         )
P.C., IRIZARRY & McCALL P.C.         )
PROFIT SHARING PLAN, GLOBAL          )
LEADER CONSULTING INC.,              )
PROFIT SHARING OF GLOBAL             )
LEADER CONSULTING, INC.,             )
KEYSDALE VENTURES LLLP,              )
FIRST COURT LTD. RE ACCOUNT          )
#2305, DELOITTE & TOUCHE LLC,        )
DELOITTE & TOUCHE LLP,               )
MICHAEL S. JOHNSON, JOSEPH           )
ARNETT, SASQUATCH II, BIGELOW        )
ASSET MANAGEMENT LLC, PAUL           )
DINGEE, DOES 1-50, and ROES 1-50     )
                                     )
          Defendants.                )
_____)

     COMES NOW, United Micronesia Development Association, Inc. ("UMDA"), and UMDA LaoLao, LLC ("LaoLao LLC") through the undersigned counsel, and for their First Amended Complaint, allege as follows:


## I.

## Nature of the Case


     1.    Plaintiffs UMDA and LaoLao LLC are companies formed in the CNMI that own, operate and invest in businesses, companies and real estate throughout Micronesia and elsewhere.  Defendants Robert Pfaff and John Larson are attorney/CPA's from the U.S. mainland, who are under federal indictment for tax evasion and related federal crimes.  The other Pfaff Defendants (defined below), upon information and belief

2

are Pfaff and/or Larson shell corporations, and their cohorts, including Raymond McCall, who was retained as UMDA's counsel beginning in the mid 1990s.

2.    The Pfaff Defendants insinuated themselves into UMDA and LaoLao LLC and then misused their positions of trust, power and authority to obtain undisclosed and improperly disclosed "side fees" and other improper consideration at UMDA's expense, and misused UMDA to carry out their secret and illicit agenda and to suit their own improper purposes.  The Pfaff Defendants breached their duties to Plaintiffs, violated their agreements with Plaintiffs, and have caused and will continue to cause Plaintiffs continuing injuries, as pleaded below.

3.    The Deloitte Defendants (defined below) have served as UMDA's consultants, tax advisors and auditors for more than 10 years.  During that period they recommended that UMDA engage in tax shelters and other questionable transactions promoted by the Pfaff Defendants so as to gain favor with the Pfaff Defendants and their cohorts.  The Deloitte Defendants violated their duties to UMDA and its Board, including by failing to report the conduct of the Pfaff Defendants and other insiders to the UMDA Board of Directors.

## II.

### Jurisdiction and Venue

3

4.     This Court has jurisdiction pursuant to the Commonwealth Judicial Reorganization Act of 1989, 1 CMC Section 3001 et. seq., and specifically 1 CMC Section 3202.

5.     Venue is proper in that the cause of action arose here in the Commonwealth of the Northern Mariana Islands, and the property, the corporation and limited liability company that are the subject of this action are present, doing business, formed and/or incorporated in this jurisdiction.

### III.
### Parties

**A.     The Plaintiffs**

6.     Plaintiff UMDA is a corporation chartered and existing under the laws of the Commonwealth of the Northern Mariana Islands ("CNMI"), with its principal place of business located on Saipan, CNMI.

7.     Plaintiff LaoLao LLC is a limited liability company chartered and existing under the laws of the Commonwealth of the Northern Mariana Islands ("CNMI"), with its principal place of business located on Saipan, CNMI.  A true and correct copy of its Second Amended Operating Agreement ("Operating Agreement"), which is the operative agreement between the LaoLao LLC members, is attached as Exhibit A.

4

8.     At all relevant times, Plaintiff UMDA has been and continues to be the manager of LaoLao LLC. Certain Defendants have unlawfully attempted to remove UMDA as manager of LaoLao LLC.

**B.     The Pfaff Defendants**

9.     Defendant Robert Pfaff is a lawyer, CPA, and former Klynveld Peat Marwick & Goerdeler ("KPMG") tax partner, and based on information and belief, is a resident of Colorado. Pfaff is currently under indictment by the United States in the Southern District of New York for tax evasion through the knowing sale of false tax shelters, for conspiring with others, including Defendant Larson, with whom he shared several businesses, to sell false tax shelters, and for personal tax evasion.

10.     Defendant John Larson is a lawyer, CPA, and former Senior Tax Manager of KPMG, and based on information and belief, is a resident of California. Larson is currently under indictment by the United States in the Southern District of New York for tax evasion through the knowing sale of false tax shelters, for conspiring with others, including Defendant Pfaff, to sell false tax shelters, and for personal tax evasion.

11.     Defendant Raymond D. McCall is a lawyer who, on information and belief, was involved in illegal tax shelters along with Defendants Larson and Pfaff. Based on information and belief, McCall is a resident of Colorado. McCall represented

5

Pfaff in creating a number of shell corporations that he and Pfaff used in transactions that were, based on information and belief, illegal. McCall was counsel for Plaintiff UMDA since in or around the mid 1990s.

12.     Defendant G.E.T. Realty Trust has a mailing address at 4552 Delmar Drive, Lakeland, Florida 33801. Based on information and belief, it is an entity created by Pfaff, Larson and/or McCall and serves as a front for Pfaff, Larson and/or McCall. Its Trustee is Defendant John Larson.

13.     Defendant JL Capital Trust, on information and belief, has its principal place of business in California, and its Trustee is Defendant John Larson. Based on information and belief, it is an entity created by Pfaff, Larson and/or McCall and serves as a front for Pfaff, Larson and/or McCall.

14.     On information and belief, Defendant First Court Ltd. Re Account #2305 is an alter ego and/or successor to JL Capital Trust, and its address is 4104 24th Street, #570, San Francisco, CA.

15.     Defendant Morley Inc., on information and belief, has its office in California. Based on information and belief, it is an entity created by Pfaff, Larson, Makov and/or McCall and serves as a front for Pfaff, Larson, Makov and/or McCall.

6

16.    Defendant Morley Inc. Employee Stock Ownership Plan and Trust, on information and belief, is an entity created by Pfaff, Larson, Makov and/or McCall and serves as a front for Pfaff, Larson, Makov and/or McCall.

17.    On information and belief, Defendant Profit Sharing Plan of Global Leader Consulting Inc., has its office in Colorado and it is an entity created by Pfaff, Larson and/or McCall and serves as a front for Pfaff, Larson and/or McCall.

18.    On information and belief, Defendant Global Leader Consulting Inc., is an alter ego and/or successor of Defendant Profit Sharing Plan of Global Leader Consulting Inc.

19.    Defendant Irizarry & McCall P.C., has on information and belief, changed its name to Irizarry, McCall & Squarrell, P.C., and is incorporated in Colorado, with its principal office located at 1700, Lincoln St., Ste. 4704, Denver, CO 80203.  Based on information and belief, Defendant McCall is a partner in this entity.

20.    On information and belief, Defendant Irizarry & McCall P.C. Profit Sharing Plan is controlled by Irizarry & McCall P.C. and serves as a front for McCall and/or Irizarry & McCall P.C.

21.    On information and belief, Defendant Pirouette LLC Profit Sharing Plan is an alter ego and/or successor of Defendant Irizarry & McCall, P.C. Profit Sharing Plan.

7

22.     On information and belief, Defendant Thomas C. Sorenson is a natural person and a resident of Lakeland Florida, and he is also the Trustee of G.E.T. Realty Trust, and the brother-in-law of Defendant Pfaff.

23.     Defendant David Amir Makov, on information and belief is a resident of California and is listed as a Director of Defendant Morley Inc.  He is currently under indictment by the United States in the Southern District of New York for tax evasion through the knowing sale of false tax shelters, for conspiring with others, including Defendants Pfaff and Larson, to sell false tax shelters.

24.     Defendant Rothschild Trust Guernsey Limited has a mailing address at P.O. Box 472, St. Peters House, Le Bordage, St. Peter Port, Guernsey GY1 1XY, and, on information and belief, is a trust management company responsible for managing the Defendant Concorde Trust.

25.     On information and belief, Defendant Concorde Trust is an entity created by Defendants Pfaff, Larson, Makov and/or McCall and serves as a front for Pfaff, Larson, Makov and/or McCall.   On information and belief, Defendant Makov is associated with this trust.

26.     On information and belief, Defendant Point Du Hoc Irrevocable Trust has a mailing address at 924 Park Circle, Union Grove, Wisconsin 53812.  Based on

information and belief, it is an entity created by Pfaff, Larson and/or McCall and serves as a front for Pfaff, Larson and/or McCall.

27.     On information and belief, Defendant WS Investment Trust is an alter ego and/or successor to Defendant Point Du Hoc Irrevocable Trust.

28.     Defendant Davina Limited has a mailing address at P.O. Box 472, St. Peters House, Le Bordage, St. Peter Port, Guernsey GY1 1XY (or GY1 6AX). Based on information and belief, it is an entity created by Defendants Pfaff, Larson, Makov, and/or McCall and serves as a front for Pfaff, Larson, Makov, and/or McCall.

29.     On information and belief, Defendant Rothschild Trust Guernsey Limited Account 2299 has an address of P.O. Box 472, St. Peters House, Le Bordage, St. Peter Port, Guernsey, and is associated with Defendant Makov.

30.     On information and belief, Defendant Monte Perucho Investiduras LLC is a Colorado limited liability company, with its principal office located at 3033 East First Ave., Ste 805, Denver, CO 80206. It is owned solely by Angelina Irizarry, on information and belief the wife and partner of McCall. Based on information and belief, it is an entity created by Defendants Pfaff, Larson, and/or McCall and serves as a front for Pfaff, Larson and/or McCall.

9

31.    Defendant Norskanvest had a mailing address care of Claire O'Neill (or O'Neal) at 216 South Interocean Ave, Holyoke, CO 80734.  Based on information and belief, it is an entity created by Pfaff, Larson and/or McCall and serves as a front for Pfaff, Larson and/or McCall.

32.    On information and belief, Defendant PIGAVEST A.G. is an alter ego and/or successor of Defendant Norskanvest.

33.    Defendant KCT Irrevocable Trust has, on information and belief, a mailing address of 4552 Delmar Dr., Lakeland, FL 33801.  Based on information and belief, it is an entity created by Pfaff, Larson and/or McCall and serves as a front for Pfaff, Larson and/or McCall.

34.    On information and belief, Defendant Keysdale Ventures LLLP has an office in Colorado and serves as a front for Pfaff, Larson and/or McCall.

35.    Defendants Robert Pfaff, John Larson, Raymond D. McCall, G.E.T. Realty Trust, JL Capital Trust, First Court Ltd. Re Account #2305, Morley Inc., Morley Inc. Employee Stock Ownership Plan and Trust, Profit Sharing Plan of Global Leader Consulting Inc., Global Leader Consulting Inc., Irizarry & McCall P.C., Irizarry & McCall P.C. Profit Sharing Plan, Pirouette LLC Profit Sharing Plan, Thomas C. Sorenson, David Amir Makov, Rothschild Trust Guernsey Limited, Concorde Trust, Point Du Hoc Irrevocable Trust, WS Investment Trust, Davina Limited, Rothschild Trust Guernsey

10

Limited Account 2299, Monte Perucho Investiduras LLC, Norskanvest, PIGAVEST A.G., KCT Irrevocable Trust, and Keysdale Ventures LLLP are sometimes referred to herein as the "Pfaff Defendants."

36.    On information and belief, all of the Pfaff Defendant corporations, trusts or other entities, and individuals have ties to Defendants Pfaff, Larson, Makov and/or McCall.    Upon information and belief, at all relevant times, the Pfaff Defendants conspired with one another, acted in concert with one another, aided and abetted and encouraged one another in the conduct set forth herein.

37.    In order to frustrate creditors, to conceal their tortious and/or illegal conduct, and/or to evade taxes, the Pfaff Defendants have fraudulently transferred assets and shares among themselves and various shell entities created by them and their co-conspirators, or transferred assets and shares contrary to the applicable corporate charters. Some of those entities include, without limitation, some of the named defendants named herein.

C.    **The Deloitte Defendants**

38.    Defendant Deloitte & Touche LLC is a branch of the international accounting firm of Deloitte & Touche (also known as Deloitte, Touche, Tohmatsu).  It is incorporated in the CNMI as a domestic LLC.

11

39.     Defendant Deloitte & Touche LLP is a branch of the international accounting firm of Deloitte & Touche, also known as Deloitte Touche Tohmatsu. On information and belief, it has partners who reside in Guam and the CNMI, including Defendants Arnett and Johnson.

40.     Defendant Joe Arnett is a partner at Deloitte & Touche LLP. His correspondence states that his title is "Partner-Tax Services Guam/Micronesia." He was the senior tax partner from Deloitte with respect to UMDA and helped the Pfaff Defendants and UMDA management structure various questionable transactions as alleged herein. In that capacity, he acquired extensive knowledge regarding the unlawful activities of the Pfaff Defendants and issues arising from the questionable transactions, knowledge that the Deloitte Defendants (defined below) had a duty to disclose to UMDA's Board but did not.

41.     Defendant Michael S. Johnson is a resident of the CNMI, manager of Deloitte &Touche LLC, and, on information and belief, a partner in Deloitte & Touche LLP. His correspondence states that his title is "Managing Partner, Saipan." He was the senior auditor at Deloitte with respect to the UMDA account and had a duty solely to UMDA's Board of Directors to bring to their attention actions and omissions of the Pfaff Defendants, UMDA management, and other insiders as alleged herein, including regarding the questionable transactions known to his partner Arnett and others at Deloitte.

12

42.    Defendants Deloitte & Touche LLC, Deloitte & Touche LLP, Michael Johnson, and Joe Arnett are sometimes referred to herein as the "Deloitte Defendants."

**E.    The Doe, Roe, and Other Defendants**

43.    Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as DOES 1-50, inclusive. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe that each of these fictitiously named defendants are liable in some manner for the occurrences herein alleged as to the Pfaff Defendants, and that their injuries as herein alleged were proximately caused by the aforementioned DOE Defendants.

44.    Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as ROES 1-50, inclusive. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe that each of these fictitiously named defendants are liable in some manner for the occurrences herein alleged as to the Deloitte Defendants, and that their injuries as herein alleged were proximately caused by the aforementioned ROE Defendants.

45.    Defendant Sasquatch II is, on information and belief, an entity on whose behalf Defendant Bigelow Asset Management LLC has stated it may act.

13

46.     Defendant Bigelow Asset Management LLC is, on information and belief, a Colorado limited liability company.

47.     Defendant Paul Dingee is, on information and belief, a Wisconsin resident.

## IV.

### Factual Allegations

#### A. UMDA's Relationship with the Pfaff Defendants

48.     Plaintiff UMDA is a going concern, incorporated in 1967.  Over the years, it has been involved in businesses ranging from airlines to cable systems.

49.     UMDA came into contact with Defendants Pfaff and Larson some time in the 1990s.  UMDA was looking for an investment to further its business diversity, and Pfaff was selling, on behalf of KPMG (at which he and Larson were partners at the time), a tax shelter product called ZENS.  The Pfaff Defendants induced UMDA to purchase the ZENS product with promises of large tax savings, all of which, they and others (both the named Pfaff Defendants and others involved in the federal indictment) assured were perfectly legal and backed with written tax opinions and advice from reputable law and accounting firms.

14

50. Prior to purchasing the ZENS product, UMDA sought, and relied upon, advice from the Deloitte Defendants, who along with other professionals assured UMDA that ZENS was a permissible tax strategy and recommended that UMDA pursue the ZENS tax strategy. In reasonable reliance upon the advice of the Deloitte Defendants and others, UMDA participated in the ZENS tax strategy.

51. In reasonable reliance upon the Deloitte Defendants' advice, UMDA paid various professionals and consultants, including some of the named defendants herein, considerable sums for the ZENS tax shelter product and for their advice surrounding its structure and legality.

52. Based on information recently revealed in the federal case against Pfaff, Larson, Makov and their co-conspirators, it now appears that the legal and accounting opinion and advice letters used in the ZENS tax shelter that were procured by the Pfaff Defendants, and approved by the Deloitte Defendants, may have been illegal and fraudulent.

53. Through the ZENS transactions, subsequent questionable transactions, and/or other events and occurrences, Defendant Pfaff and other Pfaff Defendants falsely and fraudulently obtained stock in UMDA and insinuated themselves into a personal relationship with UMDA's former Chairman of the Board. Defendant McCall, who is not licensed in the CNMI, became legal counsel for UMDA, starting in or around 1996. It was this progression of the relationship, and the acts and omissions of the Deloitte

15

Defendants, that allowed the Pfaff Defendants to manipulate Plaintiffs for their own purposes.

54.    Upon information and belief, the Pfaff Defendants obtained lucrative "side fees" from UMDA-related transactions, all of which they failed to disclose or improperly and misleadingly disclosed to UMDA's Board of Directors. They also offered the former Chairman of UMDA's Board personal incentives to encourage UMDA to enter into transactions and provide other resources to serve the Pfaff Defendants' individual interests.

55.    Unbeknownst to UMDA's Board, Defendant Pfaff and his cohorts used UMDA, UMDA entities, and UMDA facilities to engage in a number of sophisticated transactions apparently designed to hide illicit gains through, among other means, acquiring interests in UMDA and related entities. For example, during the period 1995-2005, Pfaff transmitted money through UMDA accounts to a straw man, Jaime Romero Salas, which was then funneled back through UMDA into Pfaff-related shell entities, Pfaff, and/or his family members. These transactions had no benefit to UMDA and, indeed, were to its detriment. Despite a duty to do so, the Deloitte Defendants did not report these related party transactions to the UMDA Board of Directors in their yearly audits of UMDA and/or made vague or misleading disclosures about them.

56.    At all relevant times, Plaintiffs were unaware of the Pfaff Defendants' tortious conduct, which the Pfaff Defendants and Deloitte Defendants were aware of and

should have been aware of, and had a duty to disclose. Instead, the Pfaff Defendants and their co-conspirators, including former management, made affirmative misrepresentations to conceal their conduct from, and to defraud Plaintiffs. For example, on or around November 2002, Defendant Pfaff insinuated himself as the head of UMDA's Audit Committee so as, on information and belief, to prevent UMDA's Board from discovering and investigating transactions by Pfaff and others, which benefited them, but not UMDA. The Deloitte Defendants were required to raise issues about fraud, illegal acts and internal control matters, but they failed to do so.

57.    On or around January 2007, the former Chairman of UMDA's Board pled guilty to making a false statement to the federal government in conjunction with the government's investigation of the tax evasion charges against Defendants Pfaff and Larson. Specifically, he claimed that UMDA's Board was aware of compensation that he received from the promoters of a UMDA tax shelter, when, in fact, he had not disclosed this compensation to the Board. UMDA has been fully cooperating with the government's investigation and is still in the process of uncovering acts of misconduct, fraud, and breach of fiduciary duty by insider Pfaff, the Pfaff Defendants, and their agents, co-conspirators, and cohorts.

58.    During the course of Plaintiffs' recent investigation, it was discovered that during his tenure as a director, Pfaff and his cohorts had used UMDA accounts and "straw men" to make transactions and transfer their monies, apparently for their own personal benefit, which did not benefit UMDA. It also was discovered that they had

17

engaged in conflicted transactions, where they personally benefited at UMDA's expense by "side fees," and/or put UMDA in peril of violating the law for their own self-interested purposes.

59.     The Pfaff Defendants deliberately engaged in the misconduct set forth herein, abused their positions of trust and power, and acted in intentional, reckless, vile and wanton disregard of Plaintiffs' rights and interests.

**B.  The Formation and Sale of LaoLao LLC**

60.     On December 29, 2004, UMDA organized LaoLao LLC pursuant to the laws of the CNMI, with UMDA as its manager.   UMDA and LaoLao LLC formerly owned Saipan Lau Lau Development Inc., ("SLDI"), a CNMI corporation, that owns the LaoLao Bay Golf Course ("Golf Course").

61.     UMDA owned 51% of the stock in SLDI, and LaoLao LLC owned 49% of the stock in SLDI.

62.     Defendants G.E.T. Realty Trust, Rothschild Trust Guernsey Limited as Trustee of the Concorde Trust, Davina Limited, and Monte Perucho Investiduras LLC are all members in LaoLao LLC.

18

63.     On or around February 2007, UMDA and LaoLao LLC's interests in the Golf Course were sold. As a result, Plaintiffs are in possession of a fund of money ("the Fund"), which they obtained as a result of the sale. The Fund is comprised of two separate accounts representing the initial investment (purportedly by the Pfaff Defendants) and the returns from the sale that the Pfaff Defendants allege is owed to them.

64.     After this action was filed, persons purportedly representing the Pfaff Defendants who are members of LaoLao LLC and certain related parties have illegally attempted to remove UMDA as manager of the LLC (without holding the meeting required in the Operating Agreement) and to direct Bank of Hawaii to grant them control of the accounts compromising the Fund. They also have made threats of legal action. Despite inquiries, they have yet to provide information to UMDA demonstrating their authority to take such actions, the veracity of signatures provided, or even proof and clarification as to who they represent and in what capacity.

**C.     The Deloitte Defendants**

65.     The Deloitte Defendants continuously served as UMDA's consultants, accountants, tax advisors and auditors from before 1996 through the date this First Amended Complaint was filed. This continuous representation included providing tax advice, tax preparation, audit services, accounting, business advice and other services for UMDA, including, without limitation, advising UMDA on the tax consequences and

19

accounting treatment on numerous transactions, preparing UMDA's tax returns and auditing UMDA's financial statements for each year from 1996 to the present.

66.    The Deloitte Defendants also have continuously served as LaoLao LLC's tax preparers and advisors from the inception of the LLC to the present time.

67.    The Deloitte Defendants owed numerous duties to UMDA and LaoLao LLC. and were paid significant fees for their services. These duties included, without limitation: the duty to report evidence or suspicions of wrongdoing to the UMDA Board of Directors; to report transactions by related parties or insiders (such as the Pfaff Defendants); to report observations that could lead to discovery of fraud and/or accounting errors; to properly audit UMDA's financial statements and prepare accurate and complete reports; to employ the procedures used by reasonable accountants (including without limitation, the recognized and accepted professional standards for accountants and auditors, including the generally accepted accounting principles (GAAP) and generally accepted auditing standards (GAAS) promulgated by the American Institute of Certified Public Accountants (AICPA)); to report to UMDA's Board of Directors any fraud or irregularities or deficiencies or material issues, or that constituted "reportable conditions" because they represented significant deficiencies in the design or operation of internal control which could adversely affect UMDA's ability to initiate, record, process, and report financial data consistent with the assertions of management or other insiders in the consolidated financial statements; to adhere to the standards of care

20

used by reasonable accountants; and to loyally serve UMDA's Board of Directors without conflicts of interest.

68.    Unbeknownst to UMDA's Board of Directors, beginning on or around late 1999, the IRS began publishing notices, which were reviewed by accounting firms, including the Deloitte Defendants, questioning tax shelters and transactions similar to the ones promoted by the Pfaff Defendants. Although UMDA's Board was relying upon the Deloitte Defendants to use their knowledge and expertise, and notify UMDA's Board as to just this type of information, the Deloitte Defendants never informed UMDA's Board of Directors about these notices or the IRS's positions therein. Instead, the Deloitte Defendants continued to advise UMDA that it could go along with the Pfaff Defendants' tax shelter and questionable transactions.

69.    At no time from at least 1996 through 2006 did the Deloitte Defendants raise any issues with the UMDA Board of Directors regarding potential or actual fraud, inadequate internal controls, or questionable insider transactions, despite an affirmative duty to do so.

70.    At all relevant times, UMDA's Board of Directors and LaoLao LLC relied upon the Deloitte Defendants' knowledge and expertise, including their knowledge and expertise in tax, auditing, regulatory, and accounting matters, as well as their knowledge and expertise in helping uncover improper conduct by insiders. At all relevant times, Plaintiffs also relied on the Deloitte Defendants' recommendations, advice and reports.

21

71.    During their yearly preparation of tax and audit materials for UMDA, the Deloitte Defendants were required to report insider transactions to the UMDA Board of Directors, including, without limitation, transactions involving Pfaff Defendant-related entities and other insider irregularities, which the Deloitte Defendants failed to disclose. The Deloitte Defendants had cause to at least become suspicious of the transactions regarding the Pfaff Defendants and to alert UMDA's Board of Directors involving those transactions.

72.    The Deloitte Defendants knew or should have known that the tax shelter and other questionable transactions that the Pfaff Defendants proposed to UMDA exposed UMDA to significant legal expense and other damages.  Nonetheless, the Deloitte Defendants recommended, approved, and participated in structuring these transactions.

73.    The Deloitte Defendants were aware of the criminal indictment against Pfaff and the IRS notices questioning the types of tax shelters and questionable transactions used by the Pfaff Defendants.  The Deloitte Defendants concealed this information from the UMDA Board, failed to disclose this information despite a duty to do so, and assisted, aided and abetted the Pfaff Defendants and their co-conspirators' conduct alleged herein.

22

74.     The Deloitte Defendants knew of the Pfaff Defendants' and other insiders' misuse of UMDA accounts, and failed to report these abuses to UMDA's Board of Directors despite a duty to do so.

75.     The Deloitte Defendants knew that the transactions relevant herein had been or could be questioned by the IRS and they nevertheless continued to aid, abet and assist the Pfaff Defendants to cause UMDA to participate in these transactions.  Despite their duties to alert the Board to these facts, the Deloitte Defendants failed to do so.

76.     Because of the acts of concealment committed by Defendants and their cohorts (including their failure to disclose facts to UMDA's Board of Directors that they were obligated to disclose), Plaintiffs were prevented from discovering their claims against Defendants until within the last year.  Because of this concealment, as detailed throughout this Complaint, Plaintiffs could not have discovered their claims through the exercise of reasonable diligence by a person in like circumstance until then.

77.     Plaintiffs have been continuing to investigate this matter and are still uncovering facts relevant to their claims and necessary to state their claims.  Given the insider roles of the Pfaff Defendants and their co-conspirators, and Plaintiffs' reliance upon the Deloitte Defendants and the faithful professional services they had represented they would provide to UMDA (but did not), it is likely that the full nature and extent of Defendants' misconduct will not be revealed absent an accounting.

78.    Because of the acts and omissions of the Deloitte Defendants, UMDA engaged in transactions with the Pfaff Defendants, such as permitting the Pfaff Defendants to become subscribing members of the LLC, issuing stock and conveying benefits to the Pfaff Defendants and others for the actions they had taken that supposedly benefited UMDA (but that actually harmed UMDA and/or created a risk of harm to UMDA), allowing the Pfaff Defendants to participate in the affairs of UMDA, and allowing UMDA's stockholdings to otherwise be manipulated.  Had the Deloitte Defendants not committed those acts and omissions, Plaintiffs would not have issued that stock or conveyed those benefits, engaged in those transactions, or allowed any of the Pfaff Defendants or their agents to participate in the affairs of UMDA and LaoLao LLC.

79.    As a result of their representation of Plaintiffs, the Deloitte Defendants have received hundreds of thousands of dollars in payments from Plaintiffs for the services they should have rendered.

## V.

## Causes of Action

## First Cause of Action – Indemnity/Allocation

## (UMDA versus Pfaff Defendants)

80.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

24

81.    Pursuant to Paragraph 5.07 of the Operating Agreement, the Pfaff Defendants must indemnify UMDA for the expenses they have forced UMDA to incur as a result of their acts and omissions.

82.    UMDA has incurred expenses, including attorney's fees, in its role as manager of LaoLao LLC, for which the Pfaff Defendants must indemnify UMDA pursuant to the Operating Agreement. Such expenses continue to mount and likely will continue to increase.

83.    The conduct of the Pfaff Defendants proximately caused UMDA to incurr these expenses, including attorney's fees, in an amount to be proven at trial, for which the Pfaff Defendants must indemnify UMDA.

## Second Cause of Action – Declaratory Relief
## (UMDA versus Pfaff Defendants)

84.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

85.    Pursuant to the Operating Agreement, expenses under Paragraph 5.07 (Indemnification) must be deducted from any proceeds distributed to the Pfaff Defendants prior to any such distribution. Because these expenses are ongoing, UMDA cannot distribute any money to the Pfaff Defendants at this point in time.

86.    The Pfaff Defendants have demanded distribution pursuant to the Operating Agreement.  UMDA denies that any such distribution would be proper until the claims in this case are adjudicated, rights are determined consistent with the relief requested, and any damages and indemnification amounts are determined.  An actual controversy therefore exists as to UMDA's duties and obligations under the Operating Agreement.  Declaratory relief from this Court is thus necessary to resolve this controversy.

### Third Cause of Action – Fraud in the Inducement

### (Plaintiffs versus Pfaff Defendants)

87.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

88.    Had UMDA known that the Pfaff Defendants were engaging in illegal activities, UMDA would not have entered into any agreements with them.  Prior to entering into the Operating Agreement with UMDA, acquiring shares of UMDA, and becoming fiduciaries and/or advisors to UMDA, the Pfaff Defendants concealed their unlawful activities from UMDA and affirmatively and falsely represented that they were legitimate companies, lawyers, and accountants.

26

89.     The Pfaff Defendants intended that UMDA rely on their misrepresentations and omissions, and UMDA did, in fact, reasonably and detrimentally rely on them by, *inter alia*, permitting the Pfaff Defendants to become members of LaoLao LLC, to purchase stock in UMDA, and to become fiduciaries and/or advisors of UMDA.

90.     The Pfaff Defendants' involvement in UMDA and its affiliates has caused severe harm to the reputations, goodwill, and ability of Plaintiffs to engage in their businesses in an amount to be proven at trial, and it has further forced Plaintiffs to incur expenses, including attorney's fees, to try to mitigate the harms caused by the Pfaff Defendants' concealment of material facts and misrepresentations prior to entering into agreements with Plaintiffs.  The Pfaff Defendants' conduct was the proximate cause of such harms.

### Fourth Cause of Action – Rescission
### (Plaintiffs versus Pfaff Defendants)

91.     Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

92.     Had UMDA known that the Pfaff Defendants were engaging in illegal activities, UMDA would not have entered into any agreements with them.  Because the Pfaff Defendants deliberately gained their stocks, and their ability to become members of

27

LaoLao LLC under false pretenses, the Pfaff Defendants' stock purchases and participation in LaoLao LLC were void *ab initio*, and should be rescinded.

93.    Furthermore, it is against the law to contract for any illegal purpose. To the extent that the Pfaff Defendants used, attempted or intended to use Plaintiffs for, to assist them with, or to conceal any illicit conduct, the Pfaff Defendants' stock purchases and participation in LaoLao LLC should be rescinded, as they cannot reap any benefits from such contracts.

94.    In addition and specifically as to Defendant McCall and Defendant Irizarry & McCall P.C., said Defendants breached the applicable rules of ethics by entering into business transactions with their client, UMDA, and failing to adequately disclose their self interests and waivers, so as to require that all said transactions and stock purchases they entered into are subject to rescission.

95.    In addition and specifically as to Defendant Pfaff, he violated his obligations as a director to adequately disclose his conflicts, he engaged in self dealings with regard to the Plaintiffs' assets and he breached other and related duties, so as to subject all stock purchases from the UMDA and all related transactions to rescission.

**Fifth Cause of Action – Breach of Fiduciary Duty**

**(UMDA versus Pfaff)**

28

96.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

97.    On or around 1999, Pfaff became a director of UMDA.  He continued in this position until after August 2006.  As a director, Pfaff owed UMDA the fiduciary duties of undivided loyalty, candor, and good faith.

98.    He breached those duties through the conduct stated herein, including, *inter alia*: failing to disclose and affirmatively hiding material facts and transactions from the Board; failing to disclose and affirmatively hiding his illegal activities; misusing UMDA accounts for his personal purposes; obtaining UMDA funds, stock, and assets under false pretenses; and using his trusted, insider status to profit at UMDA's expense.

99.    Pfaff's conduct harmed, and was the proximate cause of harm to UMDA, and as a result of Pfaff's breaches of fiduciary duty, UMDA has sustained economic damages, loss of goodwill, harm to its reputation, and loss of opportunities in an amount to be proven at trial.

### Sixth Cause of Action – Assisting in Breaches of Fiduciary Duty
### (Plaintiffs versus Pfaff and Deloitte Defendants)

100.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

29

101.    On information and belief, the Pfaff Defendants and Deloitte Defendants caused, aided, abetted, and assisted many breaches of the duty of loyalty and duty of care by engaging in grossly negligent or reckless conduct, intentional misconduct, and/or violations of the law for their own personal benefit.

102.    On information and belief, the Pfaff Defendants and Deloitte Defendants knowingly aided, abetted, encouraged, and assisted one another and other insiders and professionals in: violating their fiduciary duties to Plaintiffs; obtaining funds, assets and stock under false pretenses; and failing to disclose and concealing their own misconduct and conflicted transactions from Plaintiffs.

103.    On information and belief, the Pfaff Defendants and Deloitte Defendants had actual knowledge of each other's breaches of fiduciary duty, and the breaches of fiduciary duty by other insiders and professionals, or should have known of such breaches.

104.    Plaintiffs have been harmed by the Pfaff Defendants' and Deloitte Defendants' conduct in an amount to be proven at trial, and the Pfaff Defendants and Deloitte Defendants were the proximate cause of such harms.

**Seventh Cause of Action – Declaratory Relief, 4 CMC §4106 and Applicable CNMI Common Law**

30

**(Plaintiffs versus Pfaff Defendants)**

105.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

106.    If an officer, director, or controlling shareholder takes, *inter alia*, assets belonging to a corporation, that conduct is deemed a repurchase of that director's stock at fair market value at the time of the wrongful acts under 4 CMC § 4106 and applicable common law.

107.    Defendant Pfaff was a director of UMDA and, on information and belief, through his related and shell entities, obtained a controlling interest in LaoLao LLC. Through the conduct alleged herein, Defendant Pfaff and his co-conspirators took assets belonging to Plaintiffs, resulting in the automatic repurchase of their stock and membership interest in the LLC.

108.    On information and belief, the Pfaff Defendants believe that they still own stock in UMDA and interests in the LLC. An actual controversy therefore exists, and judicial relief is thus necessary to confirm the repurchase of said stocks and the interests in the LLC by operation of law.

**Eighth Cause of Action – Breach of Fiduciary Duty**

**(UMDA versus McCall, and Irizarry & McCall P.C.)**

31

109.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

110.    Defendant McCall, and his firm Irizarry & McCall P.C., were counsel for Plaintiff UMDA beginning in or around the mid 1990s.  As UMDA's counsel, Defendants McCall and Irizarry & McCall P.C. owed UMDA the strictest duty of loyalty and fairness, were required to ethically and competently represent UMDA, and had a duty to inform and disclose to their client, UMDA, of the Pfaff Defendants' wrongful and illicit conduct.

111.    McCall and Irizarry & McCall P.C. breached those duties and put their own interests and the interests of his cohorts ahead of their client's interests, to the detriment of their client.  They further breached their duties when McCall (and entities he controlled) acquired stock in UMDA (his client) and engaged in business transactions with UMDA without proper disclosures during the time he represented UMDA.

112.    Plaintiffs have been damaged, and were proximately damaged, by the actions of Defendants McCall and Irizarry and McCall P.C. in an amount to be proven at trial.

### Ninth Cause of Action – Malpractice
### (UMDA versus McCall, and Irizarry & McCall P.C.)

32

113.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

114.    At all material times, Defendants McCall and Irizarry & McCall P.C. owed UMDA a duty of reasonable care.

115.    Defendants McCall and Irizarry & McCall P.C. breached this duty through the conduct complained of herein, including, without limitation, failing to disclose or withholding information of a material nature and failing to advise, or withholding advice that was pertinent and important to the decisions that UMDA was required to make. They further breached their duties when McCall (and entities he controlled) acquired stock in UMDA (his client) and engaged in business transactions with UMDA without proper disclosures during the time he represented UMDA.

116.    The conduct of Defendants McCall and Irizarry & McCall P.C. fell below the applicable standard of care for legal professionals. Their conduct was the actual and proximate cause of harm to UMDA, in an amount to be proven at trial.

**Tenth Cause of Action – Conversion**

**(UMDA versus the Pfaff Defendants)**

117.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

118.    Throughout the time that Defendants Pfaff, Larson, and McCall exercised their influence and control over the Plaintiffs, they effectively converted the assets and resources of the corporation to their own uses at the expense of the Plaintiffs.

119.    Depriving UMDA and LoaLao LLC of the use of these assets and resources by the Pfaff Defendants damaged Plaintiffs in an amount to be proven at trial and was the proximate cause of such damages.

120.    Plaintiffs have been injured by the actions of the Pfaff Defendants in an amount to be proven at trial.

**Eleventh Cause of Action – Indemnity**

**(Plaintiffs versus the Pfaff Defendants)**

121.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

122.    Through the wrongful conduct alleged herein, the Pfaff Defendants exposed Plaintiffs to potential liability.  To the extent any such liabilities ever arise, the Pfaff Defendants are required to indemnify and make whole Plaintiffs.

34

123.    Due to the Pfaff Defendants' proficiency at hiding assets through sophisticated international transactions, Plaintiffs ask that the Pfaff Defendants be required to pay over to the Court an amount, to be proven at trial, sufficient to indemnify Plaintiffs.

**Twelfth Cause of Action – Declaratory Relief & Injunctive Relief**

**(Plaintiffs versus GET Realty Trust, Sorenson, Rothschild Guernsey Limited, Concorde Trust, Monte Perucho, McCall, Sasquatch II, Bigelow Asset Management, and Paul Dingee)**

124.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

125.    Pfaff Defendants GET Realty Trust (purportedly represented by Pfaff Defendant Sorenson), Rothschild Guernsey Limited (as purported Trustee of the Concorde Trust), Monte Perucho (by its purported manager Defendant McCall), along with Defendants Sasquatch II (through Defendant Bigelow Asset Management) and Defendant Paul Dingee, have unlawfully attempted to remove UMDA as manager of LaoLao LLC.

126.    Such removal of UMDA is in violation of the Operating Agreement and threatens UMDA and LaoLao LLC with imminent harm. Moreover, the above-identified

Defendants have failed to respond to UMDA's requests for verification as to their identity and right to remove UMDA as manager of LaoLao LLC.

127.    As previously alleged, the interests of the above-identified members of LaoLao LLC who are Pfaff Defendants are subject to rescission and void *ab initio*.

128.    Nonetheless, and despite being aware of this suit, those Defendants have persisted in their efforts to remove UMDA as the manager of the LLC.

129.    An actual controversy therefore exists as to the attempted removal of UMDA as manager of LaoLao LLC. Accordingly, to resolve this dispute, UMDA and LaoLao LLC require a declaration that UMDA is the rightful manager of LaoLao LLC and cannot be removed by the identified Defendants. They further seek preliminary injunctive relief while this dispute is adjudicated and permanent injunctive relief.

### Thirteenth Cause of Action – Negligence
### (Plaintiffs versus Deloitte Defendants)

130.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

131.    The Deloitte Defendants owed Plaintiffs a duty to provide reasonable care in providing services to Plaintiffs.

36

132.    Through the above-described conduct, the Deloitte Defendants breached this duty.

133.    The Deloitte Defendants' negligent actions harmed, and were the proximate cause of harm to Plaintiffs and caused damages to Plaintiffs in an amount to be proven at trial.

### Fourteenth Cause of Action – Malpractice
### (Plaintiffs versus Deloitte Defendants)

134.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

135.    The Deloitte Defendants had a duty to perform their undertakings for Plaintiffs with the ordinary care and competence reasonably expected of members of their profession in the community.

136.    As described above, the Deloitte Defendants failed to exercise the degree of skill, care, knowledge, and judgment usually possessed by members of the profession in the community in providing services to Plaintiffs.

137.    The Deloitte Defendants' malpractice harmed, and was the proximate cause of harm to Plaintiffs and caused damages to Plaintiffs in an amount to be proven at trial.

### Fifteenth Cause of Action – Breach of Fiduciary Duty
### (Plaintiffs versus Deloitte Defendants)

138.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

139.    The Deloitte Defendants owed Plaintiffs fiduciary duties, including, without limitation, duties of honesty, loyalty, and care.    The Deloitte Defendants breached those duties through the above-described conduct.

140.    The Deloitte Defendants' breaches of fiduciary duty harmed, and were the proximate cause of harm, to Plaintiffs, and caused damages to Plaintiffs, in an amount to be proven at trial.

### Sixteenth Cause of Action – Breach of Contract
### (Plaintiffs versus Deloitte Defendants)

141.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

38

142.    Plaintiff's employment of the Deloitte Defendants was based upon contractual agreements between Plaintiffs and the Deloitte Defendants beginning in 1996 or earlier and forming a continuous contractual relationship through to the date of the filing of this First Amended Complaint.

143.    The Deloitte Defendants breached the express and implied terms of their contractual relationship with Plaintiffs through the above-described conduct.

144.    The Deloitte Defendants' breaches of contract harmed and were the proximate cause of harm to Plaintiffs and caused damages to Plaintiffs in an amount to be proven at trial.

**Seventeenth Cause of Action – Declaratory Relief Regarding UMDA Client Files**
**(UMDA versus Deloitte Defendants)**

145.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

146.    In the course of their representation of UMDA, the Deloitte Defendants received from UMDA, and created or otherwise generated, documents regarding UMDA, it taxes, its audits, and other issues raised herein (the "UMDA Client Files").    Although

the Deloitte Defendants have produced some of those documents, they have withheld others.

147.    On information and belief, the UMDA Client Files are the property of UMDA; and, to the degree that any of them are found to be the DeloitteDefendants' property, the Deloitte Defendants had contractual duties and duties under Commonwealth law to provide the UMDA Client Files or copies of those files to UMDA.

148.    UMDA has requested that the Deloitte Defendants return UMDA's Client Files.

149.    The Deloitte Defendants have refused to produce UMDA's complete Client Files or copies thereof to UMDA.

150.    An actual controversy exists between UMDA and the Deloitte Defendants requiring judicial resolution with regard to UMDA's right to obtain all remaining UMDA Client Files or copies thereof from the Deloitte Defendants.

151.    UMDA therefore asks for a judicial declaration establishing UMDA's right to immediate access to the UMDA Client Files or copies thereof.

**Eighteenth Cause of Action – Injunctive Relief Regarding UMDA Client Files**

**(UMDA versus Deloitte Defendants)**

40

152.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

153.    Because of this ongoing lawsuit and other matters related to the misconduct committed by the Pfaff Defendants, UMDA needs immediate access to all UMDA Client Files or copies thereof in order to prosecute all claims and to defend itself.

154.    UMDA therefore faces serious, imminent, and irreparable harm if the UMDA client files or copies thereof are not immediately produced to it.

155.    UMDA has a legal right to the immediate return of the UMDA Client Files, or at least a right to the immediate production of copies.

156.    The Deloitte Defendants should be enjoined and restrained from retaining UMDA's Client Files and from preventing UMDA from copying such files.

**Nineteenth Cause of Action – Violation of Consumer Protection Act, 4 CMC §§ 5101**

*et seq.*

**(Plaintiffs versus Pfaff & Deloitte Defendants)**

157.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

158.    Through the false and misleading conduct alleged herein, Defendants violated the Consumer Protection Act, 4 CMC §§ 5101 *et seq.*

159.    Defendants' violations of the Act harmed, and were the proximate cause of harm to Plaintiffs and caused damages to Plaintiffs in an amount to be proven at trial.

160.    Plaintiffs are further entitled to liquidated damages in an amount equal to their actual damages because such violations were willful under 4 CMC § 5112(a)

161.    Plaintiffs are also entitled to their attorneys' fees and costs under 4 CMC § 5112(a).

### Twentieth Cause of Action – Punitive Damages
### (Plaintiffs versus All Pfaff & Deloitte Defendants)

162.    Plaintiffs incorporate by reference all previous paragraphs, as if set forth in full here.

163.    The Pfaff Defendants and Deloitte Defendants deliberately engaged in the misconduct set forth herein, abused their positions of trust and power, and acted in intentional, reckless, vile and wanton disregard of Plaintiffs' rights.

42

164.    The Pfaff Defendants and Deloitte Defendants knowingly insinuated themselves into the affairs and business operations of the Plaintiffs for their own personal benefit and gain.

165.    The Pfaff Defendants and Deloitte Defendants acted willfully, intentionally and maliciously with the goal of defrauding, usurping and misrepresenting themselves to Plaintiffs for their own illegal purposes.

166.    Because of the Pfaff Defendants and Deloitte Defendants' willful and intentional actions and the harm they caused and continue to cause, as described throughout this Complaint, Plaintiffs are entitled to punitive damages on all claims sounding in tort in an amount to be proven at trial.

**WHEREFORE**, the Plaintiffs pray for:

1.    A Declaratory Judgment for Plaintiffs and against the Pfaff Defendants, which finds that: the Pfaff Defendants have no claim to the Fund; the Pfaff Defendants have no claim to receive any distributions from Plaintiffs as a result of their purported stock ownership or membership interests of the Pfaff Defendants; the Pfaff Defendants have no claim against Plaintiffs; no distribution of the Fund to the Pfaff Defendants is required; the Pfaff Defendants have breached their fiduciary and statutory obligations to Plaintiffs; the Pfaff Defendants own no stock in UMDA; and that to the extent they ever owned any UMDA stocks or interest in LaoLao LLC, the Pfaff Defendants' stocks and

43

interests have been repurchased for fair market value at the times of their wrongful taking of corporate assets;

2.    Preliminary and/or permanent injunctive and/or declaratory relief enjoining the attempted removal of UMDA as the manager of LaoLao LLC, and a declaration that UMDA is the rightful manager of LaoLao LLC and cannot be removed by the above-identified Defendants

3.    Preliminary and/or permanent injunctive and/or declaratory relief immediately enjoining the Deloitte Defendants from retaining UMDA Client Files and from preventing UMDA from copying such files.

4.    Compensatory damages;

5.    Restitution;

6.    Disgorgement;

7.    Constructive trust;

8.    Accounting;

9.    Rescission;

10.    Indemnity;

11.    Liquidated damages under 4 CMC § 5112(a);

12.    Punitive damages;

13.    That the Court relieve and discharge Plaintiffs from any further liability on any claim arising from the actions of the Pfaff Defendants while they were improperly associated with them;

14.    Attorney's fees and costs; and

15.    For such other and further relief that may be deemed just and equitable.

### <u>DEMAND FOR JURY TRIAL</u>

The plaintiffs herein, United Micronesia Development Association, Inc. and UMDA LaoLao, LLC hereby reconfirm and demand, in accordance with Com. R. Civ. P. Rule 38 (b) that this matter be tried to a jury.

Date: May __, 2007                  O'CONNOR BERMAN DOTTS & BANES

                                     Attorneys for Plaintiff United Micronesia
                                     Development Association, Inc.


                                     By:_____/s/_____
                                            MICHAEL W. DOTTS, ESQ.
                                            (F0150)

45

Date: May ___, 2007                    LAW OFFICES OF TIMOTHY H. BELLAS

                                       Attorneys for Plaintiff UMDA LaoLao LLC


                                       By:_____/s/_____
                                             TIMOTHY H. BELLAS, ESQ.,
                                             (F0135)