# EXHIBIT 16

1   Colin M. Thompson, Esq.
    THOMPSON LAW OFFICE, LLC
2   J.E. Tenorio Building
    PMB 917 P.O. Box 10001
3   Saipan, Mariana Islands 96950
    Telephone: (670) 233-0777
4   Facsimile: (670) 233 0776

5   THE PIERCE LAW GROUP, LLC
    John P. Pierce (admitted pro hac vice)
6   4641 Montgomery Avenue, Suite 500
    Bethesda, MD 20814
7   Telephone: (301) 657 4433
    Facsimile: (301) 657-1433

8

9   *Attorneys for Laramie Fealty LLC,*
    *Trustee of GET Realty Trust*

E-FILED
CNMI SUPERIOR COURT
E-filed: Apr 8 2008 8:52AM
Clerk Review: Apr 08, 2008
Filing ID: 19304441
Case Number: 07-0152-CV
Bernie A Sablan

10               **IN THE SUPERIOR COURT**

11                     **FOR THE**

12   **COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

13

14   **UNITED MICRONESIA DEVELOPMENT,**    )   **CIVIL ACTION NO. 07-0152**
    **ASSOCIATION, INC., and UMDA LAOLAO LLC**    )

15                          )

16           **Plaintiffs,**          )   **NOTICE OF MOTION and**
                         )   **MOTION TO STRIKE and**

17           **vs.**                )   **OBJECTION TO STIPULATION**
                         )   **AND PROPOSED ORDER,**

18   **ROBERT PFAFF, et. al.**           )   **AND MOTION FOR AN**
                         )   **ACCOUNTING OF FUNDS**

19                          )   **Date:** _____
                         )   **Time:** _____

20           **Defendants.**         )   **Judge: Hon. Juan T. Lizama**

21

22   **TO: ALL PARTEIS AND THEIR ATTORNEYS OF RECORD:**

23

24

25

                                       – 1 –

### NOTICE

Please be advised that on _____ at _____ a.m/p.m. the court will hear Defendant Laramie Fealty LCC, Trustee of GET Realty Trust's motion to strike stipulation and proposed order and motion for an accounting of funds filed on April 8, 2008 in the above titled action.

### MOTION

Defendant Laramie Fealty LCC, Trustee of GET Realty Trust hereby moves to strike stipulation and proposed order filed on April 8, 2008 and for an accounting. The basis for this motion is set forth in the memorandum in support of motion filed herewith and the Court's record.

DATED: April 8, 2008                THOMPSON LAW OFFICE, LLC

By:  _____/s/_____
     COLIN M. THOMPSON, ESQ.
     Attorney for Laramie Fealty LLC, Trustee of
     GET Realty Trust
     Bar No.: F0221

THE PIERCE LAW GROUP LLC

By:  _____/s/_____
     JOHN P. PIERCE, ESQ.
     Attorney for Laramie Fealty LLC, Trustee of
     GET Realty Trust
     Admitted Pro Hac Vice

- 2 -

Colin M. Thompson, Esq.
THOMPSON LAW OFFICE, LLC
J.E. Tenorio Building
PMB 917 P.O. Box 10001
Saipan, Mariana Islands 96950
Telephone: (670) 233-0777
Facsimile: (670) 233 0776

THE PIERCE LAW GROUP, LLC
John P. Pierce (admitted pro hac vice)
4641 Montgomery Avenue, Suite 500
Bethesda, MD 20814
Telephone: (301) 657 4433
Facsimile: (301) 657-1433

*Attorneys for Laramie Fealty LLC,*
*Trustee of GET Realty Trust*

E-FILED
CNMI SUPERIOR COURT
E-filed: Apr 8 2008 8:52AM
Clerk Review: Apr 08, 2008
Filing ID: 19304441
Case Number: 07-0152-CV
Bernie A Sablan

## IN THE SUPERIOR COURT

## FOR THE

## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

UNITED MICRONESIA DEVELOPMENT, INC. and UMDA LAOLAO LLC

Plaintiffs,

v.

ROBERT PFAFF, et al.

Defendants.

CIVIL ACTION NO. 07-1052

DEFENDANT TRUSTEE FOR THE GET REALTY TRUST'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE AND OBJECTION TO STIPULATION AND PROPOSED ORDER, AND MOTION FOR AN ACCOUNTING OF FUNDS

Date:
Time:
Judge: Hon. Juan T. Lizama

Defendant, Laramie Fealty LCC Trustee for the GET Realty Trust, by and through his counsel, Colin M. Thompson, hereby files this motion to strike the "Stipulation" and proposed order filed on April 1, 2008 by the Plaintiffs and Paul Dingee, and for an accounting of funds.

1

# I. <u>INTRODUCTION</u>

Plaintiffs filed a document they styled a "stipulation" and asked this Court to release funds from the court-ordered frozen account (or accounts) of UMDA LaoLao LLC ("LLC") proceeds relating to the sale of the Lao Lao golf course. They also seek the Court's approval of an unlawful transfer of Paul Dingee's interest in the LLC. As briefed below, there is no procedural basis for the Plaintiffs' filing, and certainly no basis for a "stipulation" to upset the *status quo ante* established by this Court when it ordered the funds of the LLC frozen pending resolution of this litigation. Moreover, the filings of Plaintiffs have demonstrated that improprieties have occurred with the frozen funds making necessary for this Court to conduct an accounting of all funds and issue appropriate orders to re-establish the *status quo ante* ordered by this Court.

## II. <u>THE PLAINTIFFS' "STIPULATION" IS PROCEDURALLY DEFECTIVE AND MUST BE STRUCK</u>

Courts have the inherent authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. See *Graham v. Dallas Indep. Sch. Dist.*, No. 3:04-CV-2461-B, 2006 U.S. Dist. LEXIS 13639 (D. Tex. Jan.10, 2006)(citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)). To achieve the orderly and expeditious disposition of cases, a court may strike briefs filed in violation of the court's rules and orders.

.      The Rules of Civil Procedure require a motion to obtain a court order.      The Commonwealth's Rules of Civil Procedure make no provision for obtaining a court order by the filing of "stipulations" executed by only a small fraction of the parties to litigation. Parties to litigation may file *motions* pursuant to the Rules. The Rules expressly provide that an application for a court order "*shall* be by motion . . . ." Com.R.Civ. P. Rule 7(b)(1)(*emphasis added*). The mandatory word "shall" cannot be interpreted to allow application for a court order by some method other than by a motion.

2

1    Along with a *motion,* a party seeking a court order must also file a notice of hearing.

2    Com.R.Civ.P. 7(b)(7) clearly states:

3    > A notice of hearing *shall* be attached to or incorporated in each written motion filed
     > with the court. The day, date, and time of hearing shall be designated by the filing

4    > clerk at the time of filing or as soon thereafter as practicable.

5

6    Id. (*Emphasis added.*)

7    Under the Commonwealth's Rules, a litigant is required to file a *motion* and a notice of

8    *hearing* to obtain a court order. The Rules make it clear that to obtain a court order to modify the

9    Preliminary Injunction Order (issued by this Court on November 13, 2007), the relief sought by

10   Plaintiffs must be made through a motion and noticed hearing to allow the parties to the litigation to

11   file responsive papers and be fairly heard. That is, Plaintiffs were required under the Rules to file a

12   motion, not a "stipulation." Plaintiff's attempt to skirt the Rules of this Court is entirely improper

13   and must not be entertained by the Court.

14   In other words, the Civil Rules contemplate that every motion, unless permitted to be heard

15   *ex parte,* shall be determined by the court only after a hearing. *Breeding v. Herberger* 611 N.E.2d

16   374, 376 (Ohio App. 10 Dist.,1992).[1] While the rules contemplate allowing a party to make an *ex*

17
18   *parte* application for an expedited or extended briefing schedule, they do not contemplate the

19   complete abrogation of a hearing or the denial of the opportunity for parties to the litigation to be

20   heard at all. While the Rules also contemplate the filing of *ex parte* motions in very limited or

21   extraordinary circumstances, such as for a scheduling order pursuant to Rule 6 or a temporary

22

23   ───────────────
     [1] The Commonwealth's Rules of Practice are also in accord with the hearing requirement. Com.R.Prac. Rule 8(c) states
24   that "[t]ogether with the filing of a written motion, a Notice of Hearing shall be attached to and made a part of the
     pleadings. The day, date and time of hearing shall be designated and inserted by counsel. Service of a copy of the
25   pleadings shall be made upon opposing counsel or party by the movant in accordance with the Commonwealth Rules of
     Civil Procedure – Rules 5 and 6. A certificate of Service shall be filed by the movant with the clerk of Court on or
     before the date of hearing.

3

restraining order pursuant to Rule 65, clearly the Rules do not provide for *ex parte* relief for motions brought pursuant to Rules 59 or 60, under which a party may seek to amend a judgment or to seek relief from a judgment or order.

Plaintiff's "stipulation" with defendant Dingee marks the Plaintiffs' second such improper filing in this litigation. Plaintiffs attempted the same maneuver with respect to a settlement with defendant McCall and related entities, whereby rather than filing a motion to release funds frozen by this Court's Order re Preliminary Injunction, the Plaintiffs filed a "Stipulation," resulting in the improper and premature release (by premature order of this Court) of some of the funds that were frozen by this Court.[2] Once again, by filing of this "stipulation" with respect to defendant Dingee, Plaintiffs are attempting to abrogate the Order of this Court regarding the frozen funds by filing a "stipulation to release funds" rather than a noticed motion to seek amendment to this Court's order freezing such funds.

## III.  THE COURT MUST PROACTIVELY PROTECT THE LLC'S ASSETS

This Court issued an Order on November 13, 2007, to maintain the *status quo ante* of the funds of the LLC pending resolution of the litigation.

> . . . [U]nder the status quo prior to the instant dispute, UMDA was the manager of LLC, and the Fund was as-of-yet undistributed. While UMDA's distribution of proceeds to selected LLC Members did not act to preserve the status quo, the Court finds that the status quo would be further upset by the complete distribution to all Members.

11/13/07 Order, at 16.

_____

[2] The first "stipulation" with the McCall defendants, resulting in the premature release of funds without a hearing, is the subject of a motion for rehearing scheduled for April 22, 2008, before this Court.

As the Court and Plaintiffs now know, Defendants to this action have filed counterclaims against the Plaintiffs as well as claims against additional third parties. The status of the funds frozen by this Court are very much in dispute. The Defendants lay claim to those funds and have brought additional claims for damages. It is apparent from the Plaintiffs' filings (including the declaration of Timothy Bellas) that they have been dipping their hands into the till of disputed and allegedly frozen funds and thereby violating the Order of this Court. Further, based on Plaintiffs' filings, it is apparent Plaintiffs have prejudicially partitioned the frozen funds in a discriminating manner in violation of their fiduciary obligations and in violation of this Court's Order. This Court must seize control of the funds and determine an accounting of the funds from the inception of the creation of the relevant account or accounts established following the sale of the Lao Lao LLC's assets, and order the return of any funds improperly dissipated since the establishment of that account(s). Through this motion, Defendant trustee for GET Realty Trust moves this Court to seize control of the disputed funds, conduct an accounting, determine the whereabouts of all dissipated funds, issue necessary and appropriate orders for the return of all improperly dissipated funds, and otherwise safeguard and control the funds until resolution of the litigation.

## IV. THE PLAINTIFFS' "STIPULATION" VIOLATES THE LLC ACT AND OPERATION AGREEMENT

In addition to having no procedural justification and violating this Court's Order, the proposal for a distribution under the Plaintiffs' "stipulation" is not only prejudicial to the LLC Equity Members such as GET Trust, it is in violation of the Commonwealth's LLC Act. Under Section 405 of the Act:

> Any distributions made by a limited liability company before its dissolution and winding up must be in equal shares [among all members].

In the "stipulation," Plaintiffs assert that Dingee assigns his interest in the LLC to UMDA. Whatever the status of that "assignment" at the end of the litigation, a distribution from that assignment at this juncture would not only violate the *status quo ante*, it would violate the Commonwealth's LLC Act.

Further, the assignment of Dingee's interest in the LLC pursuant to the "stipulation" violates the terms of the Second Amended Operating Agreement. Article 10 of the Second Amended Operating Agreement limits the transferability of membership interests in the LLC. Section 10.01(a) provides that "[e]xcept as otherwise specifically provided by this Agreement, no Equity Owner shall have the right to Transfer the Equity Owner's Ownership Interest." The Second Operating Agreement does not provide for the transfer of membership in the LLC through a "stipulation" such as the one that was filed with the court on April 1, 2008.

The Second Amended Operating Agreement also provides for the right of first refusal for the Members of the LLC. These rights are detailed in section 10.02 and include the right to receive a Notice of Sale, the requirement for a bona fide written offer from a third party purchaser and a Buy Option for the members. The filed "stipulation" requests the Court to order actions which violate the LLC agreement and the LLC act.

//

//

//

## V. <u>CONCLUSION</u>

Based on the foregoing, the trustee for GET Trust respectfully requests that the Court strike the Stipulation and proposed Order filed on April 1, 2008, take control over the LLC's funds, order an accounting on the status of the funds from the date of the establishment of the account(s) pursuant to this Court's previous orders, and take all necessary steps to re-establish the *status quo ante* from the date the account(s) were established.

DATED: April 8, 2008                    THOMPSON LAW OFFICE, LLC

                                        By:  _____/s/_____
                                             COLIN M. THOMPSON, ESQ.
                                             Attorney for Laramie Fealty LLC, Trustee of
                                             GET Realty Trust
                                             Bar NO.: F0221

                                        THE PIERCE LAW GROUP LLC

                                        By:  _____/s/_____
                                             JOHN P. PIERCE, ESQ.
                                             Attorney for Laramie Fealty LLC, Trustee of
                                             GET Realty Trust
                                             Admitted Pro Hac Vice

# EXHIBIT 17

By order of the court, **GRANTED**  *Judge Robert C. Naraja*

RT J. O'CONNOR, ESQ., F0137
nor Berman Dotts & Banes
Second Floor, Nauru Building
P.O. Box 501969
Saipan, MP 96950
Telephone No. (670) 234-5684
Facsimile No. (670) 234-5683
*Attorneys For Plaintiff United Micronesia Development Association, Inc.*

RODNEY J. JACOB, ESQ., F0186
Calvo & Clark, LLP
1st Floor, Macaranas Building
PMB 951 Box 10001
Saipan, MP 96950
Telephone No. (670) 233-2045
Facsimile No. (670) 233-2776
*Attorneys For Plaintiff United Micronesia Development Association, Inc.*

TIMOTHY H. BELLAS, ESQ., F0135
Law Offices of Timothy H. Bellas
P.O. Box 502845 C.K.
Saipan, MP 96950
Tel: 670-323-2115
Fax: 670-323-2116
*Attorneys For Plaintiff UMDA LaoLao, LLC*


E-FILED
CNMI SUPERIOR COURT
E-filed: May 27 2008  1:01PM
Clerk Review: N/A
Filing ID: 19976479
Case Number: 07-0152-CV
N/A

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| UNITED MICRONESIA DEVELOPMENT ASSOCIATION, INC., and UMDA LAOLAO LLC, | ) ) ) ) | CIVIL CASE NO. 07-0152 |
| Plaintiffs, | ) ) ) | STIPULATION AND [PROPOSED] ORDER REGARDING MAY 27, 2008 HEARING |
| vs. | ) ) ) ) | |
| ROBERT PFAFF, et al. | ) ) ) | |
| Defendants. | ) ) | |

WHEREAS, a hearing was set in this matter for May 27, 2008 on numerous pending motions before the Honorable Juan T. Lizama; and

WHEREAS, Judge Lizama announced his retirement just prior to the hearing, and the Honorable Ramona V. Manglona was appointed to this matter as of May 23, 2008; and

WHEREAS, the parties are in agreement that a delay of the hearing to a date after June 9, 2008, would be proper to afford the Court an opportunity to review the status of the case and the pending motions, and to allow counsel to make travel arrangements; and

WHEREAS, counsel ask that any re-scheduling of these motions consistent with the Court's calendar take into account off-island notices, and the time required for off-island counsel to make travel arrangements, and counsel agree to work together regarding re-scheduling these motions to accommodate their respective schedules when possible within the Court's availability and calendar;

WHEREAS, this stipulation is made without prejudice to the parties' positions on any pending motions or any other rights;

NOW THEREFORE, it is hereby jointly requested and stipulated that the motions set for hearing on May 27, 2008 be reset for a subsequent hearing date consistent with this stipulation based upon the Court's calendar.

SO STIPULATED:


O'CONNOR, BERMAN, DOTTS & BANES          LAW OFFICES OF TIMOTHY H. BELLAS
CALVO & CLARK, LLP


_____/s/_____          _____/s/_____
ROBERT J. O'CONNOR (F0137)                TIMOTHY H. BELLAS (F0135)
Attorneys for Plaintiffs *United Micronesia*   Attorneys for Plaintiff *UMDA Laolao LLC*
*Development Association, Inc.*


Date:_____May 26, 2008_____          Date:_____May 26, 2008_____

EDWARD C. ARRIOLA LAW OFFICE
LUJAN, AGUIGUI, & PEREZ

LAW OFFICES OF PAMELA BROWN

_____/s/_____
DAVID J. LUJAN (*pro hac vice*)
Attorneys for *Third Party Defendants
Eduardo Calvo, Russell Snow and Jose Lifoifoi*

_____/s/_____
PAMELA BROWN (F0174)
Attorneys for *Davina Limited*

Date:_____May 26, 2008_____

Date:_____May 26, 2008_____

LAW OFFICE OF STEPHEN J. NUTTING

THOMPSON LAW OFFICE, LLC

_____/s/_____
STEPHEN J. NUTTING (F0164)
Attorneys for *Rothschild Trust (Guernsey)
Limited*

_____/s/_____
COLIN M. THOMPSON (F0221)
Attorneys for *the Trustee of GET Realty
Trust, the Trustee of KCT Irrevocable
Trust, Robert Pfaff, and Sasquatch II*

Date: Date:_____May 26, 2008_____

Date: Date:_____May 26, 2008_____

ROBERT T. TORRES, ATTORNEY AT LAW

_____/s/_____
ROBERT T. TORRES (F0197)
Attorneys for Defendant *Paul Dingee*

Date: Date:_____May 26, 2008_____

**IT IS SO ORDERED**.   All motions set for May 27, 2008 in this matter shall instead be

heard on _____, 2008 at __ a.m./p.m.

Dated: May ___, 2008.

_____
RAMONA V. MANGLONA
Associate Judge

This document constitutes a ruling of the court and should be treated as such.

**File & Serve
Transaction ID:** 19975982

**Case Number:** 07-0152-CV

**Case Name:** United Micronesia Development Association Inc vs G E T Realty Trust

# EXHIBIT 18

E-FILED
CNMI SUPERIOR COURT
E-filed: Feb 12 2008 4:00PM
Clerk Review: Feb 21 2008 3:39PM
Filing ID: 18558747
Case Number: 07-0152-CV
Dora Decena

1 | Colin M. Thompson, Esq.
Thompson Law Office LLC
2 | J.E. Tenorio Building
PMB 917 Box 10001
3 | Saipan, Mariana Islands 96950
Telephone: (670) 233-0777
4 | Facsimile: (670) 233-0776
Bar No.: F0221

5 | John P. Pierce, Esq.
The Pierce Law Group LLC
6 | 4641 Montgomery Avenue, Suite 500
Bethesda, MD 20814
7 | Telephone: (301) 657-4433
Facsimile: (301) 657-1433

8 |

9 | *Attorneys for Defendants GET Realty Trust and Trustee*

10 | **IN THE SUPERIOR COURT**

11 | **FOR THE**

12 | **COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

13 |

14 | **UNITED MICRONESIA DEVELOPMENT,** ) **CIVIL ACTION NO. 07-0152**
**ASSOCIATION, INC., and UMDA LAOLAO LLC** )
15 | )   **NOTICE OF MOTION and**
**Plaintiffs,** )   **MOTION TO RECONSIDER**
16 | )   **THE COURT'S ORDER OF**
**vs.** )   **JANUARY 29, 2008 RELEASING**
17 | )   **FUNDS FROM IMPOUNDED**
**ROBERT PFAFF, et. al.** )   **ACCOUNT**
18 | )
19 | )   **Date:** _____
**Defendants.** )   **Time:** _____
20 | )   **Judge: Hon. Juan T. Lizama**

21 |

22 | **TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

23 |

24 |

25 |

— 1 —

**NOTICE**

Please be advised that on _____ at _____ a.m/p.m. the court will hear Defendants' motion to reconsider the Court's Order of January 29, 2008 releasing funds from impounded account filed in the above titled action.

**MOTION**

Defendants hereby move to reconsider the Court's Order of January 29, 2008 releasing funds from impounded account. The basis for this motion is set forth in the memorandum of points and authorities filed herewith and the Court's record.

Dated this 12th day of February, 2008.

_____
/s/
**COLIN M. THOMPSON-F0221**
Attorney at Law

E-FILED
CNMI SUPERIOR COURT
E-filed: Feb 12 2008 4:00PM
Clerk Review: Feb 21 2008 3:39PM
Filing ID: 18558747
Case Number: 07-0152-CV
Dora Decena



Colin M. Thompson, Esq.
Thompson Law Office LLC
J.E. Tenorio Building
PMB 917 Box 10001
Saipan, Mariana Islands 96950
Telephone: (670) 233-0777
Facsimile: (670) 233-0776
Bar No.: F0221

John P. Pierce, Esq.
The Pierce Law Group LLC
4641 Montgomery Avenue, Suite 500
Bethesda, MD 20814
Telephone: (301) 657-4433
Facsimile: (301) 657-1433

*Attorneys for Defendants GET Realty Trust and Trustee*

## IN THE SUPERIOR COURT

## FOR THE

## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

|  |  |
|---|---|
| UNITED MICRONESIA DEVELOPMENT, INC. and UMDA LAOLAO LLC<br><br>            Plaintiffs,<br><br>v.<br><br>ROBERT PFAFF, et al.<br><br>            Defendants | CIVIL ACTION NO. 07-0152<br><br>MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER THE COURT'S ORDER OF JANUARY 29, 2008 RELEASING FUNDS FROM IMPOUNDED ACCOUNT |

Defendants GET Realty Trust ("GET") and its Trustee, by and through counsels John P. Pierce and Colin M. Thompson, hereby moves this Court to reconsider its Order of January 29, 2008 releasing some $940,754.11 in funds held in Bank of Hawaii Accounts pursuant to a preliminary injunction entered by the Court on November 13, 2007. For the following reasons, the Court should reconsider its January 29, 2008 Order and vacate it.

1

# I. **INTRODUCTION**

On November 13, 2007, this Court entered a preliminary injunction that prohibited any party from withdrawing funds from three Bank of Hawaii accounts. One of the principal bases for the preliminary injunction was to maintain the status quo. As the Court noted in its opinion, "[w]hile UMDA's distribution of proceeds to selected LLC Members did not act to preserve the status quo, the Court finds that the status quo would be further upset by the complete distribution to all Members." (*See* Order Granting Preliminary Injunction at 16). Notwithstanding the obvious discomfort about the distribution of funds from UMDA Laolao LLC to some, but not all, of the members of the limited liability corporation, the Court entered the injunction to preserve the status quo.

On December 13, 2007, Defendants filed their Notice of Appeal appealing the Court's grant of the preliminary injunction. At 3:13 p.m. on January 28, 2008, Plaintiffs filed a Proposed Order releasing funds impounded by the preliminary injunction. At 8:13 a.m. the very next day, January 29, 2008, the Court electronically granted the proposed order. In doing so, the Court ordered that the funds held in the Bank of Hawaii accounts "shall be released to attorneys for UMDA upon entry of this Order." (January 29, 2008 Order Releasing Monte Perucho's Monetary Interest In The Fund To UMDA at 2). The Court also ordered that,

> [T]he preliminary injunction entered on November 13, 2007 is hereby amended only to effect this Order.
>
> This amount shall be paid from the Bank of Hawaii accounts as follows:
>
> 1.    the amount of $886,735.05 from TCD account 8000-677183;
>
> 2.    the amount of $50,501.63 from TCD account 8000-068131;
>
> 3.    the amount of $2,551.90 from TCD No. 8000-067810...

(*Id.*)

The Court lacks jurisdiction to modify or amend the preliminary injunction since the injunction is on appeal. Moreover, through its January 29, 2008 Order releasing funds, the Court has ruled contrary to the Court's objective of its November 13, 2007 Order: Maintaining the status quo. Finally, the Court acted with undue haste. The proposed order, which included a calculation that defendants

2

1   have not yet been able to verify, was lodged at 3:13 p.m., on January 28, 2008. The Clerk entered the

2   signed order on the docket at 8:13 a.m., on January 29, 2008, hardly an appropriate amount of time for

3   the parties who are affected by the order to review it, consider the calculation, and advise the Court of

4   any objections. And there are objections. Accordingly, the Court should vacate its order for lack of

5   jurisdiction and/or as premature and allow the parties an opportunity to challenge the plaintiffs' end run

6   around the injunction.

7   ## II.   LAW AND ARGUMENT

8   ### A.   The Court Must Vacate Its Order Releasing Funds To UMDA As The Court Lacked Jurisdiction To Modify The Preliminary Injunction

9

10  When a notice of appeal is filed, jurisdiction over the matters being appealed normally transfers

11  from the Superior Court to the Supreme Court. See *Marrese v. American Academy of Orthopedic*

12  *Sugeons*, 470 U.S. 373, 379 (1985)("In general, filing of a notice of appeal confers jurisdiction on the

13  court of appeals and divests the district court of control over those aspects of the case involved in the

14  appeal."); *Pyrodyne Corp. v. Pyrotronics Corp.*, 847 F.2d 1398, 1403 (9th Cir. 1988). Defendants filed

15  their notice of appeal on December 13, 2007 appealing the Court's grant of a preliminary injunction.

16  The preliminary injunction appealed from impounded the funds that the Court now wishes to release to

17  plaintiffs. As a result of the filing of the notice of appeal, this Court was without jurisdiction to issue

18  its January 29, 2008 Order releasing a portion of the impounded funds to UMDA.

19  There is an exception as Com.R.Civ.P. 62(c) allows a court to retain jurisdiction to "suspend,

20  modify, restore, or grant an injunction during the pendency of appeal... as it considers proper for the

21  security of the rights of the adverse party." Rule 62(c), however, is merely expressive of a power

22  inherent in the court to preserve the status quo where, in its sound discretion, the court deems the

23  circumstances so justify. *Natural Resources Defense Council Inc. v. Southwest Marine Inc.*, 242 F.3d

24  1163, 1166 (9th Cir. 2001). The Rule "does not restore jurisdiction to the district court to adjudicate

25

anew the merits of the case." *Id.* The court's exercise of jurisdiction should not materially alter the status of the case on appeal." *Id.*

The Court's Order releasing funds changed the status quo as the appeal is pending by materially altering the status of the case. The Court's release of nearly $950,000 of the impounded funds, funds GET and other defendants have a direct legal claim on, to UMDA, a party that has, at best, a circuitous claim on the funds, materially altered the status of the case by denying other defendants access to those specific funds. Just as important, release of the funds, even if there is a settlement, runs counter to the reasoning of this Court's order granting the preliminary injunction in the first place. In that order, the Court, in weighing the status quo and the balance of hardships, found that the status quo was upset by the release of funds from the sale of the golf course to some, but not all, of the members of the LLC. (*See* Preliminary Injunction at 16). Indeed, the Court found that the release of funds to the members of the LLC who did not receive a distribution would upset the status quo even more than it was upset already. (See *id.*). Now, of course, the Court's order compounds the status quo question even more by ordering a release to another purported member.

It is clear that the attempted modification of the preliminary injunction does not fit within the exception permitted by the Rules of Civil Procedure. Accordingly, the Court should reconsider and vacate its order releasing the funds for lack of jurisdiction to do so.

**B.    Reconsideration Is Appropriate As The Court Issued Its Order In Violation Of Defendants' Right To Due Process And Without Considering The Valid Objections Of Other Defendants**

Under Com.R.Civ.P. 59(e), parties may challenge an order or judgment entered by the Court by way of a motion to alter or amend the judgment, commonly characterized as a motion for reconsideration. See *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 (10th Cir. 2002). Although it is not clear that the order the Court signed concerning the release of the

4

1   funds squarely fits within the ambit of the rule on reconsideration, out of an abundance of caution,

2   Defendants styling this motion as one for reconsideration.

3        The Court must reconsider and vacate the Court's Order releasing funds as the Court issued the

4   Order in violation of Defendants' right to due process. A basic component of due process is that a

5   party is given fair notice and an opportunity to be heard on issues that it affects him. *Feliciano v.*

6   *Commonwealth Superior Court*, 1999 MP 3 ¶ 35 (citing *Mullane v. Central Hanover Bank & Trust Co.,*

7   339 U.S. 306, 314 (1950), and stating that "[d]ue process requires that a party be provided with notice

8   and an opportunity to be heard"). Specifically, a court may not substantially modify the terms of a

9   preliminary injunction without giving parties notice and an opportunity to be heard. See *Dr. Jose S.*

10  *Belaval, Inc. v. Perez-Perdomo*, 465 F.3d 33, 37 (1st Cir. 2006)(stating that "the structure of the federal

11  rules [of civil procedure] and the constitutional guarantee of due process require that a court," before

12  substantially modifying a preliminary injunction, give "prior notice to the parties and an opportunity for

13  them to be heard."). In this case the Court issued an order substantially modifying the preliminary

14  injunction when it released nearly $950,000 of the impounded funds, funds the defendants' claim, to

15  UMDA. Such a substantial modification of the preliminary injunction by the Court without giving

16  defendants the opportunity to object is a clear violation of due process requiring the Court to

17  immediately vacate its Order.

18       In addition to the violations of Defendants' right to due process, the Court must reconsider and

19  vacate the Court's Order as Defendants have valid objections that deserve to be heard. Defendants

20  have reason to believe that the calculations used by Plaintiffs' counsel to support the release of nearly

21  $950,000 of the $5 million impounded fund is incorrect. However, Defendants need additional time to

22  determine if the calculation is correct. In any event, the Court should have more than just Plaintiff

23  counsel's mathematics on which to release nearly 20% of the money being held.

### III. CONCLUSION

For all of the foregoing reasons, the Court should reconsider and vacate its order calling for the release of approximately $950,000 from the monies held by the Bank of Hawaii, order UMDA to return the money if it has already been released, and set a hearing on whether the funds should be released at all, pending trial.

Dated this 12th day of February, 2008.


_____/s/_____
**JOHN P. PIERCE**
Attorney for Defendants


_____/s/_____
**COLIN M. THOMPSON-F0221**
Attorney for Defendants

# EXHIBIT 19

Thompson Law Office, LLC.
Colin M. Thompson
J.E. Tenorio Building
PMB 917 Box 10001
Saipan, Mariana Islands 96950
Telephone: (670) 233-0777
Facsimile: (670) 233-0776

E-FILED
CNMI SUPERIOR COURT
E-filed: Apr 21 2008 11:36AM
Clerk Review: Apr 21 2008  2:10PM
Filing ID: 19484514
Case Number: 07-0152-CV
Bernie A Sablan

*Attorney for Trustee for the GET Realty Trust*

IN THE SUPERIOR COURT

FOR THE

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

UNITED MICRONESIA DEVELOPMENT, INC. and UMDA LAOLAO LLC

                    Plaintiffs,

v.

ROBERT PFAFF, et al.

                    Defendants.

CIVIL ACTION NO. 07-0152

DEFENDANT TRUSTEE FOR THE GET REALTY TRUST'S  REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION

Date:  April 22, 2008
Judge: Hon. Juan T. Lizama

    Defendant Trustee for the GET Realty Trust ("GET"), by and through its counsel, Colin M. Thompson, hereby files this reply in support of the Trustee's Motion for Reconsideration of the Court's order authorizing the withdrawal of approximately $950,000 from the blocked Bank of Hawaii bank accounts that are the subject of this Court's November 13, 2007 Preliminary Injunction. In addition, Defendant responds to the Plaintiffs' "Report to the Court Regarding The Enjoined Funds," dated March 31, 2008 ("Plaintiffs' Report"), and the "Notice Regarding Disbursement of Remaining Escrow Funds," dated October 29, 2007 ("Plaintiffs' Notice").

# I. **INTRODUCTION**

Despite a temporary restraining order and preliminary injunction which froze the cash paid to UMDA Lao Lao, LLC ("Lao Lao" or the "LLC") from the sale of the Lao Lao Golf Course that was not distributed to selected LLC members as of May 23, 2007, the date of the TRO, Plaintiffs have made withdrawals, *see* Plaintiffs' Notice at 1, and deposits, *see* Plaintiffs' Report at 2, all apparently without Court approval, and have instructed the Bank of Hawaii to transfer and realign the original accounts. *See id.* at 3-4. Prompted by the filing of GET's motion concerning the January 2008 withdrawal of funds from the Bank of Hawaii, Plaintiffs now claim to have discovered "banking error" in the accounting of the funds. These are the funds allegedly attributable to Defendant Monte Perucho Investiduras, LLC. *See* Plaintiffs' Report at 1-2. Then, without court approval, Plaintiffs "closed existing time deposit accounts...and transferred all of their funds" to new accounts. *Id.* at 3. It remains a mystery to GET and the other Defendants why Plaintiffs seem to have unfettered ability to manipulate funds on deposit in court-supervised *blocked* accounts at the Bank of Hawaii, or why the Bank of Hawaii has accepted directions from Plaintiffs' counsel after the original TRO was issued in May 2007. What is clear is that there has been no *independent* accounting of the money subject to the TRO and the Preliminary Injunction, the Court did not approve certain banking transactions and Plaintiffs' conduct with respect to the money raises significant concerns about whether the money has, in fact, been protected by the Court's order.

As importantly is the haste with which the Plaintiffs' acted in obtaining an order releasing the funds allegedly attributable to the Monte Perucho interest in the LLC. Plaintiffs filed their request for release of the funds, nearly one million dollars, at 3:13 pm on January 28, 2008, and apparently asked the Court for the signed order by the next morning. By 8:13 am, on January 29, the proposed order was signed. There was absolutely no opportunity to audit the calculations (which Plaintiffs now admit were wrong), or even to evaluate the propriety of any release of funds. Given the Court's repeated concern that the *status quo* be maintained pending the outcome of trial, the

1  Court's order of January 29, 2008 should be withdrawn. The Court previously stated that the pre-

2  injunction release of LLC money to some of the LLC members already upset the *status quo*. *See*

3  Preliminary Injunction at 16 ("While UMDA's distribution of proceeds to selected LLC Members

4  did not act to preserve the status quo, the Court finds that the status quo would be further upset by

5  the complete distribution to all Members."). Clearly, further distributions should not be allowed

6  until the litigation is resolved.

7       Plaintiffs' filings demonstrate improprieties. The money subject to the Court's injunction,

8  was mismanaged and misappropriated by acts which include (a) the release of additional funds to

9  selected LLC members while the TRO was in place; (b) the release of the frozen funds allegedly

10 attributable to Monte Perucho, without notice to the other parties to the litigation; (c) errors made by

11 Plaintiffs in the accounting of the frozen funds; (d) transfers to and from the accounts subject to the

12 TRO and Preliminary Injunction; and (e) improper efforts to release additional funds attributable to

13 Defendant Paul Dingee. Plaintiffs conduct and the very basis of the Preliminary Injunction should

14 compel the Court to require Plaintiffs to (a) return all money taken from the account frozen by the

15 Court, including that portion of the escrow account held following the sale of the Lao Lao golf

16 course totaling $59,380.88 plus interest; (b) return the money hastily withdrawn in January, plus

17 interest (totaling approximately $940,754.11); (c) order an accounting, *at UMDA's expense* and

18 under Court supervision, of the monies held subject to the TRO and Preliminary Injunction; and (d)

19 so long as the Preliminary Injunction is in effect, retain *all of the money* held in the Bank of Hawaii

20 accounts pending the outcome of the litigation.

21       ///

22       ///

23       ///

24

25

3

## II.    DEFENDANTS' MOTION FOR RECONSIDERATION WAS PROCEDURALLY CORRECT

Under Com.R.Civ.P. 59(e), parties may challenge an order or judgment entered by the Court by way of a motion to alter or amend the judgment, commonly characterized as a motion for reconsideration.    Plaintiffs correctly state the need for a showing of clear error or manifest injustice.  The Court's execution of the Plaintiffs prepared order was erroneous because it denied parties their due process rights and violated our rules of civil procedure. The Rules of Civil Procedure require a motion to obtain a Court Order.

The Commonwealth's Rules of Civil Procedure make no provision for obtaining a Court order by the filing of "stipulations" executed by only a small fraction of the parties to litigation. Parties to litigation may file *motions* pursuant to the Rules.  The Rules expressly provide that an application for a court order "*shall* be by motion . . . ."  Com.R.Civ. P. Rule 7(b)(1)(*emphasis added*).  The mandatory word "shall" cannot be interpreted to allow application for a court order by some method other than by a motion.

Along with a *motion,* a party seeking a court order must also file a notice of hearing. Com.R.Civ.P. 7(b)(7) clearly states:

> A notice of hearing *shall* be attached to or incorporated in each written motion filed with the court.  The day, date, and time of hearing shall be designated by the filing clerk at the time of filing or as soon thereafter as practicable.

*Id.* (*emphasis added*).  Thus under the Commonwealth's Rules, not only is a litigant required to file a *motion* and a *request for a hearing* to obtain a court order, but the movant is also required to provide *notice* – to serve opposing parties with copies of the motion and the notice of a hearing.

The Rules make it clear that to obtain a court order to modify the Preliminary Injunction Order (issued by this Court on November 13, 2007), the relief sought by Plaintiffs must be made through a motion and noticed hearing to allow the parties to the litigation to file responsive papers and be fairly heard.    That is, Plaintiffs were required under the Rules to file a motion, not a

4

"stipulation." In other words, the Civil Rules contemplate that every motion, unless permitted to be heard *ex parte,* shall be determined by the court only after a hearing. *Breeding v. Herberger,* 611 N.E.2d 374, 376 (Ohio App. 10 Dist.,1992).[1] While the rules contemplate allowing a party to make an *ex parte* application for an expedited or extended briefing schedule, they do not contemplate the complete abrogation of a hearing or the denial of the opportunity for parties to the litigation to be heard at all. While the Rules also contemplate the filing of *ex parte* motions in very limited or extraordinary circumstances, such as for a scheduling order pursuant to Rule 6 or a temporary restraining order pursuant to Rule 65, the Rules do not provide for *ex parte* relief for motions brought pursuant to Rules 59 or 60, under which a party may seek to amend a judgment or to seek relief from a judgment or order.

Since the actions of the Plaintiffs seeking release by "stipulation," without realistic notice to other interested parties and without a hearing, the proper remedy is for the Court to reconsider its hasty order granting Plaintiffs the relief they sought by "stipulation." Plaintiffs complain that "reconsideration is not appropriate." Plaintiffs Opposition at 7. However, here there was clear error in the procedure and speed with which Plaintiffs sought the release of blocked money, and the release of any funds now would be manifestly unjust. One of the basic underlying rationales of the Court's decision to grant the Preliminary Injunction was to maintain the *status quo* going forward, even though Plaintiffs' unilateral decision to release the LLC money to some, preferred investors, and not others, "did not act to preserve the status quo." Preliminary Injunction at 16. Defendants do not believe the issuance of a Preliminary Injunction was appropriate, but the Court having issued

---

[1] The Commonwealth's Rules of Practice are also in accord with the hearing requirement. Com.R.Prac. Rule 8(c) states that "[t]ogether with the filing of a written motion, a Notice of Hearing shall be attached to and made a part of the pleadings. The day, date and time of hearing shall be designated and inserted by counsel. Service of a copy of the pleadings shall be made upon opposing counsel or party by the movant in accordance with the Commonwealth Rules of Civil Procedure – Rules 5 and 6. A certificate of Service shall be filed by the movant with the clerk of Court on or before the date of hearing.

one, now must insure that it applies equally to Defendants *and Plaintiffs*. The release of any funds now, pending the trial on the merits, plainly violates the intent of the Preliminary Injunction.

## III.   THE COURT MUST PROACTIVELY PROTECT THE LLC'S ASSETS

This Court issued an Order on November 13, 2007, to maintain the *status quo ante* of the funds of the LLC pending resolution of the litigation.

> . . . [U]nder the status quo prior to the instant dispute, UMDA was the manager of LLC, and the Fund was as-of-yet undistributed. While UMDA's distribution of proceeds to selected LLC Members did not act to preserve the status quo, the Court finds that the status quo would be further upset by the complete distribution to all Members.

Preliminary Injunction at 16.

As the Court and Plaintiffs now know, Defendants to this action have filed counterclaims against the Plaintiffs as well as claims against additional third parties. The status of the funds frozen by this Court are very much in dispute. The Defendants lay claim to those funds and have brought additional claims for damages. It is apparent from the Plaintiffs' filings (including the declaration of Timothy Bellas) that they have been dipping their hands into the till of disputed and allegedly frozen funds and thereby violating the Order of this Court. Further, based on Plaintiffs' filings, it is apparent Plaintiffs have prejudicially partitioned the frozen funds in a discriminating manner in violation of their fiduciary obligations and in violation of this Court's Order. This Court must seize control of the funds and order an accounting of the funds from the inception of the presently and previously frozen account or accounts established following the sale of the Lao Lao LLC's assets, and order Plaintffs to return of any funds improperly dissipated since the establishment of the accounts. At a minimum, the Court should order the immediate return, plus interest, of the money (a) taken by UMDA after the TRO was entered and before the Preliminary Injunction was issued,

totaling $59,380.88, plus interest; and (b) the $940,754.11, plus interest withdrawn on or about January 28, 2008.

Through this motion, Defendant Trustee for GET moves this Court to seize control of the disputed funds, order an accounting at *UMDA's expense,* determine the whereabouts of all dissipated funds, issue necessary and appropriate orders for the return of all improperly dissipated funds, and otherwise safeguard and control the funds until resolution of the litigation.


**IV.    THE PLAINTIFFS' "STIPULATION" VIOLATES BOTH THE LLC ACT AND THE LLC'S OPERATING AGREEMENT**

In addition to having no procedural justification and violating this Court's Order, the proposal for a distribution under the Plaintiffs' "stipulation" is not only prejudicial to the LLC Equity Members such as GET, it is in violation of the Commonwealth's LLC Act.  Under Section 405 of the Act:

> Any distributions made by a limited liability company before its dissolution and winding up must be in equal shares [among all members].

In the "stipulation," UMDA purport to receive from Monte Perucho its interest in the LLC. Whatever the status of that "assignment" at the end of the litigation, that transfer of the LLC interest and a distribution of LLC property to the alleged assignee, UMDA, as a result of that transfer, at this juncture would not only violate the *status quo ante*, it would violate the Commonwealth's LLC Act.

The transfer of Monte Perucho's LLC interest and the payment of the Monte Perucho's purported LLC interest also violates the LLC's Second Amended Operating Agreement, which is attached to Plaintiffs First Amended Complaint. Under the Operating Agreement, before a member can assign or sell its interest (and presumably the distributions associated with that interest) to anyone, it must first offer the interest to other LLC Members. *See* Second Amended & Restated

1  Operating Agreement, §10.02.   Moreover, the assignor is obligated to indemnify all of the

2  "remaining Members," which includes GET, for any violation of the anti-assignment provisions of

3  the LLC Agreement.   Surely it would be imprudent, if not improper, for the Court to sanction a

4  transfer of Monte Perucho's interest and the related distributions purportedly associated with that

5  interest, in a manner that violates the LLC Agreement.

6

7                              V. <u>CONCLUSION</u>

8        Based on the foregoing, the trustee for GET Trust respectfully requests that the Court (a)

9  reconsider and reject the Stipulation and Order filed on January 29, 2008, (b) order the return of the

10 money taken by UMDA after the TRO was entered and before the Preliminary Injunction was

11 issued, totaling $59,380.88, plus interest; and the $940,754.11, plus interest withdrawn on or about

12 January 28, 2008; (c) order an independent accounting of the money held by the Bank of Hawaii, at

13 UMDA's expense; and (d) take all necessary steps to re-establish the *status quo ante* from the date

14 the account(s) were established.

15

16        DATED this <u>21st</u> day of April, 2007.

17

18                                          \s\
                                   _____

19                                 **COLIN M. THOMPSON, Esq.**
                                   Attorney at Law

20                                 Bar No.: F0221

21

22

23

24

25

# EXHIBIT 20

1  **THOMPSON LAW OFFICE, LLC**
   Colin M. Thompson, Esq.
2  J.E. Tenorio Building
   PMB 917 P.O. Box 10001
3  Saipan, Mariana Islands  96950
   Telephone: (670) 233-0777
4  Facsimile: (670) 233 0776

5  **THE PIERCE LAW GROUP, LLC**
   John P. Pierce (admitted pro hac vice)
6  4641 Montgomery Avenue, Suite 500
   Bethesda, MD  20814
7  Telephone: (301) 657 4433
   Facsimile: (301) 657-1433

8
   *Attorneys for Defendants, Laramie Fealty LLC, Trustee*
9  *For GET Realty Trust and KCT Irrevocable Trust*

10              IN THE SUPERIOR COURT

11                   FOR THE

12  COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

13

14  **UNITED MICRONESIA DEVELOPMENT**          CIVIL ACTION NO. 07-0152
    **ASSOCIATION, INC., and UMDA**
15  **LAOLAO LLC,**                            **NOTICE OF MOTION AND MOTION BY**
                                               **DEFENDANT TRUSTEE FOR THE GET**
16                 Plaintiffs,                 **REALTY TRUST AND KCT IRREVOCABLE**
                                               **TRUST'S MOTION FOR PROTECTIVE**
17        v.                                   **ORDER**

18  **ROBERT PFAFF, et. al.,**                 Date: _____
19                                             Time: _____
                   Defendants.                 Judge: Hon. Juan T. Lizama
20

21

22  **TO: PLAINTIFF UNITED MICRONESIA DEVELOPMENT ASSOCIATION, INC., and**
23  **UMDA LAOLAO, LLC AND THEIR ATTORNEYS OF RECORD:**

24

25

                                    1

## NOTICE

Please be advised that on _____, the Court will hear Defendant Trustee for the GET Realty Trust and KCT Irrevocable Trust's motion for Protective Order filed in the above title action.

## MOTION

Defendants, Laramie Fealty LLC, Trustee of Get Realty Trust and KCT Irrevocable Trust hereby moves the Court to hear the motion for Protective Order filed in the above title action. The basis for this motion is set forth in the memorandum of points and authorities filed herewith and all papers previously filed with this Court in this case.

Dated this 6<u>th</u> day of May, 2008.

_____/s/_____
**COLIN M. THOMPSON**
Attorney at Law
CNMI Bar No.: F0221

_____/s/_____
**JOHN P. PIERCE**
Admitted Pro Hac Vice

E-FILED
CNMI SUPERIOR COURT
E-filed: May 6 2008 7:59PM
Clerk Review: May 13, 2008
Filing ID: 19698189
Case Number: 07-0152-CV
Elsa Duenas

Colin M. Thompson, Esq.
Thompson Law Office LLC
J.E. Tenorio Building
PMB 917 Box 10001
Saipan, Mariana Islands 96950
Telephone: (670) 233-0777
Facsimile: (670) 233-0776
Bar No.: F0221

John P. Pierce, Esq.
The Pierce Law Group LLC
4641 Montgomery Avenue, Suite 500
Bethesda, MD 20814
Telephone: (301) 657-4433
Facsimile: (301) 657-1433
*Admitted Pro Hac Vice*

*Attorneys for Laramie Fealty LLC, Trustee of*
*GET Realty Trust and KCT Irrevocable Trust*

## IN THE SUPERIOR COURT

## FOR THE

## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED MICRONESIA DEVELOPMENT ASSOCIATION, INC. and UMDA LAOLAO LLC<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT PFAFF, et al.<br><br>Defendants. | CIVIL ACTION NO. 07-0152<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT TRUSTEE FOR THE GET REALTY TRUST AND KCT IRREVOCABLE TRUSTS' MOTION FOR PROTECTIVE ORDER** |

COMES NOW, Laramie Fealty LLC, Trustee for the GET Realty Trust ("GET") and KCT Irrevocable Trust ("KCT"), by and through their Counsel, and hereby move this Court for a protective order (a) disallowing the deposition of Thomas Sorenson as the Com.R.Civ.P. 30(b)(6) designee and rescheduling the depositions to a time convenient for all counsel and (b) for a protective order that certain confidential information not be revealed or revealed only in a designated way. This motion is based on the memorandum, attached exhibits and the applicable law.

1

# I. CERTIFICATION OF CONFERENCE

Counsel for the Trustee of GET and KCT certifies that, pursuant to Com.R.Civ.P. 26(c), they have conferred in good faith with counsel for the plaintiffs in this case concerning the relief requested herein.    The parties, however, have not been able to resolve their differences. Consequently, Trustee for GET and KCT files this motion for a protective order.

# II. LAW AND ARGUMENT

## A. Standard of Review

Courts are given broad discretion in supervising the pretrial phase of litigation.  *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).    Additionally, Rule 26(c) of the Commonwealth Rules of Civil Procedure provides that:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) that discovery not be had;
>
> (2) that the discovery may be had only on the specified terms and conditions, including a designation of the time and place;

In resolving a Rule 26(c) motion, the Court must weigh the need of the party seeking the discovery against the burden on the party producing it.  *A Helping Hand, LLC v. Balt. County*, 295 F. Supp. 2d 585, 592 (D.Md. 2003).  One seeking a protective order carries the burden to show good cause and the right to be protected.  *Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625, 630 (D. Kan. 2000).

## B. Protective Order Disallowing The Deposition Of Thomas Sorenson As The Com.R.Civ.P. 30(b)(6) Designee And Rescheduling The Depositions To A Time Convenient For All Counsel

2

1   The Trustee for GET and KCT moves for a protective order disallowing the deposition of

2   Thomas Sorenson as the Com.R.Civ.P. 30(b)(6) designee and rescheduling the depositions to a time

3   convenient for all counsel.  This motion for a protective order is brought in conjunction with the

4   Trustee's motion for reconsideration of the Court's Discovery Order After April 15, 2008

5   Emergency Hearing issued on April 18, 2008.

6   When Plaintiffs originally noticed the depositions of GET and KCT, they were noticed

7   pursuant to Com.R.Civ.P. 30(b)(6).  Mr. Sorenson consented to attend the depositions as GET's and

8   KCT's designated representative.  This was fine with the successor trustee, Laramie Fealty LLC, as

9   Mr. Sorenson was the trustee of GET and KCT during the relevant period.[1]  When the depositions

10  were originally scheduled for GET and KCT pursuant to Com.R.Civ.P. 30(b)(6) and Thomas C.

11  Sorenson in his individual capacity ultimately pursuant to Com.R.Civ.P. 45, they were scheduled for

12  three consecutive days and under certain conditions (such as a four-hour-per day limit) to

13  accommodate Mr. Sorenson, who is 70 years old and suffers from several health issues.  Mr.

14  Sorenson consented to serve as the designee for the trusts under those conditions.  However, by

15  negligence or design, plaintiff failed to provide notice of the depositions to all parties as explicitly

16  required by the Commonwealth Rules of Civil Procedure.  Hours prior to the start of the GET

17  deposition in Florida, counsel for defendant Deloitte & Touche complained about never receiving

18  notice of the depositions of GET and KCT.  As a result, counsel for Mr. Sorenson, knowing that Mr.

19  Sorenson adamantly opposed having to attend more depositions than were necessary[2], refused to go

20

21  [1]  The Trustee for GET and KCT notes that Com.R.Civ.P. 25(c) does not require that the person now holding
22  the interest transferred be substituted for the transferor party.  See, e.g., *Educational Credit Management
    Corp. v. Bernal*, 207 F.3d 595, 598 (9th Cir. 2000)(Rule 25(c) requires no action by anyone after transfer of
    interest; judgment binds successor in interest even if successor is not named).
23  [2]  The Trustee notes that Rule 30(a)(2)(B) of the Commonwealth Rules of Civil Procedure provides that: "A
    party must obtain leave of court, which shall be granted to the extent consistent with the principles in Rule
24  26(b)... if, without the written stipulation of the parties... the person to be examined already has been
    deposed in the case..."
25

3

1  forward with the deposition since other parties threatened to notice additional depositions of Mr.

2  Sorenson if they were not allowed to participate in the original depositions of Mr. Sorenson.

3      Counsel for GET, KCT and Sorenson attempted to continue the depositions to three

4  consecutive days in May when all interested counsel could attend, and counsel proposed two groups

5  of dates available to Sorenson.  UMDA's counsel rejected this offer.  The parties agreed to bring this

6  matter before the Court for direction.

7      At the telephonic hearing with this Court on April 14, 2008 (Florida time), the Court ordered

8  that the deposition of Thomas Sorenson as a Rule 45 witness would go forward on April 16, 2008.

9  This occurred as ordered.

10      Following the telephonic hearing, plaintiff UMDA prepared a proposed order stating that the

11  depositions of GET Realty Trust and KCT Irrevocable Trust be continued to among seven specified

12  days in May with a reference to a specific individual, Thomas Sorenson, as the representative for the

13  trusts, which plaintiffs are seeking to depose pursuant to Rule 30(b)(6), and even a city for the

14  depositions.[3]  (See Discovery Order After April 15, 2008 Emergency Hearing at 1).  Counsel for

15  various defendants, including counsel for the Trustee of GET and KCT, objected to the proposed

16  language specifying but a few dates in May without attempting to coordinate with the calendars of

17  all counsel to the litigation, and objected to a reference to a particular person for the depositions of

18  the two trusts being sought pursuant to Com.R.Civ.P. 30(b)(6).  (See Exhibit A).  Despite these

19  objections, the Court signed the order with the language proposed by plaintiff UMDA that included

20  specification of a particular witness, Thomas Sorenson, as the Rule 30(b)(6) designee of GET and

21  KCT, and specification that the depositions be conducted among seven specified dates in May.  (See

22  Discovery Order After April 15, 2008 Emergency Hearing at 1).

23

24  _____

25  [3] GET and KCT maintain their assertion that a trust cannot be compelled to provide a deposition under Com.R.Civ.P. 30(b)(6), but this Court ruled to the contrary, and accordingly, the trusts will present designees pursuant to Rule 30(b)(6) while preserving their objection.

4

As Mr. Sorenson testified at his deposition that proceeded on April 16 (Florida time) pursuant to Rule 45 and this Court's order, he resigned as trustee of the trusts effective at the end of 2007 due to his age, declining health, and other issues.  Given the rigors of testimony and having already testified as an individual, and since the depositions of the trusts will now be held on different dates, at times inconsistent with the original agreement with UMDA's counsel, Mr. Sorenson is no longer consenting to serve as the designee witness for the Trusts.

Pursuant to Com.R.Civ.P. 30(b)(6), an "organization... shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf... " at a deposition.  The identification of a particular person to serve as a Rule 30(b)(6) witness is not contemplated by the Rule or available as part of an order regarding the Rule 30(b)(6) deposition. See, *e.g.*, *Cummings v. General Motors Corp.*, 365 F.3d 944, 953 (10th Cir. 2004)(stating that "To the extent the Cummings attempted to depose specific individuals, their service of notice to GM was in error.  Under Federal Rule of Civil Procedure 30(b)(6), a party may issue a notice of intent to take a deposition to an organization, and then the organization shall designate 'one or more officers, directors or managing agents, or other persons who consent to testify on its behalf.' The corporate entity itself designates the representative.")

Thus under Com.R.Civ.P. 30(b)(6), it is up to the organizations, i.e. GET and KCT, to designate a person to testify on their behalf.  The plaintiffs cannot designate whom they want to depose through Com.R.Civ.P. 30(b)(6).  See *Operative Plasterers' & Cement Masons' Intn'l Ass'n v. Benjamin*, 144 F.R.D. 87, 89 (N.D.Ind. 1992)(stating that a Rule 30(b)(6) notice of deposition was defective for, among other reasons, because it named a specific individual).  Moreover, under Com.R.Civ.P. 30(b)(6), the person designated by the organization must consent to testify on the organization's behalf.

It is axiomatic that as a Rule 30(b)(6) subpoena cannot purport to identify a particular designee witness, so too an order regarding the Rule 30(b)(6) deposition cannot specify Mr. Sorenson to serve as the trusts' designee. Further, Mr. Sorenson is no longer available to be the Trusts' Com.R.Civ.P. 30(b)(6) designated deponent. As noted, Mr. Sorenson had consented to serve as the trusts' witness under the original agreed upon terms and conditions. However, Mr. Sorenson has now revoked his consent and as per Com.R.Civ.P. 30(b)(6), GET and KCT cannot designate him to testify on their behalf. Accordingly, Mr. Sorenson cannot be the Rule 30(b)(6) designated deponent.

Defendant notes that UMDA is not prejudiced by Sorenson no longer consenting to serve as the trusts' Rule 30(b)(6) witness: UMDA deposed Sorenson pursuant to Com.R.Civ.P. 45 on April 16, 2008. Indeed, the only entities prejudiced by Sorenson's withdrawn consent to sit as the organization's designee pursuant to Rule 30(b)(6) are GET and KCT, inasmuch as the trusts already expended the resources to prepare him for the depositions of the organizations and must now commit the resources necessary to prepare another witness. It was of no fault of GET or KCT – or Sorenson – that UMDA failed to provide notice to all parties to the litigation that it intended to depose GET and KCT on April 14 and April 15, and certainly GET and KCT should not be punished for having to prepare another witness as a result of UMDA's failed notice. Consequently, the Court should enter a protective order disallowing the deposition of Thomas Sorenson as GET's and KCT's Com.R.Civ.P. 30(b)(6) designee.

The Trustee for GET and KCT further seeks a protective order providing for relief from the specified dates and designated city for the deposition. Despite having invested considerable effort preparing Mr. Sorenson to serve as the Trusts' representative under Rule 30(b)(6), counsel must now undertake the process of preparing a new witness and is working with the manager of the new

6

trustee, Laramie Fealty LLC, on that undertaking. This is no small task and involves considerable expense, in large measure necessitated because UMDA failed to properly notice the original depositions so that all parties to the litigation could participate. The schedules of the trustee's manager, Jay Zebrowski, and counsel to GET and KCT, cannot accommodate depositions of KCT and GET during the specific dates mentioned in the proposed Order drafted by UMDA. However, KCT and GET will be available in Denver, Colorado for depositions less than a week later during the week of May 19-23, 2008.

Counsel for Defendants note that the original depositions of GET, KCT and Sorenson were coordinated to take place in April to allow all counsel to travel from the Sorenson deposition in Lakeland, Florida, to Denver for the deposition of defendant Sasquatch, and then to Los Angeles for the deposition of defendant Robert Pfaff. Three days prior to the GET and KCT depositions, plaintiff UMDA canceled the Sasquatch deposition without notice to any counsel (except perhaps Sasquatch's) and without coordinating that scheduling change with all counsel. The tactic reflects UMDA's belief that it can deal with individual defendants without coordinating with all defendants or considering the impact such attempted isolation has on other defendants who have a right to participate in all of discovery. Due to the late cancellation of the Sasquatch deposition without notice to or consultation with other counsel, GET and KCT have already suffered considerable unnecessary expense. To avoid additional unnecessary expenses, Counsel for GET and KCT is hopeful that the trusts' depositions can be coordinated around the deposition of Sasquatch, also intended for Denver.

Upon consideration of the reasons advanced for having a protective order issued in this case, the Court must come to the conclusion that a protective order is warranted. Accordingly, the Court

7

should issue a protective order disallowing the deposition of Thomas Sorenson as the Com.R.Civ.P. 30(b)(6) designee and rescheduling the depositions to a time convenient for all counsel.

## C. Protective Order Regarding Confidentiality

In the Court's "Order Following February 19, 2008 Hearing" issued on April 4, 2008, the Court stated that "[t]he Court is cognizant of the sensitivity of the information that would presumably be included in the discovery request documents." The Court further stated that it "agrees that personal information such as social security numbers, banking information, and other such personal and private information should certainly be redacted from any documents." (Order at 9). The Court admonished the parties to stipulate to a mutually agreeable confidentiality agreement, however, "[i]f the parties can not do so then the Court gives leave to file another motion for the Court to decide." (Order at 10). After extensive discussion amongst the parties, the parties have failed to reach an agreement on the contents of the confidentiality agreement. As a result, Defendant moves the Court to enter a protective order regarding confidentiality.

Defendants move this Court for a protective order requiring certain confidential information not be revealed or revealed only in a designated way. Under the Commonwealth Constitution, Article I, Section 10, "[t]he right of individual privacy shall not be infringed except upon a showing of compelling interest." The public, of course, is entitled to information presented through the public forum of a trial, where the Court oversees the introduction of relevant and otherwise admissible evidence. The public is *not* entitled to information exchanged through the discovery process of civil litigation. *Anderson v. Cryovac*, 805 F.2d 1, 13 (1st Cir. 1986). "The right of public access to court records applies to records of both civil and criminal proceedings, and applies not only to written material but also to electronic evidence. The right applies to filed documents, but not to unfiled discovery material... The right of public access to court records applies only to public judicial documents which have become part of the public record. Thus, the right does not apply to unfiled discovery material, and it has been stated more generally that the right does not apply to

1   material used only in discovery." *Corpus Juris Secondum* Records § 83.  See also *Public Citizen v.*

2   *Liggett Group, Inc.*, 858 F.2d 775 (1st Cir. 1988).

3           In reality, the parties are not that far apart as to the contents of any confidentiality agreement.

4   The main point of contention is what constitutes "confidential information" and what should be

5   redacted as personal data identifiers.   At section 1.3 of Defendant's Proposed Confidentiality

6   Protective Order (attached as Exhibit B) defines "Confidential Information" means,

7           any personal, private, business or financial information, whether or not embodied in
8           any physical medium, which the Producing Party believes in good faith is not
            generally known and which the Producing Party designates as Confidential.  Any
9           summary, compilation or copy of any Confidential Information shall also constitute
            Confidential Information.
10
    Section 5 of the Proposed Confidentiality Protective Order further states that:
11
12          To protect against the unwarranted disclosure of Confidential Information, the parties
            shall refrain from including Confidential Information in the pleadings filed with the
            Court, including exhibits thereto, whether filed electronically or on paper, unless
13          otherwise ordered by the Court.   Confidential Information may be filed under seal
            with the Court.
14
15  The Defendant believes that this definition of Confidential Information and the redaction directive

16  protects the right to privacy guaranteed in Article I, Section 10 of the Constitution of the CNMI.

17  Defendant also believes that these provisions, as well as the other provisions contained in

18  Defendants' proposed Confidentiality Protective Order faithfully fulfill the Court's privacy standard,

19  i.e., "that personal information such as social security numbers, banking information, and other such

20  personal and private information should certainly be redacted from any documents."  It is Defendant

21  Trustee's understanding that almost all defendants concur in the language contained in this proposed

22  Confidentiality Protective Order.

23          Plaintiffs proposed definition of "Confidential Information," on the other hand, is far too

24  narrow and ambiguous.    Plaintiffs' version limits confidential materials to that meeting the

25

9

1  requirements for sealing under Com.R.Civ.P. 26.  This Rule does not provide any standard for what

2  is confidential information.  So the inclusion of this reference makes the definition circular and

3  confusing.  As another example of ambiguity, if a party believes a document is not confidential,

4  there is a remedy in section 6.7.1 of Plaintiffs' proposed confidentiality protective order, but that

5  section also suffers from the same problem as the definition of Confidential Information referring to

6  Com.R.Civ.P. 26.  In fact it is doubly circular since that section refers to the party having the burden

7  to prove the document is confidential under the agreement and that it meets the standards in rule 26.

8       In addition to Plaintiffs' confusing definition of Confidential Information, section 5 of

9  Plaintiffs' Proposed Confidentiality Protective Order contains a very narrow and exclusive list of

10  information that should be redacted.  This list of personal information barely protects the

11  confidentiality of any party to this litigation.

12       Plaintiffs' proposed confidentiality order fails to uphold the right to privacy guaranteed in

13  Article I, Section 10 of the Constitution of the CNMI.  The language contained in Plaintiffs'

14  proposed confidentiality order further fails to uphold the privacy standard enunciated by the Court in

15  its April 4, 2008 Order.  By contrast, Defendant's proposed Order faithfully fulfills both mandates.

16  Accordingly, the Court should grant Defendant's motion and enter Defendant's proposed protective

17  order requiring certain confidential information not be revealed or revealed only in a designated

18  way.

19  ///

20  ///

21  ///

22  ///

23

24

25

10

## III. CONCLUSION

Based on the foregoing, Laramie Fealty LLC, Trustee for GET and KCT respectfully request that the Court grant this motion and (a) enter a protective order disallowing the deposition of Thomas Sorenson as the Com.R.Civ.P. 30(b)(6) designee and rescheduling the depositions to a time convenient for all counsel; and (b) enter Defendant's proposed protective order requiring certain confidential information not be revealed or revealed only in a designated way.

DATED this  6th  day of May 2008.

/s/
COLIN M. THOMPSON, ESQ.
Bar No.: FO221

# EXHIBIT 21

E-FILED
CNMI SUPERIOR COURT
E-filed: May 12 2008 9:45PM
Clerk Review: May 14, 2008
Filing ID: 19779545
Case Number: 07-0152-CV
Elsa Duenas



1   **Colin M. Thompson, Esq.**
    THOMPSON LAW OFFICE, LLC
2   J.E. Tenorio Building
    PMB 917 P.O. Box 10001
3   Saipan, Mariana Islands 96950
    Telephone: (670) 233-0777
4   Facsimile: (670) 233 0776

5   **THE PIERCE LAW GROUP, LLC**
    John P. Pierce (admitted pro hac vice)
6   4641 Montgomery Avenue, Suite 500
    Bethesda, MD  20814
7   Telephone: (301) 657 4433
    Facsimile: (301) 657-1433

8   *Attorneys for Laramie Fealty LLC,*
    *Trustee of GET Realty Trust*
9

10                  **IN THE SUPERIOR COURT**

11                         **FOR THE**

12      **COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

13

14  UNITED   MICRONESIA   DEVELOPMENT,    **CIVIL ACTION NO. 07-0152**
    INC. and UMDA LAOLAO LLC
15                                         **JOINDER IN ROTHSCHILD TRUST**
                          Plaintiffs,      **LIMITED, TRUSTEE FOR CONCORD**
16                                         **TRUST AND DAVINA LIMITED'S**
        v.                                 **OPPOSITION TO PLAINTIFFS' MOTION**
17                                         **FOR RECONSIDERATION OF APRIL 23,**
    ROBERT PFAFF, et al.                   **2008 ORDER FOLLOWING APRIL 8, 2008**
18                                         **HEARING AND CROSS-MOTION FOR**
                          Defendants.      **PRELIMINARY INJUNCTION TO ENJOIN**
19                                         **TRANSFER OF LAOLAO LLC**
                                           **MEMBERSHIP**
20

21                                         **Date:**  May 27, 2008
                                           **Time:** 9:00 a.m.
22                                         **Judge:** Hon. Juan T. Lizama

23

24

25

                              1

Defendant, Laramie Fealty LLC, Trustee for the GET Realty Trust ("GET"), by and through its counsel, Colin M. Thompson, hereby joins in Rothschild Trust (Guernsey) Limited, Trustee for Concord Trust and Davina Limited's Opposition to Plaintiffs' Motion for Reconsideration of April 23, 2008 Order following April 8, 2008 Hearing and Cross-Motion for Preliminary Injunction to Enjoin Transfer of LaoLao LLC membership. Defendant incorporates by reference those points and authorities offered in its April 8, 2008 filing of Defendant Trustee for the GET Realty Trust's Memorandum in Support of Motion to Strike and Objection to Stipulation and Proposed Order and Motion for An Accounting of Funds.

Defendant reserves the right to provide such supplemental information, briefing and declaration as may be required to address issues raised in those motions adopted, joined and incorporated herein as may be necessary to fully advise the Court as to those motions.

DATED this 12th day of May, 2008.

/s/
**COLIN M. THOMPSON, ESQ.**
Thompson Law Office, LLC
CNMI Bar No.: FO221


/s/
**JOHN P. PIERCE, ESQ.**
Admitted Pro Hac Vice

2