# EXHIBIT 6

Colin M. Thompson, Esq.
Thompson Law Office LLC
J.E. Tenorio Building
PMB 917 Box 10001
Saipan, Mariana Islands 96950
Telephone: (670) 233-0777
Facsimile:  (670) 233-0776
Bar No.: F0221

*Attorney for Defendants GET Realty Trust,*
*and Thomas Sorenson, in his capacity as Trustee of GET Realty Trust*

### IN THE SUPERIOR COURT FOR THE

### COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED MICRONESIA DEVELOPMENT, INC. and UMDA LAOLAO LLC | CIVIL ACTION NO. 07-1052 APPEAL NO. _____ |
| Plaintiffs, | |
| v. | **NOTICE OF APPEAL** |
| ROBERT PFAFF, et al. | |
| Defendants. | |

TO THE CLERK OF THE COMMONWEALTH SUPERIOR COURT:

Pursuant to the Commonwealth Rules of Appellate Procedure, notice of appeal is hereby given that Defendants GET Realty Trust, and Thomas Sorenson, in his capacity as Trustee of GET Realty Trust, hereby appeal to the Supreme Court of the Commonwealth of the Northern Mariana Islands from the Order issued by the Honorable Juan T. Lizama granting Plaintiffs' motion for a preliminary injunction entered in this action on November 13, 2007.  The Order is attached hereto as Exhibit A

DATED this 13th day of December 2007.

/s/
COLIN M. THOMPSON
Attorney for Defendants

# EXHIBIT 7



By order of the court, *Judge Juan T. Lizama*

**For Publication**



E-FILED
CNMI SUPERIOR COURT
E-filed: Apr 4 2008 8:54AM
Clerk Review: N/A
Filing ID: 19268542
Case Number: 07-0152-CV
N/A

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

UNITED MICRONESIA
DEVELOPMENT ASSOCIATION, INC.
("UMDA"), and UMDA
LAOLAO LLC,

    Plaintiffs,

  v.

ROBERT PFAFF, et al.,

    Defendants.

CIVIL CASE NO. 07-0152

ORDER FOLLOWING FEBRUARY 19,
2008 HEARING

---

  THIS MATTER came on for hearing February 19, 2008 on a number of different motions presented by both plaintiffs and defendants. Arguing on behalf of plaintiffs, ("UMDA" and "UMDA LaoLao") was Robert O'Connor, Rodney Jacob, Timothy Bellas, and Alex Freeman. Appearing on behalf of the many defendants involved in this case were Colin Thompson, Loren Sutton, Robert Torres, Stephen Nutting, Pamela Brown, and John Pierce. After carefully considering the pleadings and the arguments made at the hearing, the Court will present its rulings.

BACKGROUND

  This case is one that involves multiple causes of action, multiple plaintiffs, multiple defendants, and certainly many pleadings and legal arguments. All sides involved present legally compelling arguments in support of their positions. The Court will frame this decision in the following order: service of process arguments made by Makov and the Rothschild defendants, motion to set aside default judgments made by the Rothschild defendants, arguments regarding personal jurisdiction made by Sorenson, KCT, Makov, and the Rothschild defendants, motions to

1

dismiss made by Makov, Dingee, Pfaff, GET Realty Trust, Sorenson, and KCT Irrevocable Trust, discovery rulings, protective orders, and motions to compel testimony.

The heart of this case involves allegations of corporate malfeasance and fraud. The plaintiffs involved, UMDA and UMDA Lao Lao LLC, allege that the defendants were all participants (in small or large ways) in an effort to deprive and harm UMDA. The plaintiffs group the multiple defendants under the umbrella term of Pfaff defendants. The defendants, who include Pfaff, Makov, Larson, Sorenson, and a large number of trusts and accounts, claim that the allegations, as pleaded, are insufficient to justify continued deliberation. The defendants also challenge personal jurisdiction, entry of defaults, faulty service of process, and have made motions to dismiss based on the insufficiency of the pleadings. Plaintiffs, in contrast, argue that the defendants are using the Court and these motions as dilatory tactics.

This case is not simple. It is a complex web of communications between many different parties whose varying levels of liability as yet remain unclear. Therefore the Court will address each issue in turn.

## MOTIONS

*Default and Faulty Service of Process Arguments*

I.    Defendant *Makov* had filed a motion to dismiss the claims against based upon a faulty service of process argument. However at the hearing his attorney, Loren Sutton, stipulated to service so this issue is moot.

II.   Defendants *Rothschild Trust Guernsey, Rothschild Trust Guernsey Limited Account 2299, Concorde Trust, and Davina Limited* had default judgments entered against them by the clerk of court. These defendants, represented by Pam Brown and Stephen Nutting, argued against these entries of default based on their allegation that service was improper due to the plaintiff's failure to follow the Hague Convention and local rules regarding service of process. However, during the course of the hearing counsel agreed to stipulate

to service in order to move the case along as it was clear there was actual notice. Therefore the Court will not rule on this issue as it is also moot because of counsel's consent to accept service. The default judgments entered against these defendants are hereby set aside. The plaintiffs will not be harmed by the setting aside of the default judgment, nor is there any element of surprise for either party if the default judgment is set aside. Therefore the Court grants the motion to set aside the default judgments entered against these four defendants.

*Personal Jurisdiction, Insufficient Contacts, and Improper Party Arguments*

III.    **Thomas Sorenson** contests personal jurisdiction. Sorenson is the trustee of one of the defendants involved in this case and is named in both an individual and trustee capacity. He is contesting personal jurisdiction over himself in an individual capacity. Sorenson, represented by Colin Thompson and John Pierce, argues that as an individual his contacts with the CNMI are too slight to allow personal jurisdiction. He does not contest the propriety of being sued as trustee.

In order for Sorenson (individual) to prevail on this motion he must show that as an individual there are not enough contacts with the CNMI to justify bringing him before the court.[1] Sorenson asserts that as an individual he has never visited Saipan, conducted business in Saipan, caused injury in Saipan, or committed an act outside of Saipan that affected the jurisdiction. The preceding list of examples is typical indicia of whether a person could reasonably be haled before a court under a long arm statute.

The Court concurs with Sorenson's assertion that his contacts, as an individual, are insufficient to satisfy the requirements for long arm personal jurisdiction. Therefore the Court grants defendant's motion on this count because there are insufficient contacts with the forum as an individual. The First Amended Complaint only names him a

---

[1] *Monticello v. Di-Ali Chem. Co,* 1998 MP 15, ¶ 9 (N. Mar. 1. 1998).

3

handful of times and does not sufficiently allege why Sorenson the individual should be named as a defendant in this matter. Therefore the Court grants Sorenson the individual's motion to dismiss based on failure of personal jurisdiction.

IV.     **K.C.T. Irrevocable Trust,** also contests personal jurisdiction based on the well known fact that a trust is an improper party to a lawsuit. This Court has ruled on prior occasions of the impropriety of naming a trust as a defendant. The properly named party in this instance would be the trustee. The defendants are correct in their assertion that an action can not be maintained against a trust; it must proceed in the name of the trustee. Rule 17 is clear and this Court will remain consistent with its prior rulings. Therefore the First Amended Complaint is dismissed with regards to K.C.T. Irrevocable Trust. However, so as not to damage any discovery or claims the plaintiffs may have the Court grants leave to amend the complaint to substitute the name of the trustee of K.C.T. Irrevocable Trust.

V.      **David Amir Makov** also appeared through counsel to contest personal jurisdiction based on an alleged lack of minimum contacts with the Commonwealth. Makov is represented in this motion by Loren Sutton. As mentioned earlier, the Court may only exercise jurisdiction over this nonresident defendant if the right is conferred by statute, or if there are sufficient minimum contacts to bring him before the Court.[2] A defendant's minimum contacts with the CNMI include a multitude of things.[3] Although Makov did submit an affidavit challenging the First Amended Complaint, his assertions do not rise to the level of justifying a dismissal. The Court denies this motion because the Court believes the plaintiff's evidence establishes, at the very least, a minimum basis of sufficient contacts

---

[2] *Bank of Saipan v. Superior Ct (Connell),* 2001 MP 1 at ¶ 21, 6 N.M.L 179, 186 (2001).

[3] Under the CNMI long-arm statute the court can gain jurisdiction over a non resident defendant if he transacts any business in the CNMI, causes tortious injury or damage within the Commonwealth by an act or omission done outside of the Commonwealth has an impact on the Commonwealth, does any act outside of the Commonwealth which causes or results in any harmful impact, injury, or damages within the Commonwealth, or does any act within or outside the Commonwealth from which a cause of action arises and for which it would not be unreasonable, unfair, or unjust to hold the person doing the act legally responsible in a Court in the Commonwealth. *See* 7 CMC §1102 (a)(1), (5), (7), and (8).

with the Commonwealth to justify the claim. Some of these contacts include his ownership in both the LLC and UMDA. Therefore the Court denies Makov's motion to dismiss based on a lack of personal jurisdiction.

VI.    **Davina, Concorde, Rothschild Limited, and Rothschild Account 2299** (hereinafter collectively referred to as the Rothschild Defendants) also appeared at the hearing to contest personal jurisdiction. These four defendants were represented at the hearing by Pamela Brown and Richard Pierce. Because the Court set aside their default judgment it can now rule on whether these four defendants should be dismissed for personal jurisdiction reasons. Defendants claim that there are insufficient contacts to justify personal jurisdiction and that two of the parties are not proper parties to a lawsuit.

Initially the plaintiffs must establish the jurisdictional arguments against the defendants. The plaintiffs in this case stated enough evidence to justify the inclusion. If the allegations made by plaintiffs regarding the actions of the defendants in this case are true then the Rothschild Defendants would have enough contacts with the Commonwealth to bring them into our courts. If these defendants are in fact fronts for the main "triad" of defendants (Makov, Larson, and Pfaff) as the plaintiffs allege then the Court does have jurisdiction. At this time the Court denies the motions to dismiss the First Amended Complaint against the Rothschild defendants.

The Court does however agree with the Rothschild defendants that the Rothschild Account 2299 is an improper party to this action. A bank account, a mere repository for money, is not a proper named party to this lawsuit. If the plaintiffs want to proceed against these parties they must name the correct persons, the trustees of these accounts and trusts. As the Court has advised earlier, the plaintiffs have leave to amend their complaint to name the correct parties. The Court does not think this will impose an

undue burden on either party because plaintiffs may still name the correct parties and defendants are already aware of the claims being made against them.

In sum, the Court denies the motion to dismiss based on insufficient contacts with the jurisdiction. Concorde is a trust and the proper means by which to bring them into this suit is through naming the trustee. This Court has found that a trust is an improper party unless specifically authorized by statute, and so it is the trustee who must be named as the real party in interest. The First Amended Complaint as it applies to Account 2299 is dismissed, as the bank account is not a proper party. The First Amended Complaint as it applies to Concorde is also dismissed until plaintiff's amend their complaint and names the trustee instead of the trust.

*Insufficient Pleadings in First Amended Complaint Arguments*

VII.    **David Amir Makov, Paul Dingee, Robert Pfaff, GET Realty Trust, Sorenson, and KCT Irrevocable Trust** have all filed or joined motions to dismiss the First Amended Complaint based upon challenges to the form and sufficiency of the pleadings in the document itself as well as individual specific challenges to charges made therein. As Plaintiffs state, the standard for a motion to dismiss is "all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party".[4] Because the defendants are the parties that are moving for dismissal, the facts (as alleged) are taken as true in the light most favorable to the plaintiffs. Therefore any of the facts alleged by the plaintiffs would have to be taken as true, unless rebutted with evidence or affidavits provided by the defendants. The defendants did not provide enough rebuttal evidence or affidavits to justify dismissal.

The essence of the argument that these defendants propose is that the pleadings in the First Amended Complaint were not pleaded with sufficient particularity or clarity to

---

[4] Com. R. Civ. Pro. 12 (b) (6) and 12(c)

6

allow the case and its claims to proceed. Grouping all the named defendants throughout the complaint as the Pfaff defendants for reasons of economy and non repetition does not doom the First Amended Complaint. The plaintiffs plead throughout the complaint the actions that these defendants are alleged to have committed in concert with each other. Without allowing the plaintiffs any discoveries to disprove their theories the defendants deprive UMDA of the chance to make the allegations more specific and particularized. Defendants also argue that the First Amended Complaint, as it is currently written, does not provide them with any warning as to what charges are against them. This argument holds no merit. Defendants surely understand from the First Amended Complaint that they are alleged to have acted in concert with each other to deprive UMDA of money, corporate opportunities, and exposed them to financial liability. Without discovery there is no way for them, or the Court, to dismiss these allegations as unfounded. From the evidence that plaintiffs have provided the Court it is clear that there is some wrongdoing that occurred. What is uncertain at this juncture is who or what entities committed acts that exposed them to legal liability. This is why the Court will allow these actions to proceed. Defendants also argue against plaintiff's use of the phrase "on information and belief". The Court finds this phrase entirely appropriate at this stage as defendants have not allowed plaintiffs to conduct any discovery. Therefore how else would they suggest the plaintiffs phrase their allegations?

While it is accurate to claim that the CNMI does not recognize the tort of civil conspiracy, this alone does not give sufficient reason to dismiss plaintiff's action and deny them the right to any discovery. While conspiracy may not be recognized here, it does not mean the corporate wrongdoing is allowed. The plaintiffs should be allowed to proceed procure any documents and depositions that can ultimately prove or disprove their allegations.

7

The Court also believes it is premature to grant these dismissal motions. Very little discovery has, as yet, occurred. It would cause undue burden to deny plaintiffs, at least initially, the opportunity to conduct discovery to find out if the claims they allege have evidence to prove their theories. As the facts are alleged by the plaintiffs, a dark picture of corporate malfeasance, insider secrets, and usurped opportunities is painted. However, their allegations require at least initial discovery to see if there is legal liability. If proven to be true then the defendants they have named would have been in the position to commit these acts as well as have intimate knowledge of the occurrences. Therefore, at this time the Court denies all of the motions made by the above named defendants to dismiss the First Amended Complaint as it relates to them.

As the Court sees it, at this early stage in the litigation the plaintiffs have pleaded their claims with sufficient particularity to survive a motion to dismiss. Defendants and plaintiffs are hereby ordered to conduct the requisite discovery. If after this discovery occurs, there is no further proof of the allegations then the defendants may move again for dismissal. At this time the Court denies the motions made by Makov, Dingee, Pfaff, GET, Sorenson, and KCT to dismiss based on the general argument of failure to state a claim or failure to plead with enough particularity.

VIII.    **KCT and GET Trusts** argue for dismissal of the First Amended Complaint Against them based on the fact that they are named in the complaint as trusts. In order to maintain an action against a trust the plaintiff must name the trustee, and not the trust as the proper party. Plaintiff's assertion that these are entities and therefore can be sued is not convincing. The Court gives leave for the plaintiffs to amend their complaint and name the correct parties, the trustees of these trusts. KCT and GET can not be proper defendants and so will be dismissed from the First Amended Complaint.

8

IX.  **Discovery** – The Court is pleased to learn of the pending scheduled depositions that have been agreed upon by the various parties. However the Court would implore all parties to work a little harder to schedule all requested discovery and depositions in the near future so as to move this case forward. The Court approves the scheduled depositions of :

| Deponent | Date | Time | Location |
|---|---|---|---|
| Paul Dingee | March 27, 2008 | 9:00 a.m. | San Francisco, California |
| Thomas Sorenson | April 16, 2008 | 9:00 a.m. | Lakeland, Florida |
| 30(b)(6) Deposition of Sasquatch II[11] | April 18, 2008 | 9:00 a.m. | Denver, Colorado |
| Robert Pfaff | April 21, 2008 | 9:00 a.m. | Los Angeles, California |

*Protective Order, 30 (b)(6) Objections, and Confidentiality Issues*

X. **Defendants GET, Sorenson, KCT, and Pfaff** all moved for a protective order which stated that discovery would be stayed until all parties involved are added to the case, or mandating that discovery may only be had under certain terms and conditions with certain confidential information to not be revealed, or only revealed in specific, protected ways. The Court is cognizant of the sensitivity of the information that would presumably be included in the discovery request documents. The Court agrees that personal information such as social security numbers, banking information, and other such personal and private information should certainly be redacted from any documents. However, the Court does not find defendants assertion that plaintiffs want to use discovery as a means of publicity compelling. Plaintiffs have a right to access documents relating to discovery in this case, and the Court believes counsel's promises that public dissemination for purposes of prejudice against defendants is not their purpose. The Court asks that counsel for all parties stipulate to a confidentiality agreement regarding the discovery documents and deposition

9

information. If after reasonable and diligent efforts to come to a mutually agreed upon confidentiality agreement then the parties should again move for the Court to enter an order.

The Court disagrees that keeping some of the information included in discovery and depositions as confidential would cause an undue burden. This case has dragged on far too long already. The Court admonishes both plaintiffs and defendants to come up with a preliminary agreement as to discovery requests and depositions so this case may move forward. The Court is mindful of the defendant's concerns regarding personal and banking information. However, closing off court proceedings or sealing all records would defy the spirit of an open court. Due to the local interest in this case the Court will deny the request to seal the case and all documents. However the Court does agree that any confidential or sensitive information must be redacted from the discovery and depositions before it may be introduced.

The Court believes it is in all parties' best interests to stipulate to a confidentiality agreement. If the parties can not do so then the Court gives leave to file another motion for the Court to decide. However, keeping confidentiality issues in mind, the Court orders both sides to comply with preliminary discovery as best they can. Plaintiffs correctly point out that the Court has already ordered discovery to go forward and so there should be no further delay. The Court does not see any problems with the plaintiffs' offer of a use restriction confidentiality agreement. However, at this time, the Court leaves it to the parties to agree on this point. As for the challenged depositions of GET and KCT for 30 (b)(6) reasons, the Court orders these defendants to comply with deposition and discovery requests.

*Motion to Compel Pfaff's Testimony*

XI.    Plaintiffs have also made a motion to compel Pfaff's testimony because they believe his assertion of the Fifth Amendment for nearly all of their questions was improper. In sum they argue that he should not be permitted to use the Fifth Amendment as a sword and a shield. The Court would implore Pfaff's counsel to advise his client that he should certainly answer questions that

10

could not possibly be self incriminating. If, in fact, Pfaff's purpose in asserting the Fifth Amendment is to block discovery in this case then the Court will certainly compel testimony. At this time, the Court is uncomfortable in demanding that Pfaff give testimony that he believes to be self incriminating, especially since the depositions have not yet occurred. After the depositions if the plaintiffs still believe that Pfaff should be compelled to testify they can make the motion.

CONCLUSION

For the reasons stated above the Court grants the motions of the Rothschild Defendants to set aside defaults, grants Sorenson the individual's motion to dismiss, denies Makov's motion to dismiss for insufficient contacts, grants the motion of KCT, GET, and Concorde to dismiss for being improper parties to the suit but gives leave for plaintiffs to amend complaint to name their trustees instead, grants the motion to dismiss Rothschild Account 2299 for being an improper party, denies the motions to dismiss for reasons of personal jurisdiction and insufficient pleadings made by defendants, approves agreed upon discovery, denies the motion that GET and KCT are not subject to depositions and discovery, and lastly declines to rule on the motion to compel Pfaff's testimony and a confidentiality order at this time.

SO ORDERED this ___ day of April, 2008.

/s/<br>
_____<br>
Juan T. Lizama<br>
Associate Judge, Superior Court

11

# EXHIBIT 8

**ROBERT J. O'CONNOR, ESQ., F0137**
**O'Connor Berman Dotts & Banes**
**Second Floor, Nauru Building**
**P.O. Box 501969**
**Saipan, MP 96950**
**Telephone No. (670) 234-5684**
**Facsimile No. (670) 234-5683**
*Attorneys For Plaintiff United Micronesia Development Association, Inc.*

**RODNEY J. JACOB, ESQ., F0186**
**Calvo & Clark, LLP**
**1st Floor, Macaranas Building**
**PMB 951 Box 10001**
**Saipan, MP 96950**
**Telephone No. (670) 233-2045**
**Facsimile No. (670) 233-2776**
*Attorneys For Plaintiff United Micronesia Development Association, Inc.*

**TIMOTHY H. BELLAS, ESQ., F0135**
**Law Offices of Timothy H. Bellas**
**P.O. Box 502845 C.K.**
**Saipan, MP 96950**
**Telephone No. (670) 670-323-2115**
**Facsimile No. (670) 323-2116**
*Attorneys For Plaintiff UMDA LaoLao, LLC*

**IN THE SUPERIOR COURT**
**OF THE**
**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

| | | |
|---|---|---|
| **UNITED MICRONESIA DEVELOPMENT ASSOCIATION, INC., and UMDA LAOLAO LLC,** | ) ) ) ) | **CIVIL CASE NO. 07-0152** |
| **Plaintiffs,** | ) ) ) ) ) | **NOTICE OF MOTION AND MOTION TO RECONSIDER THE COURT'S APRIL 4, 2008 ORDER DISMISSING THOMAS C. SORENSON (IN HIS** |
| **vs.** | ) ) ) | **INDIVIDUAL CAPACITY), GET REALTY TRUST AND K.C.T. IRREVOCABLE TRUST;** |
| **ROBERT PFAFF, et al.** | ) ) | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF** |
| **Defendants.** | ) ) ) | **THEREOF** |

{G0030864.DOC;1}

## <u>NOTICE OF MOTION & MOTION</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD, please take notice that on

_____, 2008 at ___ a.m./p.m. or as soon thereafter as this matter can be heard,

Plaintiff United Micronesia Development Association, Inc. ("UMDA") and UMDA LaoLao LLC

(collectively "Plaintiffs") will and hereby do respectfully move this Court to reconsider its

April 4, 2008 Order dismissing Thomas C. Sorenson (in his individual capacity), GET Realty

Trust and K.C.T. Irrevocable Trust. This motion is based upon this notice of motion and motion,

the memorandum of points and authorities included below, all pleadings on file in this matter,

and any argument that may be heard hereon.

Respectfully submitted this 28th day of April, 2008.

**O'Connor Berman Dotts & Banes**
**Calvo & Clark, LLP**
Counsel for Plaintiff *United Micronesia*
*Development Association, Inc.*

**Law Offices of Timothy H. Bellas**

Counsel for Plaintiff *UMDA Laolao LLC*

By:_____/s/_____     By:_____/s/_____
      RODNEY J. JACOB (F0186)          TIMOTHY H. BELLAS (F0135)

1

## MEMORANDUM OF POINTS & AUTHORITIES

### I.    INTRODUCTION

Over the past four or five months, Defendants have misled the Court as to the true identity of the trustee of GET Realty Trust ("GET"). Since last summer Thomas Sorenson and GET have repeatedly told the Court (including in a sworn affidavit) that Mr. Sorenson was the trustee of GET. But in November or December of last year, without any notice to the Plaintiffs or the Court, Mr. Sorenson allegedly resigned as trustee of GET and was replaced by something known as Laramie Fealty LLC—an entity as to which neither the Plaintiffs nor the Court have a single shred of information.

Defendants concealed that Sorenson had been replaced as trustee in order to secure the dismissals of GET, K.C.T. Irrevocable Trust ("KCT") and Sorenson in his individual capacity. In evaluating GET, KCT, and Sorenson's (in his individual capacity) motions to dismiss, the Court believed Defendants' representations that Mr. Sorenson was trustee of GET; its April 4 Order stated that "Sorenson is the trustee of one of the defendants involved in this case" and that Sorenson "does not contest the propriety of being sued as trustee." (April 4, 2008 Order at 3).

Based on the Defendants' representations, the Court dismissed Sorenson in his individual capacity, but pointed out that it was *not* dismissing him as trustee. What the Court did not know was that Sorenson had already been purportedly removed as trustee, both of GET and of KCT, that GET's records had already been transferred to Laramie Fealty LLC (whatever or whoever that is), and that GET's bank account had already been emptied and re-deposited at a secret new location. In short, Defendants (mis)led the Court to believe that, even if it dismissed Sorenson as an individual, he would still be available, as trustee, to ensure compliance with discovery

2

requests and to provide some assurance that a real person could be held accountable for the trusts' actions.

The Court dismissed GET and KCT on grounds that trusts are generally not proper parties to a lawsuit, but granted Plaintiffs leave to substitute the trustee of those trusts as the named defendant "so as not to damage any discovery or claims the plaintiffs may have." (April 4, 2008 at 4). But a primary argument for keeping GET and KCT in the case *as trusts*, however, was that the Pfaff-Defendants' game of shell companies and fraudulent transactions made it impossible to tell who the real parties in interest were for any given entity, including the trusts. By (falsely) assuring the Court that Sorenson would be available to answer Plaintiffs' allegations on behalf of the trusts, GET and KCT led the Court to believe that Plaintiffs would not be prejudiced by having to bring their case against the trustee, as opposed to the trusts themselves.

But now, there is no longer a trustee that Plaintiffs or the Court know *anything* about, no idea where GET's and KCT's documents have been moved to, and no information whatsoever as to who is the real authority behind Laramie Fealty LLC. Indeed, there is no reason to believe that it is not yet another shell company designed to shield Pfaff and his family from creditors and the arm of justice. This is especially egregious given that GET has been defendant Pfaff's principle instrument in this litigation, coordinating the "Assault on Saipan!" that sought to remove the disputed funds from the Court's jurisdiction, and since then repeatedly seeking to obstruct discovery from proceeding.

Now that Defendants' misrepresentations to the Court have been revealed, Plaintiffs seek to have the Court reconsider the dismissals of Sorenson in his individual capacity, GET and KCT. None of these parties would have been dismissed if the Court had known that Sorenson had been secretly removed as trustee and replaced by the unknown Laramie Fealty LLC.

3

Further, Defendants' misrepresentations, which they have yet to acknowledge, constitute a fraud on the Court and warrant sanctions.

## II.    ARGUMENT

### A.    New Evidence Justifies Reconsideration of the Court's Order

Reconsideration is appropriate when there has been "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Camacho v. J.C. Tenorio Enterprises, Inc.*, 2 N.M.I. 408, 414 (1992) (emphasis added). The new evidence here is of Defendants' misrepresentations and fraud upon the Court, which warrant reconsideration of the Court's April 4, 2008 Order and the reinstatement of GET, KCT, and Sorenson in his individual capacity in this action.

Since the beginning of this action, Defendants have told the Court and Plaintiffs that Sorenson is the Trustee of GET; all of the papers GET, Sorenson, and their counsel previously filed state such.[1] (*See, e.g.,* Sorenson 8/6/07 Affidavit at ¶ 1 (stating he is trustee of GET); 8/9/07 Motion by GET and Sorenson to Dismiss.) For example, in October, 2007, John Pierce submitted a pro hac vice application to represent Sorenson, both in his individual capacity and as the trustee for GET. The CNMI Supreme Court granted that application and permitted Mr. Pierce "to practice in the Commonwealth . . . for the sole purpose of representing GET Realty Trust, *Thomas C. Sorenson as Trustee of GET Realty Trust*, Thomas C. Sorenson in his individual capacity and K.C.T. Irrevocable Trust." (*See* Affidavit of Rodney J. Jacob in Support of Plaintiffs Motion to Reconsider the Court's April 4, 2008 Order, filed concurrently herewith ("Jacob Aff.") at Ex. A (emphasis added)).

---

[1] As the Court is aware, GET purports to own fifteen units in UMDA LaoLao (an alleged 35.71% ownership interest); it thereby lays claim to the largest purported interest in the funds under the Court's jurisdiction. (*See* Nov. 13, 2007 Order at 7).

4

Only a couple months ago, *after Sorenson had supposedly been replaced as trustee*, Mr. Pierce reaffirmed that Sorenson was GET's purported trustee: at the February 19, 2008 hearing, Mr. Pierce argued that, "[i]f there's any claim to go forward, it's against Sorenson the trustee." (Jacob Aff. Ex. B at 154.)

Given these (mis)representations, Plaintiffs were surprised by the counterclaims filed by Laramie Fealty LLC on April 8, 2008. (*See* Laramie Fealty LLC's Counter Claims for : 1) Breach of Contract; 2) Breach of Fiduciary Duty; 3) Conversion; 4) Accounting; 5) Constructive Trust Demand for Jury Trial). This was the *first* time Plaintiffs – or the Court – had heard of this Laramie Fealty entity. And Laramie Fealty did not explain who or what it was and when it allegedly became trustee – indeed, when Plaintiffs requested information regarding Laramie Fealty with regard to the amendment of their complaint, Defendants failed to provide a response. (*See* Jacob Aff. Ex. C & ¶ 4).

Thus, Plaintiffs had to wait until the deposition of Sorenson—a deposition, as the Court will recall, that Defendants did their best to avoid – to learn about Laramie Fealty. Indeed it took multiple orders to compel the deposition and an emergency hearing to ensure it actually convened. (*See* April 4, 2008 Order at 9; April 18, 2008 Order). Even at the deposition, however, Plaintiffs learned next to nothing because Sorenson used his "replacement" as trustee as a smokescreen.

Sorenson claimed to know very little about his supposed successor, Laramie Fealty. (Jacob Aff. Ex. D at 62:24-64:11.)[2] He stated that he resigned as trustee from both GET and

---

[2]At Sorenson's deposition taken just less than two weeks ago, Plaintiffs learned additional facts that Defendants have done their best to conceal. For example, Sorenson testified that Pfaff, through Morley – a defendant in this action who has made the strategic decision to default -- dropped $1.4 million into the account of RP Irrevocable Trust, which later became KCT and of which Defendant Pfaff was the trustee, to purchase 35,000 shares of UMDA. (Jacob

KCT back in November or December 2007 and, thus, no longer had documents belonging to either entity because, at some undisclosed time, GET's and KCT's documents had been sent to Laramie Fealty. (*Id.* at 36:4-37:2; 46:5-47:16; 50:4-13). He resigned shortly after Plaintiffs issued discovery requests to GET and during the time that GET issued its response to Plaintiffs' request.[3] He further testified that GET's and KCT's bank accounts had been emptied and new accounts opened. (*Id.* at 46:5-47:11). But Sorenson would not disclose where the new bank accounts are or where the documents are hidden. (*Id.* at 47:17-48:22; 62:24-64:6). His counsel forbid him to tell Plaintiffs the location of the new bank accounts, asserting that Sorenson is not authorized to disclose such information and that such information could "only" be disclosed by the new trustee. (*Id.* at 47:20-48:18).

Because of this stealth switch-a-roo and moving of documents and funds, GET has been able to avoid producing documents in response to Plaintiffs' request for production, even after the Court has ordered it to do so. (*See* April 4, 2008 Order at 10). And now, after having secretly "substituted" trustees and hidden documents responsive to Plaintiffs' request, GET has propounded document requests on Plaintiffs (*see* Jacob Aff. Ex. E) – seeking discovery from Plaintiffs even as it has spent months denying discovery from Plaintiffs. This request was

---

Aff. Ex. D at 96:23-104:2). At Pfaff's deposition taken last week, Pfaff pled the Fifth Amendment and refused to answer any questions regarding whether he was directing Sorenson regarding this duties as trustee of GET and KCT or whether he was involved in selecting Laramie Fealty as the purported new trustee. (The transcript of this just-taken deposition is not yet available, and will be submitted once prepared).

[3] Sorenson, as an individual, issued his responses to Plaintiffs' document request on March 25, 2008. He objected to Plaintiffs' request for documents belonging to KCT and GET "on the grounds that the request was better directed at the defendant trust, and on the ground that the requested documents were out of his possession, custody or control." (Jacob Aff. Ex. F at 4 (Response to Request No. 1)). He failed to mention that the requested documents had left his possession, custody or control after this litigation began, that GET's and KCT's accounts had been closed and re-opened in an undisclosed location after this litigation began or that the documents should be with the purported new trustee.

6

propounded by "Defendant, Trustee for GET Realty Trust." (*Id.*)  But the trustee is not named, suggesting that Defendants may be preparing to substitute in yet another trustee and move GET's documents responsive to Plaintiffs' outstanding discovery request to yet another undisclosed location and that there will not be anyone at the end of the day that the Court can order to be responsible for the abuses and the huge damages – far beyond GET's amount in the funds under the Court's jurisdiction – Pfaff, through GET and his other entities, is inflicting

Further, it was Sorenson who was named as the trustee in the first amended complaint, not Laramie Fealty or some unnamed "Trustee for GET Realty Trust." The Court did not dismiss Sorenson as GET's trustee from this case.[4]  And Defendants, in violation of Com. R. Civ. P. 25(c), have not sought to substitute him with some purported new trustee as required. Com. R. Civ. P. Com. R. Civ. P. 25(c) (explaining that, "unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party," the action continues against the original party) (emphasis added). Thus, he is the trustee of record and the party still in this case; GET was dismissed. Nonetheless, GET, has filed numerous pleadings and appearances on behalf of its alleged trustee Laramie Fealty and its alleged nameless trustee. (*See, e.g,* Laramie Fealty LLC's Counterclaims (filed 4/08/08); Motion to Strike and Objection to Stipulation and Proposed Order, and Motion for an Accounting of Funds (filed 4/08/08); Laramie Fealty LLC's Third Party Complaint (filed 4/08/08); Jacob Aff.

---

[4] Although Sorenson was not dismissed as trustee, it is not clear for how long he has ceased being the "client" in this litigation. Indeed, although it was filed on his and GET's behalf, it is not clear whether Sorenson, as the trustee or former trustee, approved the appeal of this Court's Preliminary Injunction Order.  (See Jacob Aff. Ex. D at 56-57 (Sorenson's counsel instructing Sorenson not to answer as to whether he approved the filing of the appeal)). GET has used that appeal to argue that the Court should not release any monetary interests in the Court-controlled bank accounts and to attempt to prevent its co-defendants from settling.

Ex. E.) These pleadings and appearance, on behalf of non-parties in this case, have sought to disrupt other parties' settlements and derail discovery ordered by the Court.

Under the black letter law of the CNMI, "a trust is invalid if the purpose of the settlor in creating the trust is to defraud his creditors or other persons." Restatement (Second) Trusts § 63(1). Here, the secret replacement of Sorenson with an unheard of entity provides further evidence that GET and KCT were not created for a valid purpose, but are merely Pfaff shells. Thus, perhaps it is not surprising that Defendants purposefully hid this fact from the Court (and Plaintiffs) until *after* the Court issued its order dismissing GET, KCT and Sorenson in his individual capacity. It was not until four days after the Court's order that the Laramie Fealty entity suddenly appeared, even though it supposedly had been GET's trustee for months. *(See* Laramie Fealty LLC's Counterclaims filed April 8, 2008; Jacob Aff. Ex. D at 36:4-37:2). The revelation of this shell game that Defendants were playing with Plaintiffs and the Court necessitates reconsideration.

### B.    The New Pfaff Indictment Supports Reconsideration

The Laramie Fealty revelation is not the only change in facts since the Court heard arguments. Approximately a month after the Court heard argument on Sorenson/GET/KCT's motions to dismiss, a federal grand jury issued a new indictment against defendant Pfaff. (Plaintiffs' Request for Judicial Notice, filed 3/25/08, Ex. 1). In that indictment, which concerns Pfaff's unlawful conduct against UMDA, it is specifically alleged that Pfaff and his co-conspirators "caused a stock certificate for 35,000 shares of [UMDA] to be issued on December 27, 2001 in the name of Pfaff's brother-in-law," *i.e.* in the name of Thomas Sorenson. (*Id.* at ¶¶ 25-28). There are also further allegations as to Sorenson's involvement in placing UMDA assets

that Pfaff had unlawfully obtained in the so-called "trusts" that Pfaff and Sorenson used to hide Pfaff's misconduct. (*Id.* at ¶¶ 24, 25-28). The new indictment:

(1)     Confirms Sorenson's role in the actions that constitute wrongdoing concerning CNMI assets (UMDA stock) for purposes of asserting personal jurisdiction. *Bank of Saipan v. Montgomery*, Civ. Case No. 04-0088 at 3 (N.M.I. Sup. Ct. November 7, 2005) (Lizama, J.) (allegations that defendants "intentionally defrauded [plaintiff], knowing that it was located in the Commonwealth, and knowing that it would cause harm the plaintiff, but would benefit the [defendants]" were "**alone**" sufficient to satisfy the purposeful availment requirement) (quoting *G.E. Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1111 (9th Cir. 2004)) (emphasis added);

(2)     Confirms that, unbeknownst to UMDA's board of directors, Pfaff received millions of dollars in tax shelter fees that he tried to conceal from governmental authorities by using fraudulent transactions and shell entities, including the so-called "trusts." (*See, e.g.*, Plaintiffs' Request for Judicial Notice Ex. 1 at ¶¶ 17-19, 24-28); *see also id.* at ¶ 33(q) (On or about March 11, 1996, ROBERT PFAFF caused an attorney in Denver, Colorado, to wire transfer approximately $150,000 in tax shelter fee income from the attorney's bank account in Denver to accounts of trusts set up by PFAFF for his three children");

(3)     Confirms that the trust assets are comprised of illegal funds, including funds that properly belong to UMDA. (*See id.* at ¶ 17 ("Between 1993 and 2000, Pfaff received, directly and indirectly, in excess of $3,750,000 in fee income

9

from these tax shelter transactions [many of which involved UMDA] . . . .
Pfaff used that fee income for various personal purposes, including . . . to fund
various trusts for his children.")}

(4)     Confirms that Pfaff directed and controlled the "trusts," (*Id.* at ¶¶ 21-27; *id.* at
¶ 28 ("[O]n September 1, 2002, Pfaff caused, $1,217,650 to be wire-
transferred from a bank account of the Pfaff Children's Trust located in the
United States to the Saipan Company . . . .")); and

(5)     Confirms that Pfaff used the so-called "trusts" to hide and convey assets that
had been taken from UMDA and thus that the "trusts" should be properly
named as defendants.  (*See id.* at ¶¶ 17-19, 24-28); Restatement (Second)
Trusts § 63(1) ("a trust is invalid if the purpose of the settlor in creating the
trust is to defraud his creditors or other persons.").

In light of this new information, the Court should reconsider its April 4, 2008 Order and
deny the motions to dismiss of GET, KCT, and Sorenson in his individual capacity.  If the Court
does not, Sorenson will escape personal liability for his actions that harmed UMDA here in the
CNMI, and the Defendants can, and likely will, continue to strategically replace trustees and
move around documents and money, preventing Plaintiffs from being able to prosecute the cause
and enabling the Defendants to delay justice indefinitely.

**C.     Defendants Should be Sanctioned for Their Misrepresentations and Fraud
        on the Court**

In addition to reinstating GET, KCT, and Sorenson in his individual capacity based on
the merits, the Court can, and should, reinstate them as parties based on their bad-faith fraudulent
misrepresentations to Plaintiffs and the Court. The Court has broad discretion and the inherent
authority to impose sanctions when "a party has engaged deliberately in deceptive practices that

10

undermine the integrity of judicial proceedings." *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) (using inherent powers and Rule 37 to dismiss claims as sanction for concealment of evidence) (quotation marks and citations omitted). Courts also may invoke their inherent powers to sanction a party or its lawyers if it has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *see Milne v. Lee Po Tin*, 2001 MP 16, ¶ 25, 6 N.M.I. 308, 315 (recognizing the Superior Court's power to impose sanctions where a party has engaged in dilatory conduct).

Sorenson testified that he resigned as trustee in November or December. (Jacob Aff. Ex. D at 36:4-37:2). Yet, Sorenson, GET, and KCT deliberately deceived the Court from the time of that supposed transfer until after the Court issued the April 4 Order in their favor.

As discussed above, as of February, 2008, GET's counsel expressly told the Court that Sorenson was GET's trustee. (Jacob Aff. Ex. B at 154 ("[i]f there's any claim to go forward, it's against Sorenson the trustee.") And GET, KCT, and Sorenson all pressed forward with their motions to dismiss in February even though Laramie Fealty supposedly had been switched in as trustee months earlier, without making any disclosure to the Court as to the change. Indeed, Sorenson is now using this supposed transfer to justify his non-response to document requests that the Court *ordered* him to comply with on the ground that the documents are now with Laramie – but Sorenson knew of the supposed document transfer months earlier and never alerted the Court or Plaintiff as he transferred away documents that already were subject to pending document requests.

That Sorenson, GET or KCT did not let it slip that Sorenson was no longer the trustee until just a few days after the Court issued its April 4, 2008 Order shows that their failure to inform the Court or Plaintiffs as to the change in trustee was not a mere minor oversight.

11

Instead, it was a deliberate, deceptive tactical decision and a fraud on the Court worthy of sanctions. *See Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131-32 (9th Cir. 1995) (false testimony regarding evidence constituted a fraud on the court); *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905-06 (9th Cir. 2002) (sanctions proper where defendant "not only failed to produce documents as ordered, but also misrepresented to both counsel and to the district court that the documents did not exist").

Therefore, Plaintiffs request that the Court sanction GET, KCT and Sorenson, as an individual and as GET's trustee of record, and reinstate them as defendants based on their sanctionable misconduct. Their misconduct has undermined the integrity of these judicial proceedings and has caused direct harm to Plaintiffs. Defendants have yet to inform the Court of their misrepresentations, requiring Plaintiffs to bring this motion. GET, KCT, Sorenson and their counsel should have to pay for Plaintiffs' costs in bringing this motion and all of the motion practice and discovery battles that have ensued from their misrepresentations to Plaintiffs and fraud on this Court. *See, e.g., Moser v. Bret Harte Union High School Dist.*, 366 F.Supp.2d 944, 978 (E.D. Cal. 2005) (requiring defense counsel and defendant to pay plaintiff for increased litigation costs due to sanctionable misconduct). Plaintiffs will submit a declaration if the Court rules in their favor that details the attorneys' fees Plaintiff have been forced to incur as a result of GET's, KCT's, Sorenson's, and their counsel's sanctionable conduct.

//

//

//

12

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider its

April 4, 2008 Order dismissing Thomas C. Sorenson (in his individual capacity), GET Realty

Trust and KCT Irrevocable Trust and reinstate all three as parties in this litigation. They also ask

that appropriate sanctions issue.

Respectfully submitted this 28th day of April, 2008.

**O'Connor Berman Dotts & Banes**          **Law Offices of Timothy H. Bellas**
**Calvo & Clark, LLP**
Counsel for Plaintiff *United Micronesia*          Counsel for Plaintiff *UMDA Laolao LLC*
*Development Association, Inc.*


By:_____/s/_____          By:_____/s/_____
      **RODNEY J. JACOB (F0186)**                TIMOTHY H. BELLAS (F0135)