# EXHIBIT 9

1 THOMPSON LAW OFFICE, LLC
  Colin M. Thompson, Esq.
2 J.E. Tenorio Building
  PMB 917 P.O. Box 10001
3 Saipan, Mariana Islands  96950
  Telephone: (670) 233-0777
4 Facsimile: (670) 233 0776

5

  THE PIERCE LAW GROUP, LLC
6 John P. Pierce (admitted pro hac vice)
  4641 Montgomery Avenue, Suite 500
7 Bethesda, MD  20814
  Telephone: (301) 657 4433
8 Facsimile: (301) 657-1433

9 Attorneys for **Laramie Fealty LLC,**
  **Trustee of GET Realty Trust**
10

E-FILED
CNMI SUPERIOR COURT
E-filed: Apr 8 2008 12:30AM
Clerk Review: Apr 08, 2008
Filing ID: 19288016
Case Number: 07-0152-CV
Bernie A Sablan

11              **SUPERIOR COURT OF THE**

12    **COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| 13 **UNITED MICRONESIA DEVELOPMENT ASSOCIATION, INC., and UMDA**<br>14 **LAOLAO LLC,** | **CASE NO. 07-0152** |
| 15      Plaintiffs, | **LARAMIE FEALTY LLC'S COUNTERCLAIMS FOR:** |
| 16      v. | **1. BREACH OF CONTRACT**<br>**2. BREACH OF FIDUCIARY DUTY**<br>**3. CONVERSION** |
| 17 **ROBERT PFAFF, et al,** | **4. ACCOUNTING**<br>**5. CONSTRUCTIVE TRUST** |
| 18      Defendants. | **DEMAND FOR JURY TRIAL** |
| 19 **LARAMIE FEALTY LLC, Trustee of GET Realty Trust,** | |
| 20      Counterclaimant, | |
| 21      v. | |
| 22 **UNITED MICRONESIA DEVELOPMENT**<br>23 **ASSOCIATION, INC.,** | |
| 24      Counter-Defendant. | |

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTORY STATEMENT

1.      In 2005, Counter-Defendant United Micronesia Development Association, Inc. ("UMDA") sought to purchase shares of Saipan LauLau Development, Inc. ("SLDI"), a corporation that operated a golf course located in the Commonwealth of the Northern Mariana Islands ("CNMI"). UMDA's Board of Directors elected to purchase a majority of the shares, and solicited other investors to purchase the remaining shares, through an entity known as UMDA Lao Lao LLC (the "LLC").

2.      Counterclaimant GET Realty Trust ("GET Trust") holds 15 LLC units, each unit valued at $100,000 at the time of acquisition. Other investors, including entities owned or controlled by directors of UMDA, acquired the other 27 LLC units and thereby invested an additional $2.7 million in the LLC. The LLC, in turn, purchased and held the minority shares of SLDI.

3.      Under the Second Amended Operating Agreement ("Second Operating Agreement"), which is attached to UMDA's First Amended Complaint, UMDA did not purchase any units in the LLC or invest in the LLC and UMDA was not a member of the LLC. UMDA acted only as manager of the LLC.  UMDA agreed to operate the LLC in accordance with the Second Operating Agreement and the Uniform Limited Liability Company Act of 2004, enacted by the CNMI legislature as Public Law 14-11 (the "Act"), and to undertake fiduciary duties and obligations to the LLC and its members (called "Equity Owners").

4.      Within two years, the SLDI purchase proved to be a profitable investment, and UMDA immediately began to regret sharing the investment opportunity with GET Trust and other Equity Owners, and schemed a way to keep the profits for itself.

5.      On information and belief, UMDA first attempted to buy out GET Trust and other Equity Owners for 75% of their initial investment, *while contemporaneously* holding secret negotiations with Kumho Holdings to sell the shares of SLDI at twice the price originally paid. Thus, UMDA engaged in the worst kind of self-dealing: it actively concealed material information from the Equity Owners for the sole purpose of stealing the return on their investment.

2

6.    After the sale to Kumho Holdings closed, UMDA withheld the proceeds to GET Trust with the intent to wrongfully convert them to their own use. However, UMDA distributed the proceeds to itself and to the Equity Owners created or owned by UMDA directors or who were closely associated with UMDA directors.

7.    UMDA's conduct wrongfully withheld GET's investment capital and appreciation. UMDA acted deliberately and maliciously to deprive GET Trust of its share of the distribution, in violation of the Second Operating Agreement and applicable statutory and common law. UMDA's conduct is a breach of fiduciary duty, breach of contract and conversion, and as a result, GET Trust is entitled to recover compensatory and punitive damages, as well as its attorney fees and costs, and an accounting.

## THE PARTIES

8.    Counter-claimant Laramie Fealty LLC is the trustee of GET Trust. Laramie Fealty LLC brings suit on behalf of, and in its capacity as trustee of, the GET Trust.

9.    Counter-Defendant UMDA is a corporation chartered and existing under the laws of the CNMI, with its principal place of business located on Saipan, CNMI.

## GENERAL ALLEGATIONS

10.    Starting in 2005, UMDA decided to purchase the stock of SLDI, an entity that operates the Saipan Lao Lao Golf Course.

11.    UMDA authorized its management to seek third party investors, including investors affiliated with UMDA Board members, to raise investment funds to purchase approximately 49% of the golf course investment.   Initially, UMDA contemplated the formation of a new limited liability company to purchase the stock of SLDI. Under the initial plan, UMDA would control a bare majority interest of the limited liability company, while private investors would purchase the remaining units of the limited liability company. To that end, UMDA organized UMDA Lao Lao LLC pursuant to the CNMI LLC Act and delivered executed articles of organization for that limited liability company to the CNMI Registrar of Corporations on December 29, 2004.

1        12.     In or about July, 2006, UMDA changed the structure of the transaction, so that

2  UMDA would directly purchase 51% of the shares of SLDI, while the LLC would purchase 49%

3  of the shares of SLDI.

4        13.     Under this revised structure, which was delineated in the Second Operating

5  Agreement, UMDA was not an Equity Owner of the LLC. UMDA was the manager of the LLC,

6  unless and until the Equity Owners replaced UMDA as manager, in accordance with the Second

7  Operating Agreement.

8        14.     GET Trust holds 15 units of the LLC membership units purchased for $100,000

9  each. As a result, GET Trust an Equity Owner of the LLC, with an approximately 35.7%

10  ownership.

11        15.     Other Equity Owners in the LLC included entities owned, operated or established

12  by UMDA directors. For example, UMDA director Eduardo Calvo directed CCH Saipan LLC, a

13  limited liability company, to invest $200,000 in the LLC.  On information and belief, Calvo

14  directs the actions of CCH Saipan LLC, and benefits, directly or indirectly, from any gains or

15  profits of CCH Saipan LLC.  Similarly, UMDA director (and later President and Chief Executive

16  Officer) Russell Snow directed his wife's trust to invest $200,000 in the LLC. On information and

17  belief, Snow and his wife direct the actions of the Restated Cheryl Anne Snow Trust, and benefit,

18  either directly or indirectly, from any gains or profits to the Restated Cheryl Anne Snow Trust.

19        16.     Shortly after the Trust and the other Equity Owners signed the Second Amended

20  Agreement, UMDA concluded that the investment in SLDI was going to be quite profitable, and

21  UMDA embarked upon a plan to cut certain Equity Owners out of the LLC, or at least embezzle

22  the entirety of the investment and profits from the investment for its own use.  Specifically,

23  UMDA conspired with Calvo, Snow, Sinclair and others to steal the Trust's investment in the LLC

24  (as well as other Equity Owner's investments).

25        17.     UMDA's first attempt to misappropriate the Trust's funds occurred on or about

26  November 16, 2006, when a chairman of UMDA's "Share Repurchase Committee" wrote to GET

27  Trust and certain Equity Owners and offered to repurchase their shares in the LLC for $75,000 a

28  unit, *i.e.*, 75% of the Equity Owners' initial investment.

1    18.    Contemporaneously, UMDA engaged in secret negotiations to sell its shares in the

2    SLDI, and to sell the LLC's shares in SLDI to Kumho Holdings.

3    19.    UMDA's negotiations with Kumho Holdings ultimately resulted in a sale of SLDI

4    for $16,600,000, nearly double the $8,500,000 price paid by UMDA and the LLC in 2005.

5    20.    UMDA fraudulently concealed these negotiations from GET Trust and ceratin

6    other LLC investors.

7    21.    Thus, UMDA's plan was clear: hoodwink GET Trust into selling its LLC units for

8    seventy five cents on the dollar, while fraudulently concealing material information concerning the

9    negotiations with Kumho Holdings that would nearly double the value of each LLC unit. Had

10   GET Trust fallen prey to UMDA's scheme, UMDA would have purchased the Trust's units in the

11   LLC for $1.1 million and then immediately sold them to Kumho for $2.9 million, and pocketed

12   the $1.8 million difference.  This scheme would not only deprive GET Trust of the return on its

13   investment in the LLC, but would also deprive it of a quarter of its initial investment of capital.

14   22.    When GET Trust did not accept UMDA's offer, UMDA decided to simply

15   embezzle outright what it could not take through deception.

16   23.    After UMDA (acting for itself and as manager of the LLC) sold all of the stock of

17   SLDI to Kumho Holdings, it caused the LLC to distribute its assets, which at the time consisted

18   entirely of the proceeds from the sale of SLDI to Kumho Holdings, being held by the Bank of

19   Hawaii.

20   24.    The Second Operating Agreement, as well as Saipan law, unambiguously required

21   UMDA to distribute the LLC assets to all Equity Owners equally, including GET Trust. For

22   example:

23        a.    Paragraph 9.04 of the Second Operating Agreement provides the terms

24   upon which the manager of the LLC shall "Distribute Distributable Cash." "Distribute" is defined

25   in ¶ 1.15 as "Any Transfer of [LLC] Property from the [LLC] to or for the benefit of an Equity

26   Owner by reason of such Equity Owner's ownership of an Economic Interest [i.e., the Equity

27   Owner's share in the LLC.]   "Distributable Cash" is defined in ¶ 1.14 to refer to "All cash,

28

1  whether revenues or other funds received by the [LLC, less sums reserved to pay the LLC's
2  operating expenses and debts.]"

3          b.      Paragraph 9.04 of the Second Operating Agreement provides that the
4  UMDA, as "Manager," must distribute any funds to the Equity Owners "pro rata in proportion the
5  respective interests of the Equity Owner...."

6          c.      Paragraph 12.03(b)(4) imposes a similar duty when distributions are made
7  as part of dissolution, requiring the Manager to "distribute the remaining assets to the Equity
8  Owners in accordance with their positive Capital Account balances."

9          d.      Moreover, Paragraphs 1.01 and 13.03 of the Second Operating Agreement
10 provide that the LLC is governed by the Uniform Limited Liability Company Act of 2004, enacted
11 by the CNMI legislature as Public Law 14-11 (the "Act").

12          e.      Section 405 of the Act echoes the language of the Second Operating
13 Agreement, by requiring that "[a]ny distributions made by a limited liability company before its
14 dissolution and winding up must be in equal shares."

15      25.     Provisions of the Act and the Second Operating Agreement establish that UMDA is
16 liable to both the LLC and to its Equity Owners for any breaches of the foregoing. For example,

17          a.      Section 407(a) of the Act provides that a "manager of a manager-managed
18 company who ... assents to a distribution made in violation of ... the operating agreement is
19 *personally liable to the company* for the amount of the distribution which exceeds the amount that
20 could have been distributed without violating ... the operating agreement if it is established that
21 the member or manager did not perform the member's or manager's duties in compliance with
22 Section 409."

23          b.      Section 409 of the Act imposes a fiduciary duty upon UMDA, as manager
24 of the LLC, to "account to the company and to hold as trustee for it any property, profit, or benefit
25 derived by the [manager] in the conduct or winding up of the company's business or derived from
26 a use by the member of the company's property, including the appropriation of a company's
27 opportunity."

28

1          c.      Paragraph 5.04(b) provides an express cause of action, on behalf of both the

2 LLC and the Equity Owners, against UMDA, as manager of the LLC, for any "loss or damage

3 [that] shall have been the result of fraud, deceit, gross negligence, willful misconduct, breach of

4 this Agreement or a wrongful taking by the Manager."

5        26.      Despite the clear language of both the Second Operating Agreement and the Act,

6 UMDA withheld the Trust's share of LLC assets with the intent of ultimately retaining those

7 assets for itself and/or for the benefit of entities owned or controlled by its directors.

8        27.      At the same time, UMDA distributed LLC assets to entities owned or controlled by

9 its directors, or affiliated with its directors.

10        28.      UMDA's misappropriation of the Trust's property is motivated by nothing more

11 than avarice and a desire to make itself and its co-conspirators wealthy at the expense of GET

12 Trust.

13        29.      UMDA's blatant theft of the Trusts' property must be remedied by this Court.

14 **FIRST CAUSE OF ACTION**

15 **Breach of Contract**

16        30.      GET Trust incorporates by reference paragraphs 1 through 29 of these

17 Counterclaims.

18        31.      UMDA, acting as manager of the LLC, undertook an obligation in the Second

19 Operating Agreement to dissolve the LLC *only* upon the affirmative vote of Equity Owners

20 holding at least a majority interest in the LLC. However, UMDA's dissolution of the LLC was

21 never voted on or approved by any majority interest in the LLC. Accordingly, UMDA's

22 dissolution of the assets of the LLC is a further breach of the Second Operating Agreement.

23        32.      UMDA also undertook an obligation in the Second Operating Agreement to

24 distribute all LLC assets to Equity Owners on a non-discriminatory, pro rata basis – irrespective of

25 whether said distribution occurred in the ordinary course of business or as part of dissolution of

26 the LLC. However, by electing to distribute LLC assets to some but not all Equity Owners,

27 UMDA has breached the terms of the Second Operating Agreement.

28

1       33.     As a result of UMDA's breach, GET Trust was denied assets it was entitled to

2 receive under the Second Operating Agreement.

3       34.     In addition, a majority interest of the Equity Owners properly voted to remove

4 UMDA as manager, effective April 30, 2007. UMDA refused to accept and abide by the majority

5 interest decision, refused to turn over the books and records of the LLC and interfered with the

6 new manager's directions concerning the LLC's property and assets, thereby breaching UMDA's

7 obligations under the Second Operating Agreement.

8       35.     UMDA's decision following the sale of the LLC's stock in SLDI (which

9 constituted 100% of the LLC's assets and which was accomplished without the Equity Owner's

10 consent) to pay out the 100% of the value of the LLC units owned by the Equity Owners favored

11 by UMDA, including CCH Saipan LLC, the Restated Cheryl Anne Snow Trust, the Yap

12 Cooperative Association, Inc., and John Jones, constituted a transfer of LLC units in violation of

13 Article 10 of the Second Operating Agreemnent.

14       36.     GET Trust has therefore been damaged in an amount to be determined at trial.

15 **SECOND CAUSE OF ACTION**

16 **Breach of Fiduciary Duty**

17       37.     GET Trust incorporates by reference paragraphs 1 through 36 of these

18 Counterclaims.

19       38.     The Act requires UMDA, as manager of the LLC, to ensure that "[a]ny

20 distributions made by a limited liability company before its dissolution and winding up must be in

21 equal shares."

22       39.     Further, Section 409 of the Act imposes a fiduciary duty upon UMDA, as manager

23 of the LLC, to "account to the company and to hold as trustee for it any property, profit, or benefit

24 derived by the [manager] in the conduct or winding up of the company's business or derived from

25 a use by the member of the company's property, including the appropriation of a company's

26 opportunity."

27       40.     In addition to the fiduciary duties imposed on UMDA by statute, UMDA also owed

28 fiduciary duties to the LLC members by operation of common law.

o

41.   Despite UMDA's fiduciary duties of loyalty and fairness, UMDA has acted out of avarice to capture the Trust's share of LLC assets for itself and for the benefit of entities owned or controlled by UMDA's directors.

42.   UMDA's theft of LLC assets, through self-dealing and through its efforts to enrich members of its own board of directors at the expense of GET Trust, is a clear breach of its fiduciary duty to GET Trust.

43.   As a result of UMDA's breach of fiduciary duty, GET Trust has been damaged in an amount to be proven at trial.

44.   UMDA has also acted maliciously, oppressively, fraudulently and in conscious disregard of the GET Trust's rights, and as such, GET Trust is entitled to an award of exemplary damages against UMDA in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### Conversion

45.   GET Trust incorporates by reference paragraphs 1 through 44 of these Counterclaims.

46.   As a result of the LLC's dissolution and/or distribution of LLC assets to certain Equity Owners, GET Trust had an immediate possessory interest in its own pro rata share of such assets.

47.   UMDA intentionally exercised dominion and control over the GET Trusts' pro rata share of the LLC assets, and interfered with GET Trusts' rights to receive those assets, by withholding those funds from distribution.

48.   As a result, GET Realty Trust has been injured in an amount which will be determined at trial.

## FOURTH CAUSE OF ACTION

### For An Accounting

49.   GET Trust incorporates by reference paragraphs 1 through 48 of these Counterclaims.

50.    Section 4.10 of the Act provides that: "A member may maintain an action against a limited liability company or another member for legal or equitable relief, with or without an accounting as to the company's business, to enforce:

(1) the member's rights under the operating agreement;

(2) the member's rights under this [Act]..."

51.    As explained more fully herein, both the Second Operating Agreement and the Act provide GET Trust with the right to receive its pro rata and proportional share of any distribution made by the LLC.

52.    Subsequent to the sale of SLDI shares by the LLC, UMDA made distributions to certain favored Equity Owners but failed to make a distribution to GET Trust, with the intent of capturing GET Trust's share of LLC assets for itself.

53.    As a result of the UMDA's breach of the Act and the Second Operating Agreement, GET Trust is entitled to an accounting, pursuant to Section 4.10 of the Act.

**FIFTH CAUSE OF ACTION**

**Constructive Trust**

54.    GET Trust incorporates by reference paragraphs 1 through 53 of these Counterclaims.

55.    UMDA has breached its fiduciary duties to GET Trust by, *inter alia*, misappropriating the Trust's pro rata share of LLC assets for itself and for entities owned or operated by UMDA's directors.

56.    Accordingly, a constructive trust has arisen from UMDA's violation of its fiduciary relationship with GET Trust so that beneficial title to the LLC assets belong to Trust, as the wronged party, and not to UMDA, which currently claims possession and control over the LLC assets that rightfully belong to GET Trust and/or the LLC.

1
2
3
4                            **PRAYER FOR RELIEF**
5          WHEREFORE, Counterclaimant respectfully requests that this Court:
6          1.      As to the First Cause of Action, for compensatory damages according to proof at
7    trial;
8          2.      As to the Second Cause of Action, for compensatory damages and exemplary
9    damages according to proof at trial;
10         3.      As to the Third Cause of Action, for compensatory damages and exemplary
11   damages according to proof at trial;
12         4.      As to the Fourth Cause of Action, for an accounting;
13         5.      As to the Fifth Cause of action, for a constructive trust;
14         6.      As to all causes of action, for an award of all costs and expenses incurred in this
15   action, including reasonable attorneys fees, pursuant to Paragraph 13.11 of the Second Operating
16   Agreement; and
17         7.      Award such other and further relief as the Court deems just and proper.
18
19
20
21
22
23
24
25
26
27
28

1

## DEMAND FOR JURY TRIAL

2

Counterclaimant herein, LARAMIE FEALTY LLC, hereby demands that this matter be

3  tried to a jury, in accordance with Com. R. Civ. P. Rule 38(b).

4

5

6

DATED: April 7, 2008                      THOMPSON LAW OFFICE, LLC

7

8

9

By:

10                                              /s/
                                     _____

11                                   COLIN M. THOMPSON, ESQ.
                                     Attorney for Laramie Fealty LLC, Trustee of

12                                   GET Realty Trust

13

THE PIERCE LAW GROUP LLC

14

15

16

By:

17                                              /s/
                                     _____

18                                   JOHN P. PIERCE, ESQ.
                                     Attorney for Laramie Fealty LLC, Trustee of

19                                   GET Realty Trust

20

21

22

23

24

25

26

27

28

# EXHIBIT 10

E-FILED
CNMI SUPERIOR COURT
E-filed: Apr 8 2008 12:14AM
Clerk Review: Apr 8 2008 12:39PM
Filing ID: 19287670
Case Number: 07-0152-CV
Bernie A Sablan



1  Colin M. Thompson, Esq.
   THOMPSON LAW OFFICE, LLC
2  J.E. Tenorio Building
   PMB 917 P.O. Box 10001
3  Saipan, Mariana Islands 96950
   Telephone: (670) 233-0777
4  Facsimile: (670) 233 0776

5

6  THE PIERCE LAW GROUP, LLC
   John P. Pierce (admitted pro hac vice)
7  4641 Montgomery Avenue, Suite 500
   Bethesda, MD  20814
8  Telephone: (301) 657 4433
   Facsimile: (301) 657-1433
9
   *Attorneys for Laramie Fealty LLC,*
10 *Trustee of GET Realty Trust*

11              SUPERIOR COURT OF THE

12    COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

13 | UNITED MICRONESIA DEVELOPMENT | CASE NO. 07-0152 |
14 | ASSOCIATION, INC., and UMDA | |
   | LAOLAO LLC, | LARAMIE FEALTY LLC'S |
15 | | THIRD PARTY COMPLAINT FOR: |
   |              Plaintiffs, | |
16 | | 1. INTENTIONAL INTERFERENCE |
   | | WITH CONTRACT |
17 |        v. | 2. AIDING AND ABETTING BREACH OF |
   | | FIDUCIARY DUTY |
18 | ROBERT PFAFF, et al, | 3. INTENTIONAL INTERFERENCE |
   | | WITH PROSPECTIVE ECONOMIC |
   |              Defendants. | ADVANTAGE |
19 | | 4. NEGLIGENT INTERFERENCE WITH |
20 | Laramie Fealty LLC, Trustee of G.E.T. | PROSPECTIVE ECONOMIC |
   | REALTY TRUST, | ADVANTAGE |
21 | | 5. CONSTRUCTIVE TRUST |
   |        Third Party Plaintiff, | 6. ACCOUNTING |
22 |        v. | |
   | | DEMAND FOR JURY TRIAL |
23 | EDUARDO CALVO; CCH SAIPAN, LLC; | |
   | RUSSELL SNOW; RESTATED CHERYL | |
24 | ANNE SNOW TRUST; PETER | |
   | SINCLAIR; JOSE LIFOIFOI; MICHAEL | |
25 | GRANDINETTI; AND DOES 1-10, | |
26 |        Third Party Defendants. | |

27

28

**INTRODUCTORY STATEMENT**

1.    In 2005, United Micronesia Development Association, Inc. ("UMDA") sought to purchase shares of Saipan LauLau Development, Inc. ("SLDI"), a corporation that operated a golf course located in the Commonwealth of the Northern Mariana Islands ("CNMI"). UMDA's Board of Directors elected to purchase a majority of the shares, and solicited other investors to purchase the remaining shares, through an entity known as UMDA Lao Lao LLC (the "LLC").

2.    The LLC, in turn, purchased and held the remaining shares of SLDI.

3.    Third Party Plaintiff GET Realty Trust ("GET Trust") holds 15 LLC units, each unit valued at $100,000 at the time of the acquisition.

4.    Third Party Defendants were, at relevant times, directors or officers of UMDA, or members of the LLC (collectively, "Third Party Defendants").

5.    Under the Second Amended Operating Agreement ("Second Operating Agreement"), which is attached to UMDA's First Amended Complaint, UMDA did not purchase any units in the LLC or invest in the LLC. UMDA was not a member but acted only as manager of the LLC. UMDA agreed to operate the LLC in accordance with the Second Operating Agreement and the Uniform Limited Liability Company Act of 2004, enacted by the CNMI legislature as Public Law 14-11 (the "Act"), and to undertake fiduciary duties and obligations to the LLC and its members (called "Equity Owners").

6.    Within two years, the SLDI purchase proved to be an excellent investment, and UMDA immediately began to regret sharing the investment opportunity with GET Trust and other Equity Owners. Accordingly, UMDA conspired with the Third Party Defendants to develop a scheme to keep the profits for itself and for the entities controlled by Third Party Defendants.

7.    On information and belief, UMDA and the Third Party Defendants initiated the conspiracy to defraud GET Trust and other Equity Owners by offering to purchase their LLC membership units for 75% of their initial investment, *while contemporaneously* holding secret negotiations with Kumho Holdings to sell the shares of SLDI at twice the price originally paid. Notably, on information and belief, none of the Equity Owners under the control of the Third

2

1  Party Defendants received this lowball offer, which was clearly designed to deprive certain Equity
2  Owners of the benefit of a likely substantial appreciation in the value of the LLC units.

3          8.      After the sale to Kumho Holdings closed, UMDA wrongfully withheld the
4  proceeds to GET Trust with intent to convert them to its own use. However, UMDA distributed
5  the proceeds to itself and to the Third Party Defendants' entities.

6          9.      The Third Party Defendants' wrongfully withheld GET Trust's investment capital
7  and appreciation. Third Party Defendants, and each of them, have acted deliberately and
8  maliciously or negligently to induce UMDA to deprive GET Trust of its share of the distribution,
9  in violation of the Second Operating Agreement and their fiduciary duties. The Third Party
10 Defendants' conduct amounts to intentional interference with contract, aiding and abetting breach
11 of fiduciary duty, intentional interference with prospective economic advantage, negligent
12 interference with prospective economic advantage, and as a result, GET Trust is entitled to recover
13 compensatory and punitive damages from Third Party Defendants in an amount to be proven at
14 trial, and for a constructive trust and accounting.

15                              **THE PARTIES**

16          10.     Third Party Plaintiff Laramie Fealty LLC is the trustee of GET Trust. Laramie
17 Fealty LLC brings suit on behalf of, and in its capacity as trustee of, the GET Trust.

18          11.     Third Party Defendant Eduardo Calvo is, and at all relevant times was, a member
19 of the UMDA Board of Directors. Calvo directed Third Party Defendant CCH Saipan LLC, a
20 limited liability company, to invest $200,000 in the LLC and owns two units in the LLC. On
21 information and belief, Calvo directs the actions of CCH Saipan LLC, and benefits, directly or
22 indirectly, from any gains or profits of CCH Saipan LLC.

23          12.     Third Party Defendant Russell Snow is, and at all relevant times was, a member of
24 the UMDA Board of Directors (and later President and Chief Executive Officer of UMDA). Snow
25 directed his wife's trust, the Third Party Defendant Restated Cheryl Anne Snow Trust, to invest
26 $200,000 in the LLC and owns two units in the LLC. On information and belief, Snow and his
27 wife direct the actions of the Restated Cheryl Anne Snow Trust and benefit, either directly or
28 indirectly, from any gains or profits to the Restated Cheryl Anne Snow Trust.

13.    Third Party Defendant Peter Sinclair was and at relevant times a member of the UMDA Board of Directors and the President and Chief Operating Officer.

14.    Third Party Defendant Jose Lifoifoi is, and at all relevant times was, a member of the UMDA Board of Directors.

15.    Third Party Defendant Michael Grandinetti was at relevant times was, a member of the UMDA Board of Directors and the Chief Executive Officer of UMDA.

16.    Third Party Plaintiff is ignorant of the true names and capacities of the Third Party Defendants sued herein as Does 1 through 10, and therefore sues these Third Party Defendants by such fictitious names. Third Party Plaintiff will amend this Third Party Plaintiff to allege the true names and capacities of these Third Party Defendants when ascertained.

17.    Third Party Plaintiff is informed and believes and on that basis alleges that each of the Third Party Defendants named herein, including the fictitiously named Third Party Defendants, caused and participated in each of the acts and omissions hereinafter alleged. Moreover, Third Party Plaintiff is informed and believes, and on that basis alleges, that each of the defendants, including the fictitiously named Third Party Defendants, is or was the alter ego, agent, employee, or co-conspirator of each other Third Party Defendant, acting within the scope of said agency, employment, or conspiracy.

## GENERAL ALLEGATIONS

18.    Starting in 2005, UMDA decided to purchase the stock of SLDI, an entity that operates the Saipan Lao Lao Golf Course.

19.    As a result, UMDA authorized its management to seek third party investors, including investors affiliated with UMDA Board members, to raise investment funds to purchase approximately 49% of the golf course investment. UMDA organized UMDA Lao Lao LLC pursuant to the CNMI LLC Act and delivered executed articles of organization for that limited liability company to the CNMI Registrar of Corporations on December 29, 2004.

20.    In or about July, 2006, UMDA changed the structure of the transaction so that UMDA would directly purchase 51% of the shares of SLDI, while the LLC would purchase 49% of the shares of SLDI.

4

21.    Under this revised structure, which was delineated in the Second Operating Agreement, UMDA was not an Equity Owner of the LLC. UMDA was the manager of the LLC, unless and until the Equity Owners replaced UMDA as manager, in accordance with the Second Operating Agreement.

22.    GET Trust holds 15 units of the LLC membership units purchased for $100,000 each. As a result, it is an Equity Owner of the LLC, with an approximately 35.7% ownership.

23.    As described above, other investors included CCH Saipan LLC (under the control of Eduardo Calvo) and the Restated Cheryl Anne Snow Trust (under the control of Russell Snow), and each invested $200,000 in the LLC, purchasing two units each.

24.    Shortly after GET Trust and the other Equity Owners signed the Second Amended Agreement, UMDA concluded that the investment in SLDI was going to be quite profitable, and UMDA and the Third Party Defendants embarked upon a plan to cut the Equity Owners out of the LLC, or at least embezzle the entirety of the initial investment and profits of certain Equity Owners, for their own use.

25.    UMDA's first attempt to misappropriate GET Trust's funds occurred on or about November 16, 2006, when a chairman of UMDA's "Share Repurchase Committee" – headed by Third Party Defendant Eduardo Calvo – wrote to GET Trust and certain Equity Owners and offered to repurchase their shares in the LLC for $75,000 a unit, *i.e.*, 75% of the Equity Owners' initial investment.

26.    Contemporaneously, UMDA, acting through Third Party Defendants Calvo, Sinclair, Snow, LiFoifoi and Grandinetti, engaged in secret negotiations to sell its shares in the SLDI, and to sell the LLC's shares in SLDI, to Kumho Holdings.

27.    UMDA's negotiations with Kumho Holdings ultimately resulted in a sale of SLDI for $16,600,000, nearly double the $8,500,000 price paid by UMDA and the LLC in 2005.

28.    UMDA and the Third Party Defendants fraudulently concealed these negotiations from GET Trust.

29.    Thus, UMDA and the Third Party Defendants' plan was clear: hoodwink GET Trust into selling its LLC units for seventy five cents on the dollar, while fraudulently concealing

5

1  material information concerning the negotiations with Kumho Holdings that would nearly double
2  the value of each LLC unit. Had GET Trust fallen prey to UMDA's scheme, UMDA would have
3  purchased GET Trust's units in the LLC for $1.1 million and then immediately sold them to
4  Kumho for $2.9 million, and pocketed the $1.8 million difference. This scheme would not only
5  deprive GET Trust of the return on its investment in the LLC, but would also deprive it of a
6  quarter of its initial investment of capital.

7         30.    When GET Trust did not accept UMDA's offer, UMDA and the Third Party
8  Defendants decided to simply embezzle outright what it could not take through deception, as
9  explained below.

10        31.    After UMDA (acting for itself and as manager of the LLC) sold all of the stock of
11  SLDI to Kumho Holdings, it caused the LLC to liquidate its assets, which at the time consisted
12  entirely of the proceeds from the sale of SLDI to Kumho Holdings, being held by the Bank of
13  Hawaii.

14        32.    The Second Operating Agreement, as well as Saipan law, unambiguously required
15  UMDA to distribute the LLC assets to all Equity Owners equally, including GET Trust. For
16  example:

17             a.    Paragraph 9.04 of the Second Operating Agreement provides the terms
18  upon which the manager of the LLC shall "Distribute Distributable Cash." "Distribute" is defined
19  in ¶ 1.15 as "Any Transfer of [LLC] Property from the [LLC] to or for the benefit of an Equity
20  Owner by reason of such Equity Owner's ownership of an Economic Interest [i.e., the Equity
21  Owner's share in the LLC.] "Distributable Cash" is defined in ¶ 1.14 to refer to "All cash,
22  whether revenues or other funds received by the [LLC, less sums reserved to pay the LLC's
23  operating expenses and debts.]"

24             b.    Paragraph 9.04 of the Second Operating Agreement provides that the
25  UMDA, as "Manager" must distribute any funds to the Equity Owners "pro rata in proportion the
26  respective interests of the Equity Owner…"

27

28

6

1        c.      Paragraph 12.03(b)(4) imposes a similar duty when distributions are made

2 as part of dissolution, requiring the Manager to "distribute the remaining assets to the Equity

3 Owners in accordance with their positive Capital Account balances"

4        d.      Moreover, Paragraphs 1.01 and 13.03 of the Second Operating Agreement

5 provide that the LLC is governed by the Uniform Limited Liability Company Act of 2004, enacted

6 by the CNMI legislature as Public Law 14-11 (the "Act").

7        e.      Section 405 of the Act echoes the language of the Second Operating

8 Agreement, by requiring that "[a]ny distributions made by a limited liability company before its

9 dissolution and winding up must be in equal shares."

10    33.    Provisions of the Act and the Second Operating Agreement establish that UMDA is

11 liable to both the LLC and to its Equity Owners for any breaches of the foregoing. For example,

12        a.      Section 407(a) of the Act provides that a "manager of a manager-managed

13 company who … assents to a distribution made in violation of … the operating agreement is

14 *personally liable to the company* for the amount of the distribution which exceeds the amount that

15 could have been distributed without violating … the operating agreement if it is established that

16 the member or manager did not perform the member's or manager's duties in compliance with

17 Section 409."

18        b.      Section 409 of the Act imposes a fiduciary duty upon UMDA, as manager

19 of the LLC, to "account to the company and to hold as trustee for it any property, profit, or benefit

20 derived by the [manager] in the conduct or winding up of the company's business or derived from

21 a use by the member of the company's property, including the appropriation of a company's

22 opportunity."

23        c.      Paragraph 5.04(b) provides an express cause of action, on behalf of both the

24 LLC and the Equity Owners, against UMDA, as manager of the LLC, for any "loss or damage

25 [that] shall have been the result of fraud, deceit, gross negligence, willful misconduct, breach of

26 this Agreement or a wrongful taking by the Manager."

27    34.    Despite the clear language of both the Second Operating Agreement and the Act,

28 UMDA and the Third Party Defendants have withheld GET Trust's share of LLC assets with the

7

1  intent to wrongfully retain those assets for themselves, either directly or indirectly or through the
2  various entities under their control.

3      35.    At the same time, UMDA distributed LLC assets to entities owned or controlled by
4  its directors, or affiliated with its directors.

5      36.    UMDA's stole GET Trust's property at the behest of the Third Party Defendants.

6      37.    UMDA's theft of GET Trusts' property solicited, induced and enabled by the Third
7  Party Defendants' tortious conduct, must be remedied by this Court.

8                    **FIRST CAUSE OF ACTION**

9                 **Intentional Interference with Contract**

10                **Against All Third Party Defendants**

11     38.    GET Trust incorporates by reference paragraphs 1 through 37 of this Third Party
12  Complaint.

13     39.    UMDA, acting as manager of the LLC, undertook an obligation in the Second
14  Operating Agreement to dissolve the LLC *only* upon the affirmative vote of Equity Owners
15  holding at least a majority interest in the LLC.  However, UMDA's dissolution of the LLC was
16  never voted on or approved by any majority interest in the LLC. Accordingly, UMDA's
17  dissolution of the LLC is a further breach of the Second Operating Agreement.

18     40.    UMDA also undertook an obligation in the Second Operating Agreement to
19  distribute all LLC assets to Equity Owners on a non-discriminatory, pro rata basis – irrespective of
20  whether said distribution occurred in the ordinary course of business or as part of dissolution of
21  the LLC.  However, by electing to distribute LLC assets to some but not all Equity Owners,
22  UMDA has breached the terms of the Second Operating Agreement.

23     41.    Third Party Defendants were aware of UMDA's obligations and fiduciary to the
24  LLC members under the Operating Agreement by virtue of (1) their serving as directors of
25  UMDA, (2) their membership (directly or indirectly) in the LLC.

26     42.    Nevertheless, the Third Party Defendants induced UMDA to distribute LLC assets
27  to the Third Party Defendants and further induced UMDA to withhold distributions from the
28  remaining Equity Owners, including GET Trust.

8

43.    As a result of Third Party Defendants' interference with the Second Operating Agreement, GET Trust was denied assets it was entitled to receive under the Second Operating Agreement.

44.    GET Trust has therefore been damaged in an amount to be determined at trial.

45.    Third Party Defendants also acted maliciously, oppressively, fraudulently and in conscious disregard of GET Trust's rights, and as such, GET Trust is entitled to an award of exemplary damages against Third Party Defendants, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### Aiding and Abetting Breach of Fiduciary Duty

### Against All Third Party Defendants

46.    GET Trust incorporates by reference paragraphs 1 through 45 of this Third Party Complaint.

47.    The Act requires UMDA, as manager of the LLC, to ensure that "[a]ny distributions made by a limited liability company before its dissolution and winding up must be in equal shares."

48.    The LLC is governed by the Uniform Limited Liability Company Act of 2004, enacted by the CNMI legislature as Public Law 14-11 (the "Act"). The Act imposes a fiduciary duty upon UMDA, as manager of the LLC, to "account to the company and to hold as trustee for it any property, profit, or benefit derived by the [manager] in the conduct or winding up of the company's business or derived from a use by the member of the company's property, including the appropriation of a company's opportunity."

49.    In addition to the fiduciary duties imposed on UMDA by statute, UMDA was also owed fiduciary duties to the Equity Owners by operation of common law.

50.    Third Party Defendants were aware of the fiduciary duty owed by UMDA to the LLC.

51.    Despite knowledge of UMDA's fiduciary duties of loyalty and fairness, the Third Party Defendants acted out of avarice to capture GET Trust's share of LLC assets for themselves by inducing UMDA to wrongfully withhold those funds from the LLC.

52.    UMDA's theft of LLC assets, through obvious self-dealing and through its efforts to enrich members of its own board of directors at the expense of GET Trust, is a clear breach of its fiduciary duty to GET Trust.

53.    Third Party Defendants knowingly participated in the breach of fiduciary duty by UMDA by, for example, directing UMDA to distribute LLC assets to themselves, and by further directing UMDA to withhold LLC assets from other Equity Owners, including GET Trust.

54.    As a result of UMDA's breach of fiduciary duty, GET Trust has been damaged in an amount to be proven at trial, and Third Party Defendants are liable for any damages caused thereby by reason of their knowing participation in UMDA's breach of fiduciary duty.

55.    Third Party Defendants also acted maliciously, oppressively, fraudulently and in conscious disregard of GET Trust's rights, and as such, GET Trust is entitled to an award of exemplary damages against Third Party Defendants, in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

### Intentional Interference with Prospective Economic Advantage

### Against All Third Party Defendants

56.    GET Trust incorporates by reference paragraphs 1 through 55 of this Third Party Complaint.

57.    GET Trust had an economic relationship with the LLC with a reasonable expectation in the probability that the relationship would result in future economic benefit, including the distribution of LLC assets on a pro rata basis upon the sale of SLDI.

58.    Third Party Defendants were aware of GET Trust's economic relationship with the LLC.

59.    Third Party Defendants nevertheless committed intentional acts to disrupt the relationship between the LLC and GET Trust, including by inducing UMDA to distribute LLC assets to themselves, and by further directing UMDA to withhold LLC assets from other Equity Owners, including GET Trust.

60.    GET Trust has therefore been damaged in an amount to be determined at trial.

61.    Third Party Defendants' conduct was independently wrongful, apart from the conduct described above, because Third Party Defendants actively induced UMDA to breach its fiduciary duties to GET Trust by causing UMDA to withhold GET Trust's share of LLC assets and further inducing UMDA to distribute those assets to itself and to the Third Party Defendants.

62.    Third Party Defendants also acted maliciously, oppressively, fraudulently and in conscious disregard of GET Trust's rights, and as such, GET Trust is entitled to an award of exemplary damages against Third Party Defendants, in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### Negligent Interference with Prospective Economic Advantage

### Against All Third Party Defendants

63.    GET Trust incorporates by reference paragraphs 1 through 62 of this Third Party Complaint.

64.    GET Trust had an economic relationship with the LLC, with an expectation and a probability that the relationship would result in future economic benefit, including the distribution of LLC assets on a pro rata basis upon the sale of SLDI.

65.    Third Party Defendants were aware of GET Trust's economic relationship with the LLC.

66.    Third Party Defendants, nevertheless committed acts to disrupt the relationship between the LLC and GET Trust, including by inducing UMDA to distribute LLC assets to themselves, and by further directing UMDA to withhold LLC assets from other Equity Owners, including GET Trust.

67.    Third Party Defendants failed to exercise due care in the conduct described above, and as a result negligently interfered with the economic relationship between GET Trust and the LLC.

68.    GET Trust has therefore been damaged in an amount to be determined at trial.

11

# FIFTH CAUSE OF ACTION

## Constructive Trust

### Against all Third Party Defendants

69.    GET Trust incorporates by reference paragraphs 1 through 68 of this Third Party Complaint.

70.    As established above, the Third Party Defendants have aided and abetted UMDA in its breach of fiduciary duties to GET Trust by, *inter alia*, misappropriating GET Trust's pro rata share of LLC assets for itself and for entities owned or operated by UMDA's directors.

71.    Accordingly, a constructive trust has arisen from UMDA's violation of its fiduciary relationship, aided and abetted by the Third Party Defendants, in view of which equity must transfer the beneficial title to the LLC assets to Trust, as the wronged party, and not to the Third Party Defendants, which currently claim possession and control over the LLC assets that rightfully belong to GET Trust.

# SIXTH CAUSE OF ACTION

## For An Accounting

### Against Third Party Defendants

72.    GET Trust incorporates by reference paragraphs 1 through 71 of this Third Party Complaint.

73.    Section 4.10 of the Act provides that: "A member may maintain an action against a limited liability company or another member for legal or equitable relief, with or without an accounting as to the company's business, to enforce:

(1) the member's rights under the operating agreement[ and]

(2) the member's rights under this [Act]...."

74.    As explained more fully herein, both the Second Operating Agreement and the Act provide GET Trust with the right to receive its pro rata and proportional share of any distribution made by the LLC.

75.    Subsequent to the sale of SLDI shares by the LLC, UMDA, with the knowledge and assistance of Third Party Defendants Calvo and Snow, made distributions to CCH Saipan

1  LLC and to the Restated Cheryl Anne Snow Trust, but failed to make a distribution to GET Trust,

2  with the intent of capturing GET Trust's share of LLC assets for itself.

3         76.    As a result of the UMDA's breach of the Act and the Second Operating Agreement,

4  which was induced by the Third Party Defendants, GET Trust is entitled to an accounting pursuant

5  to Section 4.10 of the Act.

6                        **PRAYER FOR RELIEF**

7         WHEREFORE, Third Party Plaintiff respectfully requests that this Court:

8         1.     As to the First Cause of Action, award compensatory damages and exemplary

9  damages according to proof at trial;

10        2.     As to the Second Cause of Action, award compensatory damages and exemplary

11 damages according to proof at trial;

12        3.     As to the Third Cause of Action, award compensatory damages and exemplary

13 damages according to proof at trial;

14        4.     As to the Fourth Cause of Action, award compensatory damages and exemplary

15 damages according to proof at trial;

16        5.     As to the Fifth Cause of Action, for a constructive trust;

17        6.     As to the Sixth Cause of Action for and accounting;

18        7.     As to all causes of action, for an award of costs and expenses incurred in this

19 action, including reasonable attorneys fees; and

20        8.     Award such other and further relief as the Court deems just and proper.

21

22

23                      **DEMAND FOR JURY TRIAL**

24        Third Party Plaintiff herein, Laramie Fealty LLC, hereby demands that this matter be tried

25 to a jury, in accordance with Com. R. Civ. P. Rule 38(b).

26

27

28

13

1  DATED: April 7th , 2008                 THOMPSON LAW OFFICE, LLC

2

3

4                                    By:

5                                          _____/s/_____
                                           COLIN M. THOMPSON, ESQ.
6                                          Attorney for Laramie Fealty LLC, Trustee of
                                           GET Realty Trust
7

8                                    THE PIERCE LAW GROUP LLC

9

10

11                                   By:

12                                         _____/s/_____
                                           JOHN P. PIERCE, ESQ.
13                                         Attorney for Laramie Fealty LLC, Trustee of
                                           GET Realty Trust

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          14

# EXHIBIT 11

H



By order of the court, **GRANTED**    *Judge Juan T. Lizama*



E-FILED
CNMI SUPERIOR COURT
E-filed: Apr 18 2008 2:34PM
Clerk Review: N/A
Filing ID: 19464325
Case Number: 07-0152-CV
N/A

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

UNITED MICRONESIA DEVELOPMENT ) Civil Action No.: 07-0152
ASSOCIATION, INC. )
and UMDA LAOLAO LLC, )
)                              DISCOVERY ORDER
        Plaintiffs,            )    AFTER APRIL 15, 2008
)                              EMERGENCY HEARING
            v.                 )
)
ROBERT PFAFF, et al., )
)
        Defendants.            )

        After hearing oral arguments on April 15, 2008 on UMDA's request for an Emergency Discovery Order, it is the order of this Court that:

        1.  The previously ordered deposition of Thomas C. Sorenson shall go forward as ordered and noticed at 9:00 a.m. on April 16, 2008 in Lakeland, Florida.

        2.  In May 2008, Thomas C. Sorenson shall submit to two additional 4-hour days of depositions, one day as the 30(b)(6) designee for the KCT Irrevocable Trust and one day as the 30(b)(6) designee for GET Realty, Inc.; these two days are to be selected by Thomas C. Sorenson with reasonable advance notice to all parties from these dates: May 6, 7, 8, 9, 14, 15 or 16, 2008.  These two May, 2008 depositions shall be conducted in Lakeland, Florida, at the Hyatt Place-Lakeland (Center) at 525 W. Orange St., commencing at 9:00 a.m.

        3.  All depositions in this action shall hence forward be noticed in advance with reasonable notice given to all parties.

-1-

1    IT IS SO ORDERED.

2

3    Dated this_____ day of April, 2008.

4

5

6
                                    _____
7                                   Juan T. Lizama
                                    Judge of the CNMI Superior Court
8

9

10   2401-01-080415-PL-Order-080415Hearing

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    -2-

This document constitutes a ruling of the court and should be treated as such.

/s/ Judge Juan T Lizama