# EXHIBIT 12



By order of the court, *Judge Juan T. Lizama*



E-FILED
CNMI SUPERIOR COURT
E-filed: May 12 2008 4:27PM
Clerk Review: N/A
Filing ID: 19779519
Case Number: 07-0152-CV
N/A

### IN THE SUPERIOR COURT
### OF THE
### COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

UNITED MICRONESIA
DEVELOPMENT ASSOCIATION, INC.
("UMDA"), and UMDA
LAOLAO LLC,

        Plaintiffs,

   v.

ROBERT PFAFF, et al.,

        Defendants.

CIVIL CASE NO. 07-0152

ORDER

    THIS MATTER came on for hearing May 12, 2008 to reconsider the Court's April 18, 2008 Order after Emergency Hearing. Counsel for plaintiffs and defendants were present and heard. After carefully considering the arguments made during the hearing the Court hereby denies the motion for reconsideration and orders the deposition of Thomas Sorenson to occur as scheduled. The parties may seek to depose the current trustee, Laramie Fealty, at a later date if they choose.

    SO ORDERED this ___ day of May 2008.

                        _____/s/_____
                        Juan T. Lizama
                        Associate Judge, Superior Court

1

# EXHIBIT 13

# UNITED STATES TAX COURT

**WASHINGTON, DC 20217**

POINT DU HOC IRREVOCABLE TRUST,   )
THOMAS SORENSON, TRUSTEE,         )
                                  )
              Petitioner          )
                                  )    Docket No. 6041-05.
         v.                       )
                                  )
COMMISSIONER OF INTERNAL REVENUE, )
                                  )
              Respondent          )

| ADM. | |
|------|------|
| RECORDED | |
| | CH |
| SERVICE | |
| | CH |
| CAL. | |
| STAT. | |
| SUBSIDENCE | |
| FILES | ✓ |

## O R D E R

Upon due consideration of petitioner's Motion To Substitute Trustee, filed May 7, 2008, and respondent's Notice of No Objection thereto, filed May 15, 2008, it is

ORDERED that petitioner's Motion To Substitute Trustee is granted.  It is further

ORDERED that the caption is this case is amended to read: "Point du Hoc Irrevocable Trust, Joseph A. Zebrowski, Jr., Trustee, Petitioner v. Commissioner of Internal Revenue, Respondent".

*John O. Colvin* D.C.

John O. Colvin
Chief Judge

Dated:  Washington, D.C.
        May 20, 2008

**SERVED MAY 2 1 2008**

# EXHIBIT 14

E-FILED
CNMI SUPERIOR COURT
E-filed: May 12 2008  9:45PM
Clerk Review: May 14, 2008
Filing ID: 1979545
Case Number: 07-0152-CV
Elsa Duenas

Colin M. Thompson, Esq.
Thompson Law Office LLC
J.E. Tenorio Building
PMB 917 Box 10001
Saipan, Mariana Islands 96950
Telephone: (670) 233-0777
Facsimile: (670) 233-0776
Bar No.: F0221

John P. Pierce, Esq.
The Pierce Law Group LLC
4641 Montgomery Avenue, Suite 500
Bethesda, MD 20814
Telephone: (301) 657-4433
Facsimile: (301) 657-1433
*Admitted Pro Hac Vice*

*Attorneys for Laramie Fealty LLC, Trustee of*
*GET Realty Trust and KCT Irrevocable Trust and*
*Thomas C. Sorenson in his individual capacity*

## IN THE SUPERIOR COURT FOR THE

## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED MICRONESIA DEVELOPMENT ASSOCIATION, INC. and UMDA LAOLAO LLC | CIVIL ACTION NO. 07-0152 |
| Plaintiffs, | DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO RECONSIDER THE COURT'S APRIL 4, 2008 ORDER DISMISSING THOMAS C. SORENSON (IN HIS INDIVIDUAL CAPACITY), GET REALTY TRUST AND KCT IRREVOCABLE TRUST. |
| v. | |
| ROBERT PFAFF, et al. | |
| Defendants. | |

COMES NOW, Laramie Fealty LLC, Trustee for the GET Realty Trust ("GET") and KCT Irrevocable Trust ("KCT"), Thomas C. Sorenson in his individual capacity, by and through their Counsel, and hereby file their opposition to Plaintiffs' Motion to Reconsider the Court's April 4, 2008 Order Dismissing Thomas C. Sorenson (In His Individual Capacity), GET Realty Trust and KCT Irrevocable Trust.

1

# I. BACKGROUND

1.   On August 9, 2007, GET Realty Trust moved to dismiss the claims against it, for among other reasons, that the proper party to a lawsuit is the trustee as a trust is not a legal entity and it does not have the capacity to be sued as a party defendant.

2.   On August 28, 2007, Thomas C. Sorenson in his individual capacity moved to dismiss the claims filed against him, for among other reasons, that the Court lacked personal jurisdiction over him.

3.   On October 24, 2007, KCT Irrevocable Trust filed a motion to dismiss the claims against it, for among other reasons that the proper party to a lawsuit is the trustee as a trust is not a legal entity and it does not have the capacity to be sued as a party defendant.

4.   The motions by GET and Sorenson the individual were to be heard in September of 2007 while the motion of KCT was originally to be heard in November of 2007. However, the hearing dates on the motions were moved back as the Court dealt with a number of hearings on a prior filed motion for summary judgment, the motion for preliminary injunction, as well as delays caused by the eye surgery to Plaintiff UMDA's counsel. Finally, by scheduling order issued on November 27, 2007, the motions were scheduled for hearing on February 19, 2008. (Nov. 27, 2007, Order on Stipulated Request to Reset All Motions by All Parties).

5.   Thomas Sorenson served as trustee for the GET and KCT trusts from late 2001 to late 2007. Mr. Sorenson is 71 and suffers from a series of serious medical conditions, including congestive heart failure, vascular disease, an intestinal condition, a thyroid condition, memory problems, sleep apnea and obesity. He has particular difficulty with his health issues starting in the afternoon of each day, and air travel badly exacerbates his vascular disease. He resigned as trustee

at the end of 2007 for several reasons, but particularly the workload, his health and his age. (Sorenson Depo at 9:12; 11:20 – 12:10; 17: 17 – 22; 38: 20 – 21; 39: 21 – 40: 5.)[1]

6.    Following the Court's hearing held on February 19, 2008 on various parties' motions to dismiss, the Court issued an Order on April 4, 2008, wherein the Court dismissed GET and KCT because they must be sued through their trustee. The Court also dismissed Thomas Sorenson in his individual capacity based on a lack of personal jurisdiction. (Order Following February 19, 2008 Hearing at 4). In dismissing Mr. Sorenson, the Court reasoned as follows:

> Sorenson is the trustee of one of the defendants involved in this case and is named in both an individual and trustee capacity. He is contesting personal jurisdiction over himself in an individual capacity. Sorenson, represented by Colin Thompson and John Pierce, argues that as an individual his contacts with the CNMI are too slight to allow personal jurisdiction. He does not contest the propriety of being sued as trustee.

> In order for Sorenson (individual) to prevail on this motion he must show that as an individual there are not enough contacts with the CNMI to justify bringing him before the court. Sorenson asserts that as an individual he has never visited Saipan, conducted business in Saipan, caused injury in Saipan, or committed an act outside of Saipan that affected the jurisdiction. The preceding list of examples is typical indicia of whether a person could reasonably be haled before a court under a long arm statute.

> The Court concurs with Sorenson's assertion that his contacts, as an individual, are insufficient to satisfy the requirements for long arm personal jurisdiction. Therefore the Court grants defendant's motion on this count because there are insufficient contacts with the forum as an individual. The First Amended Complaint only names him a handful of times and does not sufficiently allege why Sorenson the individual should be named as a defendant in this matter. Therefore the Court grants Sorenson the individual's motion to dismiss based on failure of personal jurisdiction.

(Order Following February 19, 2008 Hearing at 3-4).

---

[1]  The referenced pages of deposition transcript of Thomas C. Sorenson is attached as Exhibit "A" to the Declaration of Colin Thompson filed concurrently with this opposition.

7.    On April 28, 2008, Plaintiffs' filed their Motion to Reconsider the Court's April 4, 2008 Order Dismissing Thomas C. Sorenson (In His Individual Capacity), GET Realty Trust and KCT Irrevocable Trust.

## II. LAW AND ARGUMENT

The Motion for Reconsideration is untimely under Commonwealth procedural law. The Motion for Reconsideration distorts the record and imparts motives that have no basis in the record. Plaintiffs' mendacity is especially malicious in their attempt to pass off the indictment of Defendant Pfaff as implicating Mr. Sorenson. Plaintiffs' Motion for Reconsideration is an outrageous screed serving only to demonstrate Plaintiffs' use of an over the top advocacy that knows no bounds in their attempt to win this lawsuit by any means necessary rather then by the merits. Plaintiffs' actions are abusive, sanctionable and should not be countenanced by this Court. The Court must deny Plaintiff's motion.

**A.    Plaintiffs' Motion to Reconsider the Court's April 4, 2008 Order Dismissing Thomas C. Sorenson (In His Individual Capacity), GET Realty Trust and KCT Irrevocable Trust Must be Denied as Untimely**

Com. R. Civ.P. 59(e) recognizes courts' inherent power to alter or amend orders. *Com.R.Civ. P. 59(a)*. However, it is an "extraordinary remedy, to be used sparingly in the interest of finality and conservation of judicial resources" *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F. 3d 877, 890 (9th Cir., 2000)(citation omitted). Motions for reconsideration will not be grated absent "highly unusual circumstances" *McDonlad v. Calderon*, 197 F 3d 1253,1255 (9th Cir., 1995), *cert. denied*, 120 S.Ct. 1708, 146 L. Ed. 2d 511 (2008). No such circumstances exist here.

In addition, Defendants note that Plaintiffs' motion for reconsideration is untimely. Under Com.R.Civ.P. 59(e), parties may challenge an order or judgment entered by the Court by way of a motion to alter or amend the judgment, commonly characterized as a motion for reconsideration.

4

See *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 (10th Cir. 2002). Motions for reconsideration under Com.R.Civ.P. 59(e) must be served no later than 10 days after the entry of the judgment. In this case, Plaintiffs failed to file their motion until April 28, 2008, some 24 days after the order was issued and well outside the 10 days permitted by the rule. Accordingly, the Court must reject Plaintiffs' motion for Reconsideration.

**B.    Plaintiffs' Motion To Reconsider The Court's April 4, 2008 Order Dismissing Thomas C. Sorenson (In His Individual Capacity), GET Realty Trust And KCT Irrevocable Trust Must Be Denied As Defendant's Actions Are Within The Meaning Of Com.R.Civ.P. 25(c) And Plaintiffs' Motion Presents No New Evidence Warranting Reversal Of The Court's Order**

In what is rapidly turning out to be standard operating procedure for Plaintiffs, they scream fraud and misrepresentation whenever it suits their ends. This time, Plaintiffs claim "[t]he new evidence here is of Defendants' misrepresentation and fraud upon the Court, which warrant reconsideration of the Court's April 4, 2008 Order and the reinstatement of GET, KCT, and Sorenson in his individual capacity in this action.". (Plf's Mot. Reconsideration at 4). Plaintiff's exclaim surprise at the filing of counter-claims by the successor Trustee, Laramie Fealty LLC, and feel moved to state such ludicrous assertions such as "the secret replacement of Sorenson with an unheard of entity provides further evidence that GET and KCT were not created for a valid purpose, but are merely Pfaff shells" and "perhaps it is not surprising that Defendants purposefully hid this fact (of the assignment of the trust property from Sorenson to Laramie Fealty LLC) from the Court (and Plaintiffs) until *after* the Court issued its order dismissing GET, KCT and Sorenson in his individual capacity." (Plf's Mot. Reconsideration at 8). Plaintiffs' assertion and arguments have no basis in law and are a farcical twisting of fact with legal conclusion. The court must reject Plaintiffs' motion as Defendants' actions are well within Rule 25(c) of the Commonwealth Rules of

5

Procedure and plaintiffs present no new evidence justifying the reversal of the dismissals from this lawsuit of Thomas Sorenson the individual and GET and KCT.

The Trustees actions are well within the meaning of Com.R.Civ.P. 25(c). Rule 25(c) states that: "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." As the Court in *Educational Credit Mgmt. Corp. v. Bernal (In re Bernal)*, 207 F.3d 595, 598 (9th Cir. 2000), said, "Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands." *Id.* (citing *Collateral Control Corp. v. Deal (In re Covington Grain Co., Inc.)*, 638 F.2d 1362, 1364 (5th Cir. 1981)). A leading treatise has underscored that by stating:

> The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named. An order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation.

7C Charles Alan Wright, et al., *Federal Practice and Procedure* § 1958 (2d Ed. 1986).

In *Bernal* the Ninth Circuit Court of Appeals upheld a default judgment against a successor defendant on the basis that as an assignee of some notes, the defendant was bound by the default judgment rendered against the prior holder of the notes. In the case, a debtor filed an adversary proceeding against a company that held her student loan debt in the form of notes. The company failed to respond and the Court entered a default against the company. Shortly thereafter, the company assigned the notes to another company for collection. Eventually, the successor company filed a motion to intervene and set aside the default. Reviewing under Rule 25(c), the Court of Appeals rejected the effort stating,

6

1    There is nothing mysterious about what happened in this case. When litigation was
     commenced, the notes in question were owned by CSAC, and that was even true
2    when the default was entered. ECMC was not even in the picture as far as Bernal and
     the bankruptcy court were concerned. Only at a later time were the notes, and any
3    possible rights under them, transferred to ECMC. That was, therefore, the very
     paradigm of an assignment controlled by Rule 25(c), and ECMC was bound by what
4    had gone on before. To slightly paraphrase what the Fifth Circuit said over 50 years
     ago, when it was faced with a similar attempt to wriggle out of a situation created by
5    an assignor:

6            [ECMC] ignores the undisputed fact of record that [it] was not a party
             to the original suit, but acquired whatever rights it may have in the
7            property, if any, only by virtue of the assignment from [CSAC], and
             must therefore stand in [its] shoes with respect to all phases of the
8            litigation. The fact that [CSAC's] litigation may have impaired or
             adversely affected the rights of [ECMC] under the assignment would
9            not justify our disturbing all prior orders and decrees entered in this
             controversy and unfavorable to [ECMC] which were binding upon
10           [CSAC] . . . when made.

11           *Deauville Assoc. v. Murrell*, 180 F.2d 275, 277 (5th Cir. 1950).
12
     *Bernal*, 207 F.3d at 598-599.
13
14           Plaintiffs were in no way impaired by the succession of trustees. Applying the reasoning of

15   Professor Wright and the Court in *Bernal*, Defendants had *no duty* under Rule 25(c) to immediately

16   announce to the Court and Plaintiffs that Sorenson resigned and was replaced by Laramie Fealty

17   LLC as trustee of GET and KCT. As further shown by *Bernal*, any claims that plaintiffs have

18   against the trustee of GET and KCT followed and inured to the successor trustee, Laramie Fealty

19   LLC. Thus, any liability that the trustee of GET and KCT may owe to plaintiffs is not impaired by

20   the succession of trustees. The only impairment plaintiffs suffer is their lack of knowledge of basic

21   procedural law.

22           Although not even a factor that needs to be considered by the Court, Defendants further note

23   that plaintiffs were not prejudiced by the succession of trustees. Plaintiffs received notice of the

24   change in trustees and the identity of the trustees when Laramie Fealty filed its counter-claims and

25

                                              -7-

third-party claims against UMDA and various other parties on April 8, 2008, a date that was well before the anticipated depositions of GET, KCT and Sorenson the Individual. Moreover, contrary to the deceitful representations of plaintiffs, the current trustee fully complied with this Court's April 4, 2008 order by readily producing all non-confidential documents responsive to the document requests following the order. The document productions by GET and KCT's trustee were made long after Mr. Sorenson's resignation, demonstrating that the successor trustee is fully compliant with its litigation obligations. The discovery productions were also prior to the date of the scheduled depositions pursuant to Rule 30(b)(6) of GET, KCT and the deposition of Thomas Sorenson the individual pursuant to Com.R.Civ.P. 45. The trustee's supplemental production of confidential documents awaits only the resolution of a confidentiality agreement among all the parties to the litigation as the Court ordered on April 4, 2008. The plaintiffs cannot in good faith say or show that the change of trustees prejudiced Plaintiffs.

Plaintiffs present no new evidence justifying the reversal of the Court's April 4, 2008 Order dismissing Thomas Sorenson the individual and GET and KCT. Rather than presenting new evidence showing that Thomas Sorenson the Individual had contacts with the CNMI such as to satisfy the long arm statute and due process, or that GET and KCT could somehow actually be proper parties to this lawsuit, plaintiffs present several pages of distortion and deceit to this Court.

- "...Mr. Pierce reaffirmed that Sorenson was GET's purported trustee at the February 19, 2008 hearing, Mr. Pierce argued that, "[i]f there's any claim to go forward, it's against Sorenson the trustee." (Plf's Mot. Reconsideration at 5). Plaintiffs' attempt to characterize this statement as a misrepresentation is a complete distortion of the record. When Thomas Sorenson filed his motions to dismiss he was still operating as a trustee. However, the hearing dates on the motions were constantly moved back as the Court

8

dealt with a number of hearings on a prior filed motion for summary judgment, the motion for preliminary injunction, as well as delays caused by the eye surgery to Plaintiff UMDA's counsel. When the hearing occurred on February 19, 2008, Thomas Sorenson was no longer the trustee of GET or KCT, but, as shown above, under Com.R.Civ.P. 25(c), this did not matter. He was still potentially on the hook individually. A review of the entire statement reveals that Mr. Pierce was emphasizing the different capacities that Mr. Sorenson was being sued in and that if there was any basis to proceed with plaintiffs' case, it was against the trustee--not the trusts as argued separately--and not against the individual. (Jacob Aff. Ex. B. at 153:16 to 154:6). Counsel's succinct highlight of the essence of the argument to dismiss Mr. Sorenson the Individual--briefed six months before and argued orally at length throughout the day, and with a reference to the way they named "Sorenson the Trustee" in the First Amended Complaint--hardly constitutes an attempt to mislead the court. The statement illustrated why the case was only appropriate to proceed, if at all, against the trustee of the trusts and not the individual. The attempt by plaintiffs to characterize it otherwise is a repugnant distortion of the record.

- "Indeed it took multiple orders to compel the deposition and an emergency hearing to ensure [Mr. Sorenson the Individual's Com.R.Civ.P. 45 deposition] actually convened." (Plf's Mot. Reconsideration at 5). This statement is a complete distortion of the record. The Court never had to issue an order compelling the testimony of Thomas Sorenson the Individual. The April 4, 2008 Order cited by plaintiffs states that:

> The Court is pleased to learn of the pending scheduled depositions that have been agreed upon by the various parties. However the Court would implore all parties to work a little harder to schedule all requested discovery and depositions in the near future so as to move this case

9

forward.    The Court approves the scheduled deposition of [Thomas Sorenson on April 16, 2008].

As readily seen from the language of the Order, the Court was not compelling anything but was merely acknowledging the efforts of the parties come up themselves with a deposition schedule. Mr. Sorenson notes further that, but for plaintiffs' failure to notify all parties to the litigation about the depositions of GET and KCT, they would have completed their depositions of GET and KCT with Sorenson as the witness and an emergency hearing would never have occurred. As it is, they have deposed Sorenson, who voluntarily appeared pursuant to Rule 45, waiving service as required under Rule 45. Plaintiffs have had access to Sorenson, and his testimony only served to confirm that he had no contact with the jurisdiction as an individual to establish sufficient contacts with the CNMI.

- Plaintiffs presents a litany of distorted testimony from the April 16, 2008 deposition of Thomas Sorenson in his individual capacity including "Sorenson claimed to know very little about his supposed successor, Laramie Fealty," that Sorenson no longer had documents belonging to either GET and KCT, that "GET's and KCT's bank accounts had been emptied and new accounts opened," and that Sorenson would not disclose where the new bank accounts are or where the documents were "hidden." (Plf's Mot. Reconsideration at 5). Plaintiffs' characterization of Sorenson's testimony is specious and a distortion of what occurred. First, the argument is specious given that the language of the Court's April 4, 2008 order states that "the Court agrees that personal information such as... banking information and other such personal and private information should certainly be redacted from any documents." Second, plaintiffs' characterization is a distortion of Sorenson's testimony as Sorenson was testifying based on his personal

10

knowledge and not as a Com.R.Civ.P. 30(b)(6) representative of GET. Much of plaintiffs' questioning was outside his personal knowledge, outside the scope of the deposition or infringed on attorney-client privilege. The attempt by plaintiffs to characterize it otherwise is a repugnant distortion of the record and must be rejected.

- At pages 6 through 7 of plaintiffs' motion for reconsideration, they present the following bizarre and paranoid argument:

> Because of this stealth switch-a-roo and moving of documents and funds, GET has been able to avoid producing documents in response to Plaintiffs' request for production, even after the Court has ordered it to do so. (*See* April 4, 2008 Order at 10). And now, after having secretly "substituted" trustees and hidden document responsive to Plaintiffs' request, GET has propounded document requests on Plaintiffs. (*See* Jacob Aff. Ex. E). – seeking discovery from Plaintiffs even as it has spent months denying discovery from Plaintiffs. This request was propounded by "Defendant, Trustee for GET Realty Trust". (*Id.*) But the trustee is not named, suggesting that Defendants may be preparing to substitute in yet another trustee and GET's documents responsive to Plaintiffs outstanding discovery request to yet another undisclosed location and that there will not be anyone at the end of the day that the Court can order to be responsible for the abuses and the huge damages-far beyond GET's amount in the funds under the Court's jurisdiction-Pfaff, through GET and his other entities, is inflicting.

Not only is plaintiffs' argument bizarre and paranoid, it distorts the record. Both trusts are in full compliance with the Court's April 4, 2008 Order and have produced all non-confidential documents to plaintiffs, withholding only confidential documents pending a confidentiality agreement agreed to by all the parties to the litigation. The plaintiffs mislead the court in its papers by failing to disclose that both trusts produced all non-confidential discovery in its possession in advance of the previously scheduled trust depositions – which plaintiffs failed to properly notice – and now argue that it is denying discovery to plaintiffs. But for plaintiffs' refusal to negotiate in good faith on terms of a confidentiality agreement, they would have had the trusts' full production of documents

11

weeks ago, and certainly prior to the deposition dates for the trusts about which UMDA failed to notify all parties. Plaintiffs' bizarre arguments are not new evidence and should be rejected by the Court.

As shown, plaintiffs present no new evidence justifying the reversal of the Court's April 4, 2008 Order dismissing Thomas Sorenson the individual, GET and KCT. Plaintiffs present no new evidence showing that Thomas Sorenson the Individual had contacts with the CNMI such as to satisfy the long arm statute and due process. Instead, plaintiffs present several pages of distortion, deceit and bizarre argument and try to game the Court into believing their tripe requires the reversal of the Court's dismissal of Sorenson in his individual capacity. The Court must reject plaintiffs' plaintiffs' attempt to bring Sorenson the Individual back into this case.

Similarly, the Court must reject the attempt to bring back GET and KCT. Plaintiffs present no new evidence regarding the trusts themselves and it is well settled that trusts are not *sui generis*. Trusts can only be sued through their trustees. *E.P. Coverdell v. Mid-South Farm Equipment Ass'n, Inc.*, 335 F.2d 9, 13 (6th Cir. 1964) (vacating judgment against trust, since trust could be sued only through its trustees); *Cmtys. for a Better Env't. v. Cenco Ref. Co.*, No. CV 00-5665 AHM (AIJx), 2001 U.S. Dist. LEXIS 19113, 24-25 (D. Cal. 2001); *NFS Services, Inc. v. Dorchester Trust*, No. 78 Civ. 4758 (MP), 1979 U.S. Dist. Lexis 11052 (S.D.N.Y. 1979)(citing numerous cases and holding "a suit by strangers of the trust must be brought against the trustees thereof individually and not against the fictional entity..."); *Northern Acceptance Trust 1065 v. AMFAC, Inc.*, 51 F.R.D. 487, 489 (D.Hawaii 1971); *Hershel California Fruit Products Co. v. Hunt Foods*, 119 F. Supp. 603, 607 (N.D. Cal. 1954); *Yonce v. Miners Memorial Hospital Association*, 161 F.Supp. 178, 188 (W.D. Va. 1958). For the foregoing reasons, the Court must deny plaintiffs' motion for reconsideration.

C.    **The Indictment Of Defendant Pfaff Is Not New Evidence And Does Not Implicate Mr. Sorenson In Any Way**

12

1    Plaintiffs argue in their motion for reconsideration that an indictment returned in the
2    Southern District of New York in March constitutes new evidence forming a basis to reconsider the
3    dismissal of Thomas Sorenson in his individual capacity. Their argument is terribly misleading, as
4    if attempting to commit a fraud against the Court. Plaintiffs ignore the fact that indictments are *not*
5    evidence.    Additionally, the new indictment provides *absolutely nothing* to suggest Thomas
6    Sorenson the Individual had sufficient contact with the CNMI to provide this Court with personal
7    jurisdiction. In fact, the indictment *confirms* that Mr. Sorenson engaged in no wrongdoing
8    whatsoever.

9    Plaintiffs argue in their motion that the a new indictment "specifically allege[s] that Pfaff and
10   his co-conspirators 'caused a stock certificate for 35,000 shares of [UMDA] to be issued on
11   December 27, 2001 in the name of Pfaff's brother-in-law,' i.e., Thomas Sorenson." (Plf's Mot.
12   Reconsideration at 8). Plaintiffs suggest that such an allegation is "new evidence" against Mr.
13   Sorenson the Individual. But who are the people alleged in the indictment to be Pfaff's
14   coconspirators? "Saipan coconspirator number 1" is identified as a **senior officer of a company**
15   **located in Saipan** (UMDA). "Saipan coconspirator number 2" is identified as another **"senior**
16   **officer of a company located in Saipan"** (UMDA). And "Saipan coconspirator number 3" as yet
17   another **"senior officer of a company located in Saipan"** (UMDA). Plaintiffs conveniently fail to
18   disclose those allegations to the Court. Moreover, the plaintiffs mislead the Court as to what is
19   actually alleged in the indictment. The indictment specifically says " . . . *Saipan Co-conspirator-1*
20   caused a stock certificate for 35,000 shares of [UMDA] to be issued on December 27, 2001 in the
21   name of Pfaff's brother-in-law, . . ." (Emphasis added). In other words, the indictment alleges that
22   it was a **UMDA senior officer** who caused the stock to be issued in Sorenson's name.

23   Mr. Sorenson is specifically **not** alleged to be a coconspirator in the indictment, and there is
24   not even a hint of suggestion in the indictment that Mr. Sorenson was involved in any wrongdoing
25   whatsoever.   It is unconscionable for plaintiffs to suggest that the allegations in the indictment

13

1   constitute "new evidence" against Mr. Sorenson rather than against the senior officers of its own

2   company, all information known to UMDA prior to the filing of the First Amended Complaint. Yet

3   if the Court peruses the list of defendants in Plaintiffs First Amended Complaint, the Court will note

4   that Plaintiffs are attempting to rename as a defendant a completely innocent 71-year-old Thomas

5   Sorenson the Individual while not even naming the "senior officers of a company located in Saipan"

6   that the indictment alleges committed wrongs against UMDA. Thomas Sorenson the Individual

7   never had sufficient contacts with Saipan to warrant jurisdiction over him, and the referenced

8   indictment does nothing to change that fact.

9         In fact, the new indictment confirms that Tom Sorenson engaged in absolutely no

10   wrongdoing whatsoever. The government conducted its investigation and did not see fit to even

11   include his name in the indictment, much less suggest that he was a coconspirator of anyone. The

12   government did, however, see fit to allege that *three "Saipan company senior officers"* were

13   coconspirators. Furthermore, prior to filing their motion, plaintiffs had deposed Sorenson who

14   testified throughout his deposition that the purchase of UMDA stock was for the trust and that he

15   played absolutely no role in the stock being issued in his name. (See, *e.g.*, Sorenson Deposition at

16   177: 2-9). It is shameful that UMDA would suggest that the new indictment provides any "new"

17   evidence for this Court to consider as it relates to Tom Sorenson the Individual rather than perhaps

18   its own officers.

19         Plaintiffs continue their attempt to mislead the Court stating that "further allegations [in the

20   indictment] as to Sorenson's involvement in placing UMDA assets" in the trust. (Plf's Mot.

21   Reconsideration at 8-9). Plaintiffs then refer to allegations of Pfaff conduct on "March 11, 1996"

22   and "[b]etween 1993 and 2000," as if that alleged conduct could somehow implicate Mr. Sorenson

23   and constitute a "new fact" warranting reconsideration of his dismissal as an individual. (Plf's Mot.

24   Reconsideration at 9). Plaintiffs very much knew from having deposed Mr. Sorenson before filing

25   their motion for reconsideration that Mr. Sorenson did not become a trustee of GET and KCT until

14

1    2001. (Sorenson Deposition at 103:25 – 104:7). To suggest that allegations in an indictment for

2    conduct in 1996 and between 1993 and in 2000 constitutes "new evidence" against Thomas

3    Sorenson the Individual--when he did not become trustee until 2001-- is yet another example of the

4    depths these plaintiffs will sink in their attempt to mislead this Court.

5            In summary, the indictment alleges that a "senior officer" of UMDA issued the certificate in

6    the name of Thomas Sorenson, with no allegation of knowledge on the part of Tom Sorenson that it

7    had happened.    The issuance of a share certificate in the name of Thomas Sorenson was done

8    specifically without his participation or knowledge, as he has so testified. He understood at all times

9    that the UMDA shares were shares owned by the trust for which he was trustee.  If UMDA was

10   wronged and has claims, it appears such claims are the responsibility of its own officers. UMDA's

11   failure to identify those allegations in their motion is an attempt to commit fraud on this Court.

12   They want to mislead this Court into believing that the new indictment provides some reflection of

13   wrongdoing by Thomas Sorenson the Individual against UMDA.  It specifically does not.  There is

14   not a shred of suggestion of wrongdoing by Tom Sorenson anywhere in the indictment, and UMDA

15   should be sanctioned for suggesting otherwise.   The Court must reject plaintiffs' attempts to

16   characterize the indictment as new evidence requiring reversal of the Court's order of dismissal.

17   **D.    Plaintiffs' Motion For Sanctions Against Defendants Must Be Denied While Plaintiffs'
18         Deceitful Conduct Must Be Punished**

19           Plaintiffs allege that Defendants should be sanctioned for misrepresentations and fraud on the

20   Court.  Plaintiffs' allegations and argument are legally flawed, factually contrived, and continue to

21   demonstrate the bad faith with which plaintiffs intend to pursue this litigation. Plaintiffs toss around

22   allegations of fraud and misrepresentation by defendants when they should be admitting to the Court

23   their own designs of fraud and deceit.

24           As plaintiffs well know, Tom Sorenson is a 71-year-old man battling a host of medical

25   issues, not the least of which is congestive heart failure as an overweight senior citizen. The stress

15

1    of this litigation is dangerous to Mr. Sorenson's health. He resigned as the trustee due to his age, his

2    health, and the work-load, and so informed the plaintiffs during his deposition. (Sorenson

3    Deposition at 40:3 – 5). The plaintiffs were able to witness firsthand at his deposition the difficulties

4    he faces.

5        Rather than recognize the facts for what they are, plaintiffs fabricate allegations that Mr.

6    Sorenson's resignation was a design to fool this Court. They go on to misrepresent to this Court that

7    *Sorenson* somehow used his resignation to defy a court order regarding discovery. (Plf's Mot.

8    Reconsideration at 11). Once again, plaintiffs are resorting to flat out distortion and deceit upon this

9    Court. Plaintiffs fail to indicate to the Court in their motion that the current trustee fully complied

10   with this Court's April 4, 2008 order by readily producing all non-confidential documents

11   responsive to the document requests following the order.[2] The document productions by GET and

12   KCT's trustee were long after Mr. Sorenson's resignation, demonstrating that the successor trustee is

13   fully compliant with its litigation obligations. The discovery productions were also prior to the date

14   of the scheduled depositions pursuant to Rule 30(b)(6) of GET, KCT and the deposition of Thomas

15

16   Sorenson the individual pursuant to Com.R.Civ.P. 45. The trustee's supplemental production of

17   confidential documents awaited only the resolution of a confidentiality agreement among all the

18   parties to the litigation.

19       In this Court's order of April 4, 2008, the Court wrote: "The Court asks that counsel for *all*

20   parties stipulate to a confidentiality agreement regarding the discovery documents and deposition

21   information. . . . The Court believes it is in *all* parties' best interests to stipulate to a confidentiality

22   agreement." (Order of April 4, 2008 at 9-10 (emphasis added)). Despite the clear language of this

23   Court's order, plaintiffs continued to operate in defiance of this Court by failing and refusing to meet

24

25   _____
     [2] Although Attorney Alex Freeman's declaration acknowledges the trustee's production of discovery, in contradiction Attorney Rodney Jacob's motion for reconsideration alleges the trustee has failed to produce discovery.

16

and confer with all parties relating to a confidentiality agreement. Just a day after the Court entered its April 4 Order, John Pierce sent a version of a proposed confidentiality order to Plaintiffs' counsel referencing the Court's desire to see all parties stipulation to it. Mr. Pierce's version included a notation for the signatures of all counsel (See CMT decl. Ex. "B"). On May 5, 2008, Colin M. Thompson sent a proposal to all counsel (See CMT Decl. Ex. "C"). UMDA's response did not deny that they had taken no steps to comply with the Court's order regarding a stipulated confidentiality agreement will all parties (CMT Decl. Ex. "D"). Steve Nutting then set up a conference call and meeting for all counsel to attend and negotiate a protective Order. (CMT Decl. Ex. "E"). Despite the fact that counsel for the trustee of GET and KCT reminded the plaintiffs of this condition of the Court's order, plaintiffs continued to operate in defiance of this Court's order and never so much as circulated a proposed draft of a confidentiality agreement among all the parties to the litigation.

Had plaintiffs operated in good faith and in compliance with this Court's order, they would have had the trusts' entire document production including the confidential discovery documents prior to the scheduled Rule 30(b)(6) depositions of GET and KCT in mid-April.[3] Had plaintiffs properly noticed the GET and KCT depositions—meeting their obligations to inform all parties to the litigation of discovery events instead of attempting to isolate parties just as with the confidentiality agreement--they would have had full documentary and testimonial discovery from the trusts by mid-April. Instead, through their own deceitful attempts to defy this Court's order, and through their own attempts to deceitfully operate in isolation of parties rather than a spirit of cooperation among all parties, they were left with rescheduled depositions of the trusts and without the confidential documents of the trusts pending an agreement among all parties pursuant to this Court's order.

---

[3] The Trusts again note their previous objection to the applicability of Com.R.Civ.P. 30(b)(6) to trusts.

Rather than acknowledging all the referenced facts in their motion, plaintiffs once again attempt to mislead this Court and allege that the former trustee of GET and KCT, Thomas Sorenson, somehow failed to respond to document requests plaintiffs misleadingly allege this Court ordered him to provide, rather than acknowledging that they possessed all responsive documents and would receive the others as soon as all parties had an opportunity to meet and confer in compliance with the Court's order regarding confidential documents. Plaintiffs go on to make the ludicrous accusation that Mr. Sorenson failed to meet discovery obligations by transferring trust documents to the successor trustee, rather than acknowledging that they had already received all non-confidential responsive trust documents and would receive the others as soon as they complied with the Court's April 4, 2008 order and met and conferred with *all* parties on a confidentiality agreement. If these misrepresentations to the Court are not enough, the plaintiffs go further to manufacture an accusation that Mr. Sorenson's resignation mandated a trumpeting to the Court and plaintiffs lest it be considered "a deliberate, deceptive tactical decision and a fraud on the court worthy of sanctions." (Plf's Mot. Reconsideration at 11).

Unlike the courts in *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128 (9th Cir. 1995) and *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905-906 (9th Cir. 2002), cited by plaintiffs in their briefs, Sorenson the Individual never misrepresented anything to the Court or claimed that evidence never existed. On the other hand, the discovery is available to establish the truth of all these facts for the record as soon as plaintiffs comply with this Court's order, and the trustee is anxious for the truthful record to become available in the litigation.

## III. CONCLUSION

In light of all the foregoing, plaintiffs' allegations that GET, KCT or Tom Sorenson participated in any misrepresentations or frauds upon the Court are so outrageous that it warrants

18

sanctions for the need to respond to the motions. Equally outrageous is the unfounded notion that Thomas Sorenson's resignation as trustee somehow changes the law of the long arm statute to render sufficient his insufficient contacts with Saipan as an individual. There was never a basis to name Thomas Sorenson as an individual in this lawsuit, and the Court so found under the long arm statute in its order of April 4, 2008. There are absolutely no new facts to warrant a reconsideration of that ruling. The trusts themselves are also not proper parties to the litigation, and the Court so ruled in its order of April 4, 2008. There are likewise no new facts warranting reconsideration of that order. The Court found sufficient contacts to the jurisdiction by the trusts to warrant requiring the proper party for the trusts, the trustee, to litigate the matter in this jurisdiction. Tom Sorenson happened to be the trustee during the times relevant to the litigation, and the successor trustee is therefore undertaking its responsibilities in this litigation on behalf of the trusts. Sanctions should issue against plaintiffs for the needlessness of responding to these baseless motions, and the trustee will submit its costs and fees associated with responding thereto.

DATED this 12th day of May, 2008.

/s/
**COLIN M. THOMPSON, ESQ.**
Thompson Law Office, LLC
CNMI Bar No.: FO221

/s/
**JOHN P. PIERCE, ESQ.**
Admitted Pro Hac Vice

19

# EXHIBIT 15

IN THE
**SUPREME COURT**
OF THE
**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

IN RE *PRO HAC VICE* ADMISSION
**OF**
**JOHN P. PIERCE.**

**SUPREME COURT NO. 2007-ADM-0030-PHV**
SUPERIOR COURT CIVIL CASE NO. 07-0152

**ORDER SETTING SCHEDULE AND**
**SUSPENDING *PRO HAC VICE* ADMISSION**

¶1           This Court, after reviewing the Respondent's Emergency Motion under

Rule 27(f) for Enlargement of Time filed on June 19, 2008, and the opposition by

counsel of Jose R. Lifoifoi, Russell K. Snow Jr. and Edwardo A. Calvo, finds the

following:

            (1) There is one simple issue in this case and that is whether *Pro Hac Vice*

admitted attorney John Pierce exceeded his authority to practice law in the

Commonwealth as alleged by the opposition.

            (2) That although the issue is a simple one to resolve, the allegation, if

true, should not be ignored and must be treated seriously.

¶2           Accordingly, Respondent's Motion to Enlarge time is granted and the

following schedule shall now be in effect:

            (1) Attorney *Pro Hac Vice* John P. Pierce shall file a response by July 1,

2008.

(2) Movant (Opposition) shall file their responses by July 8, 2008.

(3) The hearing on Movant's (Opposition's) motion shall take place on July 17, 2008 at 2:00 p.m. in the Supreme Court courtroom to accommodate the needs of Respondent and his local counsel.

(4) Further, Respondent's *Pro Hac Vice* admission is hereby suspended pending the resolution of this motion.

SO ORDERED this 23rd day of June, 2008.


/s/
MIGEUL S. DEMAPAN
Chief Justice