**THOMPSON LAW OFFICE, LLC**
Colin M. Thompson, Esq.
J.E. Tenorio Building
PMB 917 P.O. Box 10001
Saipan, Mariana Islands 96950
Telephone: (670) 233-0777
Facsimile: (670) 233 0776

*Attorney for Laramie Fealty, LLC,*
*Trustee of GET Realty Trust*

F I L E D
Clerk
District Court

JUL 3 1 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LARAMIE FEALTY, LLC, Trustee of GET REALTY TRUST,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED MICRONESIA DEVELOPMENT ASSOCIATION, INC. and DOES I-XX,<br><br>    Defendants. | CIVIL CASE NO. 08-0028<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY; DECLARATION OF COLIN M. THOMPSON IN SUPPORT THEREOF**<br><br>Date:   August 28, 2008<br>Time:   10:00 a.m. |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ..................................................................................................... 1

II.  FACTUAL PROCEDURAL BACKGROUND .................................................... 2

     A.   The Initial Investment and Formation of UMDA LaoLao LLC ................................ 2

     B.   UMDA's Misappropriation of the LLC Investment ................................................. 2

     C.   UMDA's Unsupported Litigation in the CNMI Superior Court ............................... 3

     D.   The Preliminary Injunction And Its Terms ............................................................... 3

     E.   Dismissal of the Complaint ...................................................................................... 4

     F.   GET's Counterclaims in the CNMI Action .............................................................. 5

III. LEGAL ANALYSIS ............................................................................................. 6

     A.   A Compulsory Counterclaim in State Court Does Not Preclude Jurisdiction
          of This Federal Court .............................................................................................. 6

     B.   UMDA's Prior Positions Make This Court The Only Proper Forum ....................... 8

          1.   GET's Claims Cannot Be Compulsory Counterclaims in Light of
               UMDA's Prior Position That They Cannot Be Counterclaims At All .......... 8

          2.   GET Cannot "Forum Shop" When UMDA Has Left The Federal
               Court as the Only Available Forum ........................................................... 10

          3.   Summary ................................................................................................... 12

     C.   The *Colorado River* Doctrine Does Not Apply ...................................................... 13

          1.   Abstention is Inappropriate Because the CNMI Action Will Not
               Resolve The Issues Raised in the Federal Suit .......................................... 14

          2.   The Superior Court Has Not Asserted Jurisdiction Over Any
               Property ..................................................................................................... 15

          3.   The Minimal Progress In the Superior Court Does Not Support A
               Stay ........................................................................................................... 16

          4.   No Piecemeal Litigation Will Arise ........................................................... 17

          5.   The Presence of Straightforward State Law Issues Precludes a Stay ......... 19

          6.   Summary ................................................................................................... 19

     D.   *Younger* Abstention Does Not Apply .................................................................... 19

IV.  CONCLUSION .................................................................................................... 21

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**FEDERAL CASES**

4

*American Intern. Underwriters, Inc. v. Continental Ins. Co.,*
    843 F.2d 1253 (9th Cir. 1988)........................................................................ 15

5

*Amerisourcebergen Corp. v. Roden,*
6
    495 F.3d 1143 (9th Cir. 2007)............................................................ 19, 20, 21

7

*Atlantic Coast Line R. Co. v. Locomotive Engineers,*
    398 U.S. 281, 26 L.Ed.2d 234, 90 S.Ct. 1739 (1970) ......................... 7

8

*Bankcard Systems, Inc. v. Miller/Overfelt, Inc.,*
9
    219 F.3d 770 (2000) ............................................................................. 8

10

*Banner Industries of New York, Inc. v. Sansom,*
    830 F.Supp. 325 (1993).......................................................................... 8

11

*Bonadio v. East Park Research,*
12
    220 F.R.D. 187 (N.D.N.Y. 2003)......................................................... 8

13

*Colorado River Water Conservation District v. United States,*
    424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976) ................. 7, 13

14

*Dixon v. Smith,*
15
    1989 WL 59604 (D.Kan. May 18, 1989) .......................................... 8

16

*Doran v. Salem Inn, Inc.,*
    422 U.S. 922, 45 L. Ed. 2d 648, 95 S. Ct. 2561 (1975) .................. 7

17

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
18
    544 U.S. 280 (2005) ....................................................................... 6, 10

19

*Handy v. Shaw, Bransford, Velleux & Roth,*
    325 F.3d 346 (D.C. Cir. 2003) ....................................................... 7, 8

20

*Holder v. Holder,*
21
    305 F.3d 854 (9th Cir. 2002)........................................................ 13, 14

22

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    12 F.3d 908 (1993) ....................................................................... 14, 15

23

*Kelly Investment, Inc. v. Continental Common Corp.,*
24
    315 F.3d 494 (5th Cir. 2003) ............................................................ 17

25

*McClellan v. Carland,*
    217 U.S. 268, 54 L. Ed. 762, 30 S. Ct. 501 (1910) .......................... 7

26

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,*
27
    460 U.S. 1 (1983) ................................................................ 13, 14, 19

28

*Oxygenated Fuels Ass'n Inc. v. Davis,*
    331 F.3d 665 (9th Cir. 2003)...................................................................... 4

*Pennzoil Co. v. Texaco, Inc.,*
    481 U.S. 1 (1987) ................................................................................... 21

*Ryan v. Johnson,*
    115 F.3d 193 (3d Cir. 1997)................................................................... 18

*Shmuel Shmueli, Bashe, Inc. v. Lowenfeld,*
    68 F.Supp.2d 161 (E.D.N.Y. 1999).......................................................... 8

*Travelers Indemnity Co. v. Madonna,*
    914 F.2d 1364 (9th Cir. 1990)................................ 10, 15, 16, 17, 18, 19

*Nakash v. Marciano,*
    882 F.2d 1411 (9th Cir. 1989)......................................................... 16, 17

*United States v. Morros,*
    268 F.3d 695 (9th Cir. 2001)........................................................... 17, 18

*United States v. Nix,*
    21 F.3d 347 (9th Cir. 1994).................................................................. 10

*Warren v. Fox Family Worldwide, Inc.,*
    328 F.3d 1136 (9th Cir. 2003)................................................................ 4

**<u>FEDERAL RULES</u>**

Fed.R.Civ. P. 13(a)                                                                                      7

Fed. R. Civ. P. 25                                                                                   11, 12

**<u>STATE RULES</u>**

Commonwealth Rule of Civil Procedure 25(c)                                             11

D.C. Super Ct. Civ. R. 13(a)                                                                     7

1    **I.    INTRODUCTION**

2         United Micronesia Development Association, Inc. ("UMDA" or "Defendant") does not

3    contest this court's jurisdiction to hear the claims brought by Laramie Fealty LLC ("Laramie"),

4    the trustee of the GET Realty Trust ("GET") and does not dispute that those claims are adequately

5    plead. Instead, Defendant argues that this Court should abstain from hearing these claims, in favor

6    of litigation pending in the Superior Court for the Commonwealth for the Northern Marianas

7    Islands ("CNMI"). Despite its trappings, however, the present motion is not a genuine appeal to

8    federalism or comity, but is rather an attempt to prevent *any* court in *any* jurisdiction from hearing

9    GET's claims.

10        Review of the record in the CNMI Superior Court reveals that Laramie brought these

11   claims on behalf of GET in federal court only after UMDA moved the Superior Court to dismiss

12   GET's claims. Curiously, that earlier motion ***goes wholly unmentioned by UMDA in the present***

13   ***motion***, even though UMDA cites the "sanctions" motion that accompanied the motion to

14   dismiss.[1] In that undisclosed motion, UMDA argued that *neither* GET *nor* Laramie were parties to

15   the litigation, and therefore neither could bring claims against UMDA in Superior Court.

16   Moreover, UMDA argued that Laramie should *never* be substituted for GET's former trustee as a

17   defendant in that case. Taken together, these positions act as a complete bar on the claims in

18   Superior Court: if Laramie is not a party to the Superior Court action now and it can never become

19   one, but at the same time, Laramie – as GET's current trustee – is the only party that can bring

20   GET's claims, then the Superior Court could never have jurisdiction over GET's claims.

21        Clearly, the Superior Court cannot simultaneously have jurisdiction over GET's claims (as

22   UMDA tells this Court now) and never have jurisdiction (as UMDA told the Superior Court

23   before). Laramie respectfully suggests that it is not this Court's role to figure out which of

24   UMDA's irreconcilable positions is genuine, and which is merely a tactical reversal. Rather,

25   UMDA should be held to its original contention that Laramie's claims cannot be heard in the

26   _____

27   [1] The Superior Court motion is attached to the Declaration of Colin Thompson as Exhibit A.

28

1   Superior Court, and therefore, the Court should conclude that they can only be heard here. Given

2   UMDA's prior position, the pendency of an action in the state court is no bar to proceedings

3   concerning the same matter in the Federal court having jurisdiction, and the motion should be

4   denied.

5   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

6       **A.    The Initial Investment and Formation of UMDA LaoLao LLC**

7           In 2004, UMDA formed UMDA LaoLao LLC (the "LLC") as an investment vehicle to

8   purchase shares of SLDI, a corporation that operated the LaoLao Golf Course located in the

9   CNMI. (Complaint ¶ 6.) UMDA itself purchased 51% of the SLDI shares, while the LLC

10  purchased the remaining 49%. (*Id.* at ¶¶ 7-8.) UMDA invited other investors to purchase an

11  interest in the LLC, and Mr. Robert Pfaff – who was a UMDA director at the time – solicited

12  funds for the investment from business associates and entities, including GET, an irrevocable trust

13  established by Mr. Pfaff's wife for the benefit of their children, and managed by an independent

14  trustee. (*Id.* at ¶¶ 2, 10.) In addition, several other UMDA board members also invested in the

15  LLC through various entities. (*Id.* at ¶ 11.)

16          UMDA did not invest in the LLC itself, but served as manager of the LLC. (*Id.* at ¶ 9.)

17  UMDA's duties and responsibilities as manager of the LLC are spelled out in the LLC's Second

18  Amended and Restated Operating Agreement, the Uniform Limited Liability Company Act of

19  2004, as well as in the common law. (*Id.* at ¶ 20-21.) The most salient duty lies in Paragraphs

20  9.04 and 12.03(b)(4) of the Operating Agreement, and Section 405 of the LLC Act, all of which

21  require any distributions of LLC property to LLC members be made in shares proportional to their

22  ownership interests. (*Id.*)

23      **B.    UMDA's Misappropriation of GET's Interest in the LLC**

24          UMDA and the LLC eventually sold their holdings in the LaoLao Golf Course to Kumho

25  Holdings, for almost twice the price initially paid. (*Id.* at ¶ 15.) Even before the sale was

26  completed, however, UMDA knew that the investment was going to be quite profitable, and took

27  steps to cut GET and others out of the LLC, and convert the members' initial investment and

28  profits for UMDA's own use. (*Id.* at ¶ 12.) UMDA's first effort to misappropriate GET's

2

1  investment in the LLC came in the form of an offer letter from UMDA's Share Repurchase

2  Committee. (*Id.* at ¶¶ 13-14.) While knowing full well that UMDA and the LLC would be able to

3  sell the golf course at a significant profit, UMDA offered to purchase GET's LLC units for only

4  $1.1M. (*Id.* at ¶ 13.)  UMDA made this offer even though GET initially invested $1.5M in the

5  LLC, and with UMDA knowing that the LLC membership was worth nearly $2.9M as a result of

6  the pending sale to Kumho. (*Id.* at ¶¶ 14-17.)  UMDA concealed the sale negotiations from GET

7  in breach of its fiduciary duties when it made its purchase offer, hoping to catch GET unawares

8  and misappropriate its share of the profits. (*Id.* at ¶¶ 16-17.)

9  **C.    UMDA's Unsupported Litigation in the CNMI Superior Court**

10  When this fraudulent scheme failed, UMDA embarked on Plan B, which was to simply

11  convert GET's share of the LLC's investment and profits, while simultaneously distributing LLC

12  funds to those LLC members who were favored UMDA board members. (*Id.* at ¶¶ 18-23.)  Only

13  *after* the conversion of GET's property was complete, UMDA brought an action in the Superior

14  Court against GET and the other LLC investors, except for those favored investors who received

15  their distributions. (*See generally* Defendant's Request for Judicial Notice ("RJN") at Ex. 2.)  The

16  Superior Court complaint fails to articulate any particular wrongdoing by any of the thirty-one

17  defendants named therein. (*Id.*)  Notably, not a single allegation of wrongdoing or tortious

18  activity is leveled at the GET Trust, the actual investor in the LLC – notwithstanding the

19  requirements of Rules 8 and 9 of the Commonwealth Rules of Civil Procedure. (*Id.*) Accordingly,

20  the Superior Court lawsuit is nothing but *ex post* cover for UMDA's prior tortious conduct.

21  **D.    The Preliminary Injunction And Its Terms**

22  In the Superior Court action, UMDA obtained a preliminary injunction, which ordered

23  GET's share of the LLC's initial investment and profits – along with other LLC Members' shares

24  – to be held by the Court in an interest bearing account. (*See generally* RJN Ex. 5.)  The court's

25  order was premised exclusively on the self interested testimony of UMDA's directors, who

26  themselves invested in the LLC. (*Id.* at 2.)  Inexplicably, although the Superior Court's

27  preliminary injunction confiscated GET's property, the Superior Court failed to find *any*

28  *wrongdoing by GET.*

3

1  Indeed, the order granting the preliminary injunction spares only four sentences on the

2  "Merits" of UMDA's claims, and even there, the discussion fails to mention any wrongdoing.

3  Rather, the Superior Court held that "Plaintiffs *have not shown* that money defrauded from

4  UMDA was used by Member-Defendants for their investment in LLC." (*Id.* at 18.)  Apart from

5  this language, which appears to fully exonerate GET, the Superior Court order makes no mention

6  of GET at all.  The Superior Court further held, in the same section, that "it is unclear which side

7  will prevail on the merits of the claims of the case."  (*Id.*)  Despite finding that UMDA *had not*

8  proven any liability on the part of GET in particular, or on the part of any defendant at all, the

9  Superior Court ultimately granted the motion and issued the injunction on November 13, 2007.

10  (*Id.*)  GET has appealed the Court's order. (RJN Ex. 6.)

11  ### E.    Dismissal of the Complaint

12  The CNMI action initially named GET as a party to the complaint, as well as its then

13  present trustee, Thomas Sorenson. GET moved to dismiss, on the well-recognized ground that

14  trusts cannot be parties to an action, and can only sue or be sued through their trustees. (*See, e.g.,*

15  Com. R. Civ. P. 17(a); RJN Ex. 7 at 3-4.)  When the motion was initially filed, on August 9, 2007,

16  Sorenson was GET's trustee. Sorenson was also sued in his individual capacity, along with KCT

17  Irrevocable Trust, another trust defendant which Sorenson represented as Trustee.  (RJN Ex. 2.)

18  Accordingly, Sorenson and KCT also moved for dismissal, Sorenson as an individual (on personal

19  jurisdiction grounds) and KCT on the same ground as GET, *i.e.*, that only the trustee may be sued.

20  (*See generally* RJN Ex. 7 at 3, 4, 8.)

21  On or about December 27, 2007, Laramie became the trustee for GET, and remains the

22  current trustee today.[2]  (*See* Complaint ¶ 3.)  Only after the change in trustees, the Superior Court

23  ruled on GET, KCT and Sorenson's motions to dismiss. (*See generally* RJN Ex. 7.)  The Superior

24  Court found that a trust cannot be named as a party to the suit, and that only the trustee may be so

25

26  [2] Although UMDA appears to argue that Laramie is not the present trustee, all allegations in the complaint are presumed to be true on a motion to dismiss. *See e.g, Oxygenated Fuels Ass'n Inc. v.*

27  *Davis*, 331 F.3d 665, 667 (9th Cir. 2003); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

28

1  named, and therefore dismissed GET and KCT as parties. (*Id.* at 4, 8.) The court also found that

2  it lacked personal jurisdiction over Sorenson as an individual, and dismissed him. (*Id.* at 3-4.)

3  However, the Superior Court's order was clear that UMDA was to amend its complaint to name

4  the trustee of GET as a party. (*Id.* at 4, 8.)

5  ### F.    GET's Counterclaims in the CNMI Action

6  As manager of the LLC, UMDA owed contractual, statutory and fiduciary duties to

7  distribute the LLC assets to the LLC members on a non-discriminatory basis. (Complaint at ¶¶

8  20-21.) UMDA also owed additional fiduciary duties to the LLC members, including a duty to

9  account for the LLC's property to the members, and a duty not to misappropriate LLC assets for

10 itself. (*Id.*) As the foregoing illustrates, UMDA has failed in all of these duties, insofar as it has

11 distributed LLC assets to some favored LLC members, but not to GET and the other disfavored

12 LLC members, and then filed the unfounded Superior Court action to justify its embezzlement

13 after-the-fact. These acts also amount to conversion of GET's property. Accordingly, Laramie

14 filed counterclaims against UMDA for its breaches and conversion, and also demanded an

15 accounting and a constructive trust. The counterclaims were essentially identical to the claims

16 raised in the instant Complaint.

17 In response to the counterclaims, UMDA moved to dismiss and also moved for sanctions.

18 Curiously, although UMDA makes much of the sanctions motion, it makes *no mention* of the

19 Superior Court motion to dismiss. (*See, e.g.,* Motion at 1:14, 5:17 (trumpeting the sanctions

20 motion but making no mention of the Superior Court motion), *see also* Banes Decl. (failing to

21 reference or attach the Superior Court motion; *and* Request for Judicial Notice (same).) In that

22 undisclosed motion, UMDA contended that "[t]he Counterclaims should be dismissed because

23 neither Laramie Fealty nor GET is a party to this litigation." (Thompson Decl. Ex. A at 2.)

24 Laramie Fealty, UMDA argues, had never been a party and GET, which was named by UMDA in

25 the CNMI action, was dismissed by court order on April 4, 2008. (*Id.*) In other words, according

26 to UMDA, the complaint in the CNMI action has been dismissed and has no vitality, and

27

28

1    therefore, there is apparently *no action* pending against GET.[3]   As support for its motion, UMDA

2    claimed that it "is black letter law and self-evident that in order to have a counterclaim there must

3    first be a claim against the party asserting the counterclaim." (*Id.* at 5.)   Because, in UMDA's

4    view, it had no claims pending against GET or its trustee, the counterclaims must be dismissed:

5    "[p]urported counterclaims brought by a stranger to the litigation are subject to dismissal." (*Id.*)

6         UMDA also contended that the only way Laramie Fealty could proceed with claims on

7    behalf of GET is by seeking court permission under Com. R. Civ. P. 25(c). (*Id.* at 2, 6-7.)   UMDA

8    cited no authority for the proposition that a trustee must request permission from the court before

9    retiring, or that a trust must request permission before hiring a replacement, because no such

10   authority exists.   But in any event, this argument proved to be a red herring, as UMDA also

11   claimed that any motion under Rule 25 ***should be denied by the Superior Court***. (*Id.* at 7.)   At the

12   same time, it is a matter of black letter law that only the present trustee may proceed in court on

13   behalf of the trust, as the Superior Court held. (*See, e.g.,* RJN Ex. 7 at 3-4.)   Accordingly, the

14   practical effect of the Superior Court motion is to foreclose the Superior Court from ruling on

15   GET's claims under any circumstances.   If Laramie cannot bring the claims in Superior Court, as

16   UMDA alleged, then no one can.

17   **III.     LEGAL ANALYSIS**

18        **A.     A Compulsory Counterclaim in State Court Does Not Preclude Jurisdiction of**

19            **This Federal Court**

20        UMDA's first argument is that Laramie's claims are compulsory counterclaims, which can

21   only be hard in the Superior Court. (Motion at 8-12.) However, federal district courts have

22   jurisdiction over proceedings involving the same claims as those that are being heard in a

23   concurrent state court, unless a specific rule of abstention applies. As recently emphasized by the

24   United States Supreme Court in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280,

25   292 (2005), "[t]his Court has repeatedly held that 'the pendency of an action in the state court is

26

27

28

1   no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" See

2   also *McClellan v. Carland*, 217 U.S. 268, 282 (1910); accord *Doran v. Salem Inn, Inc.*, 422 U.S.

3   922, 928 (1975); *Atlantic Coast Line R. Co. v. Locomotive Engineers*, 398 U.S. 281, 295 (1970).

4   Where a federal court has jurisdiction over a case, that court has a "virtually unflagging obligation

5   ... to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United*

6   *States*, 424 U.S. 800, 817 (1976). Because of this unflagging obligation, a federal court may

7   decline to hear a parallel case under its jurisdiction "only in the exceptional circumstances where

8   the order to the parties to repair to the State court would clearly serve an important countervailing

9   interest." *Id*. at 813.

10      No Ninth Circuit authority addresses the precise issue confronted by this District Court.

11   However, in a well reasoned and detailed opinion from the District of Columbia Circuit Court of

12   Appeals, the Court in *Handy v. Shaw, Bransford, Velleux & Roth*, 325 F.3d 346 (D.C. Cir. 2003),

13   held that the Rule 13(a) compulsory counterclaim provision of the Superior Court of the District of

14   Columbia did not mandate the dismissal of a parallel federal court proceeding. *Id*. at 350-351. In

15   *Handy*, the federal district court dismissed appellant's suit on the basis that Rule 13(a) required

16   that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading

17   the pleader has against any opposing party, if it arises out of the transaction or occurrence that is

18   the subject matter of the opposing party's claim," compels a litigant to bring all claims arising out

19   of the same transaction or occurrence in a single forum. *Handy v. Shaw, Bransford, Velleux &*

20   *Roth*, 2001 U.S. Dist. LEXIS 25189 at *4, Civ. A. No. 00-2336 (D.D.C. June 5, 2001). Reversing

21   the district court, the Court of Appeals explained that "while it is true that the purpose of Rule

22   13(a) is to consolidate logically related claims, it is usually applied in subsequent litigation on *res*

23   *judicata* grounds or estoppel principles." *Handy*, 325 F.3d at 350. Further noting that the parallel

24   proceedings in *Handy* took place between a federal district court and the Superior Court of the

25   District of Columbia, the Court rejected the application of parallel federal case principles and

26

27

28

7

1 declared that "it is *Colorado River*..., and not [parallel federal cases analysis] or any compulsory

2 counterclaim rule as the district court believed, that applies here." *Id.* at 351.[4]

3      Laramie respectfully suggests that if or when the Ninth Circuit Court of Appeals addresses

4 the effect of the Commonwealth's Rule 13(a) compulsory joinder rule to this federal proceeding, it

5 will follow *Handy* and Supreme Court precedent and find that "it is *Colorado River*..., and not

6 [parallel federal cases analysis] or any compulsory counterclaim rule as the district court believed,

7 that applies here." Accordingly, the Court must reject UMDA's argument GET's claims are

8 compulsory counterclaims, which can only be heard in the Superior Court.

9      **B.**    **UMDA's Prior Positions Make This Court The Only Proper Forum**

10          ***1.***      ***GET's Claims Cannot Be Compulsory Counterclaims in Light of***

11          ***UMDA's Prior Position That They Cannot Be Counterclaims At All***

12      Even if UMDA's "compulsory counterclaim" theory found compelling support in case

13 law, it still must fail here. UMDA contends that GET's claims are compulsory counterclaims

14 which can only be heard by the Superior Court. UMDA makes this argument with a straight face

15 ─────────────────

16 [4] The cases cited by Defendant for the contrary proposition are either inapplicable to the present

17 situation or are of dubious legal value. For instance, UMDA prominently features *Bonadio v. East Park Research*, 220 F.R.D. 187 (N.D.N.Y. 2003) and *Shmuel Shmueli, Bashe, Inc. v. Lowenfeld*,

18 68 F.Supp.2d 161 (E.D.N.Y. 1999), for the proposition that the claims filed in this Court must actually be filed in the Commonwealth Superior Court. Review of the cases clearly demonstrate

19 them to be cases analyzing motions to dismiss parallel federal district court cases, an analysis wholly different from analysis applicable to parallel state and federal case (*i.e. Colorado River*

20 abstention analysis). Accordingly, *Bonadio* and *Lowenfeld* are inapplicable to the present scenario.

21      The other cases cited by Defendant, although applicable, are of dubious legal value. *Bankcard Systems, Inc. v. Miller/Overfelt, Inc.*, 219 F.3d 770, 775 (8th Cir. 2000) fails to consider the clear

22 and controlling Supreme Court precedent of *McClellan v. Carland* and its progeny (*i.e.*, the pendency of an action in the state court is no bar to proceedings concerning the same matter in the

23 Federal court having jurisdiction) and the clear and controlling precedent of *Colorado River* and its progeny (*i.e.*, that a federal court may decline to hear a parallel case under its jurisdiction only

24 in the exceptional circumstances where the order to the parties to repair to the State court would

25 clearly serve an important countervailing interest). The other cases cited by Defendant, *Banner Industries of New York, Inc. v. Sansom*, 830 F.Supp. 325, 327 (S.D.W.Va. 1993) and *Dixon v.*

26 *Smith*, 1989 WL 59604 (D.Kan. May 18, 1989), suffer from the same defective analysis. Clearly, the persuasive value of these cases is severely limited.

27

28

1   *only* because it is deliberately concealing from this Court its earlier motion to dismiss filed in the

2   Superior Court (the "Superior Court motion"). (*See generally* Thompson Decl. Ex. A.)  Therein,

3   UMDA argued unequivocally that GET's claims could not be heard in the Superior Court, because

4   GET's claims are "brought by a stranger to the litigation [and] subject to dismissal." (*Id.* at 5.)

5   Counterclaims can only be asserted by a party to the underlying litigation, yet UMDA has taken

6   the unequivocal position that Laramie should not become a party. (*Id.*)  Indeed, UMDA argued

7   that even if Laramie moved for substitution under Rule 25(c), it could not become a party in the

8   Superior Court, because such a motion should be denied. (*Id.* at 7.)

9       But when Laramie filed those claims here, UMDA faithlessly changed its tune.  Now,

10  UMDA argues that GET's claims are "compulsory counterclaims" that can *only* be heard in the

11  Superior Court.  (Motion at 8-12.)  However, UMDA is careful not to admit that Laramie is a

12  proper party in the Superior Court or even admit that Laramie is the current trustee of the GET

13  trust.  Instead, it sets up Laramie's dismissal in *both* the Federal *and* Superior Courts by arguing

14  that Laramie cannot bring this lawsuit because it should be a counterclaim in the Superior Court

15  while simultaneously blocking the suit in the Superior Court by arguing that Laramie is not a

16  party.

17      The position UMDA asserted in the Superior Court – and has not recanted – is fatal to its

18  claim that the instant claims are compulsory counterclaims.  If UMDA is correct that Laramie's

19  claims cannot be *counterclaims* (because the present trustee cannot assert them), then they cannot

20  be *compulsory counterclaims*, either.  Put another way, since (1) GET's trustee is the only entity

21  that can prosecute GET's claims, and (2) UMDA contends that the trustee may *never* join the

22  CNMI action as a party, then (3) GET's claims cannot, as a matter of law, be counterclaims,

23  whether compulsory or otherwise.

24

25

26

27

28

1       UMDA offers no explanation as to how or why its prior position can be squared with its

2 current position. The two positions are irreconcilable.[5] Granting this motion simply rewards

3 UMDA for its assertion of inconsistent positions, and ultimately leaves Laramie and GET with no

4 forum at all.

5               **2.**     ***GET Cannot "Forum Shop" When UMDA Has Left The Federal Court***

6                       ***as the Only Available Forum***

7       UMDA also argues that the complaint should be dismissed because GET is forum

8 shopping. This remarkable assertion is made throughout UMDA's motion, including in the

9 discussion of the *Colorado River* doctrine and is responded to collectively here.

10       According to the position taken by UMDA, the federal court is the *only* forum open GET's

11 claims to be heard. As described above, UMDA took the position in its Superior Court motion

12 that GET's claims *could not be heard in the Superior Court,* because neither GET nor its Trustee

13 was, or could become, a party to that case. UMDA's conviction was apparently so strong that it

14 accompanied the Superior Court motion with a motion for sanctions against Laramie's counsel.

15 Surely, such vehemence can only mean that UMDA must have had a firm and abiding belief in the

16 merits of its motion. Accordingly, GET took UMDA at its word, accepted at face value the

17 argument that it could not bring its claims in state court, and brought them in federal court. When

18 the claims cannot be brought in state court, bringing them elsewhere is not "forum shopping," it is

19 appealing to *the only forum available.*

20       In a vain effort to cover up its contradictory positions, UMDA attempts to attribute various

21 strategic and nefarious motives to Laramie's filing in federal court. See, *e.g., Travelers Indemnity*

22 *Co. v. Madonna,* 914 F.2d 1364, 1371 (9th Cir. 1990)("In the *Colorado River* context, this Circuit

23 has held that forum shopping weighs in favor of a stay when the party opposing the stay seeks to

24 avoid adverse rulings made by the state court or to gain a tactical advantage from the application

25 _____

26 [5] *C.f. United States v. Nix,* 21 F.3d 347 (9th Cir. 1994)(explaining that the doctrine of judicial

27 estoppel is invoked "to prevent a party from changing its position over the course of judicial
proceedings when such positional changes have an adverse impact on the judicial process.")

28

1   of federal court rules.")  Yet, UMDA alleges no strategic purpose for GET to file in federal court,

2   because none can be found.  GET has not faced *any* "adverse rulings" on any of the issues raised

3   in *its* claims.  In fact, in the Superior Court, GET won the only substantive motion it brought in the

4   Superior Court!

5   Nevertheless, UMDA complains, for example, that GET attempted to "circumvent

6   Commonwealth Rule of Civil Procedure 25(c)" by moving to federal court.  (Motion at 17:10-11.)

7   UMDA cannot explain how this might be a tactical advantage to GET, since, as UMDA itself

8   admits, GET remains liable for any judgment rendered in this case regardless of the name of the

9   trustee on the caption. (*See, e.g.,* Motion at 10:6-8.)  Thus, despite UMDA's nefarious insinuations,

10  UMDA cannot articulate any actual strategic advantage to GET "avoiding" Rule 25(c).

11  But UMDA's invocation of Rule 25(c) is a red herring, because UMDA has taken the

12  position that it would oppose any motion brought under Rule 25(c) in any event.  (Thompson

13  Decl. Ex. A at 7.)  That is, UMDA would actually prevent Laramie Fealty, GET's current trustee,

14  from representing GET in the Superior Court.  UMDA claimed in the Superior Court motion that

15  "in the event Laramie Fealty files such a motion [under Fed. R. Civ. P. 25], Plaintiffs would likely

16  oppose it on the ground that the substitution of Laramie Fealty would not expedite or simplify the

17  action." (*Id.*)  Yet, there is no genuine dispute that the present trustee is Laramie Fealty or that

18  Laramie Fealty is the only entity which can pursue GET's claims.  As a consequence, UMDA's

19  argument is not that the wrong person brought the claims, but rather, that the claims cannot be

20  heard by the Superior Court at all.  This argument belies UMDA's suggestion that this action

21  should be dismissed, and refiled in the Superior Court, because it is obvious that UMDA would

22  bar the state court's door to GET's claims under any circumstances.

23  UMDA also argues that GET filed in federal court in order to cause this Court to review

24  the Superior Court's preliminary injunction order.  (*See, e.g.,* Motion at 2:12-14, 16:1-8.)  While it

25  is true that the Superior Court has issued a preliminary injunction, the Superior Court's order is

26  clear that the preliminary injunction order *did not make any dispositive findings of fact or law*.  To

27  the contrary, the Superior Court stated that its findings did not establish undisputed facts or the

28  law of the case. (RJN Ex. 5 at 3 n. 2 and 15.)  As the Court held, the preliminary injunction order

11

1   neither establishes "undisputed facts for purposes of summary judgment or Rule 56(d)" nor does it

2   "establish the law of the case with respect to the summary judgment motion." (*Id.*) Thus, even

3   though the preliminary injunction was decided adversely to GET, it does not constrain the

4   Superior Court (or any other court) from finding that UMDA's claims are meritless.

5        Nor do GET's claims touch on the preliminary injunction order in any way. UMDA has

6   breached its fiduciary duty and breached the LLC operating agreement and violated the limited

7   liability company laws of the CNMI by, *inter alia*, discriminatorily distributing the LLC's assets

8   to its favored board members while refusing to distribute GET's share—all conduct that occurred

9   before the preliminary injunction was issued. Accordingly, when UMDA asserts that GET's

10  complaint omitted mention the preliminary injunction in the complaint out of some nefarious

11  purpose, UMDA simply fails to understand GET's claims—the complaint is silent about the

12  preliminary injunction because it is not relevant. The preliminary injunction against the LLC

13  members in the Superior Court is not the subject of the current lawsuit and is not now before this

14  Court.

15        UMDA also seems to argue that this Court would be interfering with the preliminary

16  injunction if it issued a damages award to GET for UMDA's tortious conduct. (*See, e.g.,* Motion

17  at 6:19-23, 7:6-9.) UMDA misreads the complaint. GET does not request, in its complaint, that

18  this Court tap into the funds held by the Superior Court. This Court is asked only to adjudicate

19  whether UMDA's conduct has breached its duties, and what damages GET shall recover as a

20  result thereof. The final judgment will require UMDA to pay a sum to GET, but it will not require

21  UMDA to do anything with the money secured by the preliminary injunction. UMDA may end up

22  paying part of this Court's judgment from the funds stolen from GET, but there is no requirement

23  that it do so. Money is fungible, and this Court's final judgment will not dictate which of UMDA's

24  bank accounts UMDA ultimately uses to satisfy the judgment. Whether UMDA pays damages out

25  of the stolen LLC funds or from some other source is of no moment to GET or this Court.

26        **3.**    ***Summary***

27        UMDA's accusations regarding "forum shopping" and "compulsory counterclaims" are

28  mere distractions, designed to draw the Court's attention away from UMDA's own irreconcilable

1  positions. UMDA was very clear: GET cannot assert counterclaims in the CNMI court.  As such,

2  it also cannot assert compulsory counterclaims, and therefore it cannot be accused of forum

3  shopping when only one forum is available to it.  GET took UMDA's position seriously when it

4  filed in federal court, and so should this Court.  UMDA should be held to its initial assertion that

5  GET's claims are not counterclaims – let alone compulsory counterclaims – and UMDA's motion

6  should be denied. Any other holding will simply reward UMDA's feckless strategy, and leave

7  GET with no forum at all.

8        **C.**    **The *Colorado River* Doctrine Does Not Apply**

9       UMDA also claims that the federal action should be dismissed or stayed under *Colorado*

10  *River Water Conservation District v. United States*, 424 U.S. 800 (1976), but this doctrine does

11  not help UMDA here. Rather, "generally, as between state and federal courts with concurrent

12  jurisdiction, the rule is that the pendency of an action in the state court is no bar to proceedings

13  concerning the same matter in the federal court having jurisdiction." *Holder v. Holder*, 305 F.3d

14  854, 865 (9th Cir. 2002) (*citing Colorado River*, 424 U.S. at 817 (citations omitted).)

15  Consequently, the "doctrine is a narrow exception to the virtually unflagging obligation of the

16  federal courts to exercise the jurisdiction given them." *Id.*

17       UMDA contends that "wide discretion" is given to the district court in deciding whether it

18  shall entertain a duplicative action. (Motion at 12-13.) Not so. In *Moses H. Cone Memorial*

19  *Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 15-16 (1983), the Supreme Court clarified

20  that to fit into this narrow doctrine, "exceptional circumstances" must be present. "When a stay for

21  reasons of 'wise judicial administration' [under *Colorado River* ] is contemplated, 'discretion must

22  be exercised within the narrow and specific limits prescribed by the particular abstention doctrine

23  involved.... [T]here is little or no discretion to abstain in a case which does not meet traditional

24  abstention requirements." *Holder v. Holder*, 305 F.3d at 868 (citations and quotations omitted;

25  alterations in original). "Thus, the district court's discretion must have been exercised within the

26  'exceptional circumstances' limits of the *Colorado River* doctrine." *Id.*

27

28

1.    ***Abstention is Inappropriate Because the CNMI Action Will Not Resolve The Issues Raised in the Federal Suit***

The dispositive factor, which short circuits the other *Colorado River* factors referenced in the UMDA's motion to dismiss, is whether the state court action can resolve all issues between the parties. *Holder*, 305 F.3d 868. As noted in *Moses Cone*, whenever "there is substantial doubt that a final determination in the [state court action] will resolve all of the issues in [the] federal [action]," *Colorado River* does not apply. *Id.* Accordingly, the stay or dismissal may come about only if "the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Id.* (*citing Moses H. Cone*, 460 U.S. at 28.) As a result, dismissal or stay is proper if, and only if, the state action resolves all of the parties' claims. *See, e.g., Holder*, 305 F.3d at 868. The "existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993).

UMDA argues that *Colorado River* applies because the same parties and transactions arise in both cases. But this is not the test. Rather, the court must determine if the CNMI litigation will resolve all the issues between the parties, and it is clear that it cannot. Because UMDA has taken the position that GET cannot assert its claims in the CNMI, the Superior Court cannot provide any relief to GET for UMDA's breach of fiduciary duty, breach of contract or conversion. Indeed, because of UMDA's strategic decision to block GET's claims from being heard in the CNMI, that case can only resolve UMDA's claims against GET. If UMDA fails on those claims, GET's action will remain viable, and still require adjudication. As a result, the Superior Court's final judgment *would not* resolve the claims raised in this action, and therefore, this Court cannot find that it "will have nothing further to do in resolving any substantive part of the case, whether its stays or dismisses."

UMDA also seems to argue that it will prevail on its claims against GET, which will therefore moot this federal action, and that this contingency supports abstention here. Yet, this argument has already been rejected by the Ninth Circuit in *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993). There, Intel sued AMD for copyright infringement, based

1  on AMD's use of Intel's computer software. However, in prior litigation, an arbitrator had

2  awarded AMD an unfettered license to use the software, an award that was later challenged on

3  appeal. If the arbitrator's award withstood the appeal, then Intel's claims were barred by the

4  license, whereas if the arbitrator's award were reversed, then Intel could prevail on its claims.

5  Based on this contingency, the district court granted a stay under *Colorado River*, but the Ninth

6  Circuit reversed.  The Circuit Court wholly rejected the position UMDA advances here, and held

7  that the contingent nature of the federal claims absolutely foreclosed a *Colorado River* stay.  Even

8  though the federal claims *might* be mooted by state action, the possibility that they may remain

9  viable required the district court to proceed with the case.

10     As the foregoing makes clear, GET will continue to have viable claims against UMDA if

11  UMDA loses in state court. This contingency "raises substantial doubt sufficient to preclude a

12  *Colorado River* stay." Because this factor, standing alone, is dispositive, UMDA's motion must be

13  denied.

14     ## 2.    *The Superior Court Has Not Asserted Jurisdiction Over Any Property*

15     Although the foregoing analysis is dispositive, the remaining factors are considered below

16  in the interests of completeness. First, the Court should examine whether the Superior Court has

17  assumed jurisdiction over a property or *res* at issue in the federal action. UMDA claims that the

18  Superior Court has impounded the LLC's initial investment and profits from the sale of the golf

19  course (which are owed to GET and other defendants in the CNMI action). (Motion at 14.)

20  UMDA cites no authority in its discussion of this element, because binding Ninth Circuit

21  precedent has – once again – already rejected UMDA's argument. "Money that [plaintiff] seeks to

22  recover is not the sort of tangible physical property referred to in *Colorado River*." *American*

23  *Intern. Underwriters, Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988); *see also*

24  *Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364, 1368 (9th Cir. 1990). As a result, this factor

25  cuts against granting the stay or dismissal.[6]

26  _____

27  [6] UMDA concedes that the second factor, the relative convenience of the two fora, does not
    support its motion, as the federal court is no more or less convenient than the Superior Court.

28

3. ***The Minimal Progress In the Superior Court Does Not Support A Stay***

UMDA also contends that the federal action should be stayed because GET and UMDA have already been litigating in the Superior Court for over a year. (Motion at 15.) UMDA seems to miss the point, however. "Priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Travelers*, 914 F.2d at 1370. The reality is that precious little progress has been made in the Superior Court. There is no operative complaint; UMDA has produced no documents in discovery, despite repeated requests by multiple defendants to provide documents which support UMDA's claims. There have only been a handful of depositions (Messrs. Sorenson and Pfaff, and two parties who have settlement agreements with UMDA), and none from UMDA or any of the Board members. Significantly, UMDA has moved to block future discovery. UMDA has not identified, in the now dismissed complaint, or elsewhere, what property UMDA claims was stolen or received by GET, or what misrepresentation or fraud GET committed (despite Com. R. Civ. P. 9 which requires such claims be plead with particularity).

To be sure, UMDA has repeatedly complained that GET has transferred assets to new investments, but UMDA has yet to allege or better yet, offer any evidence, that GET's property, whether it was transferred, reinvested or it is in the original or a new bank account, is really UMDA's property. That is, after all, the touchstone contention that supposedly entitles UMDA to both attach GET's money at the Bank of Hawaii (the subject of the preliminary injunction) and to demand discovery of GET's property and bank records subsequent to its purchase of the LLC interests. In sum, there has been very little progress towards trial in the Superior Court since the original complaint was filed. Instead, UMDA has choked the litigation with repeated sideshows and distractions, including baseless sanctions motions and repeated challenges to defense counsel's *pro hac vice* status. In contrast, consider the authority cited by UMDA, *Nakash v. Marciano*, 882 F.2d 1411 (9th Cir. 1989), where the state court had issued "numerous substantive orders," held 70 hearings, 100 depositions had been taken, and 300,000 documents had been produced. *Id.* at 1413.

1   In contrast, once this court denies UMDA's motion to dismiss, this court will set a
2   scheduling conference pursuant to LR16.2CJ. This case should be set on a standard track and
3   litigated within twelve months. At the Scheduling conference the court will set forth time limits
4   for motions and discovery. Pursuant to Fed. R. Civ. P. 26, the parties will produce their initial
5   disclosures within two weeks of the conference. This case will be in high gear before an operative
6   complaint is ever filed in the Superior Court.

7   In short, although it is true that the CNMI action has been pending for more than a year,
8   the timing alone is not dispositive. "The mere existence of a case on the state docket in no way …
9   justif[ies] abstention." *Travelers*, 914 F.2d at 1370. Here, not only has minimal progress been
10  made on UMDA's claims, but not a whit of work has been done on GET's claims, because
11  UMDA refused to produce documents in discovery and refused to respond to interrogatories. See
12  *e.g., Kelly Investment, Inc. v. Continental Common Corp.*, 315 F.3d 494 (5th Cir. 2003)(where no
13  discovery has taken place in the state court on the issues raised by the federal complaint, dismissal
14  or stay is improper). Where UMDA has successfully bogged down the CNMI litigation for
15  strictly tactical reasons, this factor cuts strongly against a stay or dismissal under *Colorado River*.

16      **4.      *No Piecemeal Litigation Will Arise***

17  Nor has UMDA explained how "piecemeal litigation" will arise if this Court hears GET's
18  claims. Contrary to UMDA's assertion, *Colorado River* does not allow the district court to stay or
19  dismiss a case any time related issues are raised in pending state and federal cases. As the Ninth
20  Circuit put it:

21      *Colorado River* does not say that every time it is possible for a state court to
        obviate the need for federal review by deciding factual issues in a particular way,
22      the federal court should abstain. As the Supreme Court has observed, such a
        holding would 'make a mockery of the rule that only exceptional circumstances
23      justify a federal court's refusal to decide a case in deference to the States.'

24  *United States v. Morros*, 268 F.3d 695, 706 (9th Cir. 2001). "Rather, *Colorado River* stands for
25  the proposition that when Congress has passed a law expressing a preference for unified state
26  adjudication, courts should respect that preference." *Id.* The "avoidance of piecemeal litigation"
27  goal is satisfied only when "a strong federal policy [requires] that all claims should be tried in the
28

1    state courts." *Id.* (citing *Ryan v. Johnson,* 115 F.3d 193, 197-98 (3d Cir. 1997.)) Here, UMDA has
2    identified no such federal policy, because it cannot.

3    Nor has UMDA identified any other risk of piecemeal litigation. "Piecemeal litigation
4    occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly
5    reaching different results." *Travelers*, 914 F.2d at 1369. UMDA states that "the same underlying
6    issues permeate both state and federal proceedings" but fails to offer any explanation of how that
7    is the case. (Motion at 15.) As explained above, although the two cases involve *some* of the same
8    conduct, UMDA's claims involve the actions of the defendants, including GET and Robert Pfaff,
9    in the years before the LLC was formed, as UMDA's theory seems to be that these defendants
10   misappropriated money or assets of UMDA's and used them to fund GET's investment in the LLC
11   (although no such assets have yet been identified). In contrast, GET's claims concern the conduct
12   of UMDA in the years *after* the LLC was formed, up to and including its conduct after the LLC's
13   sold its sole asset. The two claims do not result in piecemeal litigation, as there is no overlap
14   among these issues.[7]

15   UMDA then attempts to fabricate a "piecemeal" concern by claiming that this Court would
16   be required to "review, at the very least, the [CNMI] Court's preliminary injunction order."
17   (Motion at 16.) But, GET's claims in this Court require no review or modification of the
18   preliminary injunction, as explained above. Rather the claims simply require UMDA to
19   compensate GET for the damages its fiduciary breaches have caused. The preliminary injunction
20   is immaterial to these claims, as UMDA remains liable for damages regardless of the means it
21   employed to breach its fiduciary duties. As noted above, GET simply requests a money judgment

22

23   [7] UMDA argues that GET relied on documents produced by UMDA in connection with its
24   preliminary injunction, as if that somehow establishes that GET's claims and UMDA's claims are
     one and the same. (Motion at 10 n. 9.) The conclusion does not follow (and the evidence
25   proffered by UMDA, RJN Ex. 21, makes no mention of UMDA documents at all). But in any
     event, there is no surprise that Defendants have pointed to documents produced by UMDA at the
26   hearing, *because UMDA has refused to produce a single document in discovery.* UMDA cannot
     refuse to produce documents in discovery, and then complain that defendants failed to cite to
27   unproduced documents.

28

1    and an accounting from UMDA for its breaches, conversion and violations of CNMI law.  The

2    complaint does not request any relief from this Court concerning the preliminary injunction

3    entered in the Superior Court.

4              **5.    *The Presence of Straightforward State Law Issues Precludes a Stay***

5              UMDA also contends that, because state law governs GET's claims, a stay or dismissal is

6    proper. (Motion at 16.)  Once again, UMDA has the caselaw exactly backwards.  In *Travelers,* the

7    moving party argued that "the presence of state law issues supports abstention" – the same

8    argument UMDA makes here.  *Travelers*, 914 F.2d at 1370.  However, the Ninth Circuit was clear

9    that this "argument does not correctly state the law."  *Id.*  Rather, "[s]tate-law issues may weigh in

10   favor of abstention only in some rare circumstances."  *Id.* (quoting *Moses H. Cone*, 460 U.S. at

11   26).  "Since this case involves routine issues of state law-[conversion], breach of fiduciary duty,

12   and breach of contract-which the district court is fully capable of deciding, there are no such 'rare

13   circumstances' here."  *Id.*  As a result, this factor also weighs against abstention.

14             **6.    *Summary***

15             A careful consideration of the *Colorado River* factors precludes a stay or dismissal here.

16   The federal action does not duplicate the CNMI action, as the Superior Court cannot resolve

17   GET's claims, according to UMDA's own attorneys.  This factor alone is dispositive, but none of

18   the other factors favor a stay or dismissal here, in any event.  But more importantly, UMDA's

19   undisclosed motion to dismiss, which it filed in the Superior Court but failed to discuss in its

20   pending motion, reveal that the pending motion is not a genuine appeal for comity or federalism,

21   but is rather part of UMDA's strategy to prevent any court from ever hearing GET's claims, a

22   result that is directly contrary to the Supreme Court's holding in *Colorado River.*

23        **D.    *Younger* Abstention Does Not Apply**

24             UMDA overreaches the most when it argues that *Younger* abstention should apply here.

25   (Motion at 18.).  *Younger* is motivated by an unwillingness to interfere in the state court's judicial

26   process.  As a result, *Younger* applies if, and only if, "the [district] court's action would enjoin, or

27   have the practical effect of enjoining, ongoing state court proceedings."  *Amerisourcebergen Corp.*

28   *v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007).  Thus, while UMDA discusses the three *other*

1  factors identified in the case law, it fails to even address this "fourth" factor, because it cannot. *Id.*
2  at 1148-49 (district erred by applying *only* three "*Middlesex* factors").  Applying this fourth factor
3  is fatal to UMDA's motion: this federal action does not interfere with, let alone enjoin, the CNMI
4  case.  GET's claims require no review or modification of the preliminary injunction, as UMDA
5  remains liable for damages regardless of the means it employed to breach its fiduciary duties, and
6  GET's request for a simple money judgment does not require the federal court to take any action
7  in the Superior Court.

8        Here, "issuing an ordinary judgment requiring an individual to pay breach of contract
9  damages -- does not enjoin or 'have the practical effect of' enjoining the ongoing state court
10  proceedings." *Id.* at 1152.  At best, UMDA can argue that a *potential* conflict could arise between
11  the court judgments, if (and only if) UMDA prevails on some as-yet unidentified claim against
12  GET. (No conflict would arise if UMDA does not prevail against GET.) But a potential of
13  conflicting judgments cannot justify abstention under *Younger* or any other abstention doctrine.
14  "As the Supreme Court has held, 'the mere potential for conflict in the results of adjudications
15  does not, without more, warrant staying exercise of federal jurisdiction,' much less abdicating it
16  entirely." *Amerisourcebergen*, 495 F.3d at 1151 (*citing Colorado River*, 424 U.S. at 816).  It is
17  wholly improper for the district court to abstain, as UMDA urges here, "whenever a suit involves
18  claims or issues simultaneously being litigated in state court merely because whichever court rules
19  first will, via the doctrines of *res judicata* and collateral estoppel, preclude the other from deciding
20  the claim or issue." *Id.*  Instead, the state court proceedings are "free to continue simultaneously
21  with the federal suit and [the federal plaintiff] would have simply been bound by the rulings of the
22  ... state courts under the doctrine of collateral estoppel to the extent the state courts decided the
23  relevant issues before the federal court did." *Id.*  Indeed, this conclusion is even more compelling
24  here, where UMDA has barred the state courthouse door to GET's claims, and steadfastly
25  contends that they *cannot* be heard in the Superior Court.  Where GET cannot even assert the
26  claims in state court, the chances that the Superior Court will rule on them is exceedingly slim,
27  and that slim chance is insufficient to justify abstention here.  "Concurrent consideration, not
28  abstention, is the solution." *Id.*

1    UMDA also fails to articulate any coherent argument concerning the second factor, *i.e.*,
2  that the state litigation involves an important state interest. "The second threshold element of
3  *Younger* is satisfied when 'the State's interests in the [ongoing] proceeding are so important that
4  exercise of the federal judicial power would disregard the comity between the States and the
5  National Government.'" *Id.* (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987)). UMDA
6  contends that the CNMI has an important state interest in the litigation in the Superior Court
7  because it is a shareholder of UMDA. But that interest has nothing to do with the comity concerns
8  underlying *Younger* abstention.   "The goal of *Younger* abstention is to avoid federal court
9  interference with *uniquely* state interests such as preservation of these states' peculiar statutes,
10 schemes, and procedures." *Id.* (emphasis in original). The CNMI's interest, as a mere shareholder
11 is no different than the interest of any other shareholder of UMDA – and has nothing to do with
12 preservation of the state's lawmaking or enforcement powers as a sovereign. UMDA's interest as
13 a shareholder is not *unique* to the state, and therefore is not entitled to special protection under
14 *Younger*.[8]

15    In sum, UMDA's invocation of *Younger* attempts to fit a square peg in a round hole.
16 *Younger* is not a general ban on parallel litigation; it only serves as a check on federal court action
17 that interferes with the state court's judicial process.  No such interference is present here, and
18 *Younger* does not apply.

19 **IV.    CONCLUSION**

20    In the final pages of its motion, UMDA poses the rhetorical question that it evaded
21 throughout the entire brief: "So why did Mr. Thompson, [GET's counsel], rush to file a complaint
22 in a new Court containing the exact five claims that he just dismissed in the Superior Court?"
23 (Motion at 17.) The answer is clear: because UMDA would not let them proceed elsewhere. This
24 simple truth is apparent from the face of UMDA's motion in the Superior Court, and is so

25 _____

26 [8] UMDA does not go so far as to contend, and GET does not understand UMDA to argue, that it is
27 a state actor or that the lawsuit it brought in the Superior Court amounts to state action by the
   Commonwealth.

28

1  damning to UMDA's present motion that UMDA actively concealed the Superior Court motion
2  from this Court.  UMDA instead fabricated baseless allegations of forum shopping, but filing in
3  federal court cannot be forum shopping when it is the only forum available.

4      UMDA has not recanted the position taken in the Superior Court, which is wholly
5  inconsistent with its position here.  Thus, UMDA simultaneously moves this Court for a stay
6  pending the Superior Court's resolution of GET's claims, and at the same time, moved the
7  Superior Court to dismiss those claims because that court *can never* hear those claims.  UMDA
8  cannot have it both ways, but it is not the role of this Court to sort out UMDA's bad faith position
9  from its genuine position.  Let UMDA's original position be taken at face value, and let this Court
10  hear the claims that – according to UMDA – cannot be heard in the Superior Court.  The Motion
11  should be denied.

12      DATED this 31st of July 2008          Respectfully submitted,

13                                           THOMPSON LAW OFFICE, LLC

14

15                                           By: _____/s/_____

16                                              Colin M. Thompson, Esq.
                                                Attorney for LARAMIE FEALTY, LLC,
17                                              Trustee of GET Realty Trust

18

19

20

21

22

23

24

25

26

27

28

22