ROBERT J. O'CONNOR, ESQ.
O'CONNOR BERMAN DOTTS & BANES
Second Floor, Nauru Building
P.O. Box 501969
Saipan, MP 96950
Telephone No. (670) 234-5684
Facsimile No. (670) 234-5683
*Attorneys For Defendant United Micronesia Development Association, Inc.*

DANIEL BENJAMIN, ESQ.
CALVO & CLARK, LLP
1st Floor, Macaranas Building
PMB 951 Box 10001
Saipan, MP 96950
Telephone No. (670) 233-2045
Facsimile No. (670) 233-2776
*Attorneys For Defendant United Micronesia Development Association, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LARAMIE FEALTY, LLC, Trustee of GET REALTY TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED MICRONESIA DEVELOPMENT ASSOCIATION, INC., AND DOES I-XX,<br><br>Defendants. | CIVIL ACTION NO. 08-0028<br><br>**REPLY IN SUPPORT OF DEFENDANT UMDA'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY**<br><br>Hearing Date: August 28, 2008<br>Time: 8:00 a.m. |

1

I.     INTRODUCTION

Two inescapable facts mandate the dismissal or stay of Laramie's complaint. First, the complaint seeks to have this Court revisit a vast array of issues which are pending in CNMI Superior and Supreme Courts – some of which already have been decided against Laramie. Bringing a new lawsuit to challenge rulings in a different, ongoing lawsuit is text book forum shopping.

Second, Laramie's protestation that such forum shopping is proper because this Court is "the only forum available" (Opp. at 10) is nonsense. The Superior Court would be perfectly available were it not for the shell games played by GET, Laramie and their puppet master Robert Pfaff (who is facing white collar criminal charges in the SDNY for his conduct). The GET trustee who *is* a party to the Superior Court action, Sorenson, has declined to pursue GET's claims there. The trustee who succeeded Sorenson – Laramie – has refused to seek leave to substitute itself for Sorenson, and hence cannot at present pursue GET's claims in the Superior Court. But, as soon as GET, Laramie and Pfaff stop playing shell games, they can take the needed steps to pursue the claims in Superior Court.

What they cannot do is try to switch forums mid-lawsuit. Over a year ago, the Superior Court issued a TRO freezing the funds that Laramie now seeks to place in a constructive trust – namely, proceeds of a sale of assets by UMDA LaoLao LLC. (RJN Ex. 4.) A few months later, the court issued a preliminary injunction, freezing the funds in court-controlled bank accounts. (RJN Ex. 5.) The court also denied motions by GET and other defendants for partial summary judgment (*id.*) and denied their motions to dismiss in most respects.[1] (RJN Ex. 7.) GET, Sorenson and Pfaff have a pending appeal of the preliminary injunction order. (RJN Ex. 6.) In the meantime, the case has been vigorously litigated; aside from the TRO, preliminary injunction and dispositive motions, there have been at least sixteen motions filed by or against GET, Sorenson, Pfaff or other Pfaff affiliates. Some already are decided, others are pending. (*See* Second RJN Ex. 1 and Attachment A.)

Despite its claims to have succeeded Sorenson as GET's trustee, Laramie has never sought to substitute into the Superior Court litigation or become a party thereto pursuant to Com. R. Civ. P.

---

[1] The Superior Court has held that GET's trustee (Sorenson, as of time suit was brought) is subject to suit; in rulings that UMDA has moved to reconsider, it also held that GET could not be sued except through its trustee, and dismissed Sorenson in his individual (but not trustee) capacity. (RJN Ex. 8.)

1  25(c).  Nonetheless, in April 2008, Laramie filed "counterclaims" against UMDA, asserting identical
2  claims to those in its complaint in this action.  (RJN Ex. 9.)  In moving to dismiss, UMDA correctly
3  pointed out that non-parties do not have standing to file pleadings – whereupon Laramie promptly
4  dismissed its "counterclaims" and fled to this Court, rather then simply re-filing them in the name of
5  the proper party, and filing a motion under rule 25(c) for joinder or substitution of Laramie.

6  In any case, Laramie's assertion that there has been "very little progress toward trial in the
7  Superior Court" (Opp. at 16) is clearly false.  Control over the very disputed funds that are at the
8  heart of Laramie's complaint has been the subject of a TRO, preliminary injunction, and the
9  defendants' unsuccessful summary judgment motion.  Indeed, Laramie (as GET's trustee) is now
10 seeking relief in this Court that GET/Sorenson already sought in the Superior Court, such as an
11 accounting.  (RJN Ex. 16.)  Laramie also seeks to have this Court grant it a constructive trust over the
12 disputed funds, even as GET/Sorenson appeal the preliminary injunction that froze the funds.
13 Laramie is not concerned by a lack of "progress" in the Superior Court – it is concerned that progress
14 so far has not been in its favor.  That is why it is in this Court, shopping for a new forum.  Because
15 that is improper, UMDA asks that this action be dismissed or stayed.[2]

16 **II.   DISCUSSION**

17 **A. Laramie's Claims Must be Tried in Superior Court as Compulsory Counterclaims**

18 In its moving papers, UMDA established that Laramie's claims arise "out of the transaction or
19 occurrence that is the subject matter" of UMDA's claims and, therefore, are compulsory counterclaims
20 that must be brought in the Superior Court.  (Motion at 9.)  Laramie does not dispute that its claims
21 here are identical to the "counterclaims" it filed in the Superior Court, *nor does it dispute that its*
22 *claims arise out of the same transaction or occurrence as UMDA's claims*.  Com. R. Civ. P. 13(a).

---

[2] As a distraction, Laramie asserts that UMDA has made "baseless sanctions motions and repeated challenges to defense counsel's *pro hac vice* status" in the Superior Court (Opp. at 16.)  Baseless?  When UMDA filed a Rule 11 motion regarding Laramie's improper "counterclaims," Laramie *withdrew* them – *conceding that it was doing so in response to the Rule 11 motion*. (Banes Decl. Ex. A.)  And when UMDA's directors moved to revoke Laramie's off-island counsel's *pro hac* because he had never been authorized to represent Laramie, the CNMI Supreme Court *granted* that motion (though Laramie's counsel has a pending rehearing motion).  (Second RJN Ex. 3.)

2

Instead, Laramie contends that because UMDA moved to dismiss Laramie's "counterclaims" in Superior Court – a motion that was never heard because Laramie withdrew the "counterclaims" shortly after receiving UMDA's motion – they are not compulsory, and even if they are, this Court should entertain them anyway. Both contentions are without merit.

### 1. UMDA's Motion to Dismiss Laramie's Counterclaims in Superior Court Does Not Change the Fact that the Claims Are Compulsory Counterclaims

Laramie accuses UMDA of taking the position in the Superior Court that Laramie's claims "cannot be *counterclaims*" (Opp. at 9, emphasis in original), and that they "cannot be heard by the Superior Court at all" (*id.* at 11). Based on that accusation, Laramie contends that UMDA should be estopped from challenging Laramie's filing suit in this Court. (Opp. at 9-10.) This is patently false.

UMDA's position in Superior Court was simply that Laramie had no standing to file *any* pleadings because it was not a party – i.e., nobody had sued it. Based on the unremarkable principle that only parties to a lawsuit can file pleadings, UMDA moved to dismiss Laramie's counterclaims. At the same time, UMDA pointed out how Laramie ought to have proceeded. The proper procedure was – and still is – for Laramie to move to join the state court action as a party, or substitute for Sorenson as successor trustee of GET, pursuant to Com. R. Civ. Proc. 25(c). Until Laramie did so, only Sorenson could assert the counterclaims on GET's behalf.[3] (Thompson Decl. Ex. A at 7-8.)

The fact that the wrong entity tried in vain to assert the counterclaims on behalf of GET in Superior Court, and then withdrew them, does not change that they arise "out of the transaction or occurrence that is the subject matter of the opposing party's claims" and are compulsory as stated in UMDA's moving papers. *Banner Indus. of NY v. Sansom*, 830 F. Supp. 325, 327 (S.D. W. Va. 1993).

Not only does Laramie seek to judicially estop UMDA based on a position UMDA never took in a Superior Court motion that was never heard, Laramie ventures an even more attenuated argument. It asserts that if Laramie ever *were* to bring a motion to become a party to the state court action pursuant to Com. R. Civ. Proc. 25(c), UMDA would oppose that motion, and therefore the Superior Court will be "foreclose[d]" from entertaining the counterclaims Laramie wishes to pursue. (Opp. at 6

---

[3] GET may also gain the right to file the counterclaims on its own behalf, if the Superior Court grants UMDA's pending motion to reconsider its dismissal of GET. (*See* Thompson Decl. Ex. A at 6, fn.7.)

and 9.) Laramie's rank speculation about what the Superior Court might do in response to what UMDA might do in response to what Laramie might do is unavailing. To be sure, UMDA has pointed out the Superior Court possesses discretion to deny a Rule 25(c) motion, and that UMDA "would likely oppose" any Rule 25(c) motion "on the ground that substitution of Laramie would not expedite or simplify the action." (Thompson Decl. Ex. A at 7.) But that does not mean that there will be no party in the Commonwealth court litigation who can pursue GET's purported counterclaims. Sorenson will still be a party, and GET itself may again become one as well.

### 2. This Court Need Not Adjudicate the Claims and Instead Should Dismiss Them

Although the Ninth Circuit has not addressed the precise situation here – the filing in federal court of claims that are compulsory counterclaims in a pending state court action – other courts have done so, and have dismissed the duplicative claims. In its moving papers, UMDA identified such decisions. (Motion at 11.) UMDA also identified decisions in which a federal court dismissed claims that were compulsory counterclaims in an earlier filed federal court action. (*Id*.)

Notwithstanding Laramie's contention to the contrary, the decisions dismissing claims that were compulsory counterclaims in a pending state court action are persuasive authority. *Bankcard Sys., Inc. v. Miller/Overfelt, Inc*., 219 F.3d 770 (8th Cir. 2000); *Banner Indus*., 830 F. Supp. at 328; *Dixon v. Smith*, 1989 WL 59604 (D. Kan. May 18, 1989). Laramie does not cite a **single** case or authority that has questioned them, and UMDA is aware of none. Nonetheless, Laramie criticizes these authorities for their failure to consider the 1910 decision in *McClellan v. Carland*, 217 U.S. 268 (1910). (Opp. at 8 fn.4.) But *McClellan* did not involve compulsory counterclaims in a pending state court action at all. Rather, the Supreme Court there held that a federal court could not stay a federal action in favor of an action "about to begin . . . in the state court." 217 U.S. at 281.

Further, some sixty-eight years after *McClellan*, the Supreme Court addressed the issue again, in *Will v. Calvert Fire Ins. Co*., 437 U.S. 655 (1978), a case that discussed *McClellan*. Although *McClellan* had observed that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," 217 U.S. at 282, the Supreme Court expressly clarified in *Will* that "[i]t is equally well settled that a district court is under no compulsion to exercise that jurisdiction . . . ." 437 U.S. at 662 (inner quotations and citation omitted)

(holding that where there is duplicative litigation in state and federal courts, whether to defer to the state courts is largely committed to discretion of district court). Indeed, as *Will* explained, times had changed since *McClellan*'s day. Back in 1910 "an automatic exercise of authority may well have been appropriate" because there were "fewer claims for relief in the federal courts, so that duplicative litigation and the concomitant tension between state and federal courts could rarely result." *Id.* at 663. But "as the overlap between state claims and federal claims increased, this Court soon recognized that situations would often arise when it would be appropriate to defer to the state courts." *Id*.

*Will* also refutes Laramie's attempt to distinguish decisions involving two parallel federal court proceedings as supposedly inapplicable to situations involving parallel proceedings in state court and federal court. In *Will* the Supreme Court explained that it has "recognized the relevance" of its decisions addressing duplicative actions between two federal district courts in the "analogous circumstances" involving duplicative litigation in state and federal courts. 437 U.S. at 663. Thus, cases such as *Bonadio v. East Park Research, Inc.*, 220 F.R.D. 187 (N.D.N.Y. 2003) and *Shmuel Shmueli, Bashe, Inc. v. Lowenfeld*, 68 F. Supp. 2d 161 (E.D.N.Y. 1999) – where the courts dismissed claims that were compulsory counterclaims in an earlier filed federal action – are relevant here.[4]

Laramie contends that the Court should follow the inapposite case of *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346 (D.C. Cir. 2003). But *Handy* is readily distinguishable from the case at bar. Here, the Superior Court action has been pending and actively litigated for more than a year. In *Handy*, by contrast, the state court action was filed a mere three days before the federal one. 325 F.3d at 348. And, the Superior Court action here is currently pending. In *Handy*, at the time the court dismissed the federal complaint on the ground that it was a compulsory counterclaim in the state court proceeding, the state court proceeding had already been dismissed for plaintiff's failure to serve the complaint; thus there was no state court forum in which to file a counterclaim. *Id.* at 349, fn.2.

Finally, the Ninth Circuit has made clear that it has "no interest" in encouraging a party to seek a new forum in federal court for claims that have been pending in state court for years. *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989). Indeed, the Ninth Circuit has forbidden federal suits

---

[4] Laramie cites *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), but it concerns what is now known as the "Rooker-Feldman doctrine," *see id*. at 283, not compulsory counterclaims.

5

on claims that would have been compulsory counterclaims in concluded state court actions. *See Cheiker v. Prudential Ins. Co. of Am.*, 820 F.2d 334 (9th Cir. 1987). Thus, were the Ninth Circuit to confront a situation where – like here – a party files in federal court claims that are compulsory counterclaims in a pending state court action, the Ninth Circuit would likely follow the lead of the Eighth Circuit in *Bankcard Systems, Inc*. Such a decision would effectuate the purpose of Rules 13(a): "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *S. Const. Co. v. Pickard*, 371 U.S. 60 (1962).

### 3. The Court Should Not Be Placed in the Position of Having to Rehear Issues Addressed by the CNMI Superior – and Potentially Supreme – Court

There is more at issue than Laramie's improper attempt to bring claims here that are compulsory counterclaims in the Superior Court proceeding. That other proceeding has been ongoing for over a year, with many Orders issued (including the preliminary injunction order that was appealed) and many more motions on file. Thus, if this case proceeds, the Court will have to either affirm or undo what the Superior Court (and perhaps even the CNMI Supreme Court) has already done or will do. *Nat'l Union Fire Ins. Co. v. Bank of Saipan*, 2003 WL 22997231, *4 (D.N.M.I. July 9, 2003) ("this court will not review the Orders of the Commonwealth Superior Court. Doing so would be a waste of judicial resources and would create needless friction between the state and federal forums."); *see also Exxon Mobile*, 544 U.S. at 283-84 (suits that invite "federal courts of first instance to review and reverse unfavorable state-court judgments" are "out of bounds, i.e., properly dismissed for want of subject-matter jurisdiction").

Thus, for example, the Court should not accept Laramie's invitation to conduct an accounting of the very same fund that GET has asked the Superior Court to subject to an accounting. Nor would it be appropriate for this Court to impose a constructive trust in a fund over which the Superior Court has asserted jurisdiction and whose disposition the Superior Court has announced its intention to adjudicate and control. Indeed, were Laramie's complaint to proceed, this Court would be forced to decide numerous issues already briefed and pending before the Superior Court, such as GET's motion for a protective order and its motion to compel discovery, UMDA's motion to compel discovery, GET's motion to reconsider the Superior Court's January 29, 2008 Order releasing funds, and others.

6

The notion of *compulsory* counterclaims exists exactly to avoid this type of conflict where two courts are hearing the same issues regarding the same disputed property. Thus, dismissal of Laramie's suit as constituting compulsory counterclaims in the earlier filed action is mandated and proper.

### B. This Case Should Be Dismissed or Stayed under *Colorado River*

In opposing application of *Colorado River*, Laramie stresses that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conser. Dist. v. United States*, 424 U.S. 800, 817 (1976) (citation omitted). But, as the Ninth Circuit has explained, this "somewhat overstates the law because in certain circumstance, a federal court may stay its proceedings in deference to pending state court proceedings…. [based on] considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Nakash*, 882 F.2d at 1415 (inner quotations and citation omitted); *Markoff v. Johnson*, Civil Action 05-0035, slip op. (D. N.M.I., April 20, 2006) (Munson, J.) (Ex. I to Banes Decl.). Such circumstances are present here and thus support a stay or dismissal.

#### 1. The Superior Court action will resolve the claims raised here by Laramie

While conceding that the Superior Court action will protect its and GET's rights, Laramie urges that the Superior Court will not resolve all the issues presented by its complaint herein, and thus suggest abstention under *Colorado River* is inappropriate. (Opp. at 14.) Again, Laramie is wrong.

As discussed above, the Superior Court is already slated to determine whether UMDA or GET is the rightful owner of the pro rata share of the fund deriving from GET's purported investment in LaoLao LLC. That issue is central to UMDA's Superior Court complaint; it will perforce be central to GET's defense thereto; and it is the same issue raised by Laramie's Complaint herein. If Laramie (or GET or Sorenson) assert their claims as a compulsory counterclaim in the Superior Court as required, that Court's final judgment will resolve them. If Laramie (or GET or Sorenson) fail to assert their claims as a compulsory counterclaim, the Superior Court's final judgment will still resolve them, because they will be barred. *See* Com. R. Civ. P. 13(a); *Cheiker*, 820 F.2d at 337.

Laramie nonetheless contends that the Superior Court cannot and will not resolve its claims, because UMDA will singlehandedly "bar" the state courthouse door to them. (*See* Opp. at 14 ("because of UMDA's strategic decision to block GET's claims from being heard in the CNMI, that

case can only resolve UMDA's claims against GET").)  This is preposterous.  UMDA does not control access to the Superior Court, and – assuming Laramie and GET stop their shell games – there is nothing preventing them from seeking (properly) to assert their counterclaims in that Court.

Laramie cites *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908 (9th Cir. 1993), as a case where abstention was not appropriate because the earlier filed proceeding might not resolve the later filed federal claims.  (Opp. at 14-15.)  But in *Intel* the earlier filed proceeding was an *arbitration* about the scope of a contract giving AMD rights to Intel's 386 processor, whereas the later federal court proceeding was a copyright infringement suit by Intel seeking damages.  Nothing suggests that the infringement complaint was a compulsory counterclaim (or could even have been asserted at all) in the arbitration, the scope of which was limited to the parties' agreement.  By contrast, Laramie's claims can and must be asserted in the Superior Court as a compulsory counterclaim.

### 2. Laramie's other challenges to *Colorado River* abstention are meritless

Laramie raises other challenges to *Colorado River* abstention, all meritless.  First, it contends that the Superior Court's assertion of jurisdiction over the bank accounts containing the disputed LaoLao funds does not warrant abstention.  According to Laramie, the Ninth Circuit has held that "[m]oney that [plaintiff] seeks to recover is not the sort of tangible physical property referred to in *Colorado River*."  Opp. at 15 (quoting *Am. Int'l Underwriters, Inc. v. Cont'l Ins. Co.,* 843 F.2d 1253, 1258 (9th Cir. 1998)).  But UMDA is not seeking general monetary damages; UMDA is seeking entitlement to an identified fund in particular bank accounts – which is precisely the type of tangible property referred to in *Colorado River*. *Colorado River*, 424 U.S. at 818 (citing *United States v. Bank of New York & Trust Co.*, 296 U.S. 463 (1936), which involved bank accounts first under state court jurisdiction).  Likewise, Laramie itself is not seeking not merely monetary damages, but a right to the very same identified funds currently controlled by the Superior Court, seeking an accounting and a constructive trust over the funds.  (*See* Complaint, Prayer for Relief.)  Thus, the fact that the Superior Court asserted control over that fund and the accounts housing them supports abstention.

Next, Laramie argues that that there has been only "minimal progress" in Superior Court.  (Opp. at 16.)  This is untrue.  The Superior Court issued a TRO, a preliminary injunction, an order on defendants' motions to dismiss and motions for partial summary judgment, and discovery orders.  All

1  told, the litigants in the Superior Court action have filed hundreds of pages of briefing, as evidenced
2  by UMDA's Request for Judicial Notice.  In comparison, even a much lower quantum of activity in a
3  pending state court action – the grant of a *single* TRO – can justify a district court's refusal to exercise
4  jurisdiction.  *Beck v. CKD Praha Holding, A.S.,* 999 F. Supp. 652, 657 (D. Md. 1998).

5  Laramie relies on *Kelly Investment, Inc. v. Continental Common Corp.*, 315 F.3d 494 (5th Cir.
6  2003), for the proposition that where no state court discovery has taken place on issues raised by the
7  federal complaint, dismissal or stay is improper.  But in *Kelly*, the court held that "none of the
8  *Colorado River* factors support the court's decision to abstain."  315 F.3d at 499.  Here, in contrast, all
9  the factors support abstention.  Further, GET and its trustees already cross-examined four UMDA
10 directors in open court on the issues relating to Laramie's Complaint here (such as the allegedly
11 improper repurchase offer), as well as serving discovery requests on these issues.

12 Laramie then argues that avoidance of piecemeal litigation is unimportant except in situations
13 where there exists a strong federal policy of having all the claims at issue tried in state court.  (Opp.
14 at 17.)  But the Ninth Circuit has regularly cited the policy against piecemeal litigation as grounds for
15 abstention without so limiting the application of that policy.  *E.g., Nakash*, 882 F.2d at 1415; *Am. Int'l
16 Underwriters,* 843 F.2d at 1258 ("Piecemeal litigation occurs when different tribunals consider the
17 same issue, thereby duplicating efforts and possibly reaching different results.").

18 Finally, Laramie claims not to be forum shopping, arguing that – supposedly thanks to UMDA
19 – the federal court is its "only forum available." (Opp. at 10.)  As shown above, however, this is
20 absurd.  UMDA did not bring about the situation in which the named-defendant trustee, Sorenson,
21 declined to file counterclaims on behalf of GET in Superior Court, and Laramie chose to file them
22 without bothering to become a party to the litigation.  This Court need not and should not embroil
23 itself in whatever shell game GET, Sorenson and Laramie are choosing to play in Superior Court.[5]

24 Laramie's disavowal of any motive to forum shop is disingenuous.  The Superior Court issued
25 rulings adverse to it and GET, including the preliminary injunction order and several discovery orders.

---

27 [5] One aspect of the shell game has been to use the supposed change of trustee to avoid providing
28 discovery.  Sorenson, who as a party to the case is subject to discovery, transferred discoverable documents to Laramie, which Laramie then withheld as "confidential."

9

(RJN Exs. 5, 7, 11 & 12.)  By filing in this Court the same claims it previously filed in Superior Court, raising the same issues, Laramie is obviously attempting to find a more favorable forum.  Blatant forum shopping weighs heavily in favor of dismissal or stay under *Colorado River*.  *Nakash*, 882 F.2d at 1417; *Fireman's Fund Ins. Co. v. Quackenbush*, 87 F.3d 290, 297 (9th Cir. 1996).

### C. A Stay is Similarly Warranted under *Younger*

Of the three *Younger* factors UMDA raised, Laramie concedes that the first (pending state proceedings) is satisfied and that the third (state proceedings offering adequate opportunity to litigate constitutional issues) is inapplicable. (Opp. at 20)  Laramie only denies the presence of the second factor (implication of an important state interest).  But, a wide variety of interests qualify as important state interests.  *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 US 619, 625-629 (1986).  As explained in the Decl. of Governor Benigno R. Fitial, this case concerns the first large investment made in the CNMI for many years (RJN Ex. 23), and hence an important state interest.  It also implicates novel questions regarding the CNMI's LLC statute and the rights and duties of members and managers thereunder – questions of local law best resolved by the CNMI's courts.

Laramie does point to a fourth *Younger* factor recently identified by the Ninth Circuit, namely whether "the [district] court's action would enjoin, or have the practical effect of enjoining, ongoing state court proceedings."  *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007).  But that too is satisfied here.  Laramie is not seeking only general damages; it seeks an accounting and constructive trust over the very funds maintained in accounts controlled by the Superior Court.  Granting Laramie that relief would undo the Superior Court's assertion of control over those funds.

### III.    CONCLUSION

UMDA respectfully requests that the Court dismiss or in the alternative stay this action.

Respectfully submitted this 21st day of August, 2008

**O'Connor Berman Dotts & Banes**
**Calvo & Clark, LLP**
Counsel for Defendant
United Micronesia Development Assoc., Inc.


By:     /s/
            Robert J. O'Connor