F I L E D
Clerk
District Court

SEP - 2 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1

2               THE UNITED STATES DISTRICT COURT

3              FOR THE NORTHERN MARIANA ISLANDS

4    LARAMIE FEALTY, LLC,                    Civil Action No. 08-0028

5    Trustee of GET REALTY TRUST,

6              Plaintiff,

7         v.                                 ORDER DENYING UMDA'S
                                             MOTION TO DISMISS AND
8    UNITED MICRONESIA DEVELOPMENT           GRANTING UMDA'S MOTION
                                             TO STAY
9    ASSOCIATION, INC., and DOES I–XX,

10             Defendants.

11

12          THIS MATTER came before the Court on August 28, 2008 at 8:00 am for hearing of

13   Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the

14   alternative, to stay the proceedings pursuant to the *Colorado River* doctrine or *Younger*

15   abstention.  Defendant United Micronesia Development Association, Inc. ("UMDA") appeared

16   by and through its attorneys Mr. Robert J. O'Connor and Ms. Kathleen V. Fisher.  Plaintiff

17   appeared by and through its attorneys Mr. Colin M. Thompson and Mr. Gilbert Birnbrich.

18   Having carefully reviewed the parties' briefs and the relevant legal authority, and having had the

19   benefit of oral argument and good cause appearing, the Court hereby GRANTS the motion to

20   stay and DENIES the motion to dismiss.

21                                **BACKGROUND**

22          This case arises out of alleged unlawful corporate transactions and fraudulent conduct.

23   UMDA is a development company that invests in various projects throughout Micronesia.

24   (Request for Judicial Notice ("RJN"), Ex. 2 ¶ 1.)[1]  In 2004, UMDA organized UMDA LaoLao

25

26   _____

         [1] Defendant requests that the Court take judicial notice of twenty-four documents that
     were filed in the CNMI Superior Court including a complaint, motions, memoranda in support
     of motions, and court orders.  (RJN, Exs. 1–24.)  The Court GRANTS the request with respect

AO 72
(Rev. 08/82)

LLC ("LaoLao LLC").  UMDA had a significant ownership interest in LaoLao LLC and was also the manager of the LLC.  Plaintiff G.E.T. Realty Trust ("GET") had a 35.7% ownership interest in LaoLao LLC.  (Comp. ¶¶ 9–10.)  In 2005, LaoLao LLC and UMDA purchased LaoLao Bay Golf Course.[2]  In February of 2007, UMDA and LaoLao LLC entered into an agreement to sell the golf course.  (RJN, Ex. 2 ¶¶ 60, 63.)  UMDA management later distributed the proceeds from the sale to UMDA owners and some of the LaoLao LLC owners.  (*See id.*, Ex. 5 at 11.)  UMDA asserts that it did not distribute all of the proceeds to all of the LaoLao LLC owners because it believed that such a distribution might be a breach of its fiduciary duty.  Specifically, sometime between the time of the LLC formation and the purchase and sale of the golf course, UMDA became aware of an ongoing federal criminal investigation into alleged corporate misconduct of its CEO and other directors and/or officers.  UMDA's CEO eventually pled guilty to making false statements to federal authorities regarding his acceptance of side fees without the board's consent during his tenure as CEO of UMDA.  (*Id.*, Ex. 5 at 11.)  UMDA believed that some of the LaoLao LLC members were involved in the alleged corporate misconduct and may have invested in the LLC with money that was misappropriated from UMDA.  (*See id.* at 12.)  Accordingly, UMDA management believed that it would be a breach of its fiduciary duty to pay proceeds to those owners.

On April 26, 2007, UMDA and LaoLao LLC filed suit in the Commonwealth of the Northern Mariana Islands ("CNMI") Superior Court against, among many others, GET and Thomas C. Sorenson as Trustee for GET.  (*Id.*)  The CNMI complaint asserted that the

---

to the documents' authenticity but not with respect to the veracity of the documents' content because only their authenticity is "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."  *See* Fed. R. Evid. 201(b)(2).

[2] The Court notes that this is an over-simplification of the corporate transactions.  (*See* RJN, Ex. 5.)  The recitation serves only as helpful background for purposes of this motion.

AO 72
(Rev. 08/82)

defendants gave UMDA illegal tax, accounting, and legal advice that violated various CNMI laws.  In addition, the complaint sought to determine the rightful owner of the undistributed proceeds from the golf course sale.  (*See id.*, Ex. 5 at 12.)

Shortly after the suit was initiated, the CNMI court froze three bank accounts that contained the undistributed proceeds pending determination of the rightful owners.  (*Id.*, Exs. 4 (TRO issued May 23, 2007), 5 (preliminary injunction granted November 13, 2007).)  On January 29, 2008, the court amended its preliminary injunction order and released almost a million dollars of the frozen funds to UMDA lawyers.  (*See id.*, Ex. 18 (Motion to Reconsider Release of Funds).)

On April 8, 2008, Laramie Fealty LLC ("Laramie") filed counterclaims and a third-party complaint in the CNMI case as Trustee for GET.  (*Id.*, Exs. 9, 10.)  UMDA moved to dismiss the counterclaims and third-party claims because Laramie was not a party to the suit.  (Thompson Decl., Ex. A.)  Laramie contends that it replaced Mr. Sorenson as Trustee for GET on December 27, 2007.  (Opp. at 4.)  However, it appears that Mr. Sorenson remains the named defendant and Trustee for GET in the CNMI case.  In response to the motion to dismiss, Laramie voluntarily withdrew its counterclaims and motion to dismiss.

Subsequently, Laramie filed suit in this Court on behalf of GET asserting the same claims that it previously asserted as counterclaims and third-party claims in the CNMI case.  The complaint alleges that UMDA unlawfully distributed the proceeds from the sale of the golf course in violation of LaoLao LLC's operating agreement.  Laramie seeks GET's rightful distribution from the sale as well as damages.  The Court will discuss additional specific facts as required in the analysis.

## ANALYSIS

**A.**     ***Colorado River* Legal Standard.**

Defendants argue that the Court should stay or dismiss this action based on the *Colorado*

AO 72
(Rev. 08/82)

*River* doctrine. Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) (citations omitted). However, "[c]omity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." *Id.*

Under the *Colorado River* doctrine, a court may stay or dismiss a suit where another court has concurrent jurisdiction and principles of wise judicial administration counsel deference to the other proceeding. *Colorado River Water Conser. Dist. v. United States*, 424 U.S. 800, 817 (1976). To determine whether a stay is warranted under the *Colorado River* doctrine, the Court should consider the following factors: (1) the inconvenience of the federal forum; (2) the desirability of avoiding piecemeal litigation; (3) the order in which jurisdiction was obtained; (4) considerations of wise judicial administration, giving due regard to conservation of judicial resources and comprehensive disposition of litigation; (5) similarity of the state and federal suits; (6) whether state or federal law controls; and (7) whether the state proceeding is adequate to protect the parties' rights. *Id.* at 818–19; *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 21, 25–26 (1983); *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). No one factor is determinative and the Court should balance its "virtually unflagging" obligation to exercise jurisdiction with any combination of factors that might counsel against that exercise. *Colorado River*, 424 U.S. at 813, 818–19 ("[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.").

**B.    A Stay Is Warranted Under *Colorado River*.**

Here, while neither forum is any more inconvenient than the other, all of the remaining factors weigh strongly in favor of a stay or dismissal under *Colorado River*. First, piecemeal litigation may result if this Court decides the issues before it. In the case before this Court, Laramie asserts that UMDA wrongfully withheld Laramie's share of the profits from the sale.

1    Similarly, in the case before the Superior Court, UMDA seeks a determination of the rightful

2    owners of the profits from the sale. There is a significant chance that inconsistent judgments

3    would result were both courts to resolve the issues before them. *See Am. Intern. Underwriters*

4    *(Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988) ("Piecemeal

5    litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and

6    possibly reaching different results.").

7        Next, not only did the CNMI court obtain jurisdiction over this matter prior to this Court,

8    the CNMI "case has progressed far beyond this case, indicating that it would be highly

9    inefficient to allow the federal litigation to proceed." *Nakash*, 882 F.2d at 1415. Plaintiff

10   Laramie argues that the timing of filing is not dispositive and the CNMI case has made little

11   progress in the year that it has been pending. However, at least some depositions have been

12   conducted in the CNMI case, the court has conducted hearings and listened to testimony

13   regarding the contested money, and the court has frozen those contested funds and issued an

14   extensive order on the subject. (*See* RJN, Ex. 5.) This is significantly more than has occurred in

15   this case, which amounts to only initial pleadings and the current motion.

16

17       In addition, it is clear to the Court that the case before it and the CNMI case are

18   substantially related. In the CNMI case, UMDA seeks the court's assistance in determining the

19   rightful owners of the proceeds of a sale. In short, UMDA claims that it was harmed by some of

20   the persons/entities that otherwise may have been entitled to a distribution of the proceeds.

21   UMDA claims that those persons/entities that caused it harm are no longer rightful owners of the

22   proceeds. In the instant case, Plaintiff Laramie represents one of the entities accused by UMDA

23   of wrongful conduct. Laramie contends that UMDA wrongfully withheld those profits and now

24   asks this Court to assist it in recovering those profits. In essence, the issue before this Court is

25   but one of many also present in the CNMI case. There is no question that the cases are related.

26

AO 72
(Rev. 08/82)

1      Moreover, this Court's subject matter jurisdiction is based solely on diversity of

2  citizenship and no other federal interests are implicated.  Further, Plaintiff does not suggest "any

3  reason why the [CNMI] court cannot adequately protect [its] rights." *Nakash*, 882 F.2d at 1415.

4      Finally, Plaintiff Laramie suggests that a stay under *Colorado River* is inappropriate

5  where adjudication of the state case will not resolve all of the parties' claims.  Laramie claims

6  that it will effectively be left with no forum to assert its claims because UMDA objects to its

7  ability to join the CNMI case.  However, UMDA's objections to Laramie's intervention (or

8  substitution) is not conclusive of Laramie's ability to join or substitute in as a party in that case.

9  If Laramie, GET's current Trustee, is in fact denied the ability to represent GET's interest in a

10  suit brought against GET, then the argument would be more persuasive.  However, as the facts

11  are today, UMDA's objections do not necessarily preclude Laramie's ability to properly

12  represent GET in the CNMI case.

13      Accordingly, the Court finds that principles of "wise judicial administration and due

14  regard for judicial resources" and comity counsel a stay in favor of the CNMI litigation.[3]

15

16      Accordingly, the Court GRANTS the motion to stay and DENIES the motion to dismiss

17  and the case is hereby STAYED.

18

19

20

---

21     [3] The Court notes that UMDA asks the Court to dismiss the entire action because it

22  claims that each of the claims are compulsory counterclaims in the concurrent CNMI case.  The
Court does not agree for two reasons.  First, as UMDA has noted, Plaintiff Laramie is not a

23  named party in the CNMI case and therefore cannot be compelled to bring a compulsory
counterclaim.  Fed. R. Civ. P. 13(a)(1) ("[a] pleading must state as a counterclaim any claim

24  that--at the time of its service--*the pleader* has against *an opposing party* if the claim . . . arises
out of the transaction or occurrence that is the subject matter of the opposing party's claim; . . .

25  .") (emphasis added).  Second, there has been no judgment in the CNMI litigation and there is

26  no evidence before the Court to indicate that the claims will not be or cannot still be brought in
the CNMI litigation.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CONCLUSION**

In sum, the Court finds that the relevant *Colorado River* factors weigh strongly in favor of the instant claims being adjudicated in the concurrent CNMI action. Accordingly, the motion to dismiss is DENIED and the motion to stay is GRANTED.


**IT IS SO ORDERED.**

Dated:            September 2, 2008

_____
ALEX R. MUNSON
UNITED STATES DISTRICT JUDGE